No. 25-1644

# IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

BETTE EAKIN, et al.,

*Plaintiffs-Appellees,*

*v.*

ADAMS COUNTY BOARD OF ELECTIONS, et al.,

*Defendants-Appellees,*

REPUBLICAN NATIONAL COMMITTEE, et al.,

*Intervenors-Appellants.*

On Appeal from the United States District Court
for the Western District of Pennsylvania
Case No. 1:22-cv-00340 (Hon. Susan Paradise Baxter)

## PLAINTIFFS-APPELLEES BETTE EAKIN, DSCC, DCCC, AND AFT PENNSYLVANIA'S OPPOSITION TO THE COMMONWEALTH'S EMERGENCY MOTION TO INTERVENE

**LAW OFFICE OF ADAM C. BONIN**
Adam C. Bonin
121 South Broad Street, Suite 400
Philadelphia, PA 19107
(267) 242-5014
adam@boninlaw.com

**ELIAS LAW GROUP LLP**
Uzoma N. Nkwonta
   *Counsel of Record*
Richard A. Medina
Nicole Wittstein
Daniel J. Cohen
Omeed Alerasool
250 Massachusetts Avenue NW
Suite 400
Washington, DC 20001
(202) 968-4490
unkwonta@elias.law

*Counsel for Plaintiffs-Appellees*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... ii

INTRODUCTION ................................................................................ 1

BACKGROUND ................................................................................. 3

ARGUMENT .................................................................................... 8

    I.     Rule 5.1, not Rule 24, governs. ............................................... 9

    II.    The Motion is untimely under Rule 24. ............................... 11

         A.    The Commonwealth has intervened at the latest possible stage of proceedings. ..................................... 12

         B.    Intervention at this late stage will prejudice Plaintiffs. ...................................................................... 13

         C.    The Commonwealth has no excuse for its delay. ........ 15

         D.    *Cameron* does not support the Commonwealth's position. ................................................................. 18

         E.    The Commonwealth's gamesmanship should not be rewarded. .................................................................. 20

CONCLUSION ................................................................................ 20

COMBINED CERTIFICATIONS .......................................................... 22

CERTIFICATE OF SERVICE ............................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alt v. U.S. EPA,*
   758 F.3d 588 (4th Cir. 2014) .......................................................... 20

*Ball v. Chapman,*
   289 A.3d 1 (Pa. 2023) ................................................................... 3

*Benjamin ex rel. Yock v. Dept. of Public Welfare of Pa.,*
   701 F.3d 938 (3d Cir. 2012) ....................................................... 15

*Cameron v. EMW Woman's Surgery Center, P.S.C.,*
   595 U.S. 267 (2022) .................................................................... 18

*Campaign Legal Ctr. v. Fed. Election Comm'n,*
   68 F.4th 607 (D.C. Cir. 2023) ................................................... 17

*Doe v. Nat'l Bd. of Med. Exam'rs,*
   199 F.3d 146 (3d Cir. 1999) ....................................................... 10

*Elliott v. Archdiocese of N.Y.,*
   682 F.3d 213 (3d Cir. 2012) ....................................................... 10

*Epsilon Energy USA, Inc. v. Chesapeake Appalachia, LLC,*
   80 F.4th 223 (3d Cir. 2023) ....................................................... 10

*Greenwich Terminals LLC v. U.S. Army Corp of Engineers,*
   Nos. 23-cv-4283 & 24-cv-1008, 2024 WL 4859077 (E.D. Pa. Nov. 21, 2024) ................................................................................... 14

*In re Fine Paper Antitrust Litig.,*
   695 F.2d 494 (3d Cir. 1982) ............................................... 8, 12, 14

*In re Grand Jury Investigation,*
   587 F.2d 598 (3d Cir. 1978) ....................................................... 12

*Migliori v. Cohen,*
    36 F.4th 153 (3d Cir. 2022) ................................................................3

*NAACP v. New York,*
    413 U.S. 345 (1973)................................................................11, 17

*Pa. State Conf. of NAACP Branches v. Sec'y Commonwealth of Pa.,*
    97 F.4th 120 (3d Cir. 2024) ............................................................3, 5

*Pa. State Conf. of NAACP v. Schmidt,*
    703 F. Supp. 3d 632 (W.D. Pa. 2023) ..................................................4

*Patriot Party of Pa. v. Mitchell,*
    1993 WL 466522 (E.D. Pa. Aug. 17, 1993) ......................................20

*Pennsylvania v. Rizzo,*
    530 F.2d 501 (3d Cir. 1976) ..............................................................13

*Sorace v. Wells Fargo Bank, N.A.,*
    No. 20-cv-4318, 2023 WL 5806998 (E.D. Pa. Sept. 7, 2023) ............13

*U.S. v. Territory of Virgin Islands,*
    748 F.3d 514 (3d Cir. 2014) ......................................................17, 19

*United States v. Virginia,*
    518 U.S. 515 (1996)..........................................................................11

*Wallach v. Eaton Corp.,*
    837 F.3d 356 (3d Cir. 2016) ..............................................................12

**Statutes and Rules**

28 U.S.C. § 2403...............................................................................5

25 P.S. § 3146.6................................................................................3

25 P.S. § 3150.16..............................................................................3

Fed. R. Civ. P. 5.1 ............................................. 1, 2, 5, 6, 8–11, 17, 18, 20

Fed. R. Civ. P. 6 .................................................................................. 10

Fed. R. Civ. P. 24 ........................................... 1, 2, 6, 8–11, 15, 17, 18, 20

**Other Authorities**

Erik Larson, *Fetterman, Democrats Sue over Pennsylvania Undated-Ballots Rule in Echo of 2020 Battle*, Bloomberg (Nov. 8, 2022), https://www.bloomberg.com/news/articles/2022-11-08/fetterman-democrats-sue-over-pennsylvania-undated-ballots-rule ................... 9

Rebecca Falconer, *Fetterman campaign files lawsuit over undated mail-in ballots*, Axios (Nov. 8, 2022), https://www.axios.com/2022/11/08/fetterman-pennsylvania-undated-mail-in-ballots-lawsuit ......................................................... 9

Rule II(A)(3), Pracs. & Procs. of Dist. Judge Susan Paradise Baxter, Effective Dec. 1, 2018, available at https://www.pawd.uscourts.gov/sites/pawd/files/Baxter_PP_2019.pdf .................................................................................................... 7

## INTRODUCTION

For two and a half years, the Commonwealth made no attempt to participate in this litigation, despite having every opportunity to do so. It even declined the Court's express invitation to intervene, ECF No. 383, content to cede the defense of its unconstitutional date requirement to others.[1] But now that the Court has issued a judgment the Commonwealth does not like, it appears well after the eleventh hour to demand extraordinary relief.

The Commonwealth's prejudicial delay dooms its request. Though the Commonwealth ostensibly brings its motion under Federal Rule of Civil Procedure 24, Doc. 52-1 at 3, its request should be evaluated under the more specific Rule 5.1. That rule sets forth a detailed procedure for providing notice to a state attorney general when a state law is subject to a constitutional challenge, and allows for the attorney general's intervention on behalf of the state within a specified period. The district court followed this procedure and invited the Commonwealth to

---

[1] ECF citations refer to the district court's docket, No. 1:22-cv-00340 (W.D. Pa.).

intervene, and the Commonwealth declined. *See* Fed. R. Civ. P. 5.1(c); Doc. 52-1 at 4. That should be the end of the matter.

But even if the Court applied Rule 24, each of the relevant factors weighs against granting intervention: (1) the Commonwealth waited to move to intervene until the latest possible stage of litigation, more than two years after the case was filed and after the district court entered final judgment; (2) the extraordinary, eleventh-hour stay sought by the Commonwealth will undoubtedly prejudice Plaintiffs[2]; and (3) the Commonwealth offers no reasonable excuse for its delay. Its purported explanation—that it did not know its interests were at stake until it learned that no other party would seek a stay pending appeal—is belied by the record. Moreover, mere differences in litigation strategy are not sufficient to justify intervention, especially at this late stage.

The Court should deny the motion.

---

[2] To be clear, Plaintiffs firmly oppose the Commonwealth's request for a stay. Plaintiffs reserve the right to respond to that motion if the Court grants the Commonwealth's motion to intervene and dockets its motion for a stay, as proposed.

## BACKGROUND

The Pennsylvania Election Code requires a voter who casts a mail ballot to provide a handwritten date on the declaration printed on the mail ballot's outer envelope for their vote to be counted. 25 P.S. §§ 3146.6(a), 3150.16(a); *see also Ball v. Chapman*, 289 A.3d 1, 22–23 (Pa. 2023) (holding that the relevant statutory provisions are mandatory).[3] As this Court rightly observed, this requirement "serves little apparent purpose." *Pa. State Conf. of NAACP Branches v. Sec'y Commonwealth of Pa.*, 97 F.4th 120, 125 (3d Cir. 2024) ("*Pa. NAACP*"), *cert. denied sub nom. PA Conf. of NAACP v. Schmidt*, No. 24-363, 2025 WL 247452 (U.S. Jan. 21, 2025); *see also, e.g.*, *Migliori v. Cohen*, 36 F.4th 153, 164 (3d Cir. 2022) (finding handwritten date was "superfluous and meaningless" and not used for any purpose), *vacated as moot on procedural grounds sub nom. Ritter v. Migliori*, 143 S. Ct. 297 (2022); *Ball*, 289 A.3d at 16 n.77 (noting handwritten date was not used to determine voter eligibility, timeliness, fraud, or any other purpose). Yet this meaningless technicality

---

[3] Plaintiffs use the terms "mail ballot" and "mail voting" to encompass both forms of voting offered in Pennsylvania that are subject to the date requirement: absentee ballots, *see* 25 P.S. § 3146.6; and mail-in ballots, *see* 25 P.S. § 3150.16.

disenfranchised over 10,000 eligible Pennsylvania voters in the 2022 general election.

On November 7, 2022, Plaintiffs filed this action against all 67 county boards of elections in Pennsylvania. *See generally* Compl., ECF No. 1. The Complaint, as amended in February 2023, asserted two claims: a statutory claim under the Materiality Provision of the Civil Rights Act, and (as relevant here) a constitutional claim asserting an undue burden on the right to vote under the First and Fourteenth Amendments to the U.S. Constitution. Am. Compl., ECF No. 228, ¶¶ 32–49. For a year, this lawsuit, along with a companion case brought by a collection of voters and voting rights organizations, proceeded in parallel through discovery and an initial round of summary judgment briefing. *See generally* Compl., *Pa. State Conf. of the NAACP v. Schmidt*, No. 22-cv-339-SPB (W.D. Pa. Nov. 4, 2022), Doc. No. 1.

On November 21, 2023, the district court granted summary judgment to the *Pa. NAACP* plaintiffs on their Materiality Provision claim and enjoined enforcement of the date requirement as to the 12 county boards against whom those plaintiffs had standing. *See Pa. State Conf. of NAACP v. Schmidt*, 703 F. Supp. 3d 632, 685 (W.D. Pa. 2023).

The Republican Intervenors appealed that ruling, and the district court stayed proceedings in this case pending final resolution of that appeal. ECF No. 365.[4] This Court ultimately reversed, concluding that the Materiality Provision does not cover the mail ballot date requirement. *Pa. NAACP*, 97 F.4th at 139.

The district court subsequently lifted the stay in this case and ordered supplemental summary judgment briefing on Plaintiffs' constitutional claim. ECF No. 375. The Commonwealth acknowledges that the Office of Attorney General received notice and certification of the constitutional challenge in accordance with 28 U.S.C. § 2403 and Federal Rule of Civil Procedure 5.1. Doc. 52-1 at 3–4. In its certification, issued on June 18, 2024, the district court ordered that "the Commonwealth of Pennsylvania is permitted to intervene for the presentation of evidence and for argument on the question of constitutionality." ECF No. 383 at 1. The Commonwealth declined the court's invitation to intervene by allowing Rule 5.1(c)'s 60-day deadline to pass without taking action.

---

[4] The Republican Intervenors are the Republican National Committee, the National Republican Congressional Committee, and the Republican Party of Pennsylvania, which were granted intervention by the district court on January 6, 2023. ECF No. 165.

On March 31, 2025, the district court granted summary judgment to Plaintiffs on their constitutional claim against all 67 county boards, *see* ECF Nos. 438–40, concluding that "the weight of the burden on the citizens['] right to vote is not counterbalanced by evidence of any governmental interest," and thus "the enforcement of the date provisions does not pass constitutional muster," Mem. Op. at 21, ECF No. 438. The Republican Intervenors noticed an appeal on April 2, 2025, ECF No. 441.

Two weeks after that, and nearly ten months after receiving the Rule 5.1 notice and certification, the Commonwealth filed an "emergency" motion to intervene under Rule 24 in the district court. ECF No. 443. Attached to the Commonwealth's motion to intervene was a proposed motion for a stay pending appeal and supporting brief. ECF Nos. 443-2, 443-4. The Commonwealth contended that it acted "as soon as it became clear that [its] interests would no longer be protected by existing parties." ECF No. 443 at 9. Specifically, it notes that on April 2, 2025—two weeks before it filed its "emergency" motion—the Commonwealth learned that the only parties that have appealed from this Court's judgment, the Republican Intervenors, would not be seeking

a stay pending appeal. *Id.* at 5.[5] Claiming exigency due to the May 20, 2025, municipal primary election, *id.* at 6, the Commonwealth, sought emergency treatment of its motion.

The district court denied the motion to intervene on April 24, 2025. ECF No. 445.[6] Of note, the court observed that "the Commonwealth of Pennsylvania had an earlier opportunity to intervene and failed to do so." *Id.* at 2. Now, the Commonwealth has filed an eleventh-hour motion with this Court, seeking the same relief the district court denied. Doc. 52-1. As in the district court, the Commonwealth attaches to its motion an "emergency" motion for a stay of the district court's order pending appeal. Doc. 52-2.

---

[5] Three county defendants—none of which have noticed an appeal—confirmed on April 11 and April 12 that they would not be seeking a stay either. ECF No. 443 at 5.

[6] The Commonwealth asserts that "neither the Republican Intervenors nor any party opposed intervention[.]" Doc. 52-1 at 3 n.2. In fact, the district court denied the motion to intervene before the time to file an opposition had expired. *See* Rule II(A)(3), Pracs. & Procs. of Dist. Judge Susan Paradise Baxter, Effective Dec. 1, 2018, *available at* https://www.pawd.uscourts.gov/sites/pawd/files/Baxter_PP_2019.pdf. ("Unless otherwise ordered, responses to all non-dispositive motions shall be filed within ten (10) calendar days of service."). And the Commonwealth did not seek Plaintiffs' position on the motion. Had the district court not denied the motion on its own accord, Plaintiffs would have opposed.

# ARGUMENT

The motion to intervene should be denied as untimely. The Commonwealth acknowledges that it received the required notice under Rule 5.1(c) and declined to intervene within 60 days. That rule therefore governs here, and the motion is time-barred. But even under the more flexible three-part test that this Court has developed for evaluating timeliness under Rule 24, the motion is untimely. *See, e.g., In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 500 (3d Cir. 1982). First, the motion comes *after* judgment has been entered, which means that the Commonwealth must show "extraordinary circumstances" to justify its delay. *Id.* Second, the Commonwealth's eleventh-hour attempt to put on hold this Court's order vindicating the constitutional rights of millions of Pennsylvania voters will undoubtedly prejudice Plaintiffs and their voters. And third, the Commonwealth, having known about this case and

the positions of the parties for at least ten months, cannot offer any reasonable justification for its delay.[7]

## I.     Rule 5.1, not Rule 24, governs.

The specific provisions of Rule 5.1, not the general provisions of Rule 24, govern the Commonwealth's request. Unlike Rule 24, Rule 5.1(c) sets a specific deadline for a state attorney general to intervene upon receiving notice that the constitutionality of a state statute has been challenged: "Unless the court sets a later time, the attorney general may intervene *within 60 days* after the notice is filed or after the court certifies the challenge, whichever is earlier." Fed. R. Civ. P. 5.1(c) (emphasis

---

[7] The Commonwealth has also been on constructive notice of this case for over two years. As the Commonwealth notes, Doc. 52-1 at 4, the Secretary of the Commonwealth is a named defendant in *Pennsylvania State Conference of the NAACP v. Schmidt*, which was consolidated with this case for discovery purposes in February 2023. *See* First Am. Compl., No. 1:22-cv-339 (W.D. Pa. Nov. 30, 2022), Doc. No. 121; ECF No. 227. And this case was initially filed on behalf of Pennsylvania Sen. John Fetterman the day before the November 2022 election; it is implausible that the Commonwealth didn't know about it then, either. *See* ECF No. 1; *see also, e.g.*, Rebecca Falconer, *Fetterman campaign files lawsuit over undated mail-in ballots*, Axios (Nov. 8, 2022), https://www.axios.com/2022/11/08/fetterman-pennsylvania-undated-mail-in-ballots-lawsuit; Erik Larson, *Fetterman, Democrats Sue over Pennsylvania Undated-Ballots Rule in Echo of 2020 Battle*, Bloomberg (Nov. 8, 2022), https://www.bloomberg.com/news/articles/2022-11-08/fetterman-democrats-sue-over-pennsylvania-undated-ballots-rule.

added). That deadline expired—at the latest—on August 19, 2024. *See* ECF No. 383; Fed. R. Civ. P. 6(a)(1)(C). The Commonwealth, acting through its attorney general, declined to intervene within that period.

"[T]he Federal Rules of Civil Procedure, like any other statute, should be given their plain meaning." *Elliott v. Archdiocese of N.Y.*, 682 F.3d 213, 225 (3d Cir. 2012) (citation omitted); *see also Epsilon Energy USA, Inc. v. Chesapeake Appalachia, LLC*, 80 F.4th 223, 230 n.6 (3d Cir. 2023) ("We interpret the Federal Rules of Civil Procedure like any posited law."). "It is a commonplace of statutory construction that the specific governs the general." *Doe v. Nat'l Bd. of Med. Exam'rs*, 199 F.3d 146, 155 (3d Cir. 1999). This fundamental maxim applies "particularly when the two provisions are interrelated and closely positioned, both in fact being parts of the same statutory scheme." *Id.* (alteration and citation omitted).

Rule 5.1 establishes a carefully choreographed procedure for intervention by a state attorney general to defend the constitutionality of a statute in a case like this one. That specific procedure supersedes the more general provisions for intervention under Rule 24. And with good reason: courts and parties must know in advance what position a state plans to take as to the constitutionality of a challenged statute. In many

such cases, as in this one, the constitutional analysis requires identifying
and evaluating the strength of the state interest that is advanced by the
challenged provision. *See* ECF No. 438 at 9–10. As the district court
observed in its summary judgment opinion, "the Commonwealth has not
identified what specific regulatory interest is furthered" by the date
requirement. *Id.* at 16. To allow the Commonwealth to intervene after
judgment has been entered to assert such an interest would be to give
the law's defenders a second bite at the apple and invite post hoc
rationalizations. *Cf. United States v. Virginia*, 518 U.S. 515, 533 (1996)
(holding, under intermediate scrutiny, the state's justification for the
challenged law "must be genuine, not hypothesized or invented *post hoc*
in response to litigation").

## II.    The Motion is untimely under Rule 24.

Even if Rule 24, and not Rule 5.1, governs, the Commonwealth's
application is still untimely. That is true for intervention under both Rule
24(a) and Rule 24(b). "Whether intervention be claimed of right or as
permissive, it is at once apparent, from the initial words of both Rule
24(a) and Rule 24(b), that the application must be 'timely.'" *NAACP v.
New York*, 413 U.S. 345, 365 (1973). This Court applies the same three-

factor timeliness test for both types of motions to intervene: "(1) how far the proceedings have gone when the movant seeks to intervene, (2) the prejudice which resultant delay might cause to other parties, and (3) the reason for the delay." *In re Fine Paper*, 695 F.2d at 500 (alterations and citation omitted); *see also Wallach v. Eaton Corp.*, 837 F.3d 356, 371 (3d Cir. 2016) ("A district court's timeliness inquiry for both types of Rule 24 motions requires considering the totality of the circumstances arising from three factors."). None of these factors supports the Commonwealth's post-judgment intervention.

## A. The Commonwealth has intervened at the latest possible stage of proceedings.

The first factor—the stage of the proceedings—weighs heavily in favor of finding the motion untimely, as even the Commonwealth seems to acknowledge. *See* Doc. 52-1 at 4. "While the point to which a suit has progressed is only one factor for consideration, [this Court] ha[s] observed that a motion to intervene after entry of a decree should be denied except in extraordinary circumstances." *In re Fine Paper*, 695 F.2d at 500 (citation omitted); *see also In re Grand Jury Investigation*, 587 F.2d 598, 601 (3d Cir. 1978) ("while a court of appeals has power to permit intervention that power should be exercised only in exceptional

circumstances for imperative reasons"). No such extraordinary circumstances exist here. The Commonwealth had notice and full knowledge of the issues presented in this case but declined to intervene, despite being given every opportunity to intervene to assert its interests below. And it has offered no reasonable justification for its sudden reversal.

**B.    Intervention at this late stage will prejudice Plaintiffs.**

Second, the Commonwealth's dilatory timing prejudices Plaintiffs. "The stage of the proceeding is inherently tied to the question of the prejudice the delay in intervention may cause to the parties already involved." *Sorace v. Wells Fargo Bank, N.A.*, No. 20-cv-4318, 2023 WL 5806998, at *2 (E.D. Pa. Sept. 7, 2023) (quoting *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 370 (3d Cir. 1995)) (alteration omitted). The further the litigation has progressed, the more likely courts are to find prejudice.

Courts have found prejudice where, like here, "all critical issues have been resolved, and a final Order has been entered." *Pennsylvania v. Rizzo*, 530 F.2d 501, 506–07 (3d Cir. 1976). This is because "allowing non-parties to attack the record post-judgment is highly prejudicial to the

parties and disrespectful of the court's role to resolve issues before it." *Greenwich Terminals LLC v. U.S. Army Corp of Engineers*, Nos. 23-cv-4283 & 24-cv-1008, 2024 WL 4859077, at *5 (E.D. Pa. Nov. 21, 2024); *cf. In re Fine Paper*, 695 F.2d at 500 (finding that post-settlement intervention would cause "harm [to] the original parties through . . . relitigation of the class issue, or reevaluation of the adequacy of the settlement").

Here, the Commonwealth seeks to put on hold the district court's well-considered ruling that disenfranchising thousands of voters for inconsequential paperwork errors violates the Fourteenth Amendment. This belated attempt to relitigate a claim that was pending for over two years—and to do so on a highly compressed "emergency" timeline—threatens to delay implementation of a remedy that the district court has already held is necessary to protect the constitutional rights of Pennsylvania voters.

Furthermore, granting the motion would unnecessarily multiply these proceedings. The Commonwealth seeks to burden the parties and the Court with additional, "emergency" briefing at a time when the parties are *already* engaged in expedited merits briefing in this appeal.

Doc. 38 (setting briefing schedule). The Commonwealth's "emergency" request for a stay will also force this Court to analyze complicated constitutional questions without the benefit of full briefing, with very little to be gained: The Court has already scheduled this case for disposition during the week of June 29, 2025—just two months away. *Id.* Intervention at this late stage will thus both delay and prejudice the adjudication of Plaintiffs' rights. *See* Fed. R. Civ. P. 24(b)(3).

### C. The Commonwealth has no excuse for its delay.

The third factor—reason for the delay—also weighs heavily against intervention. The Commonwealth was expressly *invited* to intervene at an earlier stage and declined to do so. It cannot plausibly claim that it did not know its interests were at stake in this litigation until after the district court entered judgment. "The delay should be measured from the time the proposed intervenor knows *or should have known* of the alleged risks to his or her rights or the purported representative's shortcomings." *Benjamin ex rel. Yock v. Dept. of Public Welfare of Pa.*, 701 F.3d 938, 950 (3d Cir. 2012) (emphasis added).

The alleged risks to the Commonwealth's rights—including the risk that the existing Defendants may not defend the case the way that the

15

Commonwealth would prefer—were plain from early on in these proceedings. Indeed, the Republican Intervenors made clear at the very outset of this case that they do *not* represent the interests of the Commonwealth. Instead, they asserted that they represent "unique interests in supporting Republican voters and candidates in participating in elections, in advancing Republican candidates' electoral prospects, or in Republican candidates winning elections." ECF No. 35 at 15; *see also* Mem. in Support of Mot. to Intervene at 15, *Pennsylvania State Conference of the NAACP v. Schmidt,* No. 1:22-cv-339 (W.D. Pa. Nov. 7, 2022), Doc No. 30 (same, in companion case where the Secretary of the Commonwealth was named as a defendant). These interests, the Intervenors explained, are fundamentally "different in kind from the public interests of the State or its officials, including state and county election administrators." *Id.* at 16 (citation omitted).

Thus, while the Commonwealth points to the failure of existing parties to request a stay pending appeal as the impetus for intervention, Doc. 52-1 at 7, the marked differences in the interests of the parties put the Commonwealth on notice that litigation strategy was likely to diverge. In other words, "this is not a case in which a post-judgment

motion to intervene is timely because the potential inadequacy of representation came into existence only at the appellate stage." *Campaign Legal Ctr. v. Fed. Election Comm'n*, 68 F.4th 607, 610 (D.C. Cir. 2023) (cleaned up, citations omitted).

Moreover, mere "differences in strategy . . . are not enough to justify intervention." *U.S. v. Territory of Virgin Islands*, 748 F.3d 514, 523 (3d Cir. 2014) (citation omitted). And the existing defendants' strategic decision to pursue an expedited appeal in lieu of a stay does not restart the timeliness clock for purposes of Rule 5.1 *or* Rule 24. *Cf. NAACP v. New York*, 413 U.S. 345, 368 (1973) (holding "there were no unusual circumstances warranting [untimely] intervention" where, among other things, "appellants' claim of inadequate representation by the United States was unsubstantiated"). While the existing parties might not have litigated this case exactly as the Commonwealth would have liked, they are, in fact, still litigating the case. And the Republican Intervenors have sought and obtained an expedited schedule that will allow this Court to issue its decision in their appeal well in advance of the 2025 general election. *See* Doc. 35-1; Doc. 38.

**D.** *Cameron* **does not support the Commonwealth's position.**

The Commonwealth relies principally on *Cameron v. EMW Woman's Surgery Center, P.S.C.*, 595 U.S. 267 (2022), to argue that its motion is timely, but that case is inapposite for at least three reasons.

First, *Cameron* did not address Rule 5.1. That is because the Governor of Kentucky and the Secretary of Kentucky's Cabinet for Health and Family Services—both state officers—were sued in their official capacities in that case, making Rule 5.1 inapplicable. *See* Fed. R. Civ. P. 5.1(a)(1)(B). Its analysis was limited to Rule 24's more flexible timeliness requirement.

Second, *Cameron* held that "the most important circumstance relating to timeliness is that the attorney general sought to intervene as soon as it became clear that the Commonwealth's interests would no longer be protected by the parties in the case." *Cameron*, 595 U.S. at 279-80 (citation omitted). There, state officers sued in their official capacities actively defended the case through appeal. It was only when those officers declined to seek en banc review after losing on appeal that the Attorney General determined that the State's interests were unprotected; thus,

timeliness was measured from the point at which state officials stopped litigating.

Here, the clock started long before this Court's summary judgment ruling. The Commonwealth was on notice at the very earliest stages of this litigation that no party claimed to be asserting its interests, yet it consciously sat on its hands. And to the extent the Commonwealth believed its interests were in fact protected all along, nothing has changed: The Republican Intervenors *are* still defending the challenged law. Their decision to seek an expedited merits ruling rather than moving for a stay pending appeal is a far cry from ceasing to defend the case altogether. It is at best a "difference[] in strategy." *Virgin Islands*, 748 F.3d at 523.

Finally, the Commonwealth here hardly acted with the same dispatch that the Kentucky Attorney General did in *Cameron*. The district court entered judgment on March 31. The Republican Intervenors —to date the only parties that have filed a notice of appeal—apparently informed the Attorney General on April 2 that they would not be seeking a stay pending appeal. Doc. 52-1 at 6. The Attorney General then waited

two full weeks to seek "emergency" relief from the district court. ECF No. 443.

### E.    The Commonwealth's gamesmanship should not be rewarded.

Rather than participate in the defense of this litigation, the Commonwealth opted to allow others to carry its water and now seeks to intervene because it doesn't like the result. Such gamesmanship should not be countenanced by this Court, especially in the face of Rule 5.1's explicit time bar, and Rule 24's clear command that potential intervenors must act with diligence to protect their rights. *E.g.*, *Alt v. U.S. EPA*, 758 F.3d 588, 591–92 (4th Cir. 2014) (intervenor who "gambled and lost in the execution of its litigation strategy" was not entitled to intervention); *Patriot Party of Pa. v. Mitchell*, No. CIV. A. 93-2257, 1993 WL 466522, at *3 (E.D. Pa. Aug. 17, 1993) (denying intervention after "tactical decision to wait" until after judgment). Having consciously sat out critical stages of this case, the Commonwealth should not now be allowed to interject itself when the moment suits it at this late stage.

## CONCLUSION

For the foregoing reasons, the Court should deny the Commonwealth's Emergency Motion to Intervene.

20

Dated: April 29, 2025                     Respectfully submitted,

                                          */s/ Uzoma N. Nkwonta*

Adam C. Bonin (PA # 80929)                Uzoma N. Nkwonta (DC # 975323)
**LAW OFFICE OF ADAM C. BONIN**           Richard Medina (DC # 90003752)
121 South Broad Street, Suite 400         Nicole Wittstein (DC # 1725217)
Philadelphia, PA 19107                    Daniel J. Cohen (DC # 90001911)
(267) 242-5014                            Omeed Alerasool (PA # 332873)
adam@boninlaw.com                         **ELIAS LAW GROUP LLP**
                                          250 Massachusetts Avenue NW,
                                          Suite 400
                                          Washington, DC 20001
                                          (202) 968-4490
                                          unkwonta@elias.law
                                          rmedina@elias.law
                                          nwittstein@elias.law
                                          dcohen@elias.law
                                          oalerasool@elias.law

*Counsel for Plaintiffs-Appellees Bette Eakin, DSCC, DCCC,
and AFT Pennsylvania*

## COMBINED CERTIFICATIONS

At least one of the attorneys whose name appears on this brief is a member of the bar of this Court, or has filed an application for admission pursuant to L.A.R. 46.1.

This brief complies with the word limit of Fed. R. App. P. 27(d)(2) because, excluding the parts exempted by Fed. R. App. P. 32(f), it contains 4,005 words. This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced 14-point serif font (Century Schoolbook) using Microsoft Word.

The text of this electronic brief is identical to the text in paper copies that will be filed with the Court.

Pursuant to 3d Cir. L.A.R. 31.1(c), Sophos Core Agent version 2024.3.2.3.0 has been run on this electronic file and no virus was detected.

Dated: April 29, 2025                 */s/ Uzoma N. Nkwonta*
                                       Uzoma N. Nkwonta

# CERTIFICATE OF SERVICE

I hereby certify that, on April 29, 2025, this motion and attached exhibits were electronically filed with the Clerk of Court using the appellate CM/ECF system.

Dated: April 29, 2025                    */s/ Uzoma N. Nkwonta*
                                         Uzoma N. Nkwonta