IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

**No. 25–1644**

_____

**BETTE EAKIN, *et al.***

**v.**

**ADAMS COUNTY BOARD OF ELECTIONS, *et al.***

**Appeal of: REPUBLICAN NATIONAL COMMITTEE; NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE; and REPUBLICAN PARTY OF PENNSYLVANIA**

_____

**BRIEF FOR INTERVENOR
THE COMMONWEALTH OF PENNSYLVANIA**

_____

APPEAL FROM THE JUDGMENT OF THE UNITED STATES
DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ENTERED ON MARCH 31, 2025 AT NO. 1:22–CV–340

DAVID W. SUNDAY, JR.
*Attorney General*

Office of Attorney General          BY:    BRETT GRAHAM
1600 Arch Street, Suite 300                *Deputy Attorney General*
Philadelphia, PA 19103
Phone: (267) 530-0886                      SEAN A. KIRKPATRICK
bgraham@attorneygeneral.gov                *Chief Deputy Attorney General*
                                           *Chief, Appellate Litigation Section*

DATE: May 6, 2025

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF JURISDICTION ........................................................1

STATEMENT OF ISSUES ...................................................................1

STATEMENT OF THE CASE ...............................................................2

      A.     Pennsylvania's Election Code .............................................4

      B.     Proceedings Below ...............................................................7

SUMMARY OF ARGUMENT ...............................................................9

ARGUMENT ........................................................................................11

I.     THE *ANDERSON-BURDICK* FRAMEWORK DOES NOT APPLY .............................11

      A.     Appellees' First Amendment Claim Must Fail Absent Speech
           or Associational Interests ...................................................12

      B.     Under the Fourteenth Amendment, the Right to Vote Does Not
           Include the Right to Vote "in Any Manner" ......................13

      C.     To the Extent the Declaration Requirement Could Be Construed
           to Burden the Right to Vote, That Burden is *De Minimis* ..................17

II.    EVEN IF THE *ANDERSON-BURDICK* FRAMEWORK APPLIED, THE DISTRICT
     COURT ERRED IN APPLYING THAT FRAMEWORK ............................................19

      A.     The District Court Improperly Analyzed "the Date
           Requirement" in Isolation ..................................................19

      B.     The District Court Wrongly Demanded Evidence to Justify
           Government Interests ..........................................................22

           1.     The declaration requirement serves a governmental
                 interest in detecting fraud..........................................26

i

2.      The declaration requirement serves a governmental
        interest in communicating solemnity. .......................................28

3.      The declaration requirement serves a governmental
        interest in ensuring the orderly administration of
        elections. .................................................................................29

CONCLUSION ......................................................................................32

CERTIFICATE OF COUNSEL ............................................................33

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) .................................................. passim

*Appeal of Pierce*, 843 A.2d 1223 (Pa. 2004) ............................................17

*Ball v. Chapman*, 289 A.3d 1 (Pa. 2023) .............................................2, 18

*Baxter v. Philadelphia Bd. of Elections*, No. 396–96 EAL 2024 (Pa. Jan. 17, 2025) ................................................................................................3

*Biener v. Calio*, 361 F.3d 206 (3d Cir. 2004) ..........................................12

*Black Political Empowerment Project v. Schmidt*, No. 283 M.D. 2024, 2024 WL 4002321 (Pa. Cmwlth. Aug. 30, 2024)...........................................3, 27

*Black Political Empowerment Project v. Schmidt*, No. 68 MAP 2024 (Pa. Sept. 4, 2024) (*per curiam*)................................................................................3

*Brnovich v. Democratic National Committee*, 594 U.S. 647 (2021).......................13

*Burdick v. Takushi*, 504 U.S. 428 (1992).......................................... passim

*Cabrera v. Att'y Gen. of U.S.*, 921 F.3d 401 (3d Cir. 2019)....................................29

*Citizens for Legislative Choice v. Miller*, 144 F.3d 916 (6th Cir. 1998)................20

*Commonwealth v. Mihaliak*, CP-36-CR-0003315-2022 (Lanc. Cnty. CCP 2022) .26

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209 (3d Cir. 2013)...........................26

*Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181 (2008)............. 13, 16, 23, 27

*Dunn v. Blumstein*, 405 U.S. 330 (1972) ................................................16

*FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307 (1993)...................................... 23, 31

*Feldman v. Ariz. Sec'y of State's Off.*, 843 F.3d 366 (9th Cir. 2016).....................16

*Genser v. Butler Cnty. Bd. of Elections*, 325 A.3d 458 (Pa. 2024) ........................21

*Griffin v. Roupas*, 385 F.3d 1128 (7th Cir. 2004)........................................... 16, 19

*Heller v. Doe*, 509 U.S. 312 (1993) ........................................................................23

*In re Canvass of Absentee and Mail-in Ballots of November 3, 2020 General Election*, 241 A.3d 1058 (Pa. 2020) ........................................................................2

*In re Canvass of Provisional Ballots in 2024 Primary Election*, 322 A.3d 900 (Pa. 2024) ........................................................................................................................21

*In re Scroggin*, 237 A.3d 1006 (Pa. 2020) ...........................................................17

*Jones v. United States Postal Serv.*, 488 F. Supp. 3d 103 (S.D. N.Y. 2020) ..........20

*Lerman v. Bd. of Elections in City of New York*, 232 F.3d 135 (2d Cir. 2000) .......19

*Luft v. Evers*, 963 F.3d 665 (7th Cir. 2020) ...................................................... passim

*Mabey Bridge & Shore, Inc. v. Schoch*, 666 F.3d 862 (3d Cir. 2012) ....................23

*Mazo v. New Jersey Sec'y of State*, 54 F.4th 124 (3d Cir. 2022) ............... 11, 17, 18

*McDonald v. Bd. of Election Comm'rs of Chic.*, 394 U.S. 802 (1969) ...................16

*McLinko v. Dep't of State*, 279 A.3d 539 (Pa. 2022) ...............................................15

*Migliori v. Cohen*, 36 F.4th 153 (3d Cir. 2022) .......................................................29

*National Ass'n for the Advancement of Multijurisdictional Practice v. Castille*, 799 F.3d 216 (3d Cir. 2015) ...........................................................................................23

*New PA Project Education Fund v. Schmidt*, No. 112 MM 2024 (Pa. Oct. 5, 2024) (*per curiam*) ............................................................................................................3

*Newark Cab Ass'n v. City of Newark*, 901 F.3d 146 (3d Cir. 2018) ......................29

*Northeast Ohio Coalition for the Homeless v. Husted*, 696 F.3d 580 (6th Cir. 2012) ..................................................................................................................................25

*Northeast Ohio Coalition for the Homeless v. Husted*, 837 F.3d 612 (6th Cir. 2016) ............................................................................................................................. 24, 25

*Ohio Council 8 Am. Fed. of State v. Husted*, 814 F.3d 329 (6th Cir. 2016) ...........22

*Parker v. Conway*, 581 F.3d 198 (3d Cir. 2009) ............................................. 22, 28

*Pennsylvania Democratic Party v. Boockvar*, 238 A.3d 345 (Pa. 2020) ...............30

*Pennsylvania State Conf. of NAACP Branches v. Pennsylvania*, No. 23–3166, 2024 WL 3085152 (3d Cir. Apr. 30, 2024) ..................................................................8

*Pennsylvania State Conf. of the NAACP v. Al Schmidt*, 145 S. Ct. 1125 (2025) ..2, 8

*Pennsylvania State Conf. of the NAACP v. Schmidt*, 703 F. Supp. 3d 632 (W.D. Pa. 2023) ................................................................................. 2, 5, 6, 8

*Pennsylvania State Conf. of the NAACP v. Sec'y, Commonwealth of Pennsylvania*, 97 F.4th 120 (3d Cir. 2024) ..................................................................2, 8

*Ritter v. Migliori*, 143 S. Ct. 297 (2022) ................................................................29

*Rodriguez v. Popular Democratic Party*, 457 U.S. 1 (1982) ..................................15

*Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997) ..............................14

*Wilmoth v. Sec'y of New Jersey*, 731 Fed. Appx. 97 (3d Cir. 2018) ......................14

**Constitutional and Statutory Provisions**

23 Pa. C.S. § 5331 ....................................................................................................18

25 P.S. § 2641 ............................................................................................................4

25 P.S. § 3140.12b ......................................................................................................5

25 P.S. § 3146.4 ..........................................................................................................6

25 P.S. § 3146.6(a) ................................................................................................2, 17

25 P.S. § 3150.16(a) .............................................................................................2, 6, 17

25 Pa. C.S. § 1301 ......................................................................................................5

25 Pa. C.S. § 1327(b) ................................................................................................5

28 U.S.C. § 1331 ........................................................................................................1

28 U.S.C. § 1343 ........................................................................................................1

28 U.S.C. § 1983 ........................................................................................................1

42 P.S. § 6206 ........................................................................................18

42 Pa. C.S. § 8316.2(b) .......................................................................18

52 U.S.C. § 10101(a)(2)(B). .................................................... 2, 7, 20

57 Pa. C.S. § 316 .................................................................................18

73 P.S. § 201-7(j.1)(iii)(3)(ii) ..............................................................18

73 P.S. § 2186(c) .................................................................................18

PA. CONST. art. I, § 5 ...........................................................................3

PA. CONST. art. VII, § 14 ...................................................................15

U.S. CONST. art. I, § 4, cl. 1 ...............................................................14

Wis. Stat. § 5.02(6m)(f) ......................................................................24

## Other Authorities

Joshua Douglas, *The Right to Vote Under State Constitutions*,
    67 VAND. L. REV. 89 (2014) ...........................................................15

*Shapiro Administration Introduces Redesigned Mail Ballot Materials to Give
    Voters Clearer Instructions, Decrease Number of Rejected Ballots, and Ensure
    Every Legal Vote is Counted*, PA. DEPT. OF STATE (Nov. 29, 2023), available at
    https://www.pa.gov/agencies/dos/newsroom /shapiro-administration-introduces-
    redesigned-mail-ballot-materials-to-give-voters-clearer-instructions-decrease-
    number-of-rejected-ballots-and-ensure-every-legal-vote-is-counted.html ...........3

## STATEMENT OF JURISDICTION

This civil rights action was brought pursuant to 28 U.S.C. § 1983 and implicates the First and Fourteenth Amendments to the United States Constitution. The District Court had subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

This appeal is from a final order granting in part and denying in part cross-motions for summary judgment. (Dist. Ct. ECF 280, 281, 286, 287, 377). The District Court issued its decision by memorandum and order dated March 31, 2025. (Dist. Ct. ECF 438, 439). It entered judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure on April 1, 2025. (Dist. Ct. ECF 440). A notice of appeal was filed on April 3, 2025. (Dist. Ct. ECF 441).

## STATEMENT OF ISSUES

I.   Is a non-discriminatory state election rule subject to interest balancing under the *Anderson-Burdick* framework when it: (i) does not impair voter access, regulate speech, or affect equal protection; and (ii) constitutes a *de minimis* burden on voters?

II.  If the *Anderson-Burdick* framework does apply, must state interests be supported by evidence or empirical data to be cognizable?

## STATEMENT OF THE CASE

In 2019, Pennsylvania's General Assembly enacted Act 77, a sweeping package of reforms to the Election Code. The Code now provides for universal, no-excuse mail-in and absentee voting. And it instructs Pennsylvanians availing themselves of that option to "fill out, *date*, and sign" a pre-printed declaration on the outer return envelope in which their ballot will travel to their county board of elections. 25 P.S. §§ 3146.6(a), 3150.16(a) (emphasis added).

Since its enactment, the Supreme Court of Pennsylvania has upheld enforcement of the dating component of Act 77's declaration requirement as a matter of statutory interpretation—twice.[1] Meanwhile, this Court previously determined that enforcement of that provision does not violate the federal Civil Rights Act.[2] State officials have, in the interim, modified the materials sent to voters in an effort

---

[1] *See Ball v. Chapman*, 289 A.3d 1, 20 (Pa. 2023); *In re Canvass of Absentee and Mail-in Ballots of November 3, 2020 General Election*, 241 A.3d 1058, 1089 (Pa. 2020) (*In re 2020 Canvass*) (Wecht, J., concurring and dissenting); *id.* at 1090–91 (Dougherty, J., concurring and dissenting).

[2] *See Pennsylvania State Conf. of the NAACP v. Schmidt*, 703 F. Supp. 3d 632 (W.D. Pa. 2023) (*NAACP*), *rev'd sub nom. Pennsylvania State Conf. of NAACP Branches v. Sec'y, Commonwealth of Pennsylvania*, 97 F.4th 120, 133 (3d Cir. 2024) (reading Materiality Provision to apply to "paperwork used in the voter qualification process … [not] during the vote-casting stage"), *cert. denied sub nom. Pennsylvania State Conf. of the NAACP v. Al Schmidt*, 145 S. Ct. 1125 (2025); 52 U.S.C. § 10101(a)(2)(B) (Materiality Provision).

The Pennsylvania Supreme Court had previously divided evenly on that question. *See Ball*, 289 A.3d at 9.

to "reduce … errors" and remove any conceivable barriers to compliance.[3] Nonetheless, challenges have persisted. Currently, a distinct challenge to the date component pursuant to the state constitution's "free and equal elections" clause is pending in Pennsylvania's High Court.[4] Here, the District Court ruled that enforcing compliance with the date component violates the "First Amendment right to vote." (Dist. Ct. ECF 438 at 17–18).

Appellants are (i) Intervenor the Commonwealth of Pennsylvania, represented by its chief law officer, Attorney General David W. Sunday, Jr.,[5] and (ii) the

---

[3] *See Shapiro Administration Introduces Redesigned Mail Ballot Materials to Give Voters Clearer Instructions, Decrease Number of Rejected Ballots, and Ensure Every Legal Vote is Counted*, PA. DEPT. OF STATE (Nov. 29, 2023), available at https://www.pa.gov/agencies/dos/newsroom/shapiro-administration-introduces-redesigned-mail-ballot-materials-to-give-voters-clearer-instructions-decrease-number-of-rejected-ballots-and-ensure-every-legal-vote-is-counted.html.

[4] *See Baxter v. Philadelphia Bd. of Elections*, No. 396–96 EAL 2024 (Pa. Jan. 17, 2025) (granting *allocatur* in part); PA. CONST. art. I, § 5 ("Elections shall be free and equal; and no power, civil or military, shall at any time interfere or prevent the free exercise of the right of suffrage.").

Several other challenges to the declaration requirement preceded the 2024 General Election. *See Black Political Empowerment Project v. Schmidt*, No. 283 M.D. 2024, 2024 WL 4002321 (Pa. Cmwlth. Aug. 30, 2024), *vacated* No. 68 MAP 2024 (Pa. Sept. 4, 2024) (*per curiam*) (finding lack of subject matter jurisdiction and denying request for Extraordinary Jurisdiction); *New PA Project Education Fund v. Schmidt*, No. 112 MM 2024 (Pa. Oct. 5, 2024) (*per curiam*) (declining to exercise King's Bench or Extraordinary Jurisdiction).

[5] The Commonwealth of Pennsylvania sought intervention in this Court on April 25, 2025, (*see* 3d Cir. ECF 52–1) and was granted that status by order dated May 1, 2025, (*see* 3d Cir. ECF 64).

Republican National Committee, the National Republican Congressional Committee, and the Republican Party of Pennsylvania, intervenor-defendants below (collectively, Republican Appellants). All 67 county boards of election were defendants below. Several of them, however, have indicated that they will not be participating in this appeal. (*See* 3d Cir. ECF 32 (Lehigh County), ECF 51 (Berks County), ECF 56 (Luzerne County), ECF 58 (Franklin County and Perry County)).

Appellees, plaintiffs below, are Bette Eakin (an individual voter), the Democratic Senate Campaign Committee, the Democratic Congressional Campaign Committee, and AFT Pennsylvania (collectively, Appellees).[6]

Appellants seek reversal of the District Court's decision granting Appellees' motion for summary judgment on Count II of the Amended Complaint, wherein they alleged that enforcing the declaration requirement in full violates "the First and Fourteenth Amendments." (Dist. Ct. ECF 228 ¶¶ 41–49).

### A.    Pennsylvania's Election Code

Elections in Pennsylvania are administered by the 67 county boards of election. *See* 25 P.S. § 2641(a). Through the Election Code, the General Assembly has tasked county boards with, *inter alia*, setting up polling places, counting votes,

---

[6] The original complaint included as Plaintiffs Ines Masella, a voter, and Fetterman for PA, a political campaign. (Dist. Ct. ECF 1 ¶¶ 13–14). Because neither Masella nor Fetterman for PA were listed on the Amended Complaint, they were terminated from the case on February 9, 2023. (Dist. Ct. ECF 228).

posting results, and providing guidance to election officials and voters. *See id.*
§§ 2641(b)–(g).

In *NAACP*, the District Court provided a full and faithful summary of how the
Election Code functions with respect to mail-in and absentee ballots. Reproduced
here for the Court's convenience—with the exception of in-line citations and minor
alterations for clarity—it reads:

> To vote by mail, voters apply to their county board of elections,
> providing their date of birth, address, length of time as a resident of the
> voting district, and proof of identification (either a Pennsylvania
> driver's license number or, if the voter does not have a Pennsylvania
> driver's license, the last four digits of the voter's Social Security
> number). The county boards of elections then verify that they are
> qualified to vote in Pennsylvania. In the Commonwealth, a qualified
> voter is one who, on the day of the next election, has been a United
> States citizen for at least one month, is at least 18 years old, has resided
> in the election district for at least 30 days, and has not been confined in
> a penal institution for a conviction of a felony within the last five years.

*NAACP*, 703 F. Supp. 3d at 665 (citing 25 Pa. C.S. §§ 1301, 1327(b)). To verify the
voter's proof of identification, a county board will then:

> compare the information in the application to the information provided
> at the time of registration using the data from the Statewide Uniform
> Registry of Electors ("SURE") system. Each county maintains its own
> official voter rolls within the Commonwealth's SURE system. Only
> after verifying the voter's qualifications to vote do the county boards
> issue vote by mail ballot packages to voters. The county board's
> decision that an individual is qualified to vote is conclusive unless the
> voter's eligibility is challenged prior to Election Day.

*Id.* (citing 25 P.S. § 3140.12b). Having verified a voter's proof of identification, the
county board will mail a ballot package to the voter, which consists of:

the ballot itself, instructions, a "Secrecy Envelope," and a larger pre-addressed outer "Return Envelope" on which a voter declaration form is printed. The Election Code provides that the inner Secrecy Envelope be marked with the words "Official Election Ballot" and nothing else. The larger outer Return Envelope is to contain "the form of declaration of the elector, and the name and address of the county board of election of the proper county." […] The outer Return Envelope is printed with a unique barcode associated with the individual voter. That unique barcode is used to track the ballot through the SURE system.

*Id.* at 666 (citing 25 P.S. § 3146.4). As an official from the Department of State

explained, counties record returned ballots *via* the SURE system:

"There is a barcode, a unique barcode on each envelope that's returned to the County that the County uses to scan. And that unique barcode is attached to that specific voter who requested the absentee or mail-in ballots. So, yes, the counties record those envelopes as returned in the SURE system."

*Id.* (citation omitted). Returning to the voter's perspective, the Election Code

requires them to "fill out, date and sign the declaration printed on" the outer Return

Envelope, which "includes a line for the voter to sign and date the declaration." *Id.*

(citing 25 P.S. § 3150.16(a)).

The voter is instructed to mark their ballot, put it inside the Secrecy Envelope, and place that into the outer Return Envelope. The voter declaration on the Return Envelope is to be completed at "any time" between receiving the ballot package and 8:00 p.m. on Election Day. After completing the ballot, the voter either mails the ballot to the county board of elections or personally delivers it to the board's office. The county board of elections must receive the voter's completed ballot package by 8:00 p.m. on Election Day. Upon receipt of the ballot package, the county boards stamp or otherwise mark the Return Envelope with the date of receipt to confirm its timeliness and log its receipt into the SURE system.

*Id.* at 666–67. Millions of Pennsylvanians follow these steps every election.

### B.    Proceedings Below

On November 7, 2022—Election Day eve—Plaintiffs Bette Eakin, Democratic Senate Campaign Committee, and the Democratic Congressional Campaign Committee filed an initial complaint in this matter, naming as Defendants all 67 county boards of election. (Dist. Ct. ECF 1). In that filing, as well as their Amended Complaint filed on February 9, 2023, *see supra* p.4, n.6, Plaintiffs alleged a violation of the Civil Rights Act of 1964, 52 U.S.C. § 10101, and a violation of the First and Fourteenth Amendments. (Dist. Ct. ECF 228 ¶¶ 41–49).

The District Court granted various individual voters, as well as the Republican Appellants, leave to intervene in support of the county boards. (Dist. Ct. ECF 35, 165). Plaintiffs, the Republican Appellants, the Lancaster County Board of Elections, and the Berks County Board of Elections all filed motions for summary judgment. (*See* Dist. Ct. ECF 280, 281, 286, 287, 377).

On November 21, 2023, the District Court granted relief in a companion case, *Pennsylvania State Conference of the NAACP et al. v. Al Schmidt et al.*, in which separate plaintiffs had raised similar claims against the county boards of election and the Secretary of the Commonwealth. (Dist. Ct. ECF 348 at 8). In *NAACP*, the District Court determined that not counting ballots that arrive in undated or incorrectly dated

outer envelopes violated the Materiality Provision of the Civil Rights Act. *See Pennsylvania State Conf. of the NAACP v. Schmidt*, 703 F. Supp. 3d at 685.

The District Court stayed its consideration of this matter on January 22, 2024, pending an appeal in *NAACP*. (*See* Dist. Ct. ECF 365). This Court reversed and remanded the District Court's decision in *NAACP* by memorandum dated March 27, 2024. *Pennsylvania State Conf. of NAACP Branches*, 97 F.4th at 139. On April 30, 2024, this Court also denied petitions for a panel rehearing or rehearing *en banc*. *Pennsylvania State Conf. of NAACP Branches v. Pennsylvania*, No. 23–3166, 2024 WL 3085152 (3d Cir. Apr. 30, 2024). On January 21, 2025, the United States Supreme Court denied a petition for writ of *certiorari*. *Pennsylvania State Conf. of the NAACP v. Al Schmidt*, 145 S. Ct. 1125 (Mem.).

Thereafter, the District Court lifted its stay and allowed the parties to supplement their motions for summary judgment. (Dist. Ct. ECF 375). On March 31, 2025, the District Court granted in part and denied in part the motions for summary judgment. It granted relief on Plaintiffs' First Amendment claims and, consistent with this Court's disposition in *NAACP*, rejected Plaintiffs' claims under the Civil Rights Act. (*See* Dist. Ct. ECF 438, 439).

This appeal followed.

## SUMMARY OF ARGUMENT

The First Amendment does not empower federal courts to assess the wisdom of reasonable, non-discriminatory, non-burdensome state election rules, or to test their "validity" absent a cognizable constitutional right. And the federal Constitution does not save individuals from their own ballot-casting errors; it mandates only that voters are treated alike and enjoy equal political opportunity.

Since Act 77 became law, state and federal courts have fielded numerous challenges to the simple requirement that Pennsylvania voters write a date next to their signature when filling out the declaration on the envelope containing their mail-in or absentee ballots. This case is another chapter in that saga. Here, the District Court adopted a spurious interpretation of applicable case law, one which empowered it to put that component of the declaration requirement—the handwritten date—on trial, and declare it functionally meaningless.

That interpretation is deeply flawed, and the District Court's rationale cannot withstand scrutiny. Respectfully, it rushed into application of the framework developed in *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992), without assuring itself that this framework applies in the first place. It does not. Appellees' claims were grounded in the First Amendment, but no First Amendment interests are implicated; the ability to vote by mail or absentee ballot was granted by state statute. As such, the manner in which voters may vote by

mail was properly prescribed by the General Assembly. And it is beyond peradventure that adding a date to one's freshly-signed signature constitutes a *de minimis* burden. Thus, *Anderson-Burdick* does not apply.

Within its application of the *Anderson-Burdick* framework, the District Court compounded its error. Those cases and their progeny emphatically do not provide license for courts to consider provisions of a state's election code in isolation. Nor do they permit judges to hand-wave away government interests when they conduct rational basis review on the grounds that those interests are too nebulous, abstract, or unsupported by evidence.

The implications of the District Court's faulty logic are vast. It invites judicial second-guessing of democratically-enacted policy choices, irrespective of the constitutional interests at play. Because that rationale cannot be correct, and because Pennsylvania's Election Code imposes only reasonable, non-discriminatory requirements on its mail-in and absentee voters, the judgment below should be reversed.

**ARGUMENT**

## I.    THE *ANDERSON-BURDICK* FRAMEWORK DOES NOT APPLY

In *Mazo v. New Jersey Secretary of State*, this Court surveyed decades of precedent regarding constitutional challenges to state election laws. 54 F.4th 124 (3d Cir. 2022). In particular, it clarified how and when to apply the "sliding scale approach for election regulations adopted [by the United States Supreme Court] in *Anderson* … and *Burdick*." *Id.* at 136.

While *Anderson* and *Burdick* dealt with First Amendment associational claims,[7] this Court acknowledged that the framework applies beyond that limited context. *Id.* The framework "[c]ertainly … does *not* apply," however, "where the alleged right relates only to a statutory right, or there is no otherwise cognizable constitutional right at issue, or where the burden on a constitutional right is no more than *de minimis*." *Id.* at 138–39 (emphasis added, footnotes omitted).

Respectfully, the District Court selectively read *Mazo*. While some of its analysis mirrors that opinion, (*compare* Dist. Ct. ECF 438 at 8–11, *with Mazo*, 54 F.4th at 137–38), it did not meaningfully reckon with the possibility that *Anderson-Burdick* does not apply in the first place. *See Mazo*, 54 F.4th

---

[7] *See Burdick* 504 U.S. at 438 (rejecting voter's claim of a constitutional right to cast a protest vote for Donald Duck as a write-in candidate); *Anderson*, 460 U.S. at 790 (invalidating filing deadline that disadvantaged independent voters' and candidates' ability to participate in the political arena).

11

at 138–39. Consequently, the District Court skipped directly to a free-standing balancing inquiry into "whether restrictions or regulations related to voting rights are constitutionally valid." (Dist. Ct. ECF 438 at 9). This error proved fatal to its analysis.

### A.    Appellees' First Amendment Claim Must Fail Absent Speech or Associational Interests

A court conducting an *Anderson-Burdick* analysis must "first … consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate." *Anderson*, 460 U.S. at 789. Here, though Appellees "ground[ed] their claim in the First Amendment," the District Court emphatically rejected the notion that "handwriting a date on the outer ballot envelope is core political speech." (Dist. Ct. ECF 438 at 13). And it did not conclude that voters who fail to comply with the Election Code's instructions share a particular viewpoint, associate or wish to associate with one another, or share protected characteristics. Accordingly, it is unclear how the First Amendment can drive the analysis.

This Court's decision in *Biener v. Calio*, 361 F.3d 206 (3d Cir. 2004), is instructive. There, a non-indigent political candidate challenged the $3,000 filing fee necessary to participate in a primary for a House seat in Delaware. *Id.* at 209. This Court declined to apply *Anderson-Burdick*, finding that there were no "First

Amendment considerations … at issue" because the candidate had made "no allegations based on freedom of association." *Id.* at 214.

The same is true here. *Anderson-Burdick* does not permit a free-standing balancing evaluation of "constitutional validity" regardless of the interests at issue, simply because the subject matter is elections. That neither the ability to express oneself nor the ability to associate were implicated should have been the canary in the coal mine for the District Court. There is no functional equivalent in this case to the independent voters and candidates in *Anderson*; nor the protest voter in *Burdick*; nor the slogan-writing politicos in *Mazo*. Rather, there is only the untethered "right to have [one's] vote counted," *but see infra* I.B, irrespective of the neutral and *de minimis* nature of the regulation in question.

## B.    Under the Fourteenth Amendment, the Right to Vote Does Not Include the Right to Vote "in Any Manner"

It is axiomatic that "voting … requires some effort and compliance with some rules," *Brnovich v. Democratic National Committee*, 594 U.S. 647, 669 (2021); and that "[e]lection laws will invariably impose some burden upon individual voters." *Burdick*, 504 U.S. at 433. *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 198 (2008) (plurality) (discussing the "usual burdens of voting); *id.* at 209 (Scalia, J., concurring in judgment) (same). For this reason, though the right to vote is fundamental, "[i]t does not follow … that the right to vote *in any manner*" is absolute. *Burdick*, 504 U.S. at 433 (emphasis added) (citing U.S. CONST. art. I, § 4,

cl. 1).[8] Nor is there an independent right to have one's vote counted regardless of whether or not one complies with instructions promulgated by the legislature.

The District Court erred at this critical juncture. It held that enforcement of the Election Code "burdens the fundamental right to vote by disenfranchising some voters for defects in the envelope holding their ballots," because "the right to vote necessarily includes the right to have that vote counted." (Dist. Ct. ECF 438 at 12).

*First*, it is simply not accurate to conclude that enforcement of the Election Code's affects "*some* voters [with] defects in the envelope holding their ballots." (Dist. Ct. ECF at 12 (emphasis added)). Rather, it applies to *all* voters who fail to complete necessary steps. Any effort to define those non-compliant voters as a group would necessarily turn on pure conduct—not speech, association, or access. The same voters who forget to include a handwritten date on one occasion may remember next time around; that amorphous "group" will necessarily expand and contract from election to election.[9]

---

[8] The District Court acknowledged that "if some sort of order, rather than chaos, is to accompany the democratic process," it is "[c]ommon sense" that States must take an "active role in structuring elections. (Dist. Ct. ECF 438 at 9 (cleaned up) (quoting *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997)); *Wilmoth v. Sec'y of New Jersey*, 731 Fed. Appx. 97, 101 (3d Cir. 2018) (acknowledging states' broad power to regulate elections).

[9] (*Cf.* Dist. Ct. ECF 228 ¶ 12 (Amend. Compl.) ("Ms. Eakin is concerned that her ballot will be similarly rejected in future elections" if "she forgets to include a date on her mail ballot")).

*Second*, voting by mail or absentee ballot is a privilege granted by statute to all Pennsylvanians. *See McLinko v. Dep't of State*, 279 A.3d 539, 543 (Pa. 2022) ("[T]he General Assembly … enacted legislation that allows for universal mail-in voting.").[10] It has long been recognized that the federal Constitution does not *per se* protect the right to vote. *See Rodriguez v. Popular Democratic Party*, 457 U.S. 1, 9 (1982) ("[T]he Constitution does not confer the right of suffrage upon any one … [and] the right to vote, *per se*, is not a constitutionally protected right.") (quotations and citations omitted).[11] Rather, it protects only "the right to vote *as the legislature has prescribed*," *Bush v. Gore*, 531 U.S. 98, 104 (2000) (*per curiam*) (emphasis added), and the right "to have one's vote counted *on equal terms with others*." *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 476 (6th Cir. 2008) (emphasis added) (citing *Bush*, 531 U.S. at 104). That is, the federal Constitution guarantees an individual's ability to "participate [in the electoral process] *on an*

---

[10] Notably, the Pennsylvania Constitution guarantees that specific populations be allowed to vote by mail. But if the people's elected representatives "were to repeal [Act 77] tomorrow, the ordinary voter would have no constitutional claim to a no-excuse mail-in ballot" and judges would lack any authority "to compel the Legislature to extend such a forbearance beyond the protected classes of electors expressly identified [in the state constitution]." *McLinko*, 279 A.3d at 595 (Wecht, J., concurring) (discussing, *inter alia*, PA. CONST. art. VII, § 14).

[11] *See also* Joshua Douglas, *The Right to Vote Under State Constitutions*, 67 VAND. L. REV. 89, 93 (2014) ("[U]nlike virtually every state constitution, the U.S. Constitution does not actually confer the right to vote on anyone. Instead, the right to vote stems from … the Fourteenth Amendment's Equal Protection Clause and the negative mandates on who the government may not disenfranchise.").

*equal basis with other citizens* in the jurisdiction." *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972) (emphasis added).

Here, the District Court did not conclude that any voter lacked an *equal opportunity* to follow the instructions set by the legislature and cast a ballot without appearing to their polling place on Election Day. Nor could it have reached that conclusion; all voters plainly have the same opportunity to comply with the dating component.

Because voting by mail or absentee ballots is a statutory privilege, courts have been reticent to treat it as a constitutional imperative. *See Feldman v. Ariz. Sec'y of State's Off.*, 843 F.3d 366, 414 (9th Cir. 2016) (Bybee, J., dissenting) ("There is no constitutional or federal statutory right to vote by absentee ballot.") (citing *McDonald v. Bd. of Election Comm'rs of Chic.*, 394 U.S. 802, 807–08 (1969); *Crawford.*, 553 U.S. at 209 (Scalia, J., concurring in judgment) ("That the State accommodates some voters by permitting … the casting of absentee or provisional ballots, is an indulgence—not a constitutional imperative that falls short of what is required."); *Griffin v. Roupas*, 385 F.3d 1128, 1130 (7th Cir. 2004)). It is entirely unremarkable that noncompliance with the Election Code will ostensibly create two classes of voters (those who comply and those who do not), and lead to the invalidation of noncompliant ballots. It is "well-settled that the 'so-called technicalities of the Election Code' must be strictly enforced." *In re Scroggin*, 237

A.3d 1006, 1018 (Pa. 2020) (quoting *Appeal of Pierce*, 843 A.2d 1223, 1234 (Pa. 2004)).

Accordingly, not counting a voter's ballot by itself cannot be dispositive. If it were, there would be no reason to assess the "character and magnitude" of their asserted injury, nor to require a link to First and Fourteenth Amendment interests.

Again, the *Mazo* Court's guidance rings true. The Constitution's protections of the right to vote concern "the availability of political opportunity," *Anderson*, 460 U.S. at 793—not simply voting as an ethereal right, or the operation of non-discriminatory ballot-casting rules that are generally applicable. "[W]here the alleged right relates only to a statutory right," *Anderson-Burdick* has little to say. *Mazo*, 54 F.4th at 138–39.

## C. To the Extent the Declaration Requirement Could Be Construed to Burden the Right to Vote, That Burden is *De Minimis*

It is imperative to recognize (as the District Court failed to) that there is no independent date requirement. At issue is a *component* of a larger *declaration* requirement—voters must "fill out, *date* and sign" a pre-printed declaration. 25 P.S. §§ 3146.6(a); 3150.16(a) (emphasis added). As the Pennsylvania Supreme Court explained in *Ball*:

> Implicit in the Election Code's textual command … is the understanding that "date" refers to the day upon which an elector signs the declaration … [W]hen an instruction to "date" something appears in close quarters with other actions—here, filling out and signing the

> declaration—it is evident that the instruction refers to the day upon
> which those actions are completed[.]

*Ball*, 289 A.3d at 22. In other words, the handwritten date is a component to the

signature, a requirement that Appellees do not challenge. Providing a signature and

date—a jurat—is a familiar requirement in Pennsylvania statutes.[12]

Critically, then, the voter who signs but fails to date an outer envelope

completes only half of a necessary step to vote by mail. Both Appellees and the

District Court incorrectly focused on the *consequence* of noncompliance as the

relevant burden, as opposed to the burden of compliance in the first place.

This Court's guidance in *Mazo* refutes such an approach: "where the burden

on a constitutional right is no more than *de minimis*," *Anderson-Burdick* does not

apply. *Mazo*, 54 F.4th at 138–39. Construing "disenfranchisement" as the burden in

this context short-circuits the inquiry.

For example, in *Burdick*, Hawaii election laws barred write-in voting,

preventing at least one voter (the challenger) from casting any ballot for his preferred

candidate. *Burdick*, 504 U.S. at 432. Despite this total bar, the High Court

nevertheless described the burden on the voter as both "reasonable" and "light." *Id.*

at 441. Here, it strains credulity to call the burden associated with writing a date next

---

[12] *See, e.g.*, 57 Pa. C.S. § 316 (notarial acts); 23 Pa. C.S. § 5331 (parenting
plan); 73 P.S. § 201-7(j.1)(iii)(3)(ii) (emergency work authorization); 42 Pa. C.S. §
8316.2(b) (childhood sexual abuse settlement); 73 P.S. § 2186(c) (contract
cancellation); 42 P.S. § 6206 (unsworn declarations).

to one's freshly-signed signature anything other than *de minimis*, as even the District Court appeared to acknowledge. (Dist. Ct. ECF 438 at 16 ("the burden [*sic*] imposes only a minimal burden on Plaintiffs' rights"), 20 ("[E]ven the slightest burden … is too much")). The District Court's application of the *Anderson-Burdick* framework to this case requires reversal.

## II. EVEN IF THE *ANDERSON-BURDICK* FRAMEWORK APPLIED, THE DISTRICT COURT ERRED IN APPLYING THAT FRAMEWORK

Even assuming, *arguendo*, that the *Anderson-Burdick* framework applies, the District Court misunderstood both the scope of its inquiry and the nature of rational basis review. This Court must correct those errors and reverse.

### A. The District Court Improperly Analyzed "the Date Requirement" in Isolation

It bears emphasis that in *Burdick*, the United States Supreme Court evaluated whether Hawaii's election code *as a whole* burdened constitutional rights. *Burdick*, 504 U.S. at 441–42 ("Hawaii's prohibition on write-in voting, considered *as part of electoral scheme that provides constitutionally sufficient ballot access* …") (emphasis added). That is, courts have emphatically rejected the notion that this framework empowers judges to review every jot and tittle of a state's voting scheme in isolation. *See, e.g.*, *Luft v. Evers*, 963 F.3d 665, 671 (7th Cir. 2020); *Griffin*, 385 F.3d at 1130–32; *Lerman v. Bd. of Elections in City of New York*, 232 F.3d 135, 145 (2d Cir. 2000) (emphasizing "context of the state's overall scheme").

19

As discussed, Pennsylvania's Election Code does not contain a standalone "dating requirement." *See supra* I.C. Rather than evaluate the declaration requirement as a whole—as it is intended—the District Court allowed the scope of the federal *statutory* question to cross-pollinate its evaluation of the federal *constitutional* questions at issue. That is, while the District Court's *initial* understanding of the Materiality Provision allowed for the surgical dissection of election laws to determine if any "error or omission is not material in determining whether [an] individual is qualified … to vote," 52 U.S.C. § 10101(a)(2)(B),[13] a constitutional inquiry requires a more holistic view.

Indeed, the *Anderson-Burdick* framework contemplates an evaluation of "alternate means of access." *See, e.g.*, *Citizens for Legislative Choice v. Miller*, 144 F.3d 916, 921 (6th Cir. 1998); *Jones v. United States Postal Serv.*, 488 F. Supp. 3d 103, 124–25 (S.D.N.Y. 2020). This inquiry makes sense. *Burdick* was concerned with "access to the ballot" writ large and *Anderson* prioritized "the availability of political opportunity." *Burdick*, 504 U.S. at 436–37; *Anderson*, 460 U.S. at 793. Here, the District Court did not engage in any such analysis. *Cf. Luft*, 963 F.3d at 672 (applying *Anderson-Burdick* and reasoning that "Wisconsin has lots of rules that

---

[13] *But see NAACP*, 97 F.4th at 133 (discussing the scope of that provision).

make voting easier. […] These facts matter when assessing challenges to a handful of rules that make voting harder.").[14]

Assessing a state's election scheme in context is critical. It is by setting this vantage point that "*Burdick* forecloses … [the] substitution of judicial judgment for legislative judgment," on "a political question," such as "whether a rule is beneficial on balance." *Id.* at 671. The framework does not empower judges to "decide whether any given election law is necessary because, if not, it is by definition an excessive burden." *Id.* That erroneous vantage point speciously transforms policy disagreements into constitutional disputes, to be "resolved by the courts, rather than by legislators." *Id.*; *see also In re Canvass of Provisional Ballots in 2024 Primary Election*, 322 A.3d 900, 915 (Pa. 2024) (Wecht, J., concurring) ("Arguments about voting requirements and efforts to liberalize provisions of the Election Code should be directed to [the] political branches."). This Court should reject this judicial usurpation of the role states are entitled to play in structuring their elections.

---

[14] Also relevant when assessing Pennsylvania's scheme *in toto* is the fact that several county boards provide notice and cure procedures in the event that a voter makes a mistake in submitting their ballot. *Cf. Genser v. Butler Cnty. Bd. of Elections*, 325 A.3d 458, 475 n.25 (Pa. 2024) ("We have not spoken to whether or not the Election Code allows individual counties to utilize notice and cure procedures."), *petition for writ of certiorari pending at* No. 24–786 (filed January 21, 2025).

**B.    The District Court Wrongly Demanded Evidence to Justify Government Interests**

As the District Court acknowledged, "the rigorousness of [its] inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens [First and Fourteenth Amendment] rights." (Dist. Ct. ECF 438 at 14–15 (quoting *Burdick*, 504 U.S. at 434)). Assume, then, that it is irrelevant whether the relevant burden is *de minimis*, and that balancing is inevitable. *But see supra* I.A, I.C. Even then, the "minimally burdensome and nondiscriminatory" nature of Pennsylvania's regulation means that "a level of scrutiny 'closer to rational basis'" would apply. *Ohio Council 8 Am. Fed. of State v. Husted*, 814 F.3d 329, 335 (6th Cir. 2016) (citations omitted). Through that capacious lens, a state's interests need not be substantiated by evidence to be cognizable, nor can they be summarily dismissed because they are "nebulous" or unproven. The District Court nevertheless resolved the cross-motions for summary judgment on that basis. (Dist. Ct. ECF 438 at 20).

The District Court reasoned that it was "up to Defendants … to point to evidence that a governmental interest is furthered by the burden the date requirement imposes on the right to vote." (Dist. Ct. ECF 438 at 19). But under rational basis review, a legislature's "judgment 'is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data.'" *Parker v. Conway*, 581 F.3d 198, 202 (3d Cir. 2009) (quoting *FCC v. Beach*

*Commc'ns, Inc.*, 508 U.S. 307, 313–315 (1993)). That standard does not provide "license for courts to judge the wisdom, fairness, or logic of legislative choices." *Id.* (internal quotations omitted).

Contrary to this Court's instruction in *Parker*, the District Court concluded that rational basis arguments must be supported by evidence at summary judgment. (Dist. Ct. ECF 438 at 18 ("[Defendants] are left only with their nebulous contention … which of course is not evidence that could support summary judgment.")). That conclusion is clearly erroneous.[15] Appellees' steadfast insistence that the date component of the declaration requirement is a "meaningless technicality" and ultimately "inconsequential," (*see, e.g.*, 3d Cir. ECF 60 (Appellees' Opp. to Commonwealth Motion to Intervene) at 3–4, 14), is irrelevant and similarly ignores *Parker*.

Take, for example, the United States Supreme Court's holding in *Crawford*. There, Indiana required voters to present identification in order to vote at their polling stations, and justified that requirement by pointing to the risk of voter fraud. *Crawford*, 553 U.S. at 185–86 (plurality); *see also id.* at 209 (Scalia, J., concurring

---

[15] *Cf. National Ass'n for the Advancement of Multijurisdictional Practice v. Castille*, 799 F.3d 216, 222 (3d Cir. 2015) (applying *Parker* at summary judgment stage and finding that parties challenging rational basis of bar exam requirement had not met "their burden of 'negati[ng] every conceivable basis which might support [the rule], *whether or not the basis has a foundation in the record*.") (emphasis added) (citing *Mabey Bridge & Shore, Inc. v. Schoch*, 666 F.3d 862, 876 (3d Cir. 2012); *Heller v. Doe*, 509 U.S. 312, 320–21 (1993)).

in judgment) ("the State's interests … are sufficient to sustain that minimal burden"). Though the record contained "*no evidence* of any such fraud actually occurring in Indiana *at any time in history*," the High Court determined that Indiana's interest in orderly elections sufficiently justified its "nonsevere" and "nondiscriminatory" identification requirement. *Id.* at 194–96 (emphases added).

Another helpful example is *Luft*, in which Wisconsin college students asserted that there was no rational basis to support the legislature's choice to not accept expired student IDs as proof of identity. *Luft*, 963 F.3d at 677 (discussing Wis. Stat. § 5.02(6m)(f)). Writing for the Seventh Circuit, Judge Easterbrook explained that while there is "nothing wrong with a requirement that IDs be current," the problem was that "[t]he statute sets students apart" from other voters by requiring students to show "proof of current enrollment." *Id.* It was on these alternative grounds that the regulation lacked a rational basis and "*not*, as the district judge believed, because redundant requirements in statutes—such as current ID [and] proof of enrollment— are invariably irrational. Many a lawyer prefers a belt-and-suspenders approach." *Id.* (emphasis added).

The District Court reasoned in part from *Northeast Ohio Coalition for the Homeless v. Husted*, 837 F.3d 612 (6th Cir. 2016) (*Husted II*). (*See* Dist. Ct. ECF 438 at 12). But its reliance on that case is perplexing for two reasons. *First*, the Sixth Circuit had concluded just four years prior that a state requiring voters to print their

24

name, provide identification, and sign an affirmation represented only a "minimal, unspecified burden" that was "easily justif[ied]." *Northeast Ohio Coalition for the Homeless v. Husted*, 696 F.3d 580, 599–600 (6th Cir. 2012) (*Husted I*). And the Sixth Circuit rejected a lower court's "presumption … that the absence of legitimate state interests overcomes any difficulty 'quantifying the precise magnitude of the burden imposed.'" *Id.* at 599; (*cf.* Dist. Ct. ECF 438 at 10 ("No matter the test utilized, some sort of balancing is always required.")).

*Second*, *Husted II* granted only *partial* relief from a requirement that mail-in voters accurately complete birthdate and address fields for their ballots to be counted. *Husted II*, 837 F.3d at 631–32 (holding that state interests justified burden on provisional voters, but not absentee voters). With respect to provisional voters, the court reasoned that "the small burden of accurately completing two fields"—an action "wholly in [voters'] control"—was justified by a speculative interest. *Id.* at 632. For instance, a provisional voter's name and the last four digits of their Social Security number could conceivably generate "multiple hits" within the state's database, in which case "[b]irthdate and address information" would "narrow the plausible registered voters and assist in confirming an eligible voter's right to vote." *Id.* Rational basis review requires nothing more.

The premise of the District Court's conclusion is not, in fact, that the handwritten date requirement serves no conceivable purpose. Rather, it is that none

of the conceivable purposes offered below are sufficient, either because they are too abstract or because they have not—in the District Court's view—proven useful in practice in the six years since Act 77 became law. Each rejection of a stated interest warrants a brief response. *Cf. Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 216 (3d Cir. 2013) (instructing that courts may consider "any conceivable purpose" for government action and are "not limited to considering only the goal stated by the state actor").

**1.    The declaration requirement serves a governmental interest in detecting fraud.**

The parties spilled considerable ink below discussing an instance of voter fraud in Lancaster County in 2022. (*See generally* Dist. Ct. ECF 285–10, 320, 326). In that case, *Commonwealth v. Mihaliak*, CP-36-CR-0003315-2022 (Lanc. Cnty. CCP 2022), "the daughter of a deceased voter was charged with fraud after she allegedly completed, backdated, and returned her deceased mother's mail ballot." (Dist. Ct. ECF 438 at 16–17 (citations omitted). The District Court pointed to record evidence that "the fraudulent ballot was first detected by way of the SURE system and Department of Health records, not by review of the date on the return envelope." (*Id.*). It thus concluded that the date requirement did not advance the "purported interest" in guarding against fraud. (*Id.*).

But the District Court missed the point of *Mihaliak*. As the Republican Appellants explained below, determining whether a ballot is to be counted is not the

be-all, end-all of government interests—"the handwritten date was used not to detect a *ballot* submitted by an individual who had passed away in the intervening period, but to detect *fraud* by a third party." (Dist. Ct. ECF 326 at 2–6 (emphasis in original)). That is, the handwritten date of April 26—"which was 12 days after the decedent (who purportedly filled out the mail ballot) had passed away"—served more than one function. *Black Political Empowerment Project*, 2024 WL 4002321, at *15 n.33 (recounting factual circumstances underlying *Mihaliak*). It both (i) indicated—perhaps in a belt-and-suspenders way, *see Luft*, 963 F.3d at 677—that the decedent's ballot should not be counted, *and separately* (ii) supported the prosecution of the decedent's daughter, who submitted the fraudulent ballot, and ultimately pled guilty.

Whether the date requirement often detects fraud or represents the first line of defense against fraud is of no moment. The question is whether it *can* be used to detect or prove fraud. Accordingly, whether there has been a "single criminal case" or hundreds is not relevant. (Dist. Ct. ECF 438 at 16 (emphasis in original)); *cf. Crawford*, 553 U.S. at 194–96 ("*no evidence* of any such fraud actually occurring in Indiana *at any time in history*") (emphases added). *Mihaliak* demonstrates that the handwritten date can be evidence that an individual submitted a ballot that was not theirs to submit. Record evidence therefore supported recognizing the interest offered below by the Republican Appellants.

**2.    The declaration requirement serves a governmental interest in communicating solemnity.**

Multiple parties also submitted that the declaration requirement serves to "ensur[e] that voters contemplate their choices and reach considered decisions about their government and laws." (Dist. Ct. ECF 378 at 23; Dist. Ct. ECF 379 at 11). The District Court rejected this interest because it was "based solely on supposition." (Dist. Ct. ECF 438 at 18); *contra Parker*, 581 F.3d at 202 (a legislature's "judgment … may be based on rational speculation unsupported by evidence or empirical data.") (citation omitted).

The District Court's rejection begs the question: what evidence would be necessary to support the proposition that signing and dating official documents serves an interest in "solemnity"? Did the parties need to submit affidavits or expert testimony indicating that the average person understands a jurat to accompany a serious or solemn act? As already discussed, providing a signature and date is a requirement that frequently appears in Pennsylvania statutes. *See supra* p. 18, n.12. It is a familiar step which signals to voters that they are completing an official and final act, not unlike if they were entering into a contract or writing a bank check.

Again, the rational basis standard confirms what common sense suggests. Judges are not super-legislators, and they must be cognizant of the General Assembly's evaluation of governmental interests, including those interests that are abstract or unproven. *See Cabrera v. Att'y Gen. of U.S.*, 921 F.3d 401, 404 (3d Cir.

2019) (a plaintiff asserting no rational basis for government classification "must negate every conceivable justification for [it] in order to prove that the classification is wholly irrational"); *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 156 (3d Cir. 2018) (calling rational basis review a "very deferential standard"). The District Court erred in rejecting this state interest.

### 3.   The declaration requirement serves a governmental interest in ensuring the orderly administration of elections.

When this Court previously addressed whether a federal statute requires that noncompliant votes be counted, a secondary opinion noted that a handwritten date could prove useful if the SURE system were to "despite its name … [,] fail or freeze, or just run out of funding down the road." *See Migliori v. Cohen*, 36 F.4th 153, 165 (3d Cir. 2022) (Matey, J., concurring), *vacated sub nom. Ritter v. Migliori*, 143 S. Ct. 297 (2022). The District Court here disagreed, finding the assertion that a handwritten date could serve "as a useful backstop" in such circumstances to be "speculative" and unsupported by evidence. (Dist. Ct. ECF 438 at 18).

Again, the District Court's analysis is flawed. Suppose that emergent circumstances displace a county board of elections from its offices; and further, that this displacement coincides with an election. In light of the resultant disruption and confusion, the Commonwealth's judiciary wields its equitable powers to modify the standard for timely receipt, or allow the county board more time to count, or both. *See, e.g.*, *Pennsylvania Democratic Party v. Boockvar*, 238 A.3d 345, 370–72 (Pa.

2020) (discussing equitable power of courts when emergencies interfere with an election) (citations omitted). The county board may not have access to SURE system technology or its stamps[16] or other government records to determine which ballots were timely received and must be counted. In that hypothetical, a handwritten date would assist the county board in performing its task the old-fashioned way.

Some might bristle at the suggestion that the foregoing hypothetical accurately reflects how such a scenario would play out, or insist that a much more elaborate hypothetical is necessary. But that is precisely the point. It is well within the General Assembly's prerogative to factor into its enactments the potential fallibility of "Plan A," or even "Plan B" when ensuring the orderly administration of all elections in *any* circumstance. Legislatures need not assume that elections will be conducted without incident, or the election infrastructure contemplated by other statutory measures will always be sufficient to avoid the same. *See Luft*, 963 F.3d at 677 ("Many a lawyer prefers a belt-and-suspenders approach."). In short, the people's elected representatives may—and do—speculate.

---

[16] In the words of one of the deponents below, "*most* [c]ounties have some date stamp mechanism" in place to "segregate ballots that were received by the statutory deadline" from those that were not—but some counties "use slightly different mechanisms." (Dist. Ct. ECF 290 at 29 (Dep. of Jonathan M. Marks) (emphasis added)). Acknowledgment of this variability further suggests that the General Assembly is justified in providing its own baseline or failsafe, as opposed to relying upon counties' practices as they currently exist.

\*  \*  \*

Rational basis review "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *FCC*, 508 U.S. at 313. The Republican Appellants proffered at least three governmental interests served by the declaration requirement. They were not required to prove the wisdom or logic of those interests in court. The District Court erred in substituting is own judgment for that of Pennsylvania's legislature.

## CONCLUSION

For the foregoing reasons, this Court should reverse.

Respectfully submitted,

DAVID W. SUNDAY, JR.
Attorney General

By:    /s/ Brett Graham

Office of Attorney General
1600 Arch Street, Suite 300
Philadelphia, PA 19103
Phone: (267) 530-0886
bgraham@attorneygeneral.gov

Date: May 6, 2025

BRETT GRAHAM
*Deputy Attorney General*
Attorney ID: 330556

SEAN A. KIRKPATRICK
*Chief Deputy Attorney General*
*Chief, Appellate Litigation Section*

## CERTIFICATE OF COUNSEL

I, Brett Graham, Deputy Attorney General, hereby certify as follows:

1. That I am a member of the bar of this Court.

2. That the text of the electronic version of this brief is identical to the text of the paper copies.

3. That a virus detection program was run on the file and no virus was detected.

4. That this brief contains 7,585 words within the meaning of Fed. R. App. Proc. 32(a)(7)(B). In making this certificate, I have relied on the word count of the word-processing system used to prepare the brief.

/s/ Brett Graham
BRETT GRAHAM
Deputy Attorney General

# CERTIFICATE OF SERVICE

I, Brett Graham, Deputy Attorney General, do hereby certify that on this day, a true and correct copy of the foregoing brief has been filed electronically and is available on the Court's Electronic Case Filing System.

/s/ Brett Graham
BRETT GRAHAM
Deputy Attorney General

Date: May 6, 2025