IN THE

# United States Court of Appeals

## FOR THE THIRD CIRCUIT

---

No. 25-1644

---

BETTE EAKIN, et al.

v.

ADAMS COUNTY BOARD OF ELECTIONS, et al.

Appeal of: REPUBLICAN NATIONAL COMMITTEE NATIONAL
REPUBLICAN CONGRESSIONAL COMMITTEE, and REPUBLICAN PARTY
OF PENNSYLVANIA

---

Appeal from the United States District Court for the Western District of
Pennsylvania

No. 1-22-cv-00340
Honorable Susan Paradise Baxter

---

AMICUS BRIEF OF REPUBLICAN LEADER OF THE PENNSYLVANIA
HOUSE OF REPRESENTATIVES, JESSE TOPPER, PRESIDENT PRO TEMPORE
OF THE PENNSYLVANIA SENATE, KIM WARD, AND MAJORITY LEADER
OF THE PENNSYLVANIA SENATE, JOE PITTMAN
IN SUPPORT OF APPELLANTS URGING REVERSAL

---

May 12, 2025

Zachary M. Wallen
CHALMERS, ADAMS,
BACKER & KAUFMAN, LLC
301 South Hills Village Drive
Suite LL200-420
Pittsburgh, PA 15241
(412) 200-0842
zwallen@chalmersadams.com

Counsel for *Amici Curiae*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................I

INTEREST OF AMICI CURIAE ..............................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT .........................2

ARGUMENT ...........................................................................................3

I.     THE STATUTES IN QUESTION WERE PROPERLY ENACTED PURSUANT TO THE GENERAL ASSEMBLY'S CONSTITUTIONAL AUTHORITY TO LEGISLATE FOR THE PROCEDURES THAT GOVERN PENNSYLVANIA'S ELECTIONS ................................................3

     A. THE LEGISLATIVE HISTORY OF THE STATUTES IN QUESTION DEMONSTRATES A CLEAR COMMITMENT BY THE GENERAL ASSEMBLY TO FREE, EQUAL, AND FAIR ELECTIONS .................................................................................4

     B. THE REQUIREMENT TO DATE AND SIGN ABSENTEE AND MAIL-IN BALLOTS SERVES A CLEAR PURPOSE AS A PART OF THE GENERAL ASSEMBLY'S COMPREHENSIVE ELECTION CODE .............................................................................................6

     C. THE COURT BELOW SETS AN UNWORKABLE STANDARD FOR DEMONSTRATING STATE INTERESTS ........................................10

II.    THE COURT BELOW ERRED BY APPLYING *ANDERSON-BURDICK* TO AN ADMITTEDLY "MINIMAL" STATUTORY ELECTION ADMINISTRATION RULE RELATED TO VOTER NEGLIGENCE ...........................................................................................13

III.   TO THE EXTENT THE SUBJECT STATUTE IS SUBJECT TO *ANDERSON-BURDICK*, THE STATE HAS WEIGHTY INTERESTS IGNORED BY THE COURT BELOW ..............................................................17

CONCLUSION................................................................................................20

COMBINED CERTIFICATIONS

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) ................................................ *passim*

*Biener v. Calio*, 361 F.3d 206 (3d. Cir. 2004) ........................................................16

*Burdick v. Takushi*, 504 U.S. 428 (1992)........................................................... *passim*

*Burson v. Freeman*, 504 U.S. 191 (1992) .............................................................7, 8

*Common Cause/New York v. Brehm*, 432 F.Supp. 3d 285 (S.D.N.Y. 2020) ..........16

*Commonwealth v. Mihaliak*, Docket Nos. MJ-02202-CR-000126-2022;
    CP-36-CR-0003315-2022 ..............................................................................7, 8

*Daniels v. Sch. Dist. of Phila*, 776 F.3d 181 (3d. Cir. 2015)...................................20

*Donald J. Trump for President, Inc. v. Boockvar*,
    493 F. Supp. 3d 331 (W.D. Pa. 2020).................................................... 9, 18, 19, 2

*Donald J. Trump for President, Inc. v. Boockvar*,
    502 F. Supp. 3d 899 (M.D. Pa. 2020)................................................................18

*Eakin v. Adams Cty. Bd. of Elections*, No. 1:22-CV-00340,
    2025 U.S. Dist. LEXIS 60027 (W.D. Pa. Mar. 31, 2025) .......................... *passim*

*Genser v. Butler Cty. Bd. of Elections*, 325 A.3d 458 (Pa. 2024),
    *petition for cert. filed* (No. 24-786) ....................................................................16

*In re 2,349 Ballots in 2020 General Election*,
    241 A.3d 694  (Pa. Commw. Ct. 2020). ..........................................................7, 19

*In re Canvass of Absentee & Mail-in Ballots of Nov. 3, 2020*
    *General Election,* 241 A.3d 591 (Pa. 2020). ....................................... 6, 7, 18, 19

*Marks v. Stinson*, 19 F.3d 873 (3d. Cir. 1994)..........................................................8

*Mazo v. N.J. Sec'y of State.*, 54 F.4th 124 (3d. Cir. 2022)......................... 11, 14, 17

*McDonald v. Bd. of Election Comm'rs*, 394 U.S. 802 (1969) ......................... 14, 15

*Migliori v. Cohen*, 36 F.4th 153 (3d. Cir. 2022)........................................9

*Migliori v. Lehigh Cty. Bd. of Elections*, No. 5:22-cv-00397,
  2022 U.S. Dist. LEXIS 46352 (E.D. Pa. Mar. 16, 2022) .......................9

*Munro v. Socialist Workers Party*, 479 U.S. 189 (1986)................................. 11, 13

*Ohio Council 8 Am. Fed'n of State v. Husted*,
  814 F.3d 329 (6th Cir. 2016) ...............................................18

*Pa. State Conference of the NAACP v. Schmidt*,
  97 F.4th 120 (3d. Cir. 2024) ..........................................3, 15

*Price v. N.Y. State Bd. of Elections*, 540 F.3d 101 (2d. Cir. 2008) ........................11

*Purcell v. Gonzalez*, 549 U.S. 1 (2006) ...................................................8

*Reynolds v. Sims*, 377 U.S. 533 (1964).....................................................8

*Ritter v. Lehigh Cty. Bd. of Elections*, No. 1322 C.D. 2021,
  2022 Pa. Commw. Unpub. LEXIS 1 (Pa. Commw. Ct. Jan. 3, 2022) .............7, 19

*Ritter v. Migliori*, 142 S. Ct. 1824 (2022)..................................................... 15, 16

*Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*,
  484 U.S. 365 (1988)...........................................................3

*Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997)................. 11, 12, 13

*Weber v. Shelley,* 347 F.3d 1101 (9th Cir. 2003)................................... 9, 10, 19, 21

*Whiteland Woods L.P. v. Twp. of W. Whiteland*,
  193 F.3d 177 (3d. Cir. 1999) ...............................................20

**Constitutional and Statutory Authorities**
U.S. Constitution Art. I, Section 4 ..................................................... 1, 3

25 P.S. § 3031.12 .................................................................6, 15

25 P.S. § 3146.1 .......................................................... 5, 6, 15

25 P.S. § 3146.6 ................................................................5, 6

25 P.S. § 3150.16 ....................................................................6

71 P.S. § 732-204 ..................................................................12

**Other Authorities**

Act No. 37, Session of 1963, Pub. L. No. 707 § 22................................5, 6

Fed. R. Civ. P. 56(a)..............................................................20

# INTEREST OF AMICI CURIAE[1]

Jesse Topper, Republican Leader of the Pennsylvania House of Representatives; Kim Ward, President Pro Tempore of the Pennsylvania Senate; and Joe Pittman, Majority Leader of the Pennsylvania Senate, bring this brief as *Amici Curiae* in support of their authority as leaders of a state legislative body under the U.S. Constitution. The Pennsylvania Senate and the Pennsylvania House of Representatives together comprise the General Assembly of the Commonwealth of Pennsylvania (the "General Assembly"), which, as the state legislature of Pennsylvania, is given authority to prescribe the "Times, Places, and Manner of holding elections" by Article I, § 4, cl. 1 of the U.S. Constitution.

*Amici* present the following arguments in support of reversing the judgment of the court below and respectfully request they be heard in support of the General Assembly's authority to enact election regulations pursuant to the U.S. Constitution's plain text. Because the issues raised in this action directly pertain to the General Assembly's power under the U.S. Constitution, *Amici* have a significant interest in this case.

---

[1] No party's counsel authored this brief in whole or in part, and no one other than *Amici* and their counsel contributed money to fund the brief's preparation or submission.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Both the Republican Appellants and the Commonwealth of Pennsylvania convincingly argue in their principal briefs that reversal of the District Court's decision is appropriate here. As conceded by the District Court, the statutory language in question is neither discriminatory nor even particularly burdensome to Pennsylvania's voters. Instead, the court below simply rejects the litany of proffered state interests behind the challenged provision as unwise policy, and therefore, summarily deems the provision unconstitutional.

But, of course, the power to decide what constitutes appropriate and necessary election administration procedures falls squarely to Pennsylvania's General Assembly, not to the courts. The Elections Clause of Article I, § IV of the U.S. Constitution delegates to state legislatures in the first instance, and Congress in the second, the authority to enact regulations for federal elections. Pursuant to these constitutional powers, the General Assembly has adopted a *comprehensive* election framework to govern the Commonwealth's elections.

Here, pursuant to the grant of authority under the Elections Clause, and as an interconnected piece of the Commonwealth's comprehensive Election Code, the General Assembly unambiguously mandated that mail-in ballots' envelopes must bear the date on which the voter signed the voter declaration. While the court below may believe the layers of safeguards built into Pennsylvania's comprehensive

Election Code are too thorough—with too many layers of safeguards to prevent fraud and ensure the orderly administration of elections—it is not the job of the judicial branch to act as a "super legislature" and make pure policy judgments.

As such, this Court should reverse the court below.

## ARGUMENT

### I.  The Statutes in Question Were Properly Enacted Pursuant to the General Assembly's Constitutional Authority to Legislate for the Procedures that Govern Pennsylvania's Elections

Likely because Pennsylvania's mail-in ballot declaration has been so frequently litigated over the past few years, the court below summarily jumped into a consideration of the "dating" requirement in isolation, "[b]ut the words of a statute are not read in isolation; statutory construction is a 'holistic endeavor.'" *Pa. State Conference of NAACP v. Schmidt*, 97 F.4th 120, 132 (3d Cir. 2024) (*quoting United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988)).

Indeed the requirement to date an absentee or mail-in ballot is only one part of the broader declaration completed by such voters, and even more broadly, that declaration is one of many overlapping safeguards within Pennsylvania's comprehensive Election Code implemented by the General Assembly pursuant to its constitutional powers under the Elections Clause of Article I, § IV of the U.S. Constitution.

In weighing the present case, *Amici* urge this Court to give greater context to those legislative choices through the analysis and recognition of the broader comprehensive and bipartisan framework that included this policy choice. *See Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983) ("To achieve these necessary objectives, States have enacted comprehensive and sometimes complex election codes. Each provision of these schemes, whether it governs the registration and qualifications of voters, the selection and eligibility of candidates, or the voting process itself, inevitably affects -- at least to some degree -- the individual's right to vote and his right to associate with others for political ends. Nevertheless, the State's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions.").

As discussed below, while this particular requirement has been in place for decades in the context of excused absentee voting, it gained greater attention when, in 2019, Pennsylvania's political branches, through bipartisan legislation, greatly *expanded* the ability of Pennsylvania's voters to vote by mail. That expansion, however, was safeguarded by significant protection mechanisms designed to reduce the possibility of voter fraud, and to ensure the orderly administration of elections.

**A. The Legislative History of the Statutes in Question Demonstrates a Clear Commitment by the General Assembly to Free, Equal, and Fair Elections**

The requirement in question has a long history as a part of the Commonwealth's Election Code. While originally absentee voting was limited to military voters, absentee voting was extended to the general public in 1963. *See* Act No. 37, Session of 1963, Pub. L. No. 707, § 22 (amending Section 1306 of the Election Code (25 P.S. § 3146.6) to apply beyond military voters). Even then, Pennsylvania law only allowed absentee voting by those with a statutorily defined excuse to do so, such as physical disability or absence from their municipality on Election Day. *See* 25 P.S. § 3146.1. For someone to vote absentee, the voter would have had to provide a permissible reason to do so, and the voter would have been provided with an absentee ballot that would have had to be returned by the voter no later than 5:00 p.m. on the Friday before the election. *Id*.

Since that 1963 enactment, the procedure for marking an absentee ballot has remained constant. A Pennsylvania absentee voter, after marking his or her ballot, shall:

> then fold the ballot, enclose and securely seal the same in the envelope on which is printed, stamped or endorsed 'Official Election Ballot.' This envelope shall then be placed in the second one, on which is printed the form of declaration of the elector, and the address of the elector's county board of election and the local election district of the elector. **The elector *shall* then fill out, date and sign the declaration printed on such envelope**. Such envelope shall then be securely sealed and the elector shall send same by mail, postage prepaid, except where franked, or deliver it in person to said county board of election.

25 P.S. § 3146.6(a)(emphasis added); *see also* Act No. 37, Session of 1963, Pub. L. No. 707, § 22 (amending Section 1306 of the Election Code (25 P.S. § 3146.6) to apply beyond military voters) ("The elector shall then fill out, date[,] and sign the declaration printed on such envelope.").

In 2019, when the General Assembly expanded the ability to vote by mail by creating a new category of "no excuse" mail-in voting through Act 77, that identical procedure of filling out, dating, and signing the envelope was applied to mail-in voters. *See* 25 P.S. § 3150.16(a).

Moreover, the traditional voting options have always remained available – voters may still choose to request an absentee ballot if they have a statutorily permitted reason for doing so, or vote in-person on Election Day. *See* 25 P.S. § 3146.1; 25 P.S. § 3031.12.

### B. The Requirement to Date and Sign Absentee and Mail-In Ballots Serves a Clear Purpose as a Part of the General Assembly's Comprehensive Election Code

The requirement that electors date and sign their absentee or mail-in ballot return envelope serves a variety of important election administration purposes. "The date on the ballot envelope provides proof of when the 'elector actually executed the ballot in full, ensuring their desire to cast it in lieu of appearing in person at a polling place. The presence of the date also establishes a point in time against which to measure the elector's eligibility to cast the ballot[.]' The date also ensures the elector

completed the ballot within the proper time frame and prevents the tabulation of potentially fraudulent back-dated votes." *In re Canvass of Absentee and Mail-in Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d at 1079 (Dougherty, J., concurring and dissenting) (*quoting In re 2,349 Ballots in the 2020 Gen. Election*, 241 A.3d 694 (Pa. Commw. Ct. 2020) (memorandum); *Ritter v. Lehigh Cty. Bd. of Elections*, No. 1322 C.D. 2021, 2022 Pa. Commw. Unpub. LEXIS 1, at *10-11 (Pa. Commw. Ct. Jan. 3, 2022) (same).

A concrete example of the application of this requirement comes from a recent Lancaster County election fraud case concerning a mail-in ballot cast 12 days after a voter's death. There the date supplied on the ballot declaration was the only piece of evidence of fraud on the face of the ballot, and in conjunction with the Commonwealth's SURE system, the date on the ballot declaration helped to detect fraud. *See Commonwealth v. Mihaliak*, Docket Nos. MJ-02202-CR-000126-2022; CP-36-CR-0003315-2022.

The court below minimalizes *Mihaliak* due to both its scope (one case of voter fraud) and that it was only a part of the evidence used to detect it. But courts have "recognized that a State has a compelling interest in ensuring that an individual's right to vote is not undermined by fraud in the election process." *Burson v. Freeman*, 504 U.S. 191, 199 (1992). And whether it is an example of one fraudulent vote, like

in *Mihaliak*, or many,[2] "[v]oter fraud drives honest citizens out of the democratic process and breeds distrust of our government. Voters who fear their legitimate votes will be outweighed by fraudulent ones will feel disenfranchised. '[T]he right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise.'" *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (*per curiam*) (*quoting Reynolds v. Sims*, 377 U.S. 533, 555 (1964)).

Moreover, that the dated declaration was part of the evidence of the fraud (in conjunction with the SURE System and other extrinsic evidence concerning the death of the voter), rather than the *sole* evidence in *Mihaliak*, does not make it less important from a state interest perspective. Given the state's "compelling interest in ensuring that an individual's right to vote is not undermined by fraud in the election process," the state would obviously want to construct a statutory framework, as here, that makes the fraud clear-cut, rather than having to rely on just a single piece of evidence. *Burson*, 504 U.S. at 199.

In 2022, the District Court for the Eastern District of Pennsylvania, in considering the exact claim made by the Plaintiffs here, similarly concluded that

---

[2] *See*, *e.g.*, *Marks v. Stinson*, 19 F.3d 873, 887 (3d Cir. 1994) (internal citations omitted) (discussing "massive absentee ballot fraud, deception, intimidation, harassment and forgery, and that many of the absentee votes were tainted" in Pennsylvania State Senate election).

these statutory provisions serve "an important public interest in the integrity of an election process that ensures fair, efficient, and fraud-free elections is served by compliance with the statute mandating the handwritten date requirement." *Migliori v. Lehigh Cty. Bd. of Elections*, No. 5:22-cv-00397, 2022 U.S. Dist. LEXIS 46352, at *38-39 (E.D. Pa. Mar. 16, 2022).[3] As Judge Leeson further observed:

> An elector's compliance with the signature and date requirement is an important guard against fraud. Where an elector fully complies with the instructions on the outer envelope, the electoral authorities conducting the election can be assured of the date on which the ballot was executed. Where, however, the outer envelope remains undated, the possibility for fraud is heightened, as individuals who come in contact with that outer envelope may, post hoc, fill in a date that is not representative of the date on which the ballot was executed.

*Id*. at *38.

As the District Court for the Western District of Pennsylvania previously concluded in another case, "the Pennsylvania legislature 'weigh[ed] the pros and cons,' and adopted a broader system of 'no excuse' mail-in voting as part of the Commonwealth's Election Code." *Donald J. Trump for President, Inc. v. Boockvar*, 493 F. Supp. 3d 331, 395 (W.D. Pa. 2020) (*citing Weber v. Shelley*, 347 F.3d 1101, 1107 (9th Cir. 2003)). "And the key point is that the legislature made that judgment

---

[3] Importantly, while this District Court decision was later overruled on other grounds, this part of the decision (holding that the dating requirement did not violate the First or Fourteenth Amendments) was not appealed to this Court. *See Migliori v. Cohen*, No. 22-1499, Appellant's Brief (ECF # 32) (filed March 29, 2022). As such, this District Court decision should be considered here as persuasive authority.

in the context of erecting a broader election scheme that authorizes other forms of voting and has many . . . safeguards in place to catch or deter fraud and other illegal voting practices." *Id*. at 396. "In this larger context, the Court cannot say that the balance Pennsylvania struck across the Election Code was unreasonable, illegitimate, or otherwise not 'sufficiently weighty to justify . . .'" *Id*.

Here, the court below loses sight of that "larger context" and instead myopically fixates on one word ("date"), rather than to consider the provision's contextual role within "the balance Pennsylvania struck across the Election Code. . ." *Id.* Considering that broader context and the General Assembly's policy goals, and especially given the General Assembly's constitutional power to prescribe the time, place, and manner of the Commonwealth's elections, the clear legislative mandate of what is required of the elector, and the election-administration purposes of the statute, the statute in question is plainly an important part of Pennsylvania's Election Code.

### C. The Court Below Sets an Unworkable Standard for Demonstrating State Interests

Importantly, the District Court's analysis was based on an unworkable standard whereby the Intervenor-Appellants and the county boards of elections were expected to prove—before trial and *with* evidence—the General Assembly's legislative purpose behind the subject statute. This heightened level of elaborate proof is an incredibly overbroad reading of the parties' obligations. It is also

inconsistent with precedent of this Court and that of the United States Supreme Court, and this decision must be reversed here.

As this Court has advised, "when assessing the weight of these [state] interests, our review is 'quite deferential,' *Price v. N.Y. State Bd. of Elections*, 540 F.3d 101, 109 (2d Cir. 2008), and we will not require 'elaborate, empirical verification of the weightiness of the State's asserted justifications,' [*Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 364 (1997)]." *Mazo v. N.J. Sec'y of State*, 54 F.4th 124, 153 (3d Cir. 2022). Indeed, the United States Supreme Court has long been wary of "endless court battles over the sufficiency of the 'evidence' marshaled by a State to prove the predicate. Such a requirement would necessitate that a State's political system sustain some level of damage before the legislature could take corrective action." *Munro v. Socialist Workers Party*, 479 U.S. 189, 195 (1986).

Here, in the proceedings below, various defendants proffered three separate state interests for the declaration: "fraud detection, solemnity, and voter confidence." App. 27. Short of arguing that the reasons were not proffered in good faith, that should be the end of the analysis as to the existence of the state interest—as opposed to the District Court's further demand for "elaborate empirical verification of the weightiness of the State's asserted justifications." *Timmons* 520 U.S. at 364.

And since "[s]tates certainly have an interest in protecting the integrity, fairness, and efficiency of their ballots and election processes as means for electing

public officials", the defendants more than carried their burden here. *Timmons*, 520 U.S. at 353.

Beyond the precedent that the court below ignored, requiring empirical evidence to document the purpose of every word or phrase in a statute is completely unworkable. First, as here, the legislature is rarely a party to constitutional challenges.[4] That another party would lack the information to write a treatise in support, or provide significant factual evidence, of underlying legislative intent is unsurprising, and would be the case with most constitutional challenges. To have that as a requirement would permit plaintiffs to cherry-pick underfunded defendants for constitutional challenges, or place undue demands on legislatures to provide express and extensive legislative history for every single word and phrase in a statute.

As such, this Court should examine these numerous state interests behind the subject statute, without demanding "empirical verification of the weightiness of the

_____

[4] A large problem in the proceedings below was the refusal by the prior Pennsylvania Attorney General to intervene and defend this statutory provision, as required by Pennsylvania law, and as expressly requested by the District Court. *See* 71 P.S. § 732-204(a)(3) ("It shall be the duty of the Attorney General to uphold and defend the constitutionality of all statutes so as to prevent their suspension or abrogation in the absence of a controlling decision by a court of competent jurisdiction."). While *Amici* are appreciative that the Commonwealth has now intervened in support of the democratic process, this statute's fate should not hinge on the former Attorney General's non-compliance; something that apparently was persuasive to the court below. *See* App. 27-28, fn. 9.

State's asserted justifications." *Timmons* 520 U.S. at 364; *see also Munro*, 479 U.S. at 195-96 ("Legislatures, we think, should be permitted to respond to potential deficiencies in the electoral process with foresight rather than reactively, provided that the response is reasonable and does not significantly impinge on constitutionally protected rights.").

## II. The District Court Erred by Applying *Anderson-Burdick* to an Admittedly "Minimal" Statutory Election Administration Rule Related to Voter Negligence

Here, even the District Court readily concedes that the dating requirement in the declaration is a "minimal burden" on Pennsylvania voters. App.22; 23. Indeed, far from being a "burden" or having a "real and appreciable impact on voters' rights", writing the date on the ballot envelope as part of the voter declaration is one of the easiest steps in the entire voting process—significantly easier than finding a mailbox at which to deposit a ballot and little more burdensome than licking (or peeling and sticking) the flap of the completed envelope. Writing the date remains a minor procedural step, and one in which Pennsylvanians are asked to do any time they sign a contract, write a check, fill out a form, pick their child up early from school or in countless other everyday situations.

While certainly federal courts have used *Anderson-Burdick* to analyze a wide variety of "association claims . . . [and] challenges to election laws that 'have the effect of channeling expressive activity at the polls'", this Court has advised that

*Anderson-Burdick* is not always the appropriate framework simply because a claim is made in the election sphere. *Mazo*, 54 F.4th at 138 (*quoting Burdick v. Takushi*, 504 U.S. 428, 438 (1992). Indeed, this Court specifically noted that *Anderson-Burdick* analysis "does not apply where the alleged right relates only to a statutory right or there is otherwise no cognizable constitutional right at issue or where the burden on a constitutional right is no more than *de minimis*." *Id*. at 138-39. Here, both exceptions are implicated.

First, the option to vote by mail is a statutory privilege rather than a constitutional right. *See McDonald v. Bd. of Election Comm'rs*, 394 U.S. 802, 807-08 (1969) ("there is nothing in the record to indicate that the Illinois statutory scheme [concerning absentee ballots] has an impact on appellants' ability to exercise the fundamental right to vote. It is thus not the right to vote that is at stake here but a claimed right to receive absentee ballots. Despite appellants' claim to the contrary, the absentee statutes, which are designed to make voting more available to some groups who cannot easily get to the polls, do not themselves deny appellants the exercise of the franchise . . . Faced as we are with a constitutional question, we cannot lightly assume, with nothing in the record to support such an assumption, that Illinois has in fact precluded appellants from voting.").

And here, as in *McDonald*, the General Assembly merely *extended* the methods of voting available to Pennsylvanians. The traditional voting options have

always remained available – voters may still choose to request an absentee ballot if they have a statutorily permitted reason for doing so, or vote in-person on Election Day. *See* 25 P.S. § 3146.1; 25 P.S. § 3031.12. As such, nothing in the subject requirement affects the *right* to vote, given that those alternative voting mechanisms remain available.

This Court has acknowledged that the dating requirement is a compliance rule rather than something that denies the right to vote. As this Court held in *NAACP*, "a voter who fails to abide by state rules prescribing how to make a vote effective is not 'den[ied] the right . . . to vote' when his ballot is not counted." *NAACP*, 97 F.4th at 133. Moreover, "we know no authority that the 'right to vote' encompasses the right to have a ballot counted that is defective under state law." *Id*.

"A registered voter who does not follow the rules may be unable to cast a vote for any number of reasons. A voter may go to the polling place on the wrong day or after the polls have closed. A voter may go to the wrong polling place and may not have time to reach the right place before it is too late. A voter who casts a mail-in ballot may send it to the wrong address. A State's refusal to count the votes of these voters does not constitute a denial of 'the right to vote.' Even the most permissive voting rules must contain some requirements, and the failure to follow those rules constitutes the forfeiture of the right to vote, not the denial of that right." *Ritter v. Migliori*, 142 S. Ct. 1824, 1825 (2022) (Alito, J., dissenting).

As such, it is improper to use *Anderson-Burdick* to evaluate the declaration, when it is the voter's own negligence that results in "the forfeiture of the right to vote" pursuant to a statutory rules—especially where alternative voting mechanisms remain available. This is even more true now that the Supreme Court of Pennsylvania has ruled that voters, such as Ms. Eakin, who fail to complete the declaration now have the right under Pennsylvania law to cure that mistake through casting a provisional ballot. *See Genser v. Butler Cty. Bd. of Elections*, 325 A.3d 458 (Pa. 2024), *petition for cert. filed*, (No. 24-786).

Instead of *Anderson-Burdick* analysis, the District Court should have considered the Plaintiffs' claims "under a rational basis test." *Biener v. Calio*, 361 F.3d 206, 215 (3d Cir. 2004) ("Biener also cannot establish an infringement on the fundamental right to vote . . . As the [election] filing fee does not infringe upon a fundamental right, nor is Biener in a suspect class, we consider the claims under a rational basis test.") (citation omitted); *see also Common Cause/New York v. Brehm*, 432 F. Supp. 3d 285, 310 (S.D.N.Y. 2020) ("Under this framework, election laws that impose no burden on the right to vote are subject to rational-basis review."). Even should this Court find that the right to vote is somehow implicated, it should still apply rational basis review rather than *Anderson-Burdick*. *See Mazo*, 54 F.4th at 138-39 (noting that *Anderson-Burdick* review "does not apply where . . . the burden on a constitutional right is no more than *de minimis*.").

As such, this Court should reverse the decision of the court below.

## III. To the Extent the Subject Statute is Subject to *Anderson-Burdick*, the State Has Weighty Interests Ignored by the Court Below

"The *Anderson-Burdick* test requires the reviewing court to (1) determine the 'character and magnitude' of the burden that the challenged law imposes on constitutional rights, and (2) apply the level of scrutiny corresponding to that burden." *Mazo*, 54 F.4th 124, 137 (3d Cir. 2022) (*quoting Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789)).

In considering such a claim, pursuant to the *Anderson-Burdick* analysis, this Court must:

> first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

*Anderson*, 460 U.S. at 789.

Here, the court below correctly concedes that the burden under the statute is "minimal." Therefore, such 'minimally burdensome and nondiscriminatory' regulations are subject to 'a level of scrutiny 'closer to rational basis.''" *Donald J. Trump for President, Inc. v. Boockvar*, 502 F. Supp. 3d, 899, 919 (M.D. Pa. 2020)

(*quoting Donald J. Trump for President, Inc. v. Boockvar*, 493 F. Supp. 3d 331, 384 (W.D. Pa. 2020)) (*quoting Ohio Council 8 Am. Fed'n of State v. Husted*, 814 F.3d 329, 335 (6th Cir. 2016))).

"[W]hen a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 788).

On the other side of the *Anderson-Burdick* balancing equation, the date and sign requirement "operate[s] as part of a single, complex organism balancing many competing interests, all of which are 'important' for purposes of the *Anderson-Burdick* analysis." *Donald J. Trump for President, Inc.*, 493 F. Supp. 3d at 393. This is where the court below gets off track by analyzing the word "date" in isolation, rather than as a part of that wider balancing.

As discussed above, numerous Pennsylvania courts have analyzed this same issue and concluded that "[t]he date on the ballot envelope provides proof of when the 'elector actually executed the ballot in full, ensuring their desire to cast it in lieu of appearing in person at a polling place. The presence of the date also establishes a point in time against which to measure the elector's eligibility to cast the ballot[.]' The date also ensures the elector completed the ballot within the proper time frame and prevents the tabulation of potentially fraudulent back-dated votes." *In re*

*Canvass of Nov. 3, 2020 Gen. Election*, 241 A.3d at 1079 (Dougherty, J., concurring and dissenting) (*quoting In re 2,349 Ballots in the 2020 Gen. Election*, 241 A.3d 694 (Pa. Commw. Ct. 2020) (memorandum); *Ritter v. Lehigh Cty. Bd. of Elections*, No. 1322 C.D. 2021, 2022 Pa. Commw. Unpub. LEXIS 1, at *10-11 (Pa. Commw. Ct. Jan. 3, 2022) (same).

These governmental interests are more than enough to outweigh whatever slight burden may result from electors being required to follow the clear and simple instructions and to fully fill out the voter declaration.

As another judge in the District Court for the Western District of Pennsylvania observed, "the Pennsylvania legislature 'weigh[ed] the pros and cons,' and adopted a broader system of 'no excuse' mail-in voting as part of the Commonwealth's Election Code." *Donald J. Trump for President, Inc.*, 493 F. Supp. 3d at 395 (*citing Weber v. Shelley*, 347 F.3d 1101, 1107 (9th Cir. 2003)). "And the key point is that the legislature made that judgment in the context of erecting a broader election scheme that authorizes other forms of voting and has many . . . safeguards in place to catch or deter fraud and other illegal voting practices." *Id.* at 396. "In this larger context, the Court cannot say that the balance Pennsylvania struck across the Election Code was unreasonable, illegitimate, or otherwise not 'sufficiently weighty to justify . . .'" *Id.* Accordingly, it would be inappropriate for this Court to set aside this election administration statute, given its "sufficiently weighty" purpose." *Id.*

Finally, the error of the court below is only heightened by the fact that its decision was at the summary judgment stage, where "the movant must show that, viewing the evidence in the light most favorable to the nonmoving party, 'there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'" *Daniels v. Sch. Dist. of Phila*., 776 F.3d 181, 192 (3d Cir. 2015) (*quoting* Fed. R. Civ. P. 56(a)). Summary judgment is only appropriate "if no reasonable jury could find for the non-moving party." *Whiteland Woods, L.P. v. Twp. of W. Whiteland*, 193 F.3d 177, 180 (3d Cir. 1999).

While *Amici* believe that the decision of the court below should be reversed in favor of a grant of summary judgment to Appellants, at a *minimum*, Appellants have demonstrated that there is a significant issue of material fact in the present case (as backed by the numerous courts agreeing with them as to the state interest behind the statute), and the District Court's grant of summary judgment to the Plaintiffs-Appellees was improper.

As such, reversal of the District Court decision is required.

## CONCLUSION

*Amici* respectfully request that this Court uphold the General Assembly's constitutional power and responsibility as the Commonwealth's "democratically-elected representatives to weigh the pros and cons of various balloting systems."

*Weber*, 347 F.3d at 1106. Accordingly, *Amici* respectfully request that this Court

grant the Appellants' appeal and reverse the decision of the District Court.


Respectfully submitted,

Dated: May 12, 2025            /s/ Zachary M. Wallen
                              Zachary M. Wallen
                              Pennsylvania Bar No. 309176
                              CHALMERS, ADAMS, BACKER &
                              KAUFMAN LLC
                              301 South Hills Village Drive
                              Suite LL200-420
                              Pittsburgh, PA 15241
                              (412) 200-0842
                              zwallen@chalmersadams.com

                              *Counsel for Amici Curiae*
                              *Republican Leader of the Pennsylvania House*
                              *of Representatives, Jesse Topper, President*
                              *Pro Tempore of the Pennsylvania Senate, Kim*
                              *Ward, and Majority Leader of the*
                              *Pennsylvania Senate, Joe Pittman*

## COMBINED CERTIFICATIONS

I, Zachary M. Wallen, hereby certify that:

1. I am a member of the bar of this Court;

2. The text of the electronic version of this brief is identical to the text of the paper copies;

3. This file was scanned with the most recent version of Windows Defender (1.427.735.0), and no virus was detected; and

4. This brief contains 4,970 words and therefore complies with Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7).

In making this certificate, I have relied on the word count of the word-processing system used to prepare the brief.

Dated: May 12, 2025

/s/ Zachary M. Wallen
Counsel for Amici Curiae
Republican Leader of the
Pennsylvania House of
Representatives, Jesse Topper,
President Pro Tempore of the
Pennsylvania Senate, Kim
Ward, and Majority Leader of
the Pennsylvania Senate, Joe
Pittman

## CERTIFICATE OF SERVICE

I filed this brief and accompanying documents with the Court via ECF, which will electronically notify all counsel of record.

Dated: May 12, 2025

_/s/ Zachary M. Wallen_
_Counsel for Amici Curiae_
_Republican Leader of the Pennsylvania House of Representatives, Jesse Topper, President Pro Tempore of the Pennsylvania Senate, Kim Ward, and Majority Leader of the Pennsylvania Senate, Joe Pittman_