**No. 25-1644**

IN THE

# United States Court of Appeals for the Third Circuit

BETTE EAKIN, *et al.*,

*Plaintiff-Appellees*,

v.

ADAMS COUNTY BOARD OF ELECTIONS, *et al.*,

*Defendant-Appellees*

REPUBLICAN NATIONAL COMMITTEE*, et al.*,

*Intervenors-Appellants.*

On Appeal from the United States District Court for the Western
District of Pennsylvania, No. 1:22-cv-340

## BRIEF FOR APPELLEES PHILADELPHIA, ALLEGHENY, BUCKS, CHESTER, AND MONTGOMERY COUNTY BOARDS OF ELECTIONS

Michael Pfautz
Lydia Furst
PHILADELPHIA LAW DEPARTMENT
1515 Arch Street, 15th Floor
Philadelphia, PA 19102
michael.pfautz@phila.gov
lydia.furst@phila.gov

Ilana H. Eisenstein
Brian H. Benjet
Ben C. Fabens-Lassen
M. David Josefovits
DLA PIPER LLP (US)
One Liberty Place
1650 Market Street, Suite 5000
Philadelphia, PA 19103
(215) 656-3351
ilana.eisenstein@us.dlapiper.com

*Counsel for Appellee Philadelphia
County Board of Elections*

*[Counsel Information Continued on Next Page]*

Lisa G. Michel
ALLEGHENY COUNTY LAW
DEPARTMENT
445 Fort Pitt Boulevard
Pittsburgh, PA 15129
(412) 350-1167
lisa.michel@alleghenycounty.us

*Counsel for Appellee Allegheny
County Board of Elections*

Dara Burns
BUCKS COUNTY LAW DEPARTMENT
55 E. Court Street, 5th Floor
Doylestown, PA 18901
(215) 348-6464

*Counsel for Appellee Bucks
County Board of Elections*

John A. Marlatt
MONTGOMERY COUNTY SOLICITORS
OFFICE
One Montgomery Plaza, Suite 800
Norristown, PA 19404
(610) 278-3033

*Counsel for Appellee Montgomery
County Board of Election*

Timothy J. Ford
DILWORTH PAXSON LLP
1650 Market Street, Suite 1200
Philadelphia, PA 19103
(215) 575-7017
tford@dilworthlaw.com

*Counsel for Appellee Chester
County Board of Elections*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................iv

INTRODUCTION ...............................................................................1

STATEMENT OF RELATED CASES ....................................................1

STATEMENT OF THE CASE .............................................................2

   A.   The Date Requirement Has Lost Its Original Purpose .................2

   B.   For Decades, County Boards of Elections Did Not Enforce Any
       Date Requirement ..........................................................................3

   C.   The Date Requirement Still Has No Purpose in Modern Mail
       Voting Administration ....................................................................4

SUMMARY OF THE ARGUMENT .......................................................7

STANDARD OF REVIEW ...................................................................7

ARGUMENT .....................................................................................7

   A.   The Date Requirement Serves No Purpose ...................................7

      1.   A handwritten date does not help determine voter
          eligibility. .................................................................................8

      2.   A handwritten date on the mail ballot declaration cannot
          help determine whether the ballot was timely received.............9

      3.   A handwritten date does not detect fraud. ...............................12

      4.   A handwritten date does not advance solemnity.......................14

CONCLUSION .................................................................................17

COMBINED CERTIFICATIONS OF COMPLIANCE ...........................19

CERTIFICATE OF SERVICE.............................................................20

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Ball v. Chapman,*
  289 A.3d 1 (Pa. 2023) ......................................................... 13

*Baxter v. Phila. Bd. of Elections,*
  325 A.3d 645 (Pa. 2024) ........................................................ 2

*Baxter v. Phila. Bd. of Elections,*
  329 A.3d 483, 2024 WL 4614689 (Pa. Cmwlth. Ct. Oct. 30,
  2024) ............................................................................... 8

*In re Canvass of Absentee & Mail-in Ballots of Nov. 3, 2020
  Gen. Election,* 241 A.3d 1058 (Pa. 2020) ............................ 4

*Davis v. G N Mortg. Corp.,*
  244 F. Supp. 2d 950 (N.D. Ill. 2003) ................................... 15

*Dunn v. Blumstein,*
  405 U.S. 330 (1972) .............................................................. 5

*Migliori v. Cohen,*
  36 F.4th 153 (3d Cir. 2022) ................................................... 8

*Mixon v. Commonwealth,*
  759 A.2d 442 (Pa. Cmwlth. Ct. 2000) ................................... 5

*Pa. State Conf. of NAACP v. Schmidt,*
  703 F. Supp. 3d 632 (W.D. Pa. 2023) .............................. 8, 10

*Pa. State Conf. of NAACP v. Sec'y Commonwealth of Pa.,* 97
  F.4th 120 (3d Cir. 2024) ............................................. 2, 5, 8

*Spivack v. City of Philadelphia,*
  109 F.4th 158 (3d Cir. 2024) ................................................ 7

*State v. Williams,*
  565 N.E.2d 563 (Ohio 1991) .............................................. 16

*Thatcher's Drug Store of W. Goshen, Inc. v. Consol.*
  *Supermarkets, Inc.*, 636 A.2d 156 (Pa. 1994) ...................................... 15

*Thomas A. Armbruster, Inc. v. Barron*,
  491 A.2d 882 (Pa. Super. 1985) ........................................................ 15

*Vote.Org v. Callanen*,
  89 F.4th 459 (5th Cir. 2023) ............................................................. 16

**Statutes**

25 P.S. § 2811 ........................................................................................ 5

25 P.S. § 3146.2 ................................................................................. 4, 8

25 P.S. § 3146.4 ..................................................................................... 5

25 P.S. § 3146.5 ................................................................................... 10

25 P.S. § 3146.6(a) ........................................................................... 6, 10

25 P.S. § 3146.8(d) .............................................................................. 13

25 P.S. § 3146.8(g)(1)(ii) ....................................................................... 6

25 P.S. § 3146.9(b)(5) ............................................................................ 6

25 P.S. § 3150.11 ................................................................................... 4

25 P.S. § 3150.12b ................................................................................. 5

25 P.S. § 3150.14 ................................................................................... 5

25 P.S. § 3150.15 ................................................................................. 10

25 P.S. § 3150.16(a) ......................................................................... 6, 10

25 P.S. § 3150.17(b)(5) ......................................................................... 6

25 Pa.C.S. § 1222 ................................................................................... 5

25 Pa.C.S. § 1301(a) .............................................................................. 5

25 Pa. Cons. Stat. § 3509 ..................................................................... 10

**Other Authorities**

Pa. Const. art. VII, § 1.................................................................5

Pa. Dep't of State, *Guidance Concerning Civilian Absentee and Mail-in Ballot Procedures* (Apr. 7, 2025) ...................................13

Pa. Dep't of State, *Guidance Concerning Civilian Absentee and Mail-in Ballot Procedures* (Apr. 7, 2025) ...................................16

U.S. Const. amend. XXVI.........................................................5

**INTRODUCTION**

The Philadelphia, Allegheny, Bucks, Chester, and Montgomery County Boards of Election (collectively, the "County Boards") administer all elections for their respective counties. They are committed to applying the law faithfully and protecting the fundamental right to vote through the fair and orderly administration of elections. Pennsylvania's Election Code requires the County Boards to reject the timely mail ballots submitted by qualified voters whenever those voters fail to correctly date the declaration on a mail ballot's outer return envelope. This case challenges the constitutionality of that enforcement requirement.

The County Boards take no position on the merits of the plaintiffs' constitutional claims. But the County Boards' experience in election administration compels them to agree with the District Court's finding that the dating requirement serves no purpose in Pennsylvania election administration.

**STATEMENT OF RELATED CASES**

This case has not previously come before this Court. This Court has previously resolved a challenge to the date requirement under the Materiality Provision of the Civil Rights Act of 1964 (52 U.S.C.

1

§ 10101(a)(2)(B)) in a companion case.  *See Pa. State Conf. of NAACP Branches v. Sec'y Commonwealth of Pa.*, 97 F.4th 120, 127 (3d Cir. 2024).

A separate case challenging the Philadelphia Board's enforcement of the date requirement under the Pennsylvania Constitution is pending before the Pennsylvania Supreme Court.  *See Baxter v. Phila. Bd. of Elections*, 325 A.3d 645 (Pa. 2024).

## STATEMENT OF THE CASE

### A.    The Date Requirement Has Lost Its Original Purpose

When Pennsylvania's Election Code was first enacted in 1937, the date requirement served a purpose.  Back then, the Election Code permitted absentee ballots (limited to those from active military members) to be counted even if they arrived after Election Day.  Act of June 3, 1937, P.L. 1333, No. 320, § 1317.  Yet these absentee voters were required to complete their ballots by Election Day.  *Id.* §§ 1323-1330.  This created an obvious knowledge gap: election officials had no way to verify whether a ballot arriving *after* Election Day had been completed by the voter *on or before* Election Day.

The date requirement solved this knowledge gap.  In 1945, the General Assembly required that the date of completion be written on the voter's ballot return envelope.  Act of Mar. 9, 1945, P.L. 29, No. 17, sec.

10, § 1306. The date permitted election officials to confirm that the absentee ballots were completed by the voter before Election Day. And to enforce compliance, the legislature directed counties to "set aside" absentee ballots with return envelopes dated after Election Day. *Id.* § 1307.

The date requirement no longer serves that purpose. By 1968, the General Assembly closed the gap when it aligned the deadline for county boards to receive absentee ballots with the deadline for voters to complete and submit their absentee ballots. Act of Dec. 11, 1968, P.L. 1183, No. 375, sec. 8, §§ 1306(a), 1308(a). In other words, after 1968, a ballot received on time was, by definition, also completed on time. Naturally, the General Assembly then *removed* the explicit requirement that counties set aside ballots based on the date written on the ballot-return envelope. *Id.* § 1308(c).

## B. For Decades, County Boards of Elections Did Not Enforce Any Date Requirement

From 1968 to 2019, the handwritten date requirement lingered on as a pointless vestige in a system that had outgrown it. During that time, the mechanics of absentee voting in Pennsylvania remained largely unchanged. And the County Boards (and others) would routinely count

3

absentee ballots returned with a missing handwritten declaration date. *Cf. In re Canvass of Absentee & Mail-in Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d 1058, 1068, 1077 (Pa. 2020).

Then came 2019, when the General Assembly enacted Act 77, which (among other things) permitted all registered eligible voters to vote by mail. *See* 25 P.S. § 3150.11. Pennsylvania voters can now vote in person or opt for one of two ballots: (i) absentee, which is available to certain voters, *id.* § 3146.1; or (ii) mail-in, available to everyone, *id.* § 3150.11. Absentee and mail-in ballot packages ("mail ballots") are, in all relevant ways, identical.

## C. The Date Requirement Still Has No Purpose in Modern Mail Voting Administration

Today's mail voting system in Pennsylvania does not rely on the voter's handwritten date for any purpose. To vote by mail ballot, registered voters must apply to their county board of elections. 25 P.S. §§ 3146.2 (absentee ballots), 3150.12 (mail-in ballots). County boards review the applications and determine whether the voters meet Pennsylvania's four eligibility criteria. They must be: (1) at least 18-years old on Election Day, (2) a U.S. citizen for at least one month before Election Day, (3) a resident of their election district for at least 30 days,

and (4) not currently incarcerated for a felony conviction.  Pa. Const. art. VII, § 1; 25 P.S. § 2811; 25 Pa.C.S. § 1301(a).[1]  County boards verify eligibility against registration data in the Statewide Uniform Registry of Electors (SURE) system—Pennsylvania's database of all registered voters.  25 P.S. §§ 3146.2b, 3150.12b; 25 Pa.C.S. § 1222; *see Pa. State Conf. of NAACP Branches*, 97 F.4th at 127.

Approved voters receive a package that includes three relevant items: a mail ballot, a "secrecy envelope," and a larger pre-addressed return envelope.  25 P.S. §§ 3146.4, 3150.14.  Each return envelope has on it a pre-printed declaration that the voter is qualified to vote in the election and has not already voted.  *Id.* §§ 3146.4, 3150.14.  It also contains a SURE system barcode unique to the election and the voter requesting the mail ballot.  App.24 n.8.  Voters mark their mail ballot, seal it in the secrecy envelope, and then place the secrecy envelope into

---

[1] *See also Mixon v. Commonwealth,* 759 A.2d 442, 451-52 (Pa. Cmwlth. Ct. 2000), *aff'd,* 783 A.2d 763 (2001) (holding that individuals with felony convictions, other than those currently incarcerated, may register to vote); 1972 Op. Att'y Gen. No. 121 (concluding that *Dunn v. Blumstein,* 405 U.S. 330 (1972), prohibits the enforcement of certain durational residency requirements longer than 30 days); U.S. Const. amend. XXVI (prohibiting denial of right to vote to citizens 18 years of age or older on account of age).

the return envelope. 25 P.S. §§ 3146.6(a), 3150.16(a). Finally, before sending it back to the county boards of elections, voters must "fill out, date and sign the [return-envelope] declaration." *Id.* §§ 3146.6(a), 3150.16(a).

A mail ballot is timely only if the county board receives it before 8:00 p.m. on Election Day. *Id.* §§ 3146.6(a), 3150.16(a). So county boards must maintain records of when each mail ballot was received. 25 P.S. §§ 3146.9(b)(5), 3150.17(b)(5). There are multiple methods to record time of receipt and verify timeliness. App.24. County boards stamp or mark each return envelope with the date and time the ballot was received. *Id.* They also scan the barcode on the return envelope into the SURE system, which creates an electronic record of the date and time the ballot was received. *Id.* at n.8. If a ballot was not timely received, county boards cannot count it, even if the voter completed and dated the ballot before Election Day. 25 P.S. § 3146.8(g)(1)(ii). But, under current state law, even if a ballot is timely received, county boards cannot count it if the voter failed to write the correct date on the accompanying declaration.

## SUMMARY OF THE ARGUMENT

This appeal involves a constitutional challenge to county boards' refusal to count mail ballots from qualified voters that are timely submitted but lack a correct date on the outer return envelope declaration. The County Boards take no position on the merits of the constitutional claims raised in this appeal. But they do agree with the District Court (and the plaintiffs) that the dating provision serves no purpose in election administration. The County Boards do not use the handwritten date to determine voter eligibility, ballot timeliness, or fraud. In the County Boards' experience, the date requirement's only practical effect is to invalidate mail ballots from otherwise qualified voters.

## STANDARD OF REVIEW

This Court reviews the District Court's resolution of cross-motions for summary judgment *de novo*. *See Spivack v. City of Philadelphia*, 109 F.4th 158, 165 (3d Cir. 2024).

## ARGUMENT

### A.  The Date Requirement Serves No Purpose

The date requirement is a relic. It serves no purpose in the County Boards' (or any other election board's) election administration. It plays

no role in verifying voter eligibility, confirming ballot timeliness, or detecting and deterring fraud.[2]   Nor does it plausibly advance any governmental interest in solemnity.

### 1. A handwritten date does not help determine voter eligibility.

Each county board determines a voter's eligibility without ever considering the handwritten date on a returned mail ballot envelope. To vote by mail, registered voters must apply to their county board of elections. 25 P.S. §§ 3146.2 (absentee ballots), 3150.12 (mail-in ballots).

---

[2] This Court and others have repeatedly concluded that the handwritten date serves no administrative purpose. *See*, *e.g.*, *Pa. State Conf. of NAACP v. Sec'y Commw. of Pa.* ("*NAACP II*"), 97 F.4th 120, 135 (3d Cir. 2024) ("[T]he date requirement ha[s] nothing to do with determining who may vote."); *id.* at 129 ("[N]ot one county board used the date on the return envelope to determine whether a ballot was timely received in the November 2022 election."); *Pa. State Conf. of NAACP v. Schmidt* ("*NAACP I*"), 703 F. Supp. 3d 632, 679 (W.D. Pa. 2023), *rev'd*, 97 F.4th 120 (3d Cir. 2024) ("Whether a mail ballot is timely, and therefore counted, is not determined by the date indicated by the voter on the outer return envelope, but instead by the time stamp and the SURE system scan indicating the date of its receipt by the county board."); *Migliori v. Cohen*, 36 F.4th 153, 164 (3d Cir. 2022) (noting that the handwritten date was rendered "superfluous" after it was received and time-stamped by the board of elections and "was not entered as the official date received in the SURE system, nor used for any other purpose"), *vacated sub nom.*, *Ritter v. Migliori*, 143 S. Ct. 297 (2022); *Baxter v. Phila. Bd. of Elections*, 329 A.3d 483 (Table), 2024 WL 4614689, at *17 (Pa. Cmwlth. Ct. Oct. 30, 2024) (noting that "the trial court determined, as we did in *BPEP II* under similar factual circumstances, that the dating provisions are virtually meaningless"), *perm. appeal granted*, 332 A.3d 1183 (Jan. 17, 2025).

County boards review these applications and compare them to the voter registration database to determine eligibility. *Id.* §§ 3146.2b (absentee ballots), 3150.12b (mail-in ballots). Once eligibility is confirmed, the voter's application is marked approved and can only be challenged on the grounds that the applicant "did not possess qualifications of an absentee elector" (for absentee voters) or "was not a qualified elector" (for mail-in voters). *Id.* §§ 3146.2b(a) (absentee voters), 3150.12b(a)(2) (mail-in voters). This process for determining voter eligibility is completed before ballot envelopes are mailed to voters, so any claim that the handwritten date on a returned ballot envelope is used to determine voter eligibility is inconsistent with actual election administration.

> 2. *A handwritten date on the mail ballot declaration cannot help determine whether the ballot was timely received.*

The County Boards do not—and indeed cannot—use the handwritten date to verify a mail ballot's timeliness in any circumstance. Any suggestion to the contrary betrays a fundamental misunderstanding of both the Election Code and the practical mechanics of election administration. The Republican Intervenors argue that the handwritten date provides proof of when the voter marked the ballot. Republican Intervenors Br. at 53. But that is both

9

wrong and irrelevant.  It is wrong because the date tells us when the voter dated the declaration, not when the voter completed the ballot.  It is irrelevant because nothing in the Election Code depends on when the voter dated the declaration (or completed the ballot).

The mail ballot process under the Election Code makes clear that a voter's handwritten date cannot help a county board determine the timeliness of a mail ballot.  Once an election's candidate list is finalized, county boards print and send mail ballots to voters who have applied and been approved.  *See* 25 P.S. §§ 3146.5, 3150.15.  These ballots do not exist (and therefore cannot be completed by the voter) until printed in the weeks before the election.

When a ballot is returned by a voter, the county board "stamp[s] or otherwise mark[s]" it with the date and time of receipt and logs it the SURE system to confirm its timeliness.  *See NAACP I,* 703 F. Supp. 3d at 666.  Only mail ballots received before 8:00 p.m. on Election Day are timely.[3]  25 P.S. §§ 3146.6(a), 3150.16(a).  Late-arriving ballots are

---

[3] An exception to this rule applies to "military-overseas" ballots, which must be either received by the county board of elections "not later than the close of the polls" or "submit[ted] . . . for mailing . . . not later than 11:59 p.m." on the day before the election.  25 Pa. Cons. Stat. § 3509.  If a ballot falls into the latter category, it "shall be counted if it is delivered

physically separated from timely ones, and cannot be counted, regardless of the date on the ballot's declaration envelope. Said simply: a ballot marked with a pre–Election Day date is still invalid if received after the 8:00 p.m. deadline.

Timeliness thus depends entirely on when the ballot was received. For mail ballots arriving before 8:00 p.m. on Election Day, the declaration was necessarily completed between the time the ballots were mailed to voters and the timely receipt by county boards— regardless of the handwritten date. And for ballots received after 8:00 p.m., even a "correct" pre-Election Day date changes nothing; the ballot is late and cannot be counted. And the only way county boards can confirm a ballot was received before 8:00 p.m. on Election Day is by physically separating or marking timely received ballots. An incorrect handwritten date—or no date at all—is entirely irrelevant.

Both the Republican Intervenors and the Commonwealth miss the mark by claiming that a voter's handwritten date on the mail ballot's declaration could serve "as a useful backstop" if the SURE system failed. Republican Intervenors Br. at 53-54, *see also* Commonwealth Br. at 30.

---

by 5 p.m. on the seventh day following the election" to the county board of elections. *Id.* § 3511(a).

That is not how it works. Even if the SURE system went offline, county boards would not—and could not—turn to the handwritten date to verify timeliness. That date reflects only when the voter might have completed the declaration, not when the voter mailed or dropped off the ballot (in a drop box), let alone when the county board received it. For timeliness, county boards must rely on physical segregation of late-arriving ballots and methods like stamping the date and time of receipt. The voter's handwritten date is irrelevant to this process. And the supposed interest in maintaining it as a "backstop" is a fiction.

    *3. A handwritten date does not detect fraud.*

Republican Intervenors incorrectly urge that the date provision detects and deters election fraud. They point to a single incident in Lancaster County involving a ballot from a deceased voter. Republican Intervenors Br. at 56 (citing to *Commonwealth v. Mihaliak,* No. MJ-2202-CR-126-2022 (Lancaster County)). But as the District Court rightly concluded, this speculative purpose is "unsupported by evidence." App.27.

The key to detecting deceased-voter fraud is ensuring the voter is alive on Election Day, not when they completed or mailed their ballot. When a county board knows a voter has died, it excludes their ballot—

regardless of any date, or lack thereof, on the outer return envelope. *See* 25 P.S. § 3146.8(d); Pa. Dep't of State, *Guidance Concerning Civilian Absentee and Mail-in Ballot Procedures* at 12-13 (Apr. 7, 2025) ("At the pre-canvass or canvass, the county board of elections should: . . . Set aside the ballot of any voter who was deceased before Election Day.").[4] Indeed, county boards "regularly review data sources such as postal service change of address notices, state death records, and obituaries to check for voters who have moved or died." *See Fact-Checking Pennsylvania Related Election Claims*, Commonwealth of Pennsylvania.[5]

In the Lancaster case, the fraudulent ballot was detected and set aside not because of the handwritten date, but because the board, using the SURE system and Department of Health records, confirmed the voter had died before the ballot arrived. *See Ball v. Chapman,* 289 A.3d 1, 16 n.77 (Pa. 2023); App.24. As the District Court explained, the Lancaster County Board "admitted that it removed the deceased woman

---

[4] https://www.pa.gov/content/dam/copapwp-pagov/en/dos/resources/voting-and-elections/directives-and-guidance/2025/2025-04-guidance-civilian%20absentee-mail%20ballot%20procedures.pdf.

[5] https://www.pa.gov/agencies/vote/elections/fact-checking-pa-related-election-claims.html#accordion-78d6f7d7a2-item-9bff3406f0 (last accessed June 2, 2025).

from the voter rolls before the mail ballot was received." App. 24. *Contra* Commonwealth Br. at 27 (incorrectly arguing that the handwritten date indicated "that the decedent's ballot should not be counted").

The Republican Intervenors' argument that the date requirement serves evidentiary or deterrent purposes falls flat. Republican Intervenors Br. at 61-62. There is not a shred of evidence in the nearly 100-year history of the Pennsylvania Election Code that the date requirement deters fraud. For good reason. A would-be-fraudster trying to submit a deceased voter's ballot faces no real hurdle from the date requirement, which can be backdated. The true deterrent is the county board's ability to cross-check voter status through the SURE system and other state records, which will ensure such ballots are excluded. The handwritten dates add nothing to this safeguard.

*4. A handwritten date does not advance solemnity.*

Republican Intervenors fare no better in claiming that the date provision serves the government's interest in voter solemnity. Republican Intervenors Br. at 54. They offer no evidence—none—that the legislature enacted the date provision to imbue voting with some sense of "solemnity"—over and above any sense of solemnity arising

14

from signing the mail ballot declaration under oath. *See* App.27 (concluding that "solemnity and voter confidence are nebulous and are unsupported by evidence").

The date requirement is a relic, plain and simple. It once had a purpose—back when there was a gap between the time the voter needed to complete the ballot and the time the county board needed to receive it. The handwritten date let county boards confirm that the ballots were completed on time. But that purpose vanished in 1968, when the legislature closed the gap and allowed ballots to be completed until the deadline for receipt. So now, all that matters is when county boards receive the ballot.

Republican Intervenors' cited authority further reveals the lack of purpose. Half their authorities merely affirm the obvious—that written agreements are better than unwritten agreements—while saying nothing about dates. *See Davis v. G N Mortg. Corp.,* 244 F. Supp. 2d 950, 956 (N.D. Ill. 2003) (discussing written agreements in the context of the parol evidence rule); *Thomas A. Armbruster, Inc. v. Barron,* 491 A.2d 882, 883 (Pa. Super. 1985) (discussing the requirement for a promise to pay the debt of another to be in writing); *Thatcher's Drug Store of W. Goshen, Inc. v. Consol. Supermarkets, Inc.,* 636 A.2d 156, 161

15

(Pa. 1994) (discussing the absence of a written agreement of a promise not to open a pharmacy). The other half discuss the purpose for requiring voters to handwrite or notarize a *signature*—not a date. *See State v. Williams,* 565 N.E.2d 563, 565 (Ohio 1991) (discussing whether a search warrant is void *ab initio* when the face of the document lacks a judge's signature); *Vote.Org v. Callanen,* 89 F.4th 459, 489 (5th Cir. 2023) (discussing a wet-signature requirement without a date requirement); *see also* Commonwealth Br. at 28 (arguing that "*signing and dating official documents serves an interest in 'solemnity'*" (emphasis added)). The signature requirement has not been challenged in this appeal, and county boards of election continue to "set aside any ballots without a *signed* declaration envelope."[6]

*     *     *

Far from enhancing the integrity, reliability, or efficiency of elections, the date provision serves no purpose. As the District Court correctly concluded, "there is no evidence that the date requirement

---

[6] Pa. Dep't of State, *Guidance Concerning Civilian Absentee and Mail-in Ballot Procedures* at 13 (Apr. 7, 2025), https://www.pa.gov/content/dam/copapwp-pagov/en/dos/resources/voting-and-elections/directives-and-guidance/2025/2025-04-guidance-civilian%20absentee-mail%20ballot%20procedures.pdf (emphasis added).

16

serves any state interest." App.27. Enforcement of the dating requirement also imposes a substantial and wholly unnecessary burden on the County Boards and other boards of election, demanding labor-intensive and time-consuming manual review of each ballot envelope. The hardship of review is exacerbated by the lack of clear standards or guidance defining what constitutes an "incorrect" date.[7] The only effect of the handwritten date provision is that it forces County Boards to reject timely ballots of otherwise qualified voters.

## CONCLUSION

For all these reasons, the date requirement serves no purpose.

[*Signature page follows*]

---

[7] To process the large volume of mail ballots, the County Boards rely on automated sorting machines to recognize when ballot envelopes are returned without handwritten signatures or without the internal secrecy envelope required by the Pennsylvania Election Code. Because these machines cannot be configured to determine whether the handwritten date is "correct," the County Boards must devote additional time and labor to manually inspect, identify, and set aside ballots that were timely received, are signed by the voter, and have an internal secrecy envelope, but have an "incorrect" handwritten date on the declaration envelope.

17

Dated: June 4, 2025

Respectfully submitted,

/s/  Lisa G. Michel
Lisa G. Michel (No. 59997)
ALLEGHENY COUNTY LAW
DEPARTMENT
445 Fort Pitt Boulevard
Pittsburgh, PA 15129
(412) 350-1167
lisa.michel@alleghenycounty.us

*Counsel for Appellee Allegheny
County Board of Elections*

/s/ John A. Marlatt
John A. Marlatt (No. 210141)
MONTGOMERY COUNTY SOLICITORS
OFFICE
One Montgomery Plaza, Suite 800
Norristown, PA 19404
(610) 278-3033

*Counsel for Appellee Montgomery
County Board of Election*

/s/ Timothy J. Ford
Timothy J. Ford (No. 325290)
Dilworth Paxson LLP
1650 Market Street, Suite 1200
Philadelphia, PA 19103
(215) 575-7017
tford@dilworthlaw.com

*Counsel for Appellee Chester
County Board of Elections*

/s/ Ilana H. Eisenstein
Ilana H. Eisenstein (No. 94907)
Brian H. Benjet
Ben C. Fabens-Lassen
M. David Josefovits
DLA PIPER LLP (US)
1650 Market St., Suite 5000
Philadelphia, PA 19103
(215) 656-3351
ilana.eisenstein@dlapiper.com

Michael Pfautz
Lydia Furst
PHILADELPHIA LAW DEPARTMENT
1515 Arch Street, 15th Floor
Philadelphia, PA 19102
michael.pfautz@phila.gov
lydia.furst@phila.gov

*Counsel for Appellee Philadelphia
County Board of Elections*

/s/ Dara Burns
Dara Burns (No. 207337)
BUCKS COUNTY LAW DEPARTMENT
55 E. Court Street, 5th Floor
Doylestown, PA 18901
(215) 348-6464

*Counsel for Appellee Bucks County
Board of Elections*

## **COMBINED CERTIFICATIONS OF COMPLIANCE**

I, Ilana H. Eisenstein, certify:

***Bar Membership.*** Pursuant to this Court's Local Rule 28.3(d), I am a member of the bar of this Court.

***Electronic Filing.*** Pursuant to this Court's Local Rule 31.1(c), the text in the electronic copy of this brief is identical to the text in the paper copies of the brief filed with the Court. This document complies with the requirement of this Court's Local Rule 31.1(c) because this document was scanned for viruses using Microsoft Defender, and no viruses were detected.

***Word Count.*** This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 3,534, excluding the parts of the brief exempted from that calculation under the Federal Rules of Appellate Procedure.

***Typeface and Type-style.*** This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using the Microsoft Word processing program in 14-point Century Schoolbook font.

Dated: June 4, 2025                          /s/ Ilana H. Eisenstein
                                             Ilana H. Eisenstein

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 4, 2025, I electronically filed this brief and accompanying joint appendix with the Clerk of the Court for the United States Court of Appeals for the Third Circuit using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the appellate CM/ECF system.

/s/ Ilana H. Eisenstein
Ilana H. Eisenstein