No. 25-1644

In the United States Court of Appeals for the Third Circuit

BETTE EAKIN, *et al.,*
*Plaintiff-Appellees,*

v.

ADAMS COUNTY BOARD OF ELECTIONS, *et al.,*
*Defendant-Appellees,*

REPUBLICAN NATIONAL COMMITTEE, *et al.,*
*Intervenor-Defendant-Appellants.*

**On Appeal from the United States District Court
for the Western District of Pennsylvania
Case No. 1:22-cv-340 (Baxter, J.)**

**BRIEF FOR DEFENDANT-APPELLEE
ADAMS COUNTY BOARD OF ELECTIONS**

Sean A. Mott, Esq.
Adams County First Assistant
Solicitor
PA Supreme Court ID: 310690
117 Baltimore Street
Gettysburg, PA 17325
(717) 337-5911
samott@adamscountypa.gov

Molly R. Mudd, Esq.
*Counsel of Record*
Adams County Solicitor
PA Supreme Court ID: 63496
117 Baltimore Street
Gettysburg, PA 17325
(717) 337-5911
mmudd@adamscountypa.gov
*Counsel for Defendant-Appellee
Adams County Board of Elections*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Third Circuit Local Appellate Rule 26.1, Defendant-Appellee Adams County Board of Elections states the following:  The Adams County Board of Elections is a governmental entity of Adams County, Pennsylvania.  It has no parent corporation, and no publicly held corporation owns 10% or more of its stock or assets.

## TABLE OF CONTENTS

I.   STATEMENT OF JURISDICTION ............................................ 1

II.  STATEMENT OF ISSUES PRESENTED FOR REVIEW .... 2

III. STATEMENT OF THE CASE.................................................. 3

   A.   Nature of the Case ............................................... 3

   B.   Course of Proceedings and Disposition Below..................... 3

   C.   Statement of Facts................................................. 5

   D.   Standard of Review............................................... 9

IV.  SUMMARY OF THE ARGUMENT ...................................... 10

V.   ARGUMENT ......................................................... 13

   A.   This Court Should Affirm the District Court's Decision on
        State Statutory Grounds, Avoiding an Unnecessary
        Constitutional Ruling, Because Pennsylvania's Uniform
        Unsworn Declarations Act ("UUDA"), Based on the Model UUDA
        and Federal Practice, Renders a Date Immaterial to a Ballot
        Declaration's Validity. ................................................ 13

        1. A Pennsylvania voter's mail ballot declaration is an
        "unsworn declaration" governed by the UUDA..................... 16

        2. The UUDA intentionally prioritizes substance over form,
        making a signature under penalty of perjury, not a date, the
        key to declaration validity. ..................................... 18

3. State court precedent confirms the UUDA's broad application to the Election Code, prioritizing substance over formalism. ................................................................................. 28

4. Pennsylvania canons of statutory construction compel reading the UUDA as governing the validity of ballot declarations. ........................................................................... 32

5. Affirming on statutory grounds, by distinguishing *Ball v. Chapman*, is judicially prudent. .............................................. 36

B.   Alternatively, the District Court's Determination that the Date Requirement Violates the First and Fourteenth Amendments Should Be Affirmed. ............................................. 41

1. Disenfranchisement for an immaterial omission imposes a constitutionally significant burden, distinct from the Materiality Provision analysis. .............................................. 42

2. The State's Purported Interests Crumble Under Scrutiny and Cannot Justify Disenfranchisement. .............................. 48

VI.   CONCLUSION ...................................................................... 57

ADDENDUM A ................................................................................. 60

ADDENDUM B ................................................................................. 61

ADDENDUM C ................................................................................. 62

ADDENDUM D ................................................................................. 63

## TABLE OF AUTHORITIES

### Cases

*Anderson v. Celebrezze*, 460 U.S. 780 (1983)......... 2, 11, 42, 43, 44, 45, 55

*Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288 (1936)........................ 13

*Ball v. Chapman*, 289 A.3d 1 (Pa. 2023) ......... 8, 36, 37, 38, 39, 41, 45, 52

*Bernitsky v. United States*, 620 F.2d 948 (3d Cir. 1980) ....................... 15

Brnovich v. Democratic Nat'l Comm., 594 U.S. 647 (2021) .................. 48

*Burdick v. Takushi*, 504 U.S. 428 (1992) .. 2, 11, 42, 43, 44, 45, 48, 51, 55

*Bush v. Gore,* 531 U.S. 98 (2000) ........................................... 47

*Coleman v. Experian Information Solutions, Inc.*, 655 F. Supp. 3d 1285

    (N.D. Ga. 2023) ..................................................... 26

*Commonwealth v. Mihaliak*, Docket No. CP-36-CR-0003315 (Lancaster

    Cty. C.C.P. 2022)........................................................ 7, 50

*Crawford v. Marion County Election Board*, 553 U.S. 181 (2008)......... 45

*Eakin v. Adams Cnty. Bd. of Elecs.*, No. 1:22-cv-00340-SPB (W.D. Pa.

    Mar. 31, 2025) ...................................... 6, 7, 8, 31, 36, 44, 48, 50, 51, 55

*EEOC v. World's Finest Chocolate, Inc.*, 701 F. Supp. 637 (N.D. Ill. 1988)

    ...................................................................... 24, 25

*Huber v. Taylor*, 469 F.3d 67 (3d Cir. 2006)............................................. 15

*In re Canvass of Absentee & Mail-in Ballots of Nov. 3, 2020 Gen. Election*,
241 A.3d 1058, 1062 (Pa. 2020) ................................................ 36, 40, 46

*In re Turner*, 291 A.3d 519 (Pa. Cmwlth. 2023)16, 17, 28, 29, 30, 31, 36,
41

League of Women Voters of N.C. v. North Carolina, 769 F.3d 224 (4th
Cir. 2014) ............................................................................... 51

*Loretangeli v. Critelli,* 853 F.2d 186 (3d Cir. 1988) ................................ 15

*Lyng v. Nw. Indian Cemetery Protective Ass'n,* 485 U.S. 439 (1988)..... 14

*Mazo v. N.J. Sec'y of State*, 54 F.4th 124, 132 (3d Cir. 2022) ........... 9, 45

*McDonald v. Board of Election Commissioners*, 394 U.S. 802 (1969) ... 46

*N.J. Bankers Ass'n v. Att'y Gen. N.J.*, 49 F.4th 849, 854 (3d Cir. 2022). 9,
13

*Pa. State Conf. of NAACP Branches v. Schmidt*, No. 1:22-cv-339 (W.D.
Pa. Nov. 2, 2022) ...................................................................... 8

Paolella v. Browning Ferris, Inc., 158 F.3d 183 (3d Cir. 1998).............. 39

*Pennsylvania State Conference of NAACP Branches v. Secretary
Commonwealth of Pennsylvania*, 97 F.4th 120 (3d Cir. 2024)5, 8, 42,
44, 52

*Phila. Area Curran-Fromhold Corr. Facility v. Rizzo*, 502 F.2d 306 (3d Cir. 1974) ................................................................. 15

*Pieszak v. Glendale Adventist Medical Center*, 112 F. Supp. 2d 970 (C.D. Cal. 2000) ........................................................... 25

*Rolick v. Collins Pine Co.,* 925 F.2d 661 (3d Cir. 1991) ......................... 40

*Spector Motor Serv., Inc. v. McLaughlin*, 323 U.S. 101 (1944) ............. 14

*Waterman v. Farmer*, 183 F.3d 208, 211 (3d Cir. 1999) ................... 9, 13

## Statutes

1 Pa.C.S. § 1921 ............................................................... 32, 34

1 Pa.C.S. § 1922 ................................................................... 35

1 Pa.C.S. § 1932 ................................................................... 34

1 Pa.C.S. § 1933 ................................................................... 34

1 Pa.C.S. § 1936 ................................................................... 33

13 Pa.C.S. § 1201 ................................................................. 19

13 Pa.C.S. § 3301-3312 ......................................................... 19

13 Pa.C.S. §§ 1101, *et seq.* ..................................................... 19

13 Pa.C.S. §§ 2201-2210 ........................................................ 19

18 Pa.C.S. § 4904 ................................................................. 17

25 P.S. § 1222 ..................................................................... 49

25 P.S. § 2870................................................................................. 29

25 P.S. § 3031.17 ........................................................................... 49

25 P.S. § 3146.2 ............................................................................. 49

25 P.S. § 3146.2b ........................................................................... 49

25 P.S. § 3146.6.................................................... 4, 6, 7, 10, 16, 37, 49, 51

25 P.S. § 3146.8.................................................................................. 51, 52

25 P.S. § 3150.12 ........................................................................... 49

25 P.S. § 3150.12b ......................................................................... 49

25 P.S. § 3150.16........................................................ 4, 6, 7, 10, 16, 49, 51, 52

25 P.S. § 3154 ................................................................................. 49

25 P.S. § 3261 ................................................................................. 49

25 P.S. § 3552 ................................................................................. 49

25 P.S. §§ 3146.1 .............................................................................. 5

25 P.S. §§ 3150.11, *et seq.*............................................................... 5

25 Pa.C.S. § 3515 ........................................................................... 47

28 U.S.C. § 1291 .............................................................................. 1

28 U.S.C. § 1331 .............................................................................. 1

28 U.S.C. § 1343(a) .......................................................................... 1

28 U.S.C. § 1746 .................................................... 10, 22, 23, 24, 25, 26, 28

42 Pa.C.S. § 6201, *et seq.*................................................................ 2, 10, 14

42 Pa.C.S. § 6202 ..................................................................... 17, 19, 20

42 Pa.C.S. § 6203 ................................................................................. 16

52 U.S.C. § 10101 ............................................................................. 1, 43

52 U.S.C. § 10303 ................................................................................. 45

52 U.S.C. § 10501 ................................................................................. 45

**Other Authorities**

Pa. H.R. Jour., 204th Gen. Assemb., Reg. Sess. No. 12 (Mar. 24, 2020) 33

Unif. Unsworn Declarations Act (Nat'l Conf. of Comm'rs on Unif. State

    L. 2016) ................................................................ 10, 23, 28, 35

# I.    STATEMENT OF JURISDICTION

The District Court had subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3) and (4) (civil rights and elective franchise) because Plaintiffs' claims arose under the First and Fourteenth Amendments to the United States Constitution and the Civil Rights Act, 52 U.S.C. § 10101(a)(2)(B).

The District Court entered its Memorandum Opinion and Order granting in part and denying in part the parties' cross-motions for summary judgment on March 31, 2025, which was a final judgment disposing of all claims.  The RNC timely filed their Notice of Appeal.

This Court has appellate jurisdiction over the appeal from the final judgment of the District Court pursuant to 28 U.S.C. § 1291.

## II.    STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Does Pennsylvania's Uniform Unsworn Declarations Act ("UUDA"), 42 Pa.C.S. § 6201, *et seq.*, which renders a voter's declaration legally valid without a handwritten date, require this Court to affirm the District Court's judgment on statutory grounds, thereby honoring judicial restraint by avoiding unnecessary constitutional adjudication?

2. Alternatively, if this Court reaches the constitutional question, did the District Court correctly apply the *Anderson-Burdick* framework to find that invalidating mail ballots from qualified voters solely for lacking a handwritten date, an omission serving no legitimate state interest, unconstitutionally burdens the fundamental right to vote?

2

## III.  STATEMENT OF THE CASE

### A.  Nature of the Case

This appeal concerns the validity of mail-in ballots cast by registered Pennsylvania voters whose declarations on the outer return envelope were not dated by the voter.  Plaintiffs, a voter and several organizations, challenged the Pennsylvania Election Code's requirement that voters handwrite a date on these declarations, arguing that disqualifying ballots for this omission violates federal law and the U.S. Constitution.  The United States District Court for the Western District of Pennsylvania found the date requirement, as applied to reject otherwise valid ballots, unconstitutional.  Adams County Board of Election, an Appellee and one of the sixty-seven county boards of elections named as defendants, supports the District Court's judgment that such ballots should not be voided, primarily on statutory grounds that obviate the need for a constitutional ruling.

### B.  Course of Proceedings and Disposition Below

Plaintiffs initiated this action in the United States District Court for the Western District of Pennsylvania. The Amended Complaint challenged the Pennsylvania statutory requirement that a voter using a mail-in ballot must handwrite a date on the outer return envelope (the "Date Instruction"), as found in 25 P.S. §§ 3146.6(a) and 3150.16(a). Plaintiffs alleged that rejecting ballots for failure to comply with the Date Instruction violates the Materiality Provision of the Civil Rights Act, 52 U.S.C. § 10101(a)(2)(B), and the First and Fourteenth Amendments to the United States Constitution. They sought declaratory and injunctive relief.

Several parties, including the Republican National Committee, the National Republican Congressional Committee, and the Republican Party of Pennsylvania (hereinafter collectively "the RNC"), intervened as Defendants. Following discovery, various parties, including Plaintiffs, the Lancaster County Board of Elections, the Berks County Board of Elections, and the RNC, filed cross-motions for summary judgment.

On March 31, 2025, the District Court issued a Memorandum Opinion and Order. The District Court granted summary judgment in

4

favor of Defendants on Plaintiffs' claim under the Materiality Provision of the Civil Rights Act, based on the Third Circuit's precedent in *Pennsylvania State Conference of NAACP Branches v. Secretary Commonwealth of Pennsylvania*, 97 F.4th 120 (3d Cir. 2024). However, the District Court granted summary judgment in favor of Plaintiffs on their claim that the Date Instruction violates the First and Fourteenth Amendments. The court found that the Date Instruction imposes a burden on the fundamental right to vote that is not justified by any sufficiently weighty state interest, as the handwritten date serves no material purpose in fraud detection or orderly election administration.

This appeal followed.

## C. Statement of Facts

The Commonwealth of Pennsylvania permits its qualified electors to vote by mail-in ballot. 25 P.S. §§ 3146.1, *et seq.*, 3150.11, *et seq.* To cast a mail-in ballot, a voter must complete, date, and sign a declaration printed on the official outer return envelope. 25 P.S. §§ 3146.6(a), 3150.16(a). The pre-printed declaration requires voters to attest they are

qualified and marked their own ballot (or received permitted assistance). This declaration includes a space for the voter's signature and a line or box for the voter to write the date.

Until the District Court's decision below, if a voter failed to handwrite a date on this declaration, or wrote an incorrect date (such as their birthdate), county boards were instructed to disqualify and not count the ballot. In the 2022 general election alone, more than 10,000 mail-in ballots from otherwise eligible Pennsylvania voters were rejected for this reason.

The District Court made several critical findings about the voter-supplied date. It found that the handwritten date on a mail ballot "has no bearing on fraud detection." *Eakin v. Adams Cnty. Bd. of Elecs.*, No. 1:22-cv-00340-SPB, at 16 (W.D. Pa. Mar. 31, 2025), ECF No. 438 (hereinafter "Eakin Lower Ct. Op."). Pennsylvania uses robust anti-fraud measures independent of the voter-written date, including signature verification and unique ballot tracking barcodes processed using the Commonwealth's Statewide Uniform Registry of Electors ("SURE") system. *Id.* at 16-17. The District Court noted, based on record

evidence, that an instance of attempted fraud cited by the RNC (as Intervenors), *Commonwealth v. Mihaliak*, Docket No. CP-36-CR-0003315 (Lancaster Cty. C.C.P. 2022), was detected through the SURE system and death records, not by any issue with the envelope date. Eakin Lower Ct. Op. at 17-18. Indeed, the relevant county board in that matter admitted that a missing date on an envelope does not indicate fraud. *Id.* at 18.

The District Court also found that the voter-supplied date is not used to determine a ballot's timeliness. *Id.* Ballot timeliness is statutorily determined by its receipt date by the county board of elections. This receipt date is officially stamped or marked on the envelope and logged into the SURE system. *Id.*; 25 P.S. §§ 3146.6(c), 3150.16(c).

Furthermore, the District Court found that requiring election officials to scrutinize voter-written dates does not aid orderly election administration. Instead, it "creates confusion and forces election officials to expend resources scrutinizing and litigating an inconsequential omission." Eakin Lower Ct. Op. at 18-19. The court observed that Pennsylvania's Secretary of the Commonwealth previously argued in

related litigation that the date requirement "undermines sound election administration and serves no useful function." *Id*. at 20-21 (citing Brief for Secretary of the Commonwealth at 5-6, 20, *Pa. State Conf. of NAACP Branches v. Schmidt*, No. 1:22-cv-339 (W.D. Pa. Nov. 2, 2022), ECF No. 440). The District Court also noted the Pennsylvania Supreme Court acknowledged that county boards cannot actually verify if a voter-written date is the true date of signing. *Id*. at 19 (citing *Ball v. Chapman*, 289 A.3d 1, 23 (Pa. 2023)).

The District Court concluded that other asserted state interests, such as promoting "solemnity" in voting or enhancing "voter confidence," were based on supposition and lacked record support. Eakin Lower Ct. Op. at 18, 19. Ultimately, the District Court determined that the Commonwealth and Defendant-Intervenors (including the RNC) failed to identify any legitimate state interest sufficiently weighty to justify the burden of disenfranchisement caused by the date requirement. *Id.* at 16, 19-20.

Although the District Court resolved the case on constitutional grounds, it did so after determining that Plaintiffs' claim under the

Materiality Provision of the Civil Rights Act was foreclosed by Third Circuit precedent. *Id.* at 8.

## D. Standard of Review

This Court reviews a district court's grant of summary judgment de novo. *N.J. Bankers Ass'n v. Att'y Gen. N.J.*, 49 F.4th 849, 854 (3d Cir. 2022); see also *Mazo v. N.J. Sec'y of State*, 54 F.4th 124, 132 (3d Cir. 2022). Questions of statutory interpretation and constitutional law are also subject to *de novo* review. *See N.J. Bankers Ass'n*, 49 F.4th at 854; *Waterman v. Farmer*, 183 F.3d 208, 211 (3d Cir. 1999).

## IV.  SUMMARY OF THE ARGUMENT

The District Court correctly found that otherwise valid mail-in ballots should not be invalidated merely because a voter failed to write a date on the declaration printed on the outer return envelope.  Adams County, as Appellee, supports this outcome and respectfully urges this Court to affirm the District Court's judgment primarily on statutory grounds, an approach that also allows this Court to avoid an unnecessary constitutional adjudication.

*First*, Pennsylvania law, through the Uniform Unsworn Declarations Act ("UUDA"), 42 Pa.C.S. § 6201, *et seq.*, does not mandate a date for a voter's declaration to be legally valid. While the Election Code directs voters to "date and sign the declaration," 25 P.S. §§ 3146.6(a), 3150.16(a), the UUDA dictates the legal sufficiency of such unsworn declarations. The UUDA, which mirrors the Uniform Law Commission's Model UUDA ("Model UUDA") and the federal approach under 28 U.S.C. § 1746 by liberalizing and simplifying declaration requirements to harmonize state and federal practice, accords an unsworn declaration the "same effect" as a sworn one if it is signed under penalty of perjury and

substantially meets the statute's prescribed form. 42 Pa.C.S. § 6204(a). Critically, that form requires a signature and an attestation under penalty of perjury; it does *not* require a date for the declaration to be legally operative. 42 Pa.C.S. § 6206. The voter declarations at issue, containing the voter's signature and attestation under penalty of perjury, substantially comply with the UUDA's essential requirements and are therefore legally effective despite the omission of a handwritten date. Because state law provides a clear and independent basis for validating these declarations, this Court need not, and indeed should not, address the constitutional questions presented.

*Second*, should this Court find it necessary to reach the constitutional challenge, the District Court's ultimate conclusion, that applying the date requirement to disenfranchise qualified voters is unconstitutional, must be upheld. The District Court properly determined, under the *Anderson-Burdick* framework, that the Commonwealth and the RNC (as Defendant-Intervenors) failed to demonstrate any legitimate state interest sufficiently weighty to justify the severe burden of disenfranchisement imposed by the date requirement. The RNC's proffered justifications, such as fraud

prevention and orderly election administration, crumble under scrutiny, as the record unequivocally shows the voter-added date serves no such purposes.   Eligibility and ballot timeliness are effectively verified through other means, including the county's date-stamp upon receipt and the SURE system.   Discarding thousands of ballots from eligible Pennsylvania voters due to a missing or incorrect date, an omission irrelevant to voter qualification or ballot integrity, is an unnecessary and, therefore, unconstitutional impediment to the fundamental right to vote.

The RNC's insistence on strict enforcement of the date notation elevates a trivial paperwork requirement over the substantive right of citizens to participate in democracy.   When the UUDA renders the declaration legally valid without a date, and the date itself serves no other legitimate electoral purpose, enforcing this requirement becomes the functional equivalent of an unconstitutional literacy test: a measure that disenfranchises voters based on their ability to follow a pointless instruction, rather than on their qualifications to vote.

Adams County respectfully requests that this Court affirm the judgment of the District Court.

## V.   ARGUMENT

This Court reviews the District Court's grant of summary judgment, its interpretation of Pennsylvania statutes, and its conclusions on questions of federal constitutional law *de novo*. *See N.J. Bankers Ass'n v. Att'y Gen. N.J.*, 49 F.4th 849, 854 (3d Cir. 2022); *Waterman v. Farmer, 183 F.3d 208*, 211 (3d Cir. 1999).

**A.   This Court Should Affirm the District Court's Decision on State Statutory Grounds, Avoiding an Unnecessary Constitutional Ruling, Because Pennsylvania's Uniform Unsworn Declarations Act ("UUDA"), Based on the Model UUDA and Federal Practice, Renders a Date Immaterial to a Ballot Declaration's Validity.**

It is a bedrock principle of judicial restraint that federal courts should avoid reaching constitutional questions when a case can be resolved on other grounds. *See Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of."); *Spector Motor Serv., Inc. v. McLaughlin*, 323 U.S.

101, 105 (1944) ("If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality...unless such adjudication is unavoidable."). This "fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." *Lyng v. Nw. Indian Cemetery Protective Ass'n,* 485 U.S. 439, 445 (1988).

A straightforward application of Pennsylvania statutory law, specifically, the Uniform Unsworn Declarations Act ("UUDA"), 42 Pa.C.S. § 6201 *et seq.*[1], provides a clear basis for affirming the District Court's judgment without venturing into the constitutional thicket. The UUDA directly undercuts the RNC's central premise that the Election Code's "date" directive is an unassailable, mandatory requirement whose omission must result in disenfranchisement. Although this statutory argument was not the primary basis of the District Court's ruling, this Court may nevertheless affirm a district court's judgment on any ground

---

[1] The UUDA is attached as "Addendum A."

the record and law support. *See Bernitsky v. United States*, 620 F.2d 948, 950 (3d Cir. 1980) ("…it is well established that we are free to affirm the judgment of the district court on any basis which finds support in the record"); *see also Phila. Area Curran-Fromhold Corr. Facility v. Rizzo*, 502 F.2d 306, 308 n.1 (3d Cir. 1974) ("It is proper for an appellate court to affirm a correct decision of a lower court even when that decision is based on an inappropriate ground.").

Furthermore, statutory interpretation presents a pure question of law subject to plenary review. An appellate court may consider such an issue even if not fully developed below, particularly where, as here, it could resolve the case and avoid a constitutional determination. *See Huber v. Taylor*, 469 F.3d 67, 74 (3d Cir. 2006) (noting discretion to consider issues not raised below); *Bagot v. Ashcroft*, 398 F.3d 252, 256 (3d Cir. 2005) ("This court may consider a pure question of law even if not raised below where refusal to reach the issue would result in a miscarriage of justice or where the issue's resolution is of public importance.") (quoting *Loretangeli v. Critelli,* 853 F.2d 186, 189-90 n. 5 (3d Cir. 1988)). Affirming the District Court's decision on this statutory basis allows Pennsylvania's legislative scheme to be interpreted and

harmonized according to its own terms, without resorting to federal constitutional intervention.

1.   <u>A Pennsylvania voter's mail ballot declaration is an "unsworn declaration" governed by the UUDA.</u>

The Pennsylvania Election Code requires voters using absentee or mail-in ballots to complete and sign a declaration on the outer return envelope.  25 P.S. §§ 3146.6(a), 3150.16(a).  This declaration includes the voter's attestation to their qualifications and that they marked the ballot themselves (or received permitted assistance).  *See* 25 P.S. § 3146.6(a).  This declaration, signed by the voter, falls squarely within the UUDA's definition of an "unsworn declaration."

The Pennsylvania General Assembly adopted the UUDA in 2013.  *In re Turner*, 291 A.3d 519, 523 (Pa. Cmwlth. 2023).  Initially, the UUDA applied only to unsworn declarations made outside the United States.  *Id.* (citing former 42 Pa.C.S. § 6203).  However, in April 2020, the General Assembly amended the UUDA to apply to unsworn declarations made either within or outside the United States.  *Id.*  (citing Act 15 of 2020 and

42 Pa.C.S. § 6203). The UUDA permits using an unsworn declaration instead of a sworn one if the unsworn declaration meets the chapter's requirements, subject to certain enumerated exceptions. See 42 Pa.C.S. § 6204. As the Commonwealth Court noted in *Turner*, the UUDA's core purpose of ensuring truthfulness and providing a basis for perjury charges if false is met by a signed declaration made under penalty of perjury, even without a previously required notarization. *In re Turner*, 291 A.3d at 524.

The UUDA defines an "unsworn declaration" as "[a] declaration in a signed record not given under oath but given under penalty of perjury." 42 Pa.C.S. § 6202. In contrast, a "sworn declaration" includes an "affidavit" or other statement made under oath or affirmation. *Id.* The voter's declaration on a mail-in ballot envelope is precisely that: a statement in a signed record, not administered under oath by an officer, but made under penalty of perjury. Indeed, Pennsylvania's Crimes Code provides that any person signing an official application or document who makes a statement they know to be false, or who is not qualified to sign, is subject to criminal penalties for such false representations. 18 Pa.C.S. § 4904 ("Unsworn falsification to authorities").

Crucially, the UUDA provides that "if a law of this Commonwealth requires or permits use of a sworn declaration, an unsworn declaration meeting the requirements of this chapter has the same effect as a sworn declaration." 42 Pa.C.S. § 6204(a). While the Election Code may not explicitly term the voter declaration "sworn," it serves the identical function: attesting to facts critical for ballot acceptance. The UUDA's exceptions, listed in 42 Pa.C.S. § 6204(b) (e.g., depositions, oaths of office, documents related to notaries' official acts), do *not* include voter declarations on ballot envelopes. Thus, the UUDA directly applies to the ballot declarations at issue.

2.    <u>The UUDA intentionally prioritizes substance over form, making a signature under penalty of perjury, not a date, the key to declaration validity.</u>

Once the UUDA applies, the dispositive question becomes what "requirements of this chapter" an unsworn declaration must meet to have the "same effect as a sworn declaration." 42 Pa.C.S. § 6204(a). A careful examination of the UUDA's plain text and structure reveals a deliberate

legislative choice that substance is paramount, and the date is non-essential for the declaration's legal effect.

*First*, the UUDA's definition of an "unsworn declaration" requires only two elements: (1) a "signed record" and (2) that it be "given under penalty of perjury." 42 Pa.C.S. § 6202.  Conspicuously, neither the definition of "unsworn declaration" nor the definition of "sign" includes any reference to, or requirement of, a date.  *Id.*  This omission is intentional.  The UUDA defines "Sign" as, "[w]ith present intent to authenticate or adopt a record: (1) to execute or adopt a tangible symbol; or (2) to attach to or logically associate with the record an electronic symbol, sound or process." 42 Pa.C.S. § 6202.  This definition plainly focuses on the signatory's act of authentication and intent, not the inclusion of a date.[2]  This UUDA's complete omission of any date requirement under its definition of "sign" also directly contradicts the

_____

[2] The focus on the signatory's intent by the General Assembly under the UUDA is also present elsewhere in PA's statutory scheme.  For example, PA's Commercial Code, 13 Pa.C.S. §§ 1101 *et seq.,* defines "Signed" as including "any symbol executed or adopted *with present intention* to adopt or accept a writing."  13 Pa.C.S. § 1201(b)(27) (emphasis added).  Like the UUDA, the Commercial Code does not require a date of signature to execute or enforce a legal instrument. *See generally,* 13 Pa.C.S. §§ 2201-2210 ("Form, Formation and Readjustment of Contract"), 3301-3312 ("Enforcement of Instruments").

Attorney General's assertion that "the handwritten date is a component to the signature." *See* AGs Br. at 18. As the Uniform Law Comment to Section 6202 notes, "[t]he definition of "sign" is broad enough to cover any writing containing a traditional signature and any record containing an electronic signature." 42 Pa.C.S. § 6202, Comment No. 3.

*Second*, while UUDA § 6206 provides a sample form including blanks for date and location, the statute requires only that an unsworn declaration "*substantially*" comply with the sample form and must be (1) signed and (2) include a declaration under penalty of perjury. 42 Pa.C.S. § 6206(b) (emphasis added). The requirement that declarations only "substantially" comply with the sample form signals legislative intent to avoid invalidating declarations for minor deviations if the core requirements of signature and attestation under penalty of perjury are met.

The sample form's date and location fields are not prerequisites to a declaration's validity. Indeed, mail-in ballot declarations, while having a date field, notably omit the UUDA sample form's city, state, and

country fields found in 42 Pa.C.S. § 6206.[3]  This omission of location fields on *every* mail-in and absentee declaration does not undermine the declaration's solemnity or legal force.  Yet, under the strict formalism the RNC advocates, this omission would potentially disenfranchise millions of Pennsylvania voters who cast mail-in and absentee ballots.

Similarly, omitting a date, when the declaration is signed under penalty of perjury, does not detract from its substantial conformity to the statutory purpose of ensuring truthfulness and accountability.  To argue, as the RNC and its amici effectively do, that an undated but signed declaration is void for all purposes leads to an absurd result.  Such an interpretation would bizarrely *reward* a technical omission, allowing one to escape accountability for substantive falsehoods, an outcome the General Assembly plainly did not intend.  The UUDA's legislative focus on substance (signature plus penalty of perjury) over hyper-technical

---

[3] The voter's home address is included on the outer ballot envelope, but *not* the location where the voter signed the declaration.  The RNC's fraud-deterrent argument assumes that a fraudster would, for reasons unknown, be honest about the date that they forged the ballot or would be more prone to completely omitting the date.  Under that assumption, it also stands to reason that our semi-honest fraudster might reveal his true location if asked by the declaration form.  That information would be far more useful to election authorities than a date.

form reflects a choice to hold voters legally accountable for their representations to election officials. This purpose is fulfilled by the signature and attestation, regardless of a date. The broad reach of the UUDA also underscores the General Assembly's intent not to disenfranchise Pennsylvanians due to a nonsubstantive omission or mistake, especially where the underlying declaration is legally effective.

*Third,* federal courts have <u>not</u> required a date to enforce unsworn declarations under 28 U.S.C. § 1746 ("Unsworn declarations under penalty of perjury")[4], which is the statute after which the Uniform Unsworn Declarations Act, drafted by the National Conference of Commissioners on Uniform State Laws ("Uniform Law Commission") and subsequently adopted by Pennsylvania, is modeled. In its Prefatory Note to the Model Act, the Uniform Law Commission explains the purpose of the Act:

> "The UUDA will extend to state proceedings the same flexibility that federal – and a number of state – courts and agencies have employed for decades. Since 1976, federal law (28 U.S.C. § 1746) has allowed an unsworn declaration to be recognized and valid as

---

[4] 28 U.S.C. § 1746 is attached as "Addendum B."

the equivalent of a sworn affidavit if it contained an affirmation substantially in the form set forth in the federal act. The courts, though, have ruled that 28 U.S.C. § 1746 is inapplicable to state court proceedings. […]

*Enactment of the UUDA harmonizes state and federal treatment of unsworn declarations.* Uniformity is important because many matters at to which the use of unsworn declarations is valuable will involve more than one state or jurisdiction. Further, the UUD will reduce aspects of confusion regarding differences in federal and state litigation practice. The act also eases some of the declarants' burdens in providing important information for state proceedings."

Unif. Unsworn Declarations Act, Prefatory Note (Nat'l Conf. of Comm'rs on Unif. State L. 2016) (emphasis added)[5]. There is no doubt that the Model UUDA is intended to liberalize and "harmonize" the treatment of unsworn declarations between state and federal courts. Therefore, understanding federal court practice concerning the validity of undated declarations provides much-needed context. Fortunately, several federal courts have already squarely addressed the necessity of date requirement under 28 U.S.C. § 1746.

The cases that follow, from federal courts around the country, all reach the same conclusion: The lack of a date does <u>not</u> invalidate a

---

[5] The Model UUDA and its Prefatory Note are attached as "Addendum C."

declaration. For example, in *EEOC v. World's Finest Chocolate, Inc.*, 701 F. Supp. 637 (N.D. Ill. 1988), the defendant employer challenged an EEOC charge because the employee, Faye Calvin, had signed but not dated it. *Id.* at 639. Extrinsic evidence, however, established the approximate time frame (between September 12 and September 24, 1984) in which the charge was signed. *Id.* The court, applying 28 U.S.C. § 1746, unequivocally held that the "*crucial aspect of the form provided in the statute is that the person write his or her signature under penalty of perjury.*" *Id.* (emphasis added). While acknowledging the date's importance for a potential perjury charge, the court reasoned "it does not follow that the signor must write the date. Rather, it is simply essential that the date or approximate date (depending on the situation) be demonstrable, as is the case here." *Id.* The court further noted that the defendant suffered no prejudice, as the charge itself was date-stamped by the EEOC, *id.* at 639-40, in a very similar manner to mail ballots. The *World's Finest Chocolate* decision thus supports the interpretation that Pennsylvania's UUDA, aimed at harmonization with federal practice, prioritizes the substantive act of signing under penalty of perjury over

the hyper-technical requirement of a voter-inscribed date, particularly when an approximate date range is ascertainable.

Similarly, in *Pieszak v. Glendale Adventist Medical Center*, 112 F. Supp. 2d 970 (C.D. Cal. 2000), the court considered the admissibility of a nurse's declaration in a slander action where the day of the month in the execution line was left blank, though the month and year ("January 1997") were included. *Id*. at 999. The nurse's subsequent deposition testimony confirmed she signed it in January 1997 when the matters were fresh in her memory. *Id*. The court, citing 28 U.S.C. § 1746 and *World's Finest Chocolate*, held that "[s]ubstantial compliance with the statute...is sufficient for admissibility." *Id*. at 999. It reiterated that a party need only show "the [execution] date or approximate date (depending on the situation)." *Id*. (quoting *World's Finest Chocolate, Inc.*, 701 F. Supp. at 639). Because the declaration and deposition testimony provided an "approximate date of signature: January 1997," and the defendant showed no reason why this was insufficient, the court deemed the declaration admissible. *Id*. This aligns with the Pennsylvania UUDA's mandate that an unsworn declaration need only be in "substantially" the form provided in 42 Pa.C.S. § 6206, suggesting

that minor deviations, like an imprecise or missing date, do not invalidate the declaration if its essential elements and approximate timing are ascertainable.

Finally, the case of *Coleman v. Experian Information Solutions, Inc.*, 655 F. Supp. 3d 1285 (N.D. Ga. 2023), further illustrates the federal judiciary's pragmatic approach with unsworn declarations. There, a consumer in a Fair Credit Reporting Act case submitted an undated declaration. *Id.* at 1298. While the court acknowledged that the omission rendered the declaration "technically deficient" under 28 U.S.C. § 1746, it nevertheless *considered* the declaration to the extent it raised a genuine issue of material fact regarding emotional distress damages. *Id.* at 1304. The court did not summarily dismiss the declaration based on the missing date alone, but instead focused on its substantive contribution to the case.

These federal cases, interpreting a statute expressly used as a model for state UUDAs like Pennsylvania's, consistently demonstrate that the core requirements for an unsworn declaration's validity are (1) the signature and (2) the affirmation made under penalty of perjury.

26

None of the federal cases above required an exact date, but rather an *approximate, ascertainable date range.* For every single mail ballot (undated or misdated) that is delivered to Pennsylvania voters, there is an approximate, ascertainable date range for every signature. Those mail ballots are initially mailed to voters by county boards around September. The date those ballots are sent out from the election office is the *earliest* possible date a ballot declaration could be signed by any voter. The *latest* possible date of signature is the statutory deadline when ballots must be received by the county boards on Election Day at 8pm. That is a finite timeline, during which all eligible voters could legally sign the declaration. In other words, it's an approximate, ascertainable date range. In the words of Justice Donohue in *Ball v. Chapman,* "Absent some metaphysical phenomenon, the signature and date could only be affixed during the period of time in which the ballot is in the possession of the elector. Consequently, a date outside of that timeframe can only reflect the voter's confusion about what date to provide on the declaration contained on the outer envelope." *Ball v. Chapman*, 289 A.3d 1, 31 (Pa. 2023) (Donohue, J., concurring).

The date, while part of the recommended form in 28 U.S.C. § 1746, the Model UUDA, and the Pennsylvania UUDA, is not a fatal flaw if omitted, especially when the approximate date of execution is ascertainable.  Given that the Model UUDA's explicit aim to harmonize state law with such federal practices and PA UUDA's own "substantial compliance" language in 42 Pa.C.S. § 6206, this Court should find that a Pennsylvania voter's signed but undated declaration on a ballot envelope, made under penalty of perjury, is legally effective.

3.    <u>State court precedent confirms the UUDA's broad application to the Election Code, prioritizing substance over formalism.</u>

The Pennsylvania Commonwealth Court's decision in *In re Turner*, 291 A.3d 519 (Pa. Cmwlth. 2023), demonstrates that the UUDA's modern, substance-focused principles apply to the Election Code.  In *Turner*, the court considered whether a candidate's affidavit, required by the Election Code to be filed with a nomination petition, was invalid because it was signed but not notarized.  *Id.* at 520-21.  Section 910 of the

Election Code, 25 P.S. § 2870[6], which details the requirements for a candidate's affidavit, notably omits any mandate for notarization *or a date*, despite the "solemnity" of the attestation.

While prior case law suggesting notarization was mandatory for certain affidavits in limited contexts[7], the *Turner* court recognized the UUDA's superseding effect on such formalisms. It held that the candidate's subsequently filed "Candidate Declaration," signed under penalty of perjury though unnotarized, constituted a valid unsworn declaration *under the UUDA. In re Turner*, 291 A.3d at 523–24. Consequently, the declaration possessed the "same effect" as a traditionally sworn and notarized affidavit. *Id.* The court reasoned that because the signed declaration was made under penalty of perjury, it fulfilled the UUDA's objectives of ensuring truthfulness and establishing

---

[6] 25 P.S. § 2870 is attached as "Addendum D."

[7] *See Bolus v. Saunders*, 833 A.2d 266, 269 (Pa. Cmwlth. 2003) (holding that a failure to sign an affidavit before a notary, in the context of a referendum petition under Scranton's Home Rule Charter, was a defect not merely "technical"). The *Turner* court took note of *Bolus* but found the UUDA's later enactment and broad applicability to unsworn declarations provided an alternative means of validation for the candidate's affidavit in that case. *In re Turner*, 291 A.3d at 523.

a basis for potential perjury charges, thereby rendering formal notarization unnecessary. *Id*. at 524.

In the words of the *Turner* court, "where an unsworn signed declaration is made under penalties of perjury and not subject to one of the enumerated exceptions, under the Declarations Act, such an unsworn declaration has the same effect and is the functional equivalent of a sworn declaration given under oath." *Id*. The Note to Section 6204 of the UUDA expresses the same sentiment: "'Except as provided in subsection 4(b) of this section, an unsworn declaration meeting the requirements of this act may be used in a state proceeding or transaction whenever other state law authorizes the use of a sworn declaration. Thus, if other state law permits the use of an affidavit, an unsworn declaration meeting the requirements of this act would also suffice.'" *Id*. at 523 (quoting 42 Pa.C.S. § 6204, Note).

*Turner* was not a narrow or idiosyncratic ruling; it was a recent, direct application of the UUDA's intended purpose to supersede older, more rigid formalities when a signed declaration under penalty of perjury exists, thereby effectuating the legislature's will. By amending the

UUDA in 2020 to remove its geographic limitation and apply it broadly to all declarations within Pennsylvania, the General Assembly clearly signaled its intent for the UUDA to interact with all relevant state laws requiring verified statements, including those in the Election Code. *In re Turner* recognized and effectuated this legislative intent, looking past a technical requirement (notarization) to the substantive compliance the UUDA provides.

Similarly, here, the fundamental purpose of the voter's declaration on a mail-in ballot envelope, which is to affirm the voter's identity and eligibility, is achieved through the voter's signature and the declaration's attestations.   The District Court found, and the Secretary of the Commonwealth has conceded, that the handwritten date on a mail ballot serves no material purpose in verifying eligibility, preventing fraud, or ensuring the ballot's timeliness.  (*See* Eakin Lower Ct. Op. 20, n. 9).

Just as the *Turner* court looked past the technical requirement of notarization, this Court should find that a voter's signed declaration on a ballot envelope, made under penalty of perjury, is legally effective under the UUDA even if the voter omits or mistakes the date.  Such an

omission or mistake does not undermine the declaration's core objectives of truthful attestation and legal accountability.

4.    <u>Pennsylvania canons of statutory construction compel reading the UUDA as governing the validity of ballot declarations.</u>

Several canons of statutory construction under Pennsylvania law also compel the conclusion that the UUDA, particularly its 2020 amendments, informs and, where necessary, modifies the interpretation of the Election Code's "date" directive for ballot declarations. The "object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a).

*First*, the timing of the relevant enactments is critical. The mail-in ballot provisions, including the requirement that a voter "shall...date" the declaration, were established by Act 77 of 2019. Act 12 of 2020 (effective March 27, 2020) made further amendments to election procedures, retaining the "date" language. Crucially, Act 15 of 2020 (effective April 20, 2020) significantly broadened the UUDA by removing its prior limitation to declarations made outside the U.S., making it applicable to all declarations executed within Pennsylvania. This expansion of the

UUDA to domestic declarations occurred after the Election Code's specific date requirement for mail-in ballots was in place.  Under 1 Pa.C.S. § 1936, when statutes are irreconcilable, "the statute latest in date of final enactment shall prevail."  Although Acts 12 (Election Code) and 15 (UUDA) were enacted by the same General Assembly, Act 15's final enactment on April 20, 2020, followed Act 12's final enactment on March 27, 2020.  This later, broader enactment of the UUDA suggests a legislative intent for its provisions governing the legal effect of unsworn declarations to apply to all relevant Pennsylvania contexts, including the Election Code's pre-existing framework.

*Second*, legislative history reveals contemporaneous consideration of Election Code amendments (Act 12) and UUDA amendments (Act 15). *See, e.g.,* Pa. H.R. Jour., 204th Gen. Assemb., Reg. Sess. No. 12 (Mar. 24, 2020) (discussing the UUDA and Election Code amendments).  This history indicates the legislature was aware of the Election Code's date requirement when expanding the UUDA's domestic applicability mere weeks later, supporting an inference that it intended the UUDA's modern, simplified standard to interact with and govern existing laws

like the Election Code.  *See* 1 Pa.C.S. § 1921(c)(7) (contemporaneous legislative history may be considered to ascertain legislative intent).

*Third*, statutes *in pari materia*, i.e., those relating to the same persons or things or to the same class of persons or things, "shall be construed together, if possible, as one statute." 1 Pa.C.S. § 1932.  The Election Code provisions for voter declarations and the UUDA provisions for unsworn declarations both relate to the legal requirements and effect of verified statements in official processes.  Construing them together, the UUDA provides a general mechanism for giving legal effect to unsworn declarations meeting its core requirements (signature plus penalty of perjury).  This mechanism can and should inform the specific instance of the ballot declaration, especially to avoid disenfranchisement for a technical omission that the UUDA framework deems non-essential for legal validity.

*Fourth*, under 1 Pa.C.S. § 1933, if a general provision (like the UUDA's terms for valid unsworn declarations) conflicts with a special provision (like the Election Code's "date" directive), they should be construed to give effect to both if possible.  If irreconcilable, the special

34

provision usually prevails, unless "the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail." *Id.* Here, the UUDA was amended to apply generally *after* the special Election Code provision was in place.

When the UUDA was expanded in 2020, the "manifest intention" was to create a uniform, simplified standard for unsworn declarations to have the same effect as traditionally sworn ones, thus reducing formalistic barriers, in harmonization with the Model UUDA and federal practice. This broad remedial purpose demonstrates an intent to prioritize substantive validity over a purely formal, non-material element like a date.

*Finally*, Pennsylvania courts presume "[t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable," and "[t]hat the General Assembly intends to favor the public interest as against any private interest." 1 Pa.C.S. § 1922(1), (5). Disenfranchising thousands of otherwise qualified voters for omitting a date that serves no operational purpose and is a "vestige of a different era" (as the Secretary of the Commonwealth conceded) is an

35

unreasonable result. (*See* Eakin Lower Ct. Op. at 16-19, 20-21). It undermines the public interest in facilitating the right to vote, an interest consistently favored by Pennsylvania courts through the liberal construction of election laws. *See, e.g., In re Canvass of Absentee & Mail-in Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d 1058, 1062 (Pa. 2020) ("[W]e adhere to the overarching principle that the Election Code should be liberally construed so as to not deprive, inter alia, electors of their right to elect a candidate of their choice"); *In re Turner*, 291 A.3d at 521-22 (reiterating policy of liberally construing Election Code to "protect the elective franchise"). Applying the UUDA to give effect to signed, attested ballot declarations, even if undated, aligns with these presumptions and established Pennsylvania jurisprudence.

5. <u>Affirming on statutory grounds, by distinguishing Ball v. Chapman, is judicially prudent.</u>

Resolving this case based on the Pennsylvania Uniform Unsworn Declarations Act (UUDA) aligns with the well-established principle of constitutional avoidance. The RNC and its amici rely on *Ball v. Chapman*, 289 A.3d 1 (Pa. 2023), arguing that the Election Code's date

requirement is mandatory and that non-compliance disenfranchises the voter. *See* RNC Br. at 2, 13-14; AG Br. at 2, 17-18. That reliance is misplaced.

The Pennsylvania Supreme Court's fractured decision in *Ball* is distinguishable and does not control here. The *Ball* court acknowledged its holding was "cobbled together" from prior "fractured decisions" to interpret the date directive solely within the confines of the Election Code. *Ball*, 289 A.3d at 20. The court in *Ball* only addressed whether the Election Code's directive that a voter "shall...date" the declaration, 25 P.S. § 3146.6(a), is mandatory or directory *under that statute alone*; it did not consider Pennsylvania's broader statutory scheme. *Ball*, at 20-22 ("As a matter of statutory interpretation *of our Election Code*, we now reaffirm that conclusion [that the date requirement is mandatory].") (emphasis added). The *Ball* court's analysis centered on the legislature's use of "shall" within the Election Code (an Act drafted before the UUDA's 2020 amendment), concluding the word imposed a mandatory duty on the voter. *Id.* at 2.

Critically, the *Ball* court did not have before it, nor did it analyze, the distinct legal question of the UUDA's independent applicability. It also did not address the UUDA's specific impact on the legal sufficiency of an unsworn declaration that "substantially conforms" to the UUDA's own requirements, namely, a signature under penalty of perjury, even if a non-substantive element like the date is missing. Adams County is unaware of any state or federal court that has yet addressed the UUDA's application to undated or misdated ballot declarations.

Furthermore, the *Ball* court's own directives undermine its "mandatory" interpretation of the date requirement. Tellingly, the Pennsylvania Supreme Court in *Ball* instructed election officials to accept ballots with dates falling within a broad window for the 2022 General Election (September 19th – November 8th, 2022, for mail-in ballots; August 30th – November 8th, 2022, for absentee ballots). *Ball*, 289 A.3d at 23. Yet, the court had just asserted that the General Assembly "implied" an understanding that 'date' conclusively meant the date of signature. *Id.* at 22 ("Implicit in the Election Code's textual command that electors 'shall... fill out, date and sign the declaration,' is the understanding that 'date' refers to the day upon which an elector

signs the declaration."). These divergent holdings present an apparent conflict between strict adherence and substantial compliance. For instance, if officials learn a voter signed the declaration one day but dated the envelope the next, with both dates falling within the court's acceptable range, county boards would face a dilemma: must they void the ballot because the voter failed to understand the General Assembly's "implicit" definition of 'date', or may they accept *any* date within the Court's broad window? The UUDA's application, not considered by the *Ball* court, resolves this ambiguity.

Therefore, *Ball's* narrow holding on the date directive under the Election Code does not preclude this Court from finding that the UUDA provides a separate, and potentially harmonizing, basis for deeming an undated or misdated (but signed and attested) declaration legally effective. "When the state's highest court has not addressed the precise issue, a federal court must predict how the state's highest court would resolve it." *Paolella v. Browning Ferris, Inc.*, 158 F.3d 183, 189 (3d Cir. 1998). This Court can therefore consider the UUDA's impact, an issue of state law the Pennsylvania Supreme Court has not yet decided in this specific context, especially where the Commonwealth Court has. *Id.*

("Absent a definitive statement of the applicable law by the state's highest court, a district court may also consider the decisions of state intermediate appellate courts in order to facilitate its prediction.") (citing *Rolick v. Collins Pine Co.,* 925 F.2d 661, 664 (3d Cir. 1991). By giving full effect to the UUDA, this Court can honor the General Assembly's clear legislative judgment that a signed declaration, made under penalty of perjury, is legally sound, thereby preventing the unjust disenfranchisement of Pennsylvania voters over a single word that the UUDA renders immaterial. This resolution fulfills the Pennsylvania Supreme Court's charge that "[t]echnicalities should not be used to make the right of the voter insecure. No construction of a statute should be indulged that would disenfranchise any voter if the law is reasonably susceptible of any other meaning." *In re Canvass,* 241 A.3d at 1062.

The Election Code and the UUDA can and should be read harmoniously: While the Election Code directs voters to include a date, the UUDA clarifies that omitting such a date, an element the District Court correctly found serves no purpose in determining voter eligibility or preventing fraud, does not strip a declaration of its legal validity when substantive requirements of the declaration are met. By analyzing this

40

interplay of state statutes, an issue *Ball* did not address, but *Turner* did, this Court can affirm the District Court's judgment on statutory grounds. This approach avoids reaching federal constitutional claims, thereby respecting principles of federalism and Pennsylvania's authority over its own elections.

For these reasons, this Court should affirm the District Court's judgment on the basis that the Pennsylvania Uniform Unsworn Declarations Act renders a date immaterial to the validity of a voter's signed declaration on a mail-in ballot envelope.

**B. Alternatively, the District Court's Determination that the Date Requirement Violates the First and Fourteenth Amendments Should Be Affirmed.**

Should this Court decline to affirm the District Court's judgment on statutory grounds, it should nevertheless affirm based on the District Court's sound conclusion that Pennsylvania's date requirement for mail-in ballot declarations violates the First and Fourteenth Amendments to the United States Constitution.

When a state election law burdens the right to vote, courts apply the flexible *Anderson-Burdick* framework, weighing "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments" against "the precise interests put forward by the State as justifications for the burden imposed by its rule," considering "the extent to which those interests make it necessary to burden the plaintiff's rights." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)). Here, the date requirement, a rule serving no material purpose yet disenfranchising thousands of otherwise eligible voters, cannot withstand this scrutiny.

1.  <u>Disenfranchisement for an immaterial omission imposes a constitutionally significant burden, distinct from the Materiality Provision analysis.</u>

The act of voting, and crucially, the right to have one's vote counted, is "of the most fundamental significance under our constitutional structure." *Burdick*, 504 U.S. at 433; *see also Reynolds v. Sims,* 377 U.S. 533, 561-62 (1964). The RNC wrongly suggests that this Court's recent decision in *Pennsylvania State Conference of NAACP Branches v. Secretary Commonwealth of Pennsylvania*, 97 F.4th 120 (3d Cir. 2024),

forecloses any constitutional challenge. (See RNC Br. at 2-4). In *NAACP Branches*, this Court held that Pennsylvania's date requirement does not violate the Materiality Provision of the Civil Rights Act, 52 U.S.C. § 10101(a)(2)(B), because the date itself is not material to determining a voter's qualification to vote. *NAACP Branches*, 97 F.4th at 130-31. The RNC argues that if the date is not "material" under the Civil Rights Act for determining voter qualification, then its omission cannot impose a constitutionally significant burden under the First and Fourteenth Amendments. *Id.*

This argument misapprehends the distinct inquiries demanded by the Materiality Provision and the *Anderson-Burdick* framework. The Materiality Provision asks a narrow question: whether an error or omission is "material to determining whether such individual is qualified under State law to vote." 52 U.S.C. §10101(a)(2)(B). In contrast, the *Anderson-Burdick* framework presents a broader question: Does the *consequence* imposed by the state for an undated declaration, namely the outright rejection of an otherwise valid ballot from a qualified voter, impose an unconstitutional burden on First Amendment and Fourteenth Amendment rights when weighed against the state's justifications?

43

While *NAACP Branches* established that the date itself is not "material" to assessing a voter's underlying eligibility under the Civil Rights Act, it did not hold that the act of disenfranchisement resulting from its omission carries no constitutional weight under *Anderson-Burdick*.  An error need not pertain to a voter's core qualifications to result in a constitutionally cognizable burden if the state penalizes that error with disenfranchisement.  The *NAACP Branches* court implicitly recognized this by remanding an Equal Protection claim for further consideration, thereby acknowledging that other constitutional challenges to the date requirement remained viable beyond the Materiality Provision's narrow confines.  *See NAACP Branches*, 97 F.4th at 135.

The *consequence* of the RNC's preferred interpretation, complete disenfranchisement, is severe.  As the District Court found, this requirement led to the rejection of *over 10,000 ballots* in a single election cycle.  Eakin Lower Ct. Op. at 6.  Nullifying a qualified voter's ballot for an error unrelated to their eligibility or the ballot's timeliness directly and significantly burdens the fundamental right to vote and to have that

vote effectively counted. Disenfranchising over 10,000 otherwise eligible voters in a single election cycle due to an omission found to serve no legitimate state interest constitutes a significant, and indeed severe, burden on the fundamental right to vote under the *Anderson-Burdick* framework. *See Burdick* at 434; *Anderson* at 789; *Mazo v. N.J. Sec'y of State*, 54 F.4th at 137 (explaining that even regulations imposing lesser burdens must be justified by 'legitimate' state interests which are 'sufficiently weighty').

This is not one of the "usual burdens of voting" contemplated in *Crawford v. Marion County Election Board*, 553 U.S. 181 (2008), which involved voter-ID requirements demonstrably linked to verifying voter identity. Rather, it is the functional equivalent of a literacy test, using the date directive as a "test or device" to weed out unsuspecting Pennsylvanians who fail to "demonstrate the ability to read, write, understand, or interpret" the General Assembly's nebulous date directive, a directive that led even Pennsylvania's top court to issue contrary and "fractured" opinions every time they were required to interpret it. *See* 52 U.S.C. §§ 10501(banning discriminatory literacy tests) and 10303(c) (defining "test or device"); *see also, Ball v. Chapman*,

289 A.3d at 20 (referencing an earlier fractured opinion in *In re Canvass of Absentee and Mail-In Ballots of November 3, 2020*, 241 A.3d 1058 (Pa. 2020))."

The RNC's (and its amici's) reliance on *McDonald v. Board of Election Commissioners*, 394 U.S. 802 (1969), is also misplaced. *See* RNC Br. at 40-45; AG Br. at 16; Pa. Legis. Leaders Amicus Br. at 14. They invoke *McDonald* to argue that since mail-in voting is a statutory privilege when in-person alternatives exist, regulations like the date requirement do not significantly burden the constitutional right to vote and thus face minimal scrutiny. *Id.* However, *McDonald* addressed Illinois's decision not to extend its absentee voting system to unsentenced pretrial detainees, concluding this did not deny them the franchise because other voting means were available. *See McDonald*, 394 U.S. at 807-09. It did not sanction imposing arbitrary or irrational hurdles within an *existing, universal* mail-in voting system that a state has established for all qualified voters. Once Pennsylvania established such a universal system, it cannot impose "arbitrary and disparate treatment" by rejecting ballots for trivial, immaterial errors that do not implicate

voter eligibility or election integrity. *Cf. Bush v. Gore,* 531 U.S. 98, 104-05 (2000) (per curiam).

Indeed, the General Assembly <u>expressly prohibits</u> the rejection of military-overseas ballots under the Uniform Military and Overseas Voters Act, 25 Pa.C.S. § 3501 *et seq.*, on the same trivial basis that the RNC seeks to reject mail-in and absentee ballots:

> **§ 3515. Prohibition of nonsubstantive requirements.**
> **(a) Mistake, omission or failure to satisfy.--** None of the following shall invalidate a document submitted under this chapter:
> (1) A voter's mistake or omission in the completion of a document under this chapter as long as the mistake or omission does not prevent determining whether a covered voter is eligible to vote.
> (2) Failure to satisfy a nonsubstantive requirement, such as using paper or envelopes of a specified size or weight.

*See* 25 Pa.C.S. § 3515(a). Not only does this statute demonstrate the General Assembly's intention to prioritize substance over form in the election context, *see* Section V.A.2, 3 above, but it also underscores the "arbitrary and disparate treatment" of timely cast ballots from a different class of voters, namely, qualified mail-in and absentee voters, due to the omission of a date that serves no valid state purpose. If Pennsylvania law deems such nonsubstantive errors insufficient to disenfranchise

military and overseas voters, it is constitutionally untenable to demand the disenfranchisement of other qualified Pennsylvania voters for an equally inconsequential error.

2.  The State's Purported Interests Crumble Under Scrutiny and Cannot Justify Disenfranchisement.

When a voting rule imposes a burden, it must be justified by relevant and "sufficiently weighty" state interests. *Burdick*, 504 U.S. at 434. The RNC (and its amici) proffer several justifications on behalf of the Commonwealth, but none withstand scrutiny or provide a constitutionally adequate basis for the date requirement. The primary justification offered is fraud prevention. (*See* RNC Br. at 52-57; AG Br. at 26-27). While preventing fraud is a legitimate state interest, *see Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 669 (2021), the means chosen must actually and substantially serve that end. Here, they do not.

As the District Court rightly recognized, "[a]bsent from the record, however, is any evidence demonstrating how [the date requirement] furthers that purported interest [in preventing fraud]." Eakin Lower Ct. Op. at 16. Indeed, Pennsylvania's robust anti-fraud measures relating to

mail-in/absentee ballots, including verification of voter ID upon mail-in ballot application[8], criminal penalties for false registration[9], a challenge process to dispute a mail-in voters' qualifications[10], voter roll maintenance[11], unique ballot tracking barcodes via the SURE system, declarations made under penalty of perjury[12], provisional ballot processes to prevent double voting[13], timely-return deadlines[14], canvassing of ballots and recounts based on fraud allegations[15], and post-election audits[16], all operate entirely independently of the voter-written date. Election officials only examine the date on the outer envelope, if at all, to segregate ballots for potential litigation surrounding undated or misdated declarations, not as an active tool for fraud detection.

The date, whether missing or mistaken, does not inherently evidence fraud. It defies reason that omitting a date would evidence an

---

[8] 25 P.S. §§ 3146.2b(c), 3150.12b(b), 3150.12(d), 3146.2(e)

[9] 25 P.S. § 3552

[10] *Id.*
[11] 25 P.S. § 1222
[12] 25 P.S. §§ 3146.6(a), 3150.16(a)
[13] 25 P.S. § 3050(a.4)
[14] 25 P.S. §§ 3146.6(a), 3150.16(a)
[15] 25 P.S. §§ 3154, 3261
[16] 25 P.S. § 3031.17

attempt to defraud; a savvy fraudster would more likely complete the entire declaration meticulously to avoid suspicion. Similarly, a mistaken date, such as a voter inadvertently writing their birth date, does not inherently suggest fraud; if anything, such an error by an otherwise eligible voter may further confirm the signatory's identity if compared against voter registration data. Yet, under the RNC's theory, such a minor, immaterial error should deprive the voter of their fundamental right to meaningfully participate in democracy.

The reliance by the RNC and its amici on *Commonwealth v. Mihaliak*, No. CP-36-CR-0003315-2022 (Lancaster Cty. C.C.P. 2022), to demonstrate the usefulness of the voter-written date in detecting fraud is misplaced and overstated. *See* RNC Br. at 56, 58, 61-62; AG Br. at 26-27; Pa. Legis. Leaders Amicus Br. at 7-8. The District Court explicitly found, based on record evidence, that the fraud in *Mihaliak* was detected via the SURE system and death records, *not* the envelope date. Eakin Lower Ct. Op. at 17-18. The Attorney General's assertion that the real question is whether the handwritten date "*can* be used to detect or prove fraud" (AG Br. at 27) sets far too low a bar. A mere *possibility* that a piece of information *could*, in some hypothetical future scenario, prove

useful to authorities does not render it a "sufficiently weighty" justification for disenfranchising voters. *Burdick*, 504 U.S. at 434. The connection between the voter-supplied date and actual fraud prevention is tenuous at best and unsupported by the record. A rule with no meaningful, substantial connection to preventing fraud cannot be justified simply by invoking its specter, particularly when existing, effective measures are already in place. *See League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 246 (4th Cir. 2014) (striking down voting restrictions based on tenuous claims of North Carolina regarding "fraud prevention": "[S]tates cannot burden the right to vote in order to address dangers that are remote and only 'theoretically imaginable'").

Next, the RNC asserts an interest in orderly election administration. *See* RNC Br. at 53, 59. This claim lacks a basis in reality. Ballot timeliness is statutorily determined by the date of receipt, not the voter-written date. 25 P.S. §§ 3146.6(c), 3146.8(g)(3), 3150.16(c), 3150.17(b)(5); Eakin Lower Ct. Op. at 18-19. Rather than aiding administration, the requirement creates confusion and forces election officials to expend resources scrutinizing and litigating an inconsequential omission. Indeed, Pennsylvania's own Secretary of the

Commonwealth has previously argued that the date requirement undermines sound election administration and serves no useful function. Eakin Lower Ct. Op. at 20-21 (citing Brief for Secretary of the Commonwealth at 5-6, 20, *Pa. State Conf. of NAACP Branches v. Schmidt*, No. 1:22-cv-339 (W.D. Pa. Nov. 2, 2022), ECF No. 440). Adams County agrees with the Secretary's assessment. Voiding undated or misdated ballots imposes significant burdens on election staff who must scrutinize and segregate them from the pre-canvass tallies[17], on boards of elections who must make undefined "date" determinations and notify voters of unclear appellate rights for adverse decisions, and on solicitors who must conduct additional legal reviews.

In addition to the administrative hurdles, counties face additional investigative hurdles related to enforcement because they have no means of verifying if a voter-written date matches the actual signing date. *See Ball*, 289 A.3d at 23 ("How county boards are to verify that the date an

---

[17] Election staff are already under various time crunches imposed by the General Assembly to pre-canvass mail-in and absentee ballots before the official canvass since they are not permitted to pre-canvass ballots prior to Election Day. *See, e.g.,* 25 P.S. §§ 3146.8(g)(1.1) ("The county board shall continue to pre-canvass ballots until all ballots received on election day have been pre-canvassed..."), 3150.16(a) (applying the same to mail-in ballots).

elector provides is, in truth, the day upon which he or she completed the declaration is a question that fall beyond our purview."). Neither the RNC nor its amici suggest how counties are to enforce its strict formalism if the intent of the General Assembly is to ensure that the date on the ballot matches the true date of declaration, as they suggest. Should boards seek additional unsworn/sworn declarations from every mail voter that the date matches the day the ballot declaration was signed? Should boards simply deny a ballot with a suspected mistaken date (even within an acceptable window) and leave it for the courts to have voters testify under oath about the date they signed the ballot? Neither of these options is tenable or relieves burdens on election officials or the courts. In fact, such enforcement options would require *greater* burdens on the voters. *See* Section V.B.1 above. Leaving these unverifiable tasks to 67 different boards guarantees inconsistent determinations, even more litigation, and less orderly administration.

The RNC further attempts to justify the date requirement by invoking an abstract interest in "maintaining solemnity" in the voting process. RNC Br. at 54. This appeal to "solemnity" is a specious distraction, as the gravity of the declaration stems not from the rote

insertion of a date, but from the voter's attestation under penalty of perjury. This signed attestation, confirming their eligibility, their identity, and that they have personally marked their ballot, is the genuine source of solemnity and responsibility in the mail-in voting process. It is this act that impresses upon the voter the significance of their civic duty and the legal consequences of false representations.

To contend that the addition of a handwritten date, a piece of information often readily available to or recorded by election officials through postmarks or the county's own date-stamping process upon receipt, materially enhances this inherent solemnity is to elevate form over substance. The date itself performs no communicative function regarding the voter's understanding of the oath, their qualifications, or their commitment to the truthfulness of their declaration. A voter who meticulously completes the declaration, affirms their eligibility under penalty of perjury, and properly seals their ballot has engaged in a solemn act, whether or not they remember to also write down the day's date.

Thus, the suggestion that this minor, often redundant, administrative detail is so crucial to the "solemnity" of voting that its omission should justify the disenfranchisement of an otherwise qualified citizen strains credulity. Such a position devalues the significant attestations made under penalty of perjury and imposes a disproportionate penalty, the loss of a fundamental right, for an oversight that has no bearing on the integrity or seriousness of the vote itself. As the District Court implicitly found by rejecting similar insubstantial justifications, no legitimate state interest, least of all this hazy concern for date-induced solemnity, can warrant such a consequence.

Because the date requirement serves no legitimate state interest, or at best advances such interests in an infinitesimally small way, while imposing the severe burden of disenfranchisement, it cannot survive *Anderson-Burdick* balancing. The District Court correctly found the requirement fails even rational basis review because it lacks a "relevant and legitimate" justification connected to its effect. Eakin Lower Ct. Op. at 19. Simply put, the RNC's insistence on disenfranchising thousands of Pennsylvanians over a single, undefined word that bears no reasonable

or substantial relationship to any of their asserted "interests" is constitutionally indefensible.

Therefore, should this Court reach the constitutional question, it should affirm the District Court's finding that the date requirement imposes an unconstitutional burden on the right to vote, in violation of the First and Fourteenth Amendments.

## VI.    CONCLUSION

For all the foregoing reasons, based on the proper application of Pennsylvania's Uniform Unsworn Declarations Act, and alternatively, based on the unconstitutionality of applying the Election Code's date requirement to disenfranchise qualified voters when no legitimate state interest is served, Appellee Adams County Board of Elections respectfully requests that this Honorable Court affirm the judgment of the United States District Court for the Western District of Pennsylvania.

                    Respectfully submitted,

                    /s/ Molly R. Mudd
                    Molly R. Mudd, Esq.
                    Adams County Solicitor
                    PA Supreme Court ID: 63496
                    117 Baltimore Street
                    Gettysburg, PA 17325
                    (717) 337-5911
                    mmudd@adamscountypa.gov

                    Sean A. Mott, Esq.
                    Adams County First Assistant Solicitor
                    PA Supreme Court ID: 310690
                    117 Baltimore Street
                    Gettysburg, PA 17325
                    (717) 337-5911
                    samott@adamscountypa.gov

## COMBINED CERTIFICATIONS

Pursuant to the Federal Rules of Appellate Procedure and the Local Rules of this Court, I, Molly R. Mudd, hereby certify the following on behalf of counsel for Defendant-Appellee Adams County Board of Elections:

Bar Membership: Lead counsel for Defendant-Appellee Adams County Board of Elections (Molly R. Mudd, Esq., PA ID: 63496) is a member in good standing of the Bar of the United States Court of Appeals for the Third Circuit.

Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements: This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because it contains 12,139 words, excluding the parts exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font for text and footnotes.

Compliance with LAR 28.3(c) (Electronic Filing): The text of the electronic version of this brief is identical to the text in the paper copies.

The electronic version of this brief was scanned for viruses using Microsoft Defender Antivirus, and no virus was detected.

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of June, 2025, I caused the foregoing BRIEF FOR DEFENDANT-APPELLEE ADAMS COUNTY BOARD OF ELECTIONS to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Third Circuit using the CM/ECF system. Counsel for all parties to this appeal are registered CM/ECF users and will be served by the appellate CM/ECF system.

Respectfully submitted,

/s/ Molly R. Mudd
Molly R. Mudd, Esq.
Adams County Solicitor
PA Supreme Court ID: 63496
117 Baltimore Street
Gettysburg, PA 17325
(717) 337-5911
mmudd@adamscountypa.gov

**ADDENDUM A**

Purdon's Pennsylvania Statutes and Consolidated Statutes
  Title 42 Pa.C.S.A. Judiciary and Judicial Procedure (Refs & Annos)
    Part VI. Actions, Proceedings and Other Matters Generally
      Chapter 62. Uniform Unsworn Declarations Act (Refs & Annos)

42 Pa.C.S.A. § 6201

§ 6201. Short title of chapter

Currentness

This chapter shall be known and may be cited as the Uniform Unsworn Declarations Act.

**Credits**

2013, Oct. 9, P.L. 609, No. 73, § 1.1, effective in 60 days [Dec. 9, 2013]. Amended 2020, April 20, P.L. 82, No. 15, § 1.3, imd. effective.

42 Pa.C.S.A. § 6201, PA ST 42 Pa.C.S.A. § 6201
Current through Act 2 of the 2025 Regular Session. Some statute sections may be more current, see credits for details.

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Purdon's Pennsylvania Statutes and Consolidated Statutes
Title 42 Pa.C.S.A. Judiciary and Judicial Procedure (Refs & Annos)
Part VI. Actions, Proceedings and Other Matters Generally
Chapter 62. Uniform Unsworn Declarations Act (Refs & Annos)

42 Pa.C.S.A. § 6202

§ 6202. Definitions

Currentness

The following words and phrases when used in this chapter shall have the meanings given to them in this section unless the context clearly indicates otherwise:

**"Law."** Includes a statute, judicial decision or order, rule of court, executive order and administrative rule, regulation or order.

**"Record."** Information that is inscribed on a tangible medium or that is stored in an electronic or other medium and is retrievable in perceivable form.

**"Sign."** With present intent to authenticate or adopt a record:

    (1) to execute or adopt a tangible symbol; or

    (2) to attach to or logically associate with the record an electronic symbol, sound or process.

**"Sworn declaration."** A declaration in a signed record given under oath. The term includes a sworn statement, verification, certificate and affidavit.

**"Unsworn declaration."** A declaration in a signed record not given under oath but given under penalty of perjury.

**Credits**

2013, Oct. 9, P.L. 609, No. 73, § 1.1, effective in 60 days [Dec. 9, 2013]. Amended 2020, April 20, P.L. 82, No. 15, § 1.3, imd. effective.

42 Pa.C.S.A. § 6202, PA ST 42 Pa.C.S.A. § 6202
Current through Act 2 of the 2025 Regular Session. Some statute sections may be more current, see credits for details.

**End of Document**
© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Purdon's Pennsylvania Statutes and Consolidated Statutes
    Title 42 Pa.C.S.A. Judiciary and Judicial Procedure (Refs & Annos)
        Part VI. Actions, Proceedings and Other Matters Generally
            Chapter 62. Uniform Unsworn Declarations Act (Refs & Annos)

42 Pa.C.S.A. § 6203

§ 6203. Applicability

Currentness

This chapter applies to an unsworn declaration by a declarant who at the time of making the declaration is physically located within or outside the boundaries of the United States whether or not the location is subject to the jurisdiction of the United States.

**Credits**

2013, Oct. 9, P.L. 609, No. 73, § 1.1, effective in 60 days [Dec. 9, 2013]. Amended 2020, April 20, P.L. 82, No. 15, § 1.3, imd. effective.

42 Pa.C.S.A. § 6203, PA ST 42 Pa.C.S.A. § 6203
Current through Act 2 of the 2025 Regular Session. Some statute sections may be more current, see credits for details.

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Purdon's Pennsylvania Statutes and Consolidated Statutes
Title 42 Pa.C.S.A. Judiciary and Judicial Procedure (Refs & Annos)
Part VI. Actions, Proceedings and Other Matters Generally
Chapter 62. Uniform Unsworn Declarations Act (Refs & Annos)

42 Pa.C.S.A. § 6204

§ 6204. Validity of unsworn declaration

Currentness

**(a) General rule.--**Except as set forth in subsection (b), if a law of this Commonwealth requires or permits use of a sworn declaration, an unsworn declaration meeting the requirements of this chapter has the same effect as a sworn declaration.

**(b) Exception.--**This chapter does not apply to:

   (1) a deposition;

   (2) an oath of office;

   (3) an oath or affirmation required to be given before a specified official other than a notary public;

   (4) a declaration relating to real property required or authorized to be recorded; and

   (5) an oath or affirmation required by 20 Pa.C.S. § 3132.1 (relating to self-proved wills).

**Credits**

2013, Oct. 9, P.L. 609, No. 73, § 1.1, effective in 60 days [Dec. 9, 2013].

42 Pa.C.S.A. § 6204, PA ST 42 Pa.C.S.A. § 6204
Current through Act 2 of the 2025 Regular Session. Some statute sections may be more current, see credits for details.

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

> Purdon's Pennsylvania Statutes and Consolidated Statutes
>   Title 42 Pa.C.S.A. Judiciary and Judicial Procedure (Refs & Annos)
>     Part VI. Actions, Proceedings and Other Matters Generally
>       Chapter 62. Uniform Unsworn Declarations Act (Refs & Annos)

42 Pa.C.S.A. § 6205

§ 6205. Required medium

Currentness

If a law of this Commonwealth requires that a sworn declaration be presented in a particular medium, an unsworn declaration must be presented in that medium.

**Credits**

2013, Oct. 9, P.L. 609, No. 73, § 1.1, effective in 60 days [Dec. 9, 2013].

42 Pa.C.S.A. § 6205, PA ST 42 Pa.C.S.A. § 6205
Current through Act 2 of the 2025 Regular Session. Some statute sections may be more current, see credits for details.

**End of Document**                                                       © 2025 Thomson Reuters. No claim to original U.S. Government Works.

> Purdon's Pennsylvania Statutes and Consolidated Statutes
>> Title 42 Pa.C.S.A. Judiciary and Judicial Procedure (Refs & Annos)
>>> Part VI. Actions, Proceedings and Other Matters Generally
>>>> Chapter 62. Uniform Unsworn Declarations Act (Refs & Annos)

42 Pa.C.S.A. § 6206

§ 6206. Form of unsworn declaration

Currentness

An unsworn declaration under this chapter must be in substantially the following form:

I declare under penalty of perjury under the law of the Commonwealth of Pennsylvania that the foregoing is true and correct.

Signed on the.....day of....,........ at............................, (date).....(month)........(year)......... (county or other location, and state)...........................................................................................................................................................................

(country)...........................................................................................................................................................................

(printed name)...........................................................................................................................................................................

(signature)...........................................................................................................................................................................

**Credits**

2013, Oct. 9, P.L. 609, No. 73, § 1.1, effective in 60 days [Dec. 9, 2013]. Amended 2020, April 20, P.L. 82, No. 15, § 1.3, imd. effective.

42 Pa.C.S.A. § 6206, PA ST 42 Pa.C.S.A. § 6206
Current through Act 2 of the 2025 Regular Session. Some statute sections may be more current, see credits for details.

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Purdon's Pennsylvania Statutes and Consolidated Statutes
   Title 42 Pa.C.S.A. Judiciary and Judicial Procedure (Refs & Annos)
      Part VI. Actions, Proceedings and Other Matters Generally
         Chapter 62. Uniform Unsworn Declarations Act (Refs & Annos)

42 Pa.C.S.A. § 6207

§ 6207. Uniformity of application and construction

Currentness

In applying and construing this chapter, consideration must be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it.

**Credits**

2013, Oct. 9, P.L. 609, No. 73, § 1.1, effective in 60 days [Dec. 9, 2013].

42 Pa.C.S.A. § 6207, PA ST 42 Pa.C.S.A. § 6207
Current through Act 2 of the 2025 Regular Session. Some statute sections may be more current, see credits for details.

End of Document    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case: 25-1644     Document: 95     Page: 77     Date Filed: 06/04/2025

§ 6208. Relation to Electronic Signatures in Global and..., PA ST 42 Pa.C.S.A. §...

Purdon's Pennsylvania Statutes and Consolidated Statutes
Title 42 Pa.C.S.A. Judiciary and Judicial Procedure (Refs & Annos)
Part VI. Actions, Proceedings and Other Matters Generally
Chapter 62. Uniform Unsworn Declarations Act (Refs & Annos)

42 Pa.C.S.A. § 6208

§ 6208. Relation to Electronic Signatures in Global and National Commerce Act

Currentness

To the extent permitted by section 102 of the Electronic Signatures in Global and National Commerce Act (Public Law 106-229, 15 U.S.C. § 7002), this chapter may modify or supersede provisions of that act.

**Credits**

2013, Oct. 9, P.L. 609, No. 73, § 1.1, effective in 60 days [Dec. 9, 2013].

42 Pa.C.S.A. § 6208, PA ST 42 Pa.C.S.A. § 6208
Current through Act 2 of the 2025 Regular Session. Some statute sections may be more current, see credits for details.

---

End of Document                                      © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**ADDENDUM B**

# UNIFORM UNSWORN DECLARATIONS ACT

drafted by the

NATIONAL CONFERENCE OF COMMISSIONERS
ON UNIFORM STATE LAWS

and by it

APPROVED AND RECOMMENDED FOR ENACTMENT
IN ALL THE STATES

at its

ANNUAL CONFERENCE
MEETING IN ITS ONE-HUNDRED-AND-TWENTY-FIFTH YEAR
STOWE, VERMONT
JULY 8 - JULY 14, 2016

*WITH PREFATORY NOTE AND COMMENTS*

Copyright © 2016
By
NATIONAL CONFERENCE OF COMMISSIONERS
ON UNIFORM STATE LAWS

October 4, 2016

## ABOUT ULC

The **Uniform Law Commission** (ULC), also known as National Conference of Commissioners on Uniform State Laws (NCCUSL), now in its 125th year, provides states with non-partisan, well-conceived and well-drafted legislation that brings clarity and stability to critical areas of state statutory law.

ULC members must be lawyers, qualified to practice law. They are practicing lawyers, judges, legislators and legislative staff and law professors, who have been appointed by state governments as well as the District of Columbia, Puerto Rico and the U.S. Virgin Islands to research, draft and promote enactment of uniform state laws in areas of state law where uniformity is desirable and practical.

- ULC strengthens the federal system by providing rules and procedures that are consistent from state to state but that also reflect the diverse experience of the states.

- ULC statutes are representative of state experience, because the organization is made up of representatives from each state, appointed by state government.

- ULC keeps state law up-to-date by addressing important and timely legal issues.

- ULC's efforts reduce the need for individuals and businesses to deal with different laws as they move and do business in different states.

- ULC's work facilitates economic development and provides a legal platform for foreign entities to deal with U.S. citizens and businesses.

- Uniform Law Commissioners donate thousands of hours of their time and legal and drafting expertise every year as a public service, and receive no salary or compensation for their work.

- ULC's deliberative and uniquely open drafting process draws on the expertise of commissioners, but also utilizes input from legal experts, and advisors and observers representing the views of other legal organizations or interests that will be subject to the proposed laws.

- ULC is a state-supported organization that represents true value for the states, providing services that most states could not otherwise afford or duplicate.

## DRAFTING COMMITTEE ON UNIFORM UNSWORN DECLARATIONS ACT

The Committee appointed by and representing the National Conference of Commissioners on Uniform State Laws in drafting this Act consists of the following individuals:

RICHARD B. LONG, 99 Corporate Dr., Binghamton, NY 13904, *Chair*

W. GRANT CALLOW, 425 G St., Suite 610, Anchorage, AK 99501

TERRY J. CARE, 2338 Ledgewood Dr., Colorado Springs, CO 80921-2070

PAUL W. CHAIKEN, 97 Winthrop St., P.O. Box 527, Augusta, ME 04332

VINCENT C. DELIBERATO, Legislative Reference Bureau, Room 641 Main Capitol Bldg., 501 N. 3rd St., Harrisburg, PA 17120-0033

BARRY H. EVENCHICK, 5 Becker Farm Rd., Roseland, NJ 07068

MICHAEL B. GETTY, 430 Cove Towers Dr., Naples, FL 34110

REED L. MARTINEAU, 5458 Merlyn Dr., Salt Lake City, UT 84117

MARILYN E. PHELAN, 306 Peninsula Ct., Granbury, TX 76048

WILLIAM J. QUINLAN, Two First National Plaza, 20 S. Clark St., Suite 2900, Chicago, IL 60603

KAREN R. WASHINGTON, 2214 Main St., Dallas, TX 75201

JOSEPH A. COLQUITT, University of Alabama School of Law, Box 870382, Tuscaloosa, AL 35487-0382, *Reporter*

### EX OFFICIO

RICHARD T. CASSIDY, 100 Main St., P.O. Box 1124, Burlington, VT 05401, *President*

LANE SHETTERLY, 189 SW Academy St., Dallas, OR 97338, *Division Chair*

### AMERICAN BAR ASSOCIATION ADVISOR

RICHARD W. MOREFIELD, 11814 W. 135th St., Overland Park, KS, 66221, *ABA Advisor*

### EXECUTIVE DIRECTOR

LIZA KARSAI, 111 N. Wabash Ave., Suite 1010, Chicago, IL 60602, *Executive Director*

Copies of this Act may be obtained from:

NATIONAL CONFERENCE OF COMMISSIONERS
ON UNIFORM STATE LAWS
111 N. Wabash Ave., Suite 1010
Chicago, Illinois 60602
312/915-0195
www.uniformlawcommission.com

# UNIFORM UNSWORN DECLARATIONS ACT

## TABLE OF CONTENTS

PREFATORY NOTE.................................................................................................... 1
SECTION 1.  SHORT TITLE. ..................................................................................... 3
SECTION 2.  DEFINITIONS........................................................................................ 3
SECTION 3.  APPLICABILITY................................................................................... 4
SECTION 4.  VALIDITY OF UNSWORN DECLARATION..................................... 4
SECTION 5.  REQUIRED MEDIUM.......................................................................... 6
SECTION 6.  FORM OF UNSWORN DECLARATION. ........................................... 6
SECTION 7.  UNIFORMITY OF APPLICATION AND CONSTRUCTION............. 7
SECTION 8.  RELATION TO ELECTRONIC SIGNATURES IN GLOBAL AND NATIONAL
        COMMERCE ACT............................................................................. 7
SECTION 9.  REPEALS; CONFORMING AMENDMENTS. ..................................... 7
SECTION 10.  EFFECTIVE DATE. ............................................................................ 8

# UNIFORM UNSWORN DECLARATIONS ACT

## PREFATORY NOTE

Declarations of persons are routinely received in state and federal courts and agencies. Many – but not all – of the declarations are affidavits and other documents sworn to by declarants before notaries public or authorized officials.

Courts and agencies do receive unsworn declarations. Unsworn declarations may be oral or in writing. For example, they may be in the form of:

○ testimony given under affirmation rather than oath. See, e.g., Fed. R. Evid. 603 ("a witness must give an oath or affirmation to testify truthfully"); Ala. R. Evid. 603 ("every witness [must] declare that the witness will testify truthfully, by oath or affirmation"); Mich. R. Evid. 603 (same); Wash. R. Evid. 603 (same);

○ an attested (or witnessed) will. See, e.g., Ala. Code § 43-8-131; Cal. Prob. Code § 6110; Colo. Rev. Stats. § 15-11-502; Tex. Estates Code § 251.051; Va. Code § 64.2-403;

○ other unsworn declarations authorized by a state's law or rules. See, e.g., Cal. Civ. Proc. Code § 2015.5; Fla. Stat. § 92.525; Kan. Stats. § 53-601; Va. Code § 8.01-4.3;

○ statements made while under a belief of impending death. See, e.g., Fed. R. Evid. 804(b)(2) (statements under belief of imminent death); Ala. R. Evid. 804(b)(2) (statement under belief of impending death); Mich. Laws § 767.72 (dying declarations admissible as evidence in manslaughter cases); Ohio R. Evid. 804(b)(2) (statement under belief of impending death); or

○ declarations made by an officer of the court. See, e.g., Cox v. State, 279 So. 2d 143, 144-45 (Ala. Crim. App. 1973) ("[I]t was within the judge's judicial discretion as to whether or not he would take the unsworn statement of an officer of his court as evidence.").

In 2008 the Uniform Law Commission completed work on the Uniform Foreign Declarations Act (UUFDA), which allows for the use of unsworn declarations under penalty of perjury when made outside the United States. The UUFDA extends to state proceedings the same flexibility that federal courts have had since 1976 under 28 U.S.C. § 1746. However, 28 U.S.C. § 1746 is broader than the UUFDA in that it also covers unsworn declarations made within the United States. Additionally, while working on the UUFDA, the ULC identified 22 states with existing laws, procedural rules or statutes having a similar effect as 28 U.S.C. § 1746. It is noted in the comments of the UUFDA that the Drafting Committee considered expanding the UUFDA to include unsworn declarations made within the United States but decided against it due to the limited charge of the Committee as well as time and enactability concerns.

Since its promulgation, the UUFDA has been adopted in over 20 states and the District of Columbia. It is under consideration in additional states. Additionally, a number of states have existing or procedural rules that permit the use of unsworn declarations made within the United States.

The Uniform Unsworn Declarations Act (UUDA) affirms the use in state legal proceedings of unsworn declarations made by declarants. Under the UUDA, if an unsworn declaration is made subject to penalties for perjury and contains the information in the model form provided in the act, then the statement may be used as an equivalent of a sworn declaration.

The UUDA excludes use of unsworn declarations for depositions, oaths of office, oaths related to self-proved wills, declarations recorded under certain real estate statutes, and oaths required to be given before specified officials other than a notary.

The UUDA will extend to state proceedings the same flexibility that federal – and a number of state – courts and agencies have employed for decades. Since 1976, federal law (28 U.S.C. § 1746) has allowed an unsworn declaration to be recognized and valid as the equivalent of a sworn affidavit if it contained an affirmation substantially in the form set forth in the federal act. The courts, though, have ruled that 28 U.S.C. § 1746 is inapplicable to state court proceedings. Several states also authorize the use of unsworn declarations (e.g., Cal. Civ. Proc. Code § 2015.5; Fla. Stat. § 92.525; Kan. Stats. § 53-601), but the state procedures are not uniform.

Existing state legislation varies significantly in content, scope and form. Enactment of the UUDA harmonizes state and federal treatment of unsworn declarations. Uniformity is important because many matters as to which the use of unsworn declarations is valuable will involve more than one state or jurisdiction. Further, the UUDA will reduce aspects of confusion regarding differences in federal and state litigation practice. The act also eases some of the declarants' burdens in providing important information for state proceedings.

The Uniform Unsworn Declarations Act should be enacted in every state.

## UNIFORM UNSWORN DECLARATIONS ACT

**SECTION 1.  SHORT TITLE.** This [act] may be cited as the Uniform Unsworn Declarations Act.

**SECTION 2.  DEFINITIONS.**  In this [act]:

(1) "Law" includes a statute, judicial decision or order, rule of court, executive order, and administrative rule, regulation, or order.

(2) "Record" means information that is inscribed on a tangible medium or that is stored in an electronic or other medium and is retrievable in perceivable form.

(3) "Sign" means, with present intent to authenticate or adopt a record:

(A) to execute or adopt a tangible symbol; or

(B) to attach to or logically associate with the record an electronic symbol, sound, or process.

(4) "Sworn declaration" means a declaration in a signed record given under oath. The term includes a sworn statement, verification, certificate, and affidavit.

(5) "Unsworn declaration" means a declaration in a signed record not given under oath but given under penalty of perjury.

***Legislative Note:*** *An enacting state will need to ensure that its perjury law covers an unsworn declaration. For example, Ore. Rev. Stats. Section 162.065 provides: "(1) A person commits the crime of perjury if the person makes a false sworn statement or a false unsworn declaration in regard to a material issue, knowing it to be false. (2) Perjury is a Class C felony." If an enacting state uses a term such as "false statement" or "false declaration" instead of perjury in labeling the offense, it will need to ensure that the law covers an unsworn declaration.*

### Comment

1. The definition of "law" is drafted in an open-ended manner to give it the widest possible application. The term is not ordinarily defined in uniform acts but in this context it is important that judges applying the act be in no doubt about its breadth. The wording is taken from the definition contained in the Revised Model State Administrative Procedure Act.

3

In most instances, "law" is referring to the law of the enacting state. Section 7 is the exception; in that section, "law" would address the general law on the subject of declarations because the provision encourages interpretation to achieve uniformity in the law.

2. A "record" includes information that is in intangible form (e.g., electronically stored) as well as tangible form (e.g., written on paper). It is consistent with the Uniform Electronic Transactions Act and the federal Electronic Signatures in Global and National Commerce Act (15 U.S.C. § 7001 et seq.).

3. The definition of "sign" is broad enough to cover any writing containing a traditional signature and any record containing an electronic signature. It is consistent with the Uniform Electronic Transactions Act and the federal Electronic Signatures in Global and National Commerce Act (15 U.S.C. § 7001 et seq.).

**SECTION 3. APPLICABILITY.** This [act] applies to an unsworn declaration by a declarant who at the time of making the declaration is physically located within or outside the boundaries of the United States, whether or not the location is subject to the jurisdiction of the United States.

**Comment**

This act applies to unsworn declarations made by a declarant regardless of where the declarant was located at the time of the declaration. The declaration could have been made within the United States whether within the enacting state or in a different state (even if the location is under the control of another sovereign, such as foreign embassies or consulates or federally recognized Indian lands), or in a foreign country.

**SECTION 4. VALIDITY OF UNSWORN DECLARATION.**

(a) Except as otherwise provided in subsection (b), if a law of this state requires or permits use of a sworn declaration, an unsworn declaration meeting the requirements of this [act] has the same effect as a sworn declaration.

(b) This [act] does not apply to:

(1) a deposition;

(2) an oath of office;

(3) an oath required to be given before a specified official other than a notary

public;

(4) a declaration to be recorded under [insert appropriate section of state real-estate law]; or

(5) an oath required by [insert appropriate section of state law relating to self-proved wills].

### Comment

Except as provided in subsection 4(b) of this section, an unsworn declaration meeting the requirements of this act may be used in a state proceeding or transaction whenever other state law authorizes the use of a sworn declaration. Thus, if other state law permits the use of an affidavit, an unsworn declaration meeting the requirements of this act would also suffice. Additionally, if other state law authorizes other substitutes for a sworn declaration, such as an affirmation, then as provided in subsection (a) of this section, an unsworn declaration meeting the requirements of this act could serve as a substitute for an affirmation. Nothing in this act affects the efficacy of sworn declarations. An unsworn declaration is an alternative to a sworn declaration. In perhaps most cases, sworn or notarized declarations may be preferred; unsworn declarations though may be used when necessary or suggested by circumstances.

The use of unsworn declarations is not limited to litigation. Unsworn declarations would be usable in civil, criminal, and regulatory proceedings and settings. However, there are certain contexts in which unsworn declarations should not be used, and these contexts are listed in subsection (b) of this section.

This act does not relieve a party from establishing the necessary foundation for the admission of an unsworn declaration. Authenticity is not addressed in this act.

The authenticity of the declaration must be established in accordance with the law of the enacting state. If authorized by the law of the enacting state, authenticity of written declarations might be established through, for example, testimony of witnesses to the declaration, handwriting experts or lay witnesses familiar with the signature of the declarant, comparison with authenticated specimens, or other recognized methods of authentication. See Fed. R. Evid. 901. Such approaches are commonly acceptable in cases involving attested wills. Although subscribing witnesses are preferred, their testimony is not necessary for authentication of the declaration if its authenticity can be established by other means. See, e.g., Fed. R. Evid. 903; Cal. Prob. Code §§ 8220-21, (attested wills may be proved by testimony or deposition to subscribing witness or absent a witness by proof of handwriting and affidavit of person with personal knowledge); Iowa Code § 622.24 (absent testimony of subscribing witness to attested will, execution of will may be proved by other evidence); Mass. Gen. Laws 190B § 3-406(a) (due execution of an attested will may be proved by evidence other than testimony of attesting witness); Mich. Comp. Laws § 700.3405(2) (authentication of attested wills by witnesses or other evidence authorized).

As noted in the Legislative Note, an enacting state should ensure that its perjury law includes unsworn declarations. For example, see Ore. Rev. Stats. § 162.065, which provides: "(1) A person commits the crime of perjury if the person makes a false sworn statement or a false unsworn declaration in regard to a material issue, knowing it to be false. (2) Perjury is a Class C felony." See also 11 Del. Code § 1224 (definition of "swears falsely" includes unsworn declarations).

**SECTION 5.  REQUIRED MEDIUM.**  If a law of this state requires that a sworn declaration be presented in a particular medium, an unsworn declaration must be presented in the same medium.

**Comment**

Courts and agencies often restrict the medium in which pleadings, motions, and other documents may be filed.  This section recognizes that such a restriction is binding on a person seeking to introduce an unsworn declaration.

**SECTION 6.  FORM OF UNSWORN DECLARATION.**  An unsworn declaration under this [act] must be in substantially the following form:

I declare under penalty of perjury under the law of [insert name of the enacting state] that the foregoing is true and correct.

Signed on the ___ day of _____, _____, at _____.
              Date        Month   Year     City or other location, and state or country

_____
        Printed name

_____
        Signature

***Legislative Note:*** *An enacting state will need to replace "[insert name of the enacting state]" in the declaration form with the name of the enacting state so that the declaration is made under penalty of perjury under the law of the enacting state. For example, if the State of Texas is the enacting state, the declaration form would state: "I declare under penalty of perjury under the law of Texas that the foregoing is true and correct."*

*An enacting state will need to ensure that its perjury law covers an unsworn declaration. If an enacting state uses a term such as "false statement" or "false declaration" instead of using*

*"perjury" in its law, the form will need to use the enacting state's name for the offense in the form.*

**Comment**

The form informs the declarant that the declaration is made under penalty of perjury, thereby reminding the declarant of the potential liability it establishes.
Section 3 of this act authorizes the use of unsworn declarations regardless of where the declaration was made. The form seeks the location of the declarant at the time of making the declaration which may be helpful for authentication purposes even though location does not affect admissibility.

**SECTION 7.  UNIFORMITY OF APPLICATION AND CONSTRUCTION.**  In

applying and construing this uniform act, consideration must be given to the need to promote

uniformity of the law with respect to its subject matter among states that enact it.

**Comment**

This section recites the importance of uniformity among the adopting states when applying and construing the act.

**SECTION 8.  RELATION TO ELECTRONIC SIGNATURES IN GLOBAL AND**

**NATIONAL COMMERCE ACT.**  This [act] modifies, limits, or supersedes the Electronic

Signatures in Global and National Commerce Act, 15 U.S.C. Section 7001 et seq., but does not

modify, limit, or supersede Section 101(c) of that act, 15 U.S.C. Section 7001(c), or authorize

electronic delivery of any of the notices described in Section 103(b) of that act, 15 U.S.C.

Section 7003(b).

**Comment**

This section responds to the specific language of the Electronic Signatures in Global and National Commerce Act and is designed to avoid preemption of state law under that federal legislation.

**SECTION 9.  REPEALS; CONFORMING AMENDMENTS.**

(a) . . . .

(b) . . . .

(c) . . . .

## Comment

Any state enacting the Act likely will need to  amend the state's laws by repealing any conflicting statutory provisions. This Section was added  based on comments at the National Conference during consideration of the UUFDA.

**SECTION 10.  EFFECTIVE DATE.**  This [act] takes effect . . . .

**ADDENDUM C**

United States Code Annotated
  Title 28. Judiciary and Judicial Procedure (Refs & Annos)
    Part V. Procedure
      Chapter 115. Evidence; Documentary (Refs & Annos)

28 U.S.C.A. § 1746

§ 1746. Unsworn declarations under penalty of perjury

Currentness

Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

**(1)** If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date).

(Signature)".

**(2)** If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).

(Signature)".

**CREDIT(S)**

(Added Pub.L. 94-550, § 1(a), Oct. 18, 1976, 90 Stat. 2534.)

28 U.S.C.A. § 1746, 28 USCA § 1746
Current through P.L. 119-12. Some statute sections may be more current, see credits for details.

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

**ADDENDUM D**

Purdon's Pennsylvania Statutes and Consolidated Statutes
    Title 25 P.S. Elections & Electoral Districts (Refs & Annos)
        Chapter 14. Election Code (Refs & Annos)
            Article IX. Nomination of Candidates (Refs & Annos)
                (a) Nomination of Party Candidates at Primaries

25 P.S. § 2870

§ 2870. Affidavits of candidates

Currentness

Each candidate for any State, county, city, borough, incorporated town, township, ward, school district, poor district, election district, party office, party delegate or alternate, or for the office of United States Senator or Representative in Congress, shall file with his nomination petition his affidavit stating--(a) his residence, with street and number, if any, and his post-office address; (b) his election district, giving city, borough, town or township; (c) the name of the office for which he consents to be a candidate; (d) that he is eligible for such office; (e) that he will not knowingly violate any provision of this act, or of any law regulating and limiting nomination and election expenses and prohibiting corrupt practices in connection therewith; (f) unless he is a candidate for judge of a court of common pleas, the Philadelphia Municipal Court or for the office of school director in a district where that office is elective or for the office of justice of the peace [1] that he is not a candidate for nomination for the same office of any party other than the one designated in such petition; (g) if he is a candidate for a delegate, or alternate delegate, member of State committee, National committee or party officer, that he is a registered and enrolled member of the designated party; (h) if he is a candidate for delegate or alternate delegate the presidential candidate to whom he is committed or the term "uncommitted"; (i) that he is aware of the provisions of section 1626 [2] of this act requiring pre-election and post-election reporting of campaign contributions and expenditures; and (j) that he is not a candidate for an office which he already holds, the term of which is not set to expire in the same year as the office subject to the affidavit. In cases of petitions for delegate and alternate delegate to National conventions, the candidate's affidavit shall state that his signature to the delegate's statement, as hereinafter set forth, if such statement is signed by said candidate, was affixed to the sheet or sheets of said petition prior to the circulation of same. In the case of a candidate for nomination as President of the United States, it shall not be necessary for such candidate to file the affidavit required in this section to be filed by candidates, but the post-office address of such candidate shall be stated in such nomination petition.

**Credits**

1937, June 3, P.L. 1333, No. 320, art. IX, § 910. Amended 1971, Dec. 22, P.L. 616, No. 165, § 9; 1972, July 7, P.L. 732, No. 171, § 1, imd. effective; 1974, June 27, P.L. 413, No. 146, § 1, imd. effective; 1980, July 11, P.L. 591, No. 127, § 2, imd. effective; 1985, April 18, P.L. 5, No. 4, § 3, imd. effective; 1986, Feb. 19, P.L. 29, No, 11, § 7, imd. effective; 1998, Feb. 13, P.L. 72, No. 18, § 8, imd. effective; 2006, May 11, P.L. 178, No. 45, § 8, effective July 1, 2006; 2019, Oct. 31, P.L. 552, No. 77, § 3, imd. effective.

## Footnotes

1    Reference to "justice of the peace" deemed to be reference to a magisterial district judge, pursuant to 2004, Nov. 30, P.L. 1618, No. 207, § 28(1).

2    25 P.S. § 3246.

25 P.S. § 2870, PA ST 25 P.S. § 2870

Current through Act 2 of the 2025 Regular Session. Some statute sections may be more current, see credits for details.

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.