No. 25-1644

---

In the United States Court of Appeals for the Third Circuit

BETTE EAKIN, *et al.*,

*Plaintiff-Appellees*

*v.*

ADAMS COUNTY BOARD OF ELECTIONS, *et al.*,

*Defendant-Appellees*

REPUBLICAN NATIONAL COMMITTEE, *et al.*,

*Intervenor-Defendant-Appellants.*

---

**On Appeal from the United States District Court for the Western District of Pennsylvania, Case No. 1:22-cv-340 (Baxter, J.)**

---

**REPLY BRIEF OF INTERVENOR-APPELLANTS**

---

Kathleen A. Gallagher
THE GALLAGHER FIRM, LLC
436 Seventh Ave., 31st Floor
Pittsburgh, PA 15219
(412) 717-1900
kag@gallagherlawllc.com

Thomas W. King, III
Thomas E. Breth
DILLON, MCCANDLESS, KING,
COULTER & GRAHAM, LLP
128 W. Cunningham St.
Butler, PA 16001
(724) 283-2200
tking@dmkcg.com
tbreth@dmkcg.com

John M. Gore
(D.C. Bar No. 502057)
*Counsel of Record*
E. Stewart Crosland
Louis J. Capozzi III
Benjamin P. Daus
JONES DAY
51 Louisiana Ave. NW
Washington, DC 20001
(202) 879-3939
jmgore@jonesday.com
scrosland@jonesday.com
lcapozzi@jonesday.com
bdaus@jonesday.com

*Counsel for Intervenor-Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................ii

INTRODUCTION ................................................................................. 1

ARGUMENT ....................................................................................... 2

I.   THE DATE REQUIREMENT'S TRIVIAL BURDEN DOES NOT IMPLICATE THE CONSTITUTIONAL RIGHT TO VOTE ..................................................................................... 2

II.  THE CONSTITUTIONAL RIGHT TO VOTE DOES NOT EXTEND TO THIS MAIL-VOTING CONVENIENCE ................ 11

III. EVEN IF THE *ANDERSON-BURDICK* TEST APPLIES, THE DATE REQUIREMENT EASILY PASSES ......................... 15

   A. The Burden Imposed By The Date Requirement Is Minimal At Most ........................................................ 15

   B. Laws Imposing Minimal Burdens Receive Rational-Basis Review Under *Anderson-Burdick* ............................. 22

   C. Pennsylvania's Legitimate Interests Justify The Date Requirement ........................................................... 27

CONCLUSION ................................................................................... 34

COMBINED CERTIFICATIONS ........................................................... 35

CERTIFICATE OF SERVICE ............................................................... 36

# TABLE OF AUTHORITIES

**Pages(s)**

CASES

*Agostini v. Felton,*
   521 U.S. 203 (1997) ............................................................... 12

*Anderson v. Celebrezze,*
   460 U.S. 780 (1983) ........................................................... 3, 12

*Ariz. Democratic Party v. Hobbs,*
   18 F.4th 1179 (9th Cir. 2021) .............................................. 13

*Artway v. Att'y Gen. of State of N.J.,*
   81 F.3d 1235 (3d Cir. 1996) ................................................. 19

*Baker v. Carr,*
   369 U.S. 186 (1962) ............................................................... 10

*Ball v. Chapman,*
   289 A.3d 1 (Pa. 2023) ............................................................. 3

*Belitskus v. Pizzingrilli,*
   343 F.3d 632 (3d Cir. 2003) ................................................. 25

*Black Pol. Empowerment Project v. Schmidt,*
   2024 WL 4002321 (Pa. Commw. Ct. Aug. 30, 2024) ........................ 30

*Brnovich v. Democratic Nat'l Comm.,*
   594 U.S. 647 (2021) .............................. 10, 17, 21, 29, 31, 32

*Burdick v. Takushi,*
   504 U.S. 428 (1992) .............................. 3, 6, 12, 20, 22

*Chisom v. Roemer,*
   501 U.S. 380 (1991) ............................................................... 11

ii

*Clingman v. Beaver*,
    544 U.S. 581 (2005) .......................................................................... 6, 7

*Commonwealth v. Mihaliak*,
    No. MJ-2202-CR-126-2022 (Lancaster County) ..................... 28, 31, 32

*Council of Alt. Pol. Parties v. Hooks*,
    179 F.3d 64 (3d Cir. 1999) ................................................................ 26

*Crawford v. Marion Cnty. Election Bd.*,
    553 U.S. 181 (2008) .................................................................. *passim*

*Democratic Exec. Comm. of Fla. v. Lee*,
    915 F.3d 1312 (11th Cir. 2019) ...................................................... 8, 20

*Democratic Exec. Comm. of Fla. v. NRSC*,
    950 F.3d 790 (11th Cir. 2020) ........................................................ 8, 13

*FCC v. Beach Comms., Inc.*,
    508 U.S. 307 (1993) ........................................................ 23, 30, 31, 33

*Fish v. Schwab*,
    957 F.3d 1105 (10th Cir. 2020) ............................................ 8, 9, 20, 25

*Garza v. Citigroup Inc.*,
    881 F.3d 277 (3d Cir. 2018) ............................................................... 3

*Haybarger v. Lawrence Cnty. Adult Prob. & Parole*,
    667 F.3d 408 (3d Cir. 2012) ............................................................. 13

*In re: Canvass of Absentee and Mail-in Ballots of Nov. 3,*
    *2020 Gen. Election*,
    241 A.3d 1058 (Pa. 2020) ...................................................... 27, 29, 31

*Lerman v. Bd. of Elections in City of N.Y.*,
    232 F.3d 135 (2d Cir. 2000) ............................................................. 25

*Luft v. Evers,*
    963 F.3d 665 (7th Cir. 2020) ............................................................. 10

*Mays v. LaRose,*
    951 F.3d 775 (6th Cir. 2020) ............................................. 2, 15, 22, 33

*Mazo v. N.J. Sec'y of State,*
    54 F.4th 124 (3d Cir. 2022) ....................................................... *passim*

*McDonald v. Bd. of Election Comm'rs of Chi.,*
    394 U.S. 802 (1969) ....................................................... 11, 12, 13, 14

*Middleton v. Andino,*
    488 F.Supp.3d 261 (D.S.C. 2020) ..................................................... 13

*Migliori v. Cohen,*
    36 F.4th 153 (3d Cir. 2022) ......................................................... 28, 29

*Migliori v. Lehigh Cty. Bd. of Elections,*
    No. 5:22-cv-00397, 2022 U.S. Dist. LEXIS 46352
    (E.D. Pa. Mar. 16, 2022) .................................................................. 29

*Minn. Voters All. v. Mansky,*
    585 U.S. 1 (2018) ......................................................................... 28, 30

*Molinari v. Bloomberg,*
    564 F.3d 587 (2d Cir. 2009) ............................................................ 6, 7

*Northeast Ohio Coal. for the Homeless v. Husted,*
    837 F.3d 612 (6th Cir. 2016) ........................................... 9, 13, 20, 32

*O'Brien v. Skinner,*
    414 U.S. 524 (1974) .......................................................................... 12

*Obama for Am. v. Husted,*
    697 F.3d 423 (6th Cir. 2012) ............................................................ 20

*Pa. State Conf. of NAACP Branches v. Sec'y Commonwealth of Pa.*,
  97 F.4th 120 (3d Cir. 2024) .......................................... 10, 11, 14, 15, 28

*Parker v. Conway*,
  581 F.3d 198 (3d Cir. 2009) ........................................................ 23

*Pisano v. Strach*,
  743 F.3d 927 (4th Cir. 2014) ....................................................... 24

*Price v. N.Y. State Bd. of Elections*,
  540 F.3d 101 (2d Cir. 2008) ................................................ 8, 13, 25, 26

*Richardson v. Tex. Sec'y of State*,
  978 F.3d 220 (5th Cir. 2020) ....................................................... 20

*Ritter v. Migliori*,
  142 S. Ct. 1824 (2022) .............................................................. 14

*Rodriguez v. Popular Democratic Party*,
  457 U.S. 1 (1982) ................................................................. 6, 7

*Rogers v. Corbett*,
  468 F.3d 188 (3d Cir. 2006) ........................................................ 24

*Saucedo v. Gardner*,
  335 F.Supp.3d 202 (D.N.H. 2018) ................................................... 13

*Schmidt v. Skolas*,
  770 F.3d 241 (3d Cir. 2014) ........................................................ 18

*Soltysik v. Padilla*,
  910 F.3d 438 (9th Cir. 2018) .................................................... 24, 25

*Tashjian v. Republican Party of Conn.*,
  479 U.S. 208 (1986) ................................................................ 24

*Taxpayers United for Assessment Cuts v. Austin*,
994 F.2d 291 (6th Cir. 1993) ............................................................ 12

*Tedards v. Ducey*,
951 F.3d 1041 (9th Cir. 2020) ......................................................... 25

*Tex. Democratic Party v. Abbott*,
961 F.3d 389 (5th Cir. 2020) ............................................................ 13

*Timmons v. Twin Cities Area New Party*,
520 U.S. 351 (1997) ............................................................ 26, 27, 30

*United States v. Munsingwear, Inc.*,
340 U.S. 36 (1950) .......................................................................... 28

*United States v. Warren*,
338 F.3d 258 (3d Cir. 2003) ............................................................ 26

*Vote.org v. Callanen*,
89 F.4th 459 (5th Cir. 2023) ........................................................... 30

*Webb v. Dep't of Just.*,
117 F.4th 560 (3d Cir. 2024) ........................................................... 30

## CONSTITUTIONAL AUTHORITIES

U.S. Const. art. I, § 4, cl. 1 .................................................... 27, 33

**INTRODUCTION**

Plaintiff-Appellees' latest assault on Pennsylvania's date requirement for mail ballots relies on a startling misunderstanding of the constitutional right to vote. On their telling, *every* mandatory ballot-casting rule, no matter how easy to comply with, implicates that right. Moreover, Plaintiff-Appellees insist, *every* such rule is subject to "searching" judicial review and *must* be justified by record evidence. Eakin Br. 19. If accepted, this sweeping theory would effectively transfer state legislatures' authority over election rules to the federal courts.

This theory is wrong. The Constitution does not prohibit Pennsylvania from requiring mail voters to fill in four numbers—the two-digit month and the two-digit day—in clearly marked boxes. That task is as easy as it sounds, and in the 2024 General Election, 99.77% of Pennsylvanians who voted by mail completed it. Such a burden is *nothing* more than a "usual burden[] of voting," *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 198 (2008) (plurality op.), or *"de minimis"* burden, *Mazo v. N.J. Sec'y of State*, 54 F.4th 124, 138-39 (3d Cir. 2022), and is thus subject to no constitutional scrutiny.

Even if some scrutiny is appropriate, rational-basis review applies. Rather than accept Plaintiff-Appellees' invitation to split with the Sixth Circuit, *see* Eakin Br. 53 (rejecting *Mays v. LaRose*, 951 F.3d 775, 784 (6th Cir. 2020)), the Court should apply that "deferential" test and uphold the date requirement, *Mazo*, 54 F.4th at 153 (cleaned up).  As Intervenor-Appellants previously established and the Commonwealth has affirmed, the date requirement easily satisfies such review because it serves as a useful backstop in election administration, promotes solemnity in voting, and helps detect fraud.

The Court should reverse.

## ARGUMENT

## I.    THE DATE REQUIREMENT'S TRIVIAL BURDEN DOES NOT IMPLICATE THE CONSTITUTIONAL RIGHT TO VOTE.

The *Anderson-Burdick* framework "does not apply . . . where the burden on a constitutional right is no more than *de minimis*." *Mazo*, 54 F.4th at 138-39.  Or, as the Supreme Court has explained, some burdens imposed by ballot-casting rules are simply "neither so serious nor so frequent as to raise any question about the[ir] constitutionality." *Crawford*, 553 U.S. at 197 (plurality op.).  That rule resolves this case:

The date requirement imposes nothing more than the "usual burdens of voting" and therefore is constitutional. *Id.* at 198; *see* Opening Br. 22-40.[1]

Plaintiff-Appellees concede: "True," this Court "noted" in *Mazo* that no constitutional scrutiny is "triggered when a law's 'burden on the right to vote is no more than *de minimis.*'" Eakin Br. 30 (quoting *Mazo*, 54 F.4th at 138-39). They nevertheless insist that courts must apply an open-ended balancing test to assess *all* mandatory ballot-casting measures, no matter how trivial. *Id.* 21. In resisting *Mazo* and *Crawford*, Plaintiff-Appellees' various arguments flounder.

*First*, Plaintiff-Appellees insist that the Supreme Court in *Anderson* and *Burdick* prescribed open-ended balancing for all mandatory election rules. *Id.* 2, 21-23. Those cases, however, are not apt because they addressed election rules *also* alleged to infringe First Amendment associational and expressive rights, *see Anderson v. Celebrezze*, 460 U.S. 780, 793-95 (1983); *Burdick v. Takushi*, 504 U.S.

---

[1] The Adams County Board of Elections argues for resolving this case on state-law grounds. *See* Adams County Br. 41. This argument—which no other litigant makes—was not raised below and is forfeited. *See Garza v. Citigroup Inc.*, 881 F.3d 277, 284 (3d Cir. 2018). It is also foreclosed as a matter of state law. *See Ball v. Chapman*, 289 A.3d 1, 28 (Pa. 2023).

428, 430, 436-38 (1992)—claims that all agree are not at issue here. Moreover, *Anderson* and *Burdick* must be read alongside *Crawford*, a more recent case that squarely addressed right-to-vote claims not grounded in the First Amendment. Dispositively, *Crawford* expressly acknowledged that some election rules merit no scrutiny, 553 U.S. at 197 (plurality op.); *id.* at 208-09 (Scalia, J., concurring in the judgment), including those imposing only "the usual burdens of voting," *id.* at 198 (plurality op.).

*Second*, Plaintiff-Appellees eventually acknowledge that *Crawford* is the controlling precedent but try to reinterpret it. Eakin Br. 26-30. Seizing on dicta from the plurality opinion, they suggest that *Anderson-Burdick* scrutiny applies to all election rules. *See id.* 26. In addition to embellishing this language, *see id.* (inserting "*any* burden" into a quotation lacking such words), Plaintiff-Appellees ignore the plurality's instruction that some burdens will be "neither so serious nor so frequent as to raise any question about the constitutionality" of a statute, 553 U.S. at 197, and its observation that rules imposing the "usual burdens of voting" are even *less* burdensome than minimally burdensome rules, *id.* at 198. Read together, these passages make clear that the Supreme

Court envisions a category of rules that are not subject to even the deferential review applied to minimally burdensome rules like the voter-ID requirement upheld in *Crawford*. *See id.* at 197-98; Opening Br. 22-30.

Plaintiff-Appellees also make a baffling attempt to reframe Justice Scalia's concurrence as supporting their proposed balancing free-for-all. Eakin Br. 27. Justice Scalia squarely rejected the "record-based" approach that Plaintiff-Appellees advocate in favor of a rule that States "*must* prevail" when non-severe burdens are at issue. 553 U.S. at 208 (emphasis added). While the law challenged in *Crawford* may have been "justified," Justice Scalia's entire point was that courts cannot second-guess legislative decisions unless the burden imposed is severe or discriminatory. *Id.* at 204, 208-09.

*Third*, Plaintiff-Appellees bizarrely invoke *Mazo* itself, claiming it requires judicial balancing for all mandatory election rules. Eakin Br. 2, 21-23. But *Mazo* could not have been clearer: The *Anderson-Burdick* framework "does not apply . . . where the burden on a constitutional right is no more than *de minimis*." 54 F.4th at 138-39; Eakin Br. 30. Plaintiff-Appellees attempt to explain away that rule by claiming that this portion

of *Mazo* meant that *Anderson-Burdick* does not apply to laws that burden constitutional rights "only incidentally." Eakin Br. 30. Whatever that means, Plaintiff-Appellees cite no part of *Mazo* that supports this reading. *Id.* Instead, they muster a quotation from *Burdick*—a First Amendment case—explaining that *more* flexibility is needed when evaluating voting laws, not less. *Id.* 30-31 (quoting 504 U.S. at 433). That principle *supports*, not undercuts, *Mazo*'s conclusion that *Anderson-Burdick* does not reflexively mandate searching scrutiny of every election law. 54 F.4th at 138-39.

*Fourth*, stymied by *Mazo*'s clear language, Plaintiff-Appellees attempt to pick apart the cases on which it relies. *See* Eakin Br. 31-32 & n.4. They claim that these cases—*Molinari v. Bloomberg*, 564 F.3d 587 (2d Cir. 2009), *Clingman v. Beaver*, 544 U.S. 581 (2005), and *Rodriguez v. Popular Democratic Party*, 457 U.S. 1 (1982)—stand for the proposition that a challenged regulation receives no judicial scrutiny only when it imposes *no* burden on a constitutional right. Eakin Br. 31-32 & n.4.

That interpretation does not work. *Mazo* says that *Anderson-Burdick* balancing does not apply when there is a "*de minimis* burden," not when there is "*no*" burden. 54 F.4th at 138-39. Adopting Plaintiff-

Appellees' proposed interpretation would render *Mazo*'s rule tautological. Eakin Br. 31-32. Of course *Anderson-Burdick* does not apply to regulations that impose no burden: In that scenario, there is no constitutional question and nothing to balance. *See Mazo*, 54 F.4th at 145. *Mazo*'s rule therefore only bears stating if it covers regulations imposing at least *some* burden.

Indeed, *Mazo*'s own precedential analysis confirms this important point. As *Mazo* explained, the Second Circuit has held that *Anderson-Burdick* does not apply when a law's effect on a right is "incidental[] and constitutionally insignificant"—not *nonexistent*. *See* 54 F.4th at 139 n.10 (quoting *Molinari*, 564 F.3d at 606) (alteration in original). Likewise, the *Clingman* plurality declined to apply *Anderson-Burdick* in a challenge to a semi-closed primary law where the restriction on freedom of association was at most "little," reasoning that the burden was less than that of other laws the Supreme Court had upheld. *Id.* (quoting *Clingman*, 544 U.S. at 588-89). And *Rodriguez* did not even consider applying *Anderson-Burdick* to a law whose burden on the right to vote was "minimal." *Id.* (quoting *Rodriguez*, 457 U.S. at 12). In other words, *Mazo* reads these cases to establish that *Anderson-Burdick* does not reach laws imposing

"insignificant," "little," or "minimal"—i.e. "*de minimis*"—burdens, not just those that impose *no* burden.

*Fifth*, Plaintiff-Appellees invite the Court to discard *Mazo* in favor of inapt out-of-circuit authority. *See* Eakin Br. 24, 27-28. But Plaintiff-Appellees' cases are easily distinguished because they did not *present*, much less grapple with, *Mazo*'s rule that *de minimis* burdens do not implicate *Anderson-Burdick*. For example, *Democratic Executive Committee of Florida v. Lee* (which is not even precedential within the Eleventh Circuit, *see Democratic Exec. Comm. of Fla. v. NRSC*, 950 F.3d 790, 795 (11th Cir. 2020)), evaluated a signature-matching law that the court found imposed "at least a serious burden on the right to vote." 915 F.3d 1312, 1321 (11th Cir. 2019).

The same goes for *Price v. New York State Board of Elections*, which involved "at least some burden" and possibly "a substantial burden" on the right to vote, 540 F.3d 101, 109 (2d Cir. 2008), and *Fish v. Schwab*, which the court concluded involved a "significant" burden, 957 F.3d 1105, 1127-28 (10th Cir. 2020). Moreover, the courts concluded that the laws challenged in *Price* and *Fish* operated to deprive voters of the *opportunity* to vote at all. *See Price*, 540 F.3d at 109 & n.9 (court suggesting failure

8

to provide absentee voting may have deprived hospitalized voters of all opportunity to vote); *Fish*, 957 F.3d at 1127-28 (court concluding voter-registration rule prevented voters from even trying to vote); *see id.* at 1123 ("Both parties agree that this *Anderson-Burdick* balancing test applies here."). They therefore are far afield of the date requirement, which does not even *apply* to the in-person voting method favored by the majority of Pennsylvania voters. *See* Opening Br. 8-12.

Plaintiff-Appellees' closest case, *Northeast Ohio Coalition for the Homeless v. Husted* ("*NEOCH*"), is still far afield. *See* Eakin Br. 24, 28 (citing 837 F.3d 612 (6th Cir. 2016)). The *NEOCH* plaintiffs challenged several provisions, including a rule that voters write their birthdays and addresses on their mail-ballot envelopes exactly as that information appears in the State's records. 837 F.3d at 631-35. The Sixth Circuit concluded that the burden was "small," not *de minimis*, and no party appears to have argued that *Anderson-Burdick* does not reach rules imposing only *de minimis* burdens. *Id.* at 631-33.

*Sixth*, taking square aim at *Mazo*, Plaintiff-Appellees assert that Appellants lack any cases applying *Mazo*'s rule. Eakin Br. 28. If so, all that would show is that no litigant has ever previously advanced

9

Plaintiff-Appellees' radical misunderstanding of the Constitution. *See* Opening Br. 3-5. In any event, courts *have* applied *Mazo*'s rule. In *Luft v. Evers*, the Seventh Circuit rejected a challenge to a Wisconsin regulation prohibiting officials from sending absentee ballots via email or fax to most categories of voters. 963 F.3d 665, 676 (7th Cir. 2020). The court declined to apply *Anderson-Burdick* and engaged in no judicial balancing, explaining that the case was "not a plausible application" of *Anderson-Burdick* because some voters' "potential inconvenience does not permit a court to override the state's judgment." *Id.* at 676-77.

Also relevant are holdings from the Supreme Court and this Court finding that *de minimis* burdens cannot violate any statutory right to vote. Opening Br. 23-30; *see Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647 (2021); *Pa. State Conf. of NAACP Branches v. Sec'y Commonwealth of Pa.* ("*Pa. NAACP.*"), 97 F.4th 120 (3d Cir. 2024). Although Plaintiff-Appellees insist these cases are inapt because they address statutory right-to-vote protections, Eakin Br. 33-34, it is hard to understand their assumption that the Constitution demands *more* than landmark civil-rights statutes. In fact, the right to vote in those statutes is *coextensive* with the constitutional right to vote. *Baker v. Carr*, 369

U.S. 186, 247 (1962) (Douglas, J., concurring) (the "right to vote" was "protected by the judiciary long before that right received [] explicit protection" in civil-rights statutes); *see Chisom v. Roemer*, 501 U.S. 380, 392 (1991) ("coverage provided by [section 2 of the Voting Rights Act] was unquestionably coextensive with the coverage provided by the Fifteenth Amendment"). Thus, because this Court already held that the date requirement cannot violate any statutory right to vote, *Pa. NAACP*, 97 F.4th at 133, it cannot violate any constitutional right to vote either.

## II. THE CONSTITUTIONAL RIGHT TO VOTE DOES NOT EXTEND TO THIS MAIL-VOTING CONVENIENCE.

Plaintiff-Appellees' claim also fails for the independent reason that the Constitution does not guarantee a right to vote by mail. Opening Br. 40-46. Pennsylvania has satisfied its constitutional obligations by making in-person voting available to all. *See McDonald v. Bd. of Election Comm'rs of Chi.*, 394 U.S. 802, 807-11 (1969). Consequently, Plaintiff-Appellees have not (and cannot) establish that they are "absolutely prohibited from exercising the franchise" because they can vote in person exempt from the date requirement. *Id.* at 809.

Plaintiff-Appellees have no convincing response. They start by questioning *McDonald*'s validity, noting it predates *Anderson* and

11

*Burdick.* Eakin Br. 16, 38-40. But nothing suggests that *Anderson* or *Burdick* overruled *McDonald*. *Id.* *Anderson* does not mention *McDonald* at all, let alone purport to overrule or limit it. *See* 460 U.S. 780. And *Burdick* cites *McDonald* favorably. 504 U.S. at 433-34.

Appellees also gesture at *O'Brien v. Skinner*, 414 U.S. 524, 529-30 (1974) (Eakin Br. 39-40), but that case forecloses their argument. *O'Brien* applied *McDonald's* rule, holding that plaintiffs may challenge mail-voting regulations if they adduce evidence that the State deprives them of an alternative means of voting. *See id.* Plaintiff-Appellees cite no such evidence, *see* Eakin Br. 39-40, so *McDonald* governs, *see O'Brien*, 414 U.S. at 529-30.

Nor does it matter that lower courts have applied *Anderson-Burdick* in challenges to mail-voting rules. *See* Eakin Br. 36-38. Even if some lower courts were skeptical of *McDonald's* rule, they lack authority to overrule it. *See Agostini v. Felton*, 521 U.S. 203, 237 (1997). In any event, none of Plaintiff-Appellees' cases supports their argument that *McDonald* is no longer good law. Plaintiff-Appellees' favorite authorities are a 1993 out-of-circuit opinion and a district court opinion that make no mention of *McDonald*. Eakin Br. 35 (citing *Taxpayers United for*

*Assessment Cuts v. Austin*, 994 F.2d 291, 295 (6th Cir. 1993) and *Saucedo v. Gardner*, 335 F.Supp.3d 202, 217 (D.N.H. 2018)).  Four of Plaintiff-Appellees' other circuit precedents also do not cite *McDonald*, suggesting no *McDonald* argument was raised.  *See id.* 36-38 (citing *Mazo*, 54 F.4th at 140-41 & n. 18; *Democratic Exec. Comm. of Fla.*, 915 F.3d at 1319; *Ariz. Democratic Party v. Hobbs*, 18 F.4th 1179, 1186-87 (9th Cir. 2021); *NEOCH*, 837 F.3d at 631-34); *see Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 667 F.3d 408, 413 n.3 (3d Cir. 2012) (courts do not typically address issues not briefed).

The remaining two precedents distinguished *McDonald* on evidentiary grounds.  *See Middleton v. Andino*, 488 F.Supp.3d 261, 295-96 n.32 (D.S.C. 2020) (declining to apply *McDonald* because the COVID-19 pandemic interfered with right to vote in person); *Price*, 540 F.3d at 109 & n.9 (plaintiffs were unable to vote in person).  They thus confirm that *McDonald* remains binding precedent where it applies.  *See Tex. Democratic Party v. Abbott*, 961 F.3d 389, 406 (5th Cir. 2020).

Retreating, Plaintiff-Appellees appear to accept that *McDonald* allows States not to provide mail voting *at all*, arguing instead that Pennsylvania somehow violated the right to vote when it made voting

*easier* by granting mail voting to *everyone*. Eakin Br. 35-36. They further urge that this violation-by-generosity is somehow compounded because some counties do not give voters a second chance at casting valid mail ballots after submitting errant ones. *Id*. *McDonald* forecloses that counterintuitive argument. *See* 394 U.S. at 807-11. All that the right to vote requires is that voters be given an opportunity to vote *once* each election, and a State satisfies that requirement if it makes in-person voting available. *See id*. If the right to vote can be satisfied even when *no* mail voting is available, then logically it cannot cease to be satisfied when a State *adds* mail voting and gives voters one chance (and maybe more) to submit valid mail ballots. *Id*.

Plaintiff-Appellees answer this intuitive point with hysterical rhetoric about voters being "disenfranchised"—a word they grossly abuse. Eakin Br. 1-2, 4, 6-9, 11, 15, 17-18, 20, 24, 36, 42, 44-48. If voters do not follow the rules governing their constitutionally guaranteed *opportunity* to cast a ballot, they have *forfeited* their right to have the ballot counted, not been "disenfranchised." *See Ritter v. Migliori*, 142 S. Ct. 1824, 1825 (2022) (Alito, J., dissental); *Pa. NAACP*, 97 F.4th at 133. And those voters remain free in future elections to follow the rules for

either in-person or mail voting and have their ballots counted. *See Pa. NAACP*, 97 F.4th at 133. The date requirement has thus disenfranchised no one. The Court should reverse for this reason too.

## III. EVEN IF THE *ANDERSON-BURDICK* TEST APPLIES, THE DATE REQUIREMENT EASILY PASSES.

Finally, even if *Anderson-Burdick* does apply, the date requirement passes with flying colors. Opening Br. 46-52. The District Court properly concluded that the burden entailed by writing a date on an envelope is minimal at most. App.22. Rational-basis review therefore applies under *Anderson-Burdick. See Mays*, 951 F.3d at 784; *accord Mazo*, 54 F.4th at 145. And the date requirement easily survives rational-basis review because it (i) advances election administration by providing evidence of when a ballot was actually completed, (ii) promotes solemnity in voting, and (iii) helps detect and prosecute fraud. *See* Opening Br. 52-57.

Against this straightforward conclusion, Plaintiff-Appellees reply with analysis that goes awry at every turn.

### A. The Burden Imposed By The Date Requirement Is Minimal At Most.

The District Court rightly held that the date requirement is non-discriminatory and imposes—at most—only a minimal burden on voters. App.22 ("[T]his Court concludes that the burden imposes only a minimal

15

burden . . . . [and] is non-discriminatory."). That was true of the version of the date requirement the District Court analyzed, which required voters to handwrite the date on the mail-ballot declaration. It is even *more* true under the Secretary's 2024 redesign of the declaration, which simplifies voters' task to filling in the two-digit month and day in preprinted boxes. *See* Opening Br. 8-12, 50-52.

Plaintiff-Appellees did not cross-appeal the District Court's finding that the burden is minimal. Their attempt to challenge it now fails in any event.

*First*, Plaintiff-Appellees do not seriously contest the point that filling in four digits in preprinted boxes is objectively easy. *See id.* 10. Rather, they try to change the subject by arguing that the date requirement necessarily imposes a significant burden because it results in the rejection of "thousands" of ballots. Eakin Br. 18, 42-48. Plaintiff-Appellees thus erroneously conflate the *burden* of compliance with the *consequence* of noncompliance. Opening Br. 32-33. So, too, did the District Court in its musings, now touted by Plaintiff-Appellees, that declining to count ballots "imposes *significant* burdens on voting rights." Eakin Br. 43 (citing App.18-19).

As explained, the burden inquiry is *objective* and focuses on the difficulty of *compliance*, not the number of rejected ballots. Opening Br. 30-36. Neither *Crawford* nor *Brnovich* relied on rejection rates in finding the burdens at issue non-severe. *See Crawford*, 553 U.S. at 198 (plurality op.); *id.* at 208 (Scalia, J., concurring in the judgment); *Brnovich*, 594 U.S. at 669.

But even if rejection rates were relevant, they *reinforce* the conclusion that Pennsylvania's rule imposes only a minimal burden. Opening Br. 32-36. Intervenor-Appellants accurately predicted in their opening brief that Plaintiff-Appellees would fixate on the 2022 rejection rate. *Compare id.* 34-35, *with* Eakin Br. 1, 6, 44; *see* NAACP Br. 16-20 (similar focus). But even that rejection rate—under an old version of the date requirement—was only around 0.85%. Opening Br. 9. And in the 2024 General Election—conducted under the current, operative version of the requirement—the rejection rate fell to only 0.23%. *Id.* 34. As *Brnovich* explained, a rule that over 98% of voters successfully comply with does not "render a system unequally open" or violate the right to vote. 594 U.S. at 680.

*Second*, Plaintiff-Appellees ask the Court to grant prospective relief based on the superseded version of the date requirement. Eakin Br. 9. As explained, in 2024, the Secretary made compliance *even easier* by redesigning the declaration with bolded instructions and adding four clearly labeled boxes for voters to enter the two-digit month and day. Opening Br. 10-11. Plaintiff-Appellees nevertheless ask the Court to issue an advisory opinion and ignore the current, operative version of the date requirement because the District Court chose to ignore it. Eakin Br. 9. That failure of the District Court—inexcusable considering Intervenor-Appellants repeatedly raised this issue below, *see* Intervenor-Defendants' Reply In Support Of Their Suppl. Mot. For Summ. J., at 4-5 & n.1 (Dist. Ct. ECF No. 393); Intervenor-Defendants' Suppl. Statement, at 2-3 (Dist. Ct. ECF No. 420)—is another reason to reverse. And because the State's official voting forms are public records, this Court can also proceed by taking judicial notice of the operative version of the date requirement. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

*Third*, Appellees again attack a strawman when they assert that county election boards vary in how they administered the old version of the date requirement. Eakin Br. 25; *see* NAACP Br. 33-35. The

Secretary's 2024 redesign and standardization of the certification instructions make clear exactly how voters must fill in the month and day. Opening Br. 10. But even if they had not done so, all agree that even before the redesign, *every* county accepted ballots when the voter wrote the date in the standard American format. *See* Intervenor-Defendants' Reply In Support Of Their Suppl. Mot. For Summ. J., at 5 (Dist Ct. ECF No. 393). Plaintiff-Appellees have not identified any person who cannot fill in the date on the Secretary's form, rendering their musings about hypothetical non-parties irrelevant to their facial challenge. Eakin Br. 25. Nor is it pertinent that Act 77 does not expressly require the clear instructions the Secretary has now promulgated. *See id.* 48. What matters are the burdens the State's voting system *does* impose, not the burdens it could *hypothetically* impose. *See Artway v. Att'y Gen. of State of N.J.*, 81 F.3d 1235, 1248 (3d Cir. 1996) ("We may not pass upon hypothetical matters.").

*Fourth*, Plaintiff-Appellees try and fail to compare the date requirement to rules rejected by other circuits. *See* Eakin Br. 44-46. In *Lee*, the Eleventh Circuit addressed a signature-matching requirement that imposed a "serious burden" because it was nearly impossible to

comply with. 915 F.3d at 1319-21. In *Obama for America v. Husted*, the Sixth Circuit confronted the elimination of an early-voting period in which it believed 100,000 voters planned to vote. 697 F.3d 423, 431 (6th Cir. 2012). And in *Fish*, the Tenth Circuit confronted a documentary proof-of-citizenship requirement that it found prevented 31,000 people from voting entirely. 957 F.3d at 1110, 1135. Pennsylvania's requirement that voters fill in the month and day in preprinted boxes imposes no such difficulty or concomitant loss of all opportunity to vote. *See* Opening Br. 10.

*Fifth*, Plaintiff-Appellees insinuate error in the District Court's finding that the date requirement is non-discriminatory against "Black, Hispanic, and less-educated voters." Eakin Br. 25, 46; App.22. But Plaintiff-Appellees do not actually contest that factual finding. Eakin Br. 43. And for good reason. To start, evidence of burdens on particular subgroups is *irrelevant* to a right-to-vote analysis, as a case Plaintiff-Appellees repeatedly cite confirms. *See NEOCH*, 837 F.3d at 631; *see also Crawford*, 553 U.S. at 198 (plurality op.); *id.* at 205 (Scalia, J., concurring in the judgment); *Burdick*, 504 U.S. at 436-37; *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 235-36 (5th Cir. 2020). After all, allowing litigants

20

to prove right-to-vote claims by showing disparate impact on a subgroup would permit circumvention of the strict legal standards governing constitutional discrimination claims.  *See* Opening Br. 50.

Regardless, Plaintiff-Appellees also offer no persuasive evidence of disparate impact.  With respect to race, Plaintiff-Appellees' putative expert never even determined the race or ethnicity of *any* voter—and he conceded that his analysis did not determine whether voters of different races were more or less likely to comply with the date requirement. App.53-54.  As for age, the Secretary suggests that the ballots of older voters are rejected for noncompliance with the date requirement slightly more frequently (around 0.65%) than those of younger voters (around 0.3%).  *See* Secretary Br. 15; *see* NAACP Br. 23 (same).  That variation, however, is even more meaningless than differences the Supreme Court has pronounced insignificant.  *See Brnovich*, 594 U.S. at 680. Understandably, then, the Secretary does not argue that this difference is statistically significant or renders the date requirement discriminatory.  Secretary Br. 14-15.

B. **Laws Imposing Minimal Burdens Receive Rational-Basis Review Under *Anderson-Burdick*.**

Under *Anderson-Burdick*, "rational basis review" applies to rules imposing only minimal burdens. *Mays*, 951 F.3d at 784; *accord Mazo*, 54 F.4th at 145. Plaintiff-Appellees seek more probing federal judicial review of state voting rules and forthrightly insist that *Mays* was wrongly decided. They thus invite the Court to reject rational-basis review and create a circuit split. Eakin Br. 53. The Court should decline. "Common sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections," *Burdick*, 504 U.S. at 433, and rational-basis review accords due deference to the State's constitutionally assigned role, *see Crawford*, 553 U.S. at 208-09 (Scalia, J., concurring in the judgment). Applying such review is also what the Supreme Court itself has done, upholding voting regulations even when the "record contain[ed] no evidence" that a particular voting regulation was necessary. *Id.* at 194 (plurality op.); *id.* at 209 (Scalia, J., concurring in the judgment).

Having rejected rational-basis review, Plaintiff-Appellees posit that *every* ballot-casting rule, no matter how insubstantial its burden, must be subject to "searching" review that tests—presumably through

evidentiary submissions—the legitimacy and weight of the State's asserted interests. Eakin Br. 19 (citation omitted); *see id.* 49-55. Unsurprisingly, the arguments they muster for that position are unpersuasive.

*First*, Plaintiff-Appellees try but fail to distinguish *Crawford*, claiming that *Crawford* upheld Indiana's voter-ID law based on record evidence. *Id.* 54-55. But as the plurality observed, the "record contain[ed] no evidence of [in-person voter-impersonation] fraud actually occurring in Indiana at any time in its history." *Crawford*, 553 U.S. at 194-95 & nn.11-13. Rather than rely on a nonexistent record, the plurality instead engaged in "rational speculation" to uphold the statute, *FCC v. Beach Comms., Inc.*, 508 U.S. 307, 315 (1993); *see Parker v. Conway*, 581 F.3d 198, 202 (3d Cir. 2009), citing works of history, *Crawford*, 553 U.S. at 194 n.11, newspaper articles, *id.* at n.12, and judicial decisions, *id.* at n.13. The plurality concluded that such fraud *could* occur in Indiana, reasoned that the State had a strong interest in deterring it, and upheld the law on that basis. *Id.* at 196. Justice Scalia was even more explicit that no "record-based" inquiry was necessary. *Id.* at 208. If this is not rational-basis review, it is unclear what is.

*Second*, Plaintiff-Appellees ineffectually invoke circuit precedent. *See* Eakin Br. 49-53.[2]  *Pisano v. Strach* actually applied rational-basis review, upholding a deadline as "reasonable" in light of the State's "general interest in regulating the election process."  743 F.3d 927, 937 (4th Cir. 2014).  Another case, *Soltysik v. Padilla*, acknowledged that regulations imposing "a lesser burden on speech rights" only need be "reasonably related" to the State's interests.  910 F.3d 438, 445 (9th Cir. 2018) (cleaned up).  And in *Rogers v. Corbett*, this Court acknowledged that *Anderson-Burdick* balancing is even *more* flexible than the traditional three tiers of scrutiny, implying that for minimally burdensome laws, rational-basis review is entirely appropriate.  *See* 468 F.3d 188, 194 (3d Cir. 2006).  In other words, *Rogers* recognized that the purpose of *Anderson-Burdick*'s framework is to afford courts more flexibility to defer to state prerogatives, not less.  *Id.*

---

[2] Appellees also cite *Tashjian v. Republican Party of Connecticut*, which concerned an anti-party-raiding provision.  *See* Eakin Br. 49 (citing 479 U.S. 208 (1986)).  *Tashjian* predates *Burdick*, did not perform *Anderson-Burdick* balancing, and did not assign a weight to the burden.  479 U.S. at 213-217; *see Pisano*, 743 F.3d at 934 n.9 (explaining *Tashjian*'s minimal relevance to post-*Burdick* cases).  Moreover, the parties chose to litigate the case under a heightened scrutiny standard.  *See Tashjian*, 479 U.S. at 217.  It has no bearing on how the Court should analyze minimally burdensome ballot-casting rules.

Of Plaintiff-Appellees' remaining cases, only *Tedards v. Ducey*, 951 F.3d 1041 (9th Cir. 2020) (Eakin Br. 49-55), squarely confronted what standard applies at the lower end of the *Anderson-Burdick* framework. But while *Tedards* stated that some higher level of scrutiny than rational basis applies under *Anderson-Burdick*, it proceeded to uphold the challenged provision based entirely on the State's asserted interests and without reference to record evidence. *See id.* at 166-68.

Plaintiff-Appellees' remaining cases all involve challenges to laws imposing burdens courts found significant. *See Fish*, 957 F.3d at 1129 ("significant" burden requiring "heightened scrutiny") (Eakin Br. 44-46); *Belitskus v. Pizzingrilli*, 343 F.3d 632, 645 (3d Cir. 2003) ("severe" burden) (Eakin Br. 49); *Soltysik*, 910 F.3d at 445 (burden "serious enough to require" heightened scrutiny (cleaned up)) (Eakin Br. 49, 54); *Lerman v. Bd. of Elections in City of N.Y.*, 232 F.3d 135, 139 (2d Cir. 2000) ("severe[] burdens") (Eakin Br. 50); *Price*, 540 F.3d at 109 (burden "at a minimum, not trivial" and possibly "substantial") (Eakin Br. 51-54). Accordingly, the issue of whether rational-basis review applies to rules imposing *de minimis* burdens was neither presented nor fully considered.

Moreover, while *Price* did opine on the relationship between *Anderson-Burdick* and rational-basis review, 540 F.3d at 108-09, its observations are dicta, *see United States v. Warren*, 338 F.3d 258, 265 (3d Cir. 2003). And in any event, *Price* suggested that the sole difference between rational-basis review and minimal *Anderson-Burdick* scrutiny is that under the latter, a plaintiff need only rebut the justifications for the rule offered by the State, rather than "negat[e] every conceivable basis" of support for it. 540 F.3d at 108-09.

*Finally*, Plaintiff-Appellees fail to acknowledge the remarkable implications of applying "searching" scrutiny to all mandatory election rules. *See* Eakin Br. 19, 49-55. Both the Supreme Court and this Court have repeatedly recognized the primacy of the States' role in regulating elections and the deference that they are owed in this process. *See, e.g.*, *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997); *Council of Alt. Pol. Parties v. Hooks*, 179 F.3d 64, 70 (3d Cir. 1999) ("[S]tates have broad power to enact election codes that comprehensively regulate the electoral process."). Yet under Plaintiff-Appellees' proposed rule, every voting regulation, no matter how trivial, would be subject to

amorphous judicial balancing, replete with trials and judicial fact-finding.  Eakin Br. 54.

Moreover, because "abstract[] interests" and "post-hoc rationalizations" would not be "sufficiently weighty" to sustain a regulation, lawmakers would necessarily need to develop legislative records to sustain any law.  *Id.* (citation omitted).  This would slow legislation, increase the expense on the public, and effectively transfer responsibility for crafting election regulations from the States to the courts in violation of the Constitution.  *See* U.S. Const. Art. I, § 4, cl. 1. In short, Plaintiff-Appellees' *Anderson-Burdick* approach is radical, runs afoul of logic and precedent, and violates the Constitution itself.  It should be rejected.

## C. **Pennsylvania's Legitimate Interests Justify The Date Requirement.**

As both this Court and Pennsylvania courts have recognized, the date requirement furthers at least three "important regulatory interests."  *Timmons*, 520 U.S. at 358 (cleaned up); *see* Opening Br. 52-57.  The date requirement "provides proof of when an elector actually executed a ballot in full."  *In re: Canvass of Absentee and Mail-in Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d 1058, 1090 (Pa. 2020) (Dougherty,

J., concurring and dissenting op.) (cleaned up). It is a formality that helps preserve the solemnity of voting. *See Minn. Voters All. v. Mansky*, 585 U.S. 1, 15 (2018). And it helps Pennsylvania detect fraud, as demonstrated in *Commonwealth v. Mihaliak*, No. MJ-2202-CR-126-2022 (Lancaster County). *See* App.220.

Plaintiff-Appellees erroneously discount all of these interests. *See* Eakin Br. 56-66.

*First*, Plaintiff-Appellees wrongly suggest this Court already found that the date requirement serves no legitimate state interests. *Id.* 1, 11. In *Pennsylvania State Conference of NAACP Branches*, this Court stated in passing that the date requirement serves "little apparent purpose." 97 F.4th at 125. But that stray comment was dictum, as the Court rejected the statutory claims *regardless* of any interests the requirement serves. *Id.* at 139. That is why the Court ignored Intervenor-Appellants' arguments about the state interests the requirement advances. *Id.* And the Supreme Court vacated the earlier decision Plaintiff-Appellees cite, *Migliori v. Cohen*, 36 F.4th 153, 164 (3d Cir. 2022), precisely to ensure that it did not "spawn[] any legal consequences," *United States v. Munsingwear, Inc.*, 340 U.S. 36, 41 (1950).

In any event, even if the date requirement's constitutional validity were an exercise in judicial nose-counting, opinions from the Pennsylvania Supreme Court and this Court recognize that the requirement *does* in fact further state interests. *See, e.g.*, *Migliori*, 36 F.4th at 165 (Matey, J., concurring in the judgment); *In re: Canvass*, 241 A.3d at 1090 (Dougherty, J., concurring and dissenting op.); *see also Migliori v. Lehigh Cty. Bd. of Elections*, No. 5:22-cv-00397, 2022 U.S. Dist. LEXIS 46352, at \*38-39 (E.D. Pa. Mar. 16, 2022).

*Second*, Plaintiff-Appellees dispute whether the date requirement "provides proof of when an elector actually executed a ballot in full." *In re: Canvass*, 241 A.3d at 1090 (Dougherty, J., concurring and dissenting op.) (cleaned up). As explained, however, it provides an important backstop if the Pennsylvanian's Statewide Uniform Registry of Electors ("SURE") system fails. *See Migliori*, 36 F.4th at 165 (Matey, J., concurring in the judgment). And while Plaintiff-Appellees apparently do not think such a fail-safe is a good idea, *see* Eakin Br. 63-64, the Constitution does not prohibit Pennsylvania from taking prophylactic measures, *see Brnovich*, 594 U.S. at 686. Appellees also note that the SURE system records the date a ballot is received rather than the date it

is completed.  *See* Eakin Br. 63-64; NAACP Br. 26-28.  Yet in the event of a malfunction, a record of the date of completion would be more useful than no record at all.  *See* Commonwealth Br. 29-30 & n.16; *cf. Webb v. Dep't of Just.*, 117 F.4th 560, 566 (3d Cir. 2024) (Prison Mailbox Rule).

*Third*, Plaintiff-Appellees fail to engage seriously with Pennsylvania's interest in maintaining the solemnity of its voting process.  Eakin Br. 65-66.  Although they question whether this interest matters, the Supreme Court has said that it does.  *See Mansky*, 585 U.S. at 15; *see also Vote.org v. Callanen*, 89 F.4th 459, 467 (5th Cir. 2023).  Plaintiff-Appellees also assert that Pennsylvania lacks evidence that the date requirement furthers this interest, but such evidence is not required.  *See Beach Comms.*, 508 U.S. at 315 (A legislature's judgment "may be based on rational speculation unsupported by evidence or empirical data."); *accord Timmons*, 520 U.S. at 364.  And given the ubiquity of signature-and-date requirements for legal documents, Judge McCullough of the Pennsylvania Commonwealth Court had little difficulty finding the date requirement advances this interest.  *Black Pol. Empowerment Project v. Schmidt*, 2024 WL 4002321, at *53 (Pa. Commw. Ct. Aug. 30, 2024) (McCullough, J., dissenting) ("The requirement to sign

and date documents is deeply rooted in legal traditions that prioritize clear and consensual agreements."), *vacated* 322 A.3d 221 (Pa. 2024).

As for Plaintiff-Appellees' suggestion that the same effect could be achieved if the date requirement were no longer mandatory, Eakin Br. 65-66, that assertion itself relies on nothing more than "rational speculation," *Beach Comms.*, 508 U.S. at 315. Regardless, as the Pennsylvania Supreme Court recognized in rejecting another challenge to the date requirement, "a mandate without consequences is no mandate at all," so Plaintiff-Appellees' wish for a consequence-free date requirement rings hollow. *In re: Canvass*, 241 A.3d at 1080 (Wecht, J., concurring in part) (controlling op.).

*Fourth*, Plaintiff-Appellees make an even less persuasive attack on Pennsylvania's anti-fraud rationale. *See* Eakin Br. 59-63. "[I]t should go without saying that a State may take action to prevent election fraud without waiting for it to occur and be detected." *Brnovich*, 594 U.S. at 686. Here, however, the date requirement has *already* helped Pennsylvania detect and prosecute fraud. *See* Opening Br. 58, 61-62 (citing *Commonwealth v. Mihaliak*, No. MJ-2202-CR-126-2022 (Lancaster County)); *see* App.220, 227.

31

Appellees nonetheless inexplicably intone that there is no evidence to support the State's anti-fraud interest.  *See* Eakin Br. 60; Philadelphia Appellees Br. 14.  Plaintiff-Appellees cite submissions from county boards asserting that the date requirement does not assist with fraud detection, *see* Eakin Br. 59-60, but the evidence of *actual fraud* and the date requirement's utility in detecting and prosecuting it undercuts those contentions, *see* Opening Br. 58, 61-62; Topper Amicus Br. 7-10.  That evidence, and Intervenor-Appellants' anti-fraud arguments (now joined by the Commonwealth), also distinguish *NEOCH*, 837 F.3d at 632-33 (Eakin Br. 60-61), where the State waived any anti-fraud interest in the challenged rule.

Plaintiff-Appellees thus pivot to the incorrect claim that the instance of fraud in *Mihaliak* is insufficient by itself to justify the date requirement.  Eakin Br. 62-63.  That the decedent's ballot would not have been counted anyway is of no moment to whether the date requirement *also* proved third-party fraud.  *Compare id.*, *with* Opening Br. 55-57, 61-62.  Moreover, even this single example is more evidence of fraud than the Supreme Court required in *Crawford*.  553 U.S. at 194-95 (plurality op.).  And given the difficulty of detecting fraud, *Brnovich*, 594 U.S. at

685-86, that Pennsylvania has successfully prosecuted a fraud case using the date requirement only strengthens this justification for the requirement. Put differently, if "rational speculation" alone is enough to support the date requirement, *see Beach Commc'ns, Inc.*, 508 U.S. at 315; *Mays*, 951 F.3d at 784, then justification based on an actual event is more than sufficient, *see Crawford*, 553 U.S. at 194-95 (plurality op.). The date requirement is constitutional under any conceivably applicable standard.

* * *

A final point bears emphasis. Given their repeated lawsuits against the date requirement, it is obvious that Plaintiff-Appellees, two Secretaries appointed by Democratic Governors, and a few counties vigorously disagree with the General Assembly's policy choice to enact the date requirement and to maintain it amidst a spirited, ongoing debate. *See* Topper Amicus Br. 3-10. But the Constitution assigns that policy choice *only* to the General Assembly. U.S. Const. Art I, § 4, cl. 1. That is why this Court's review of the date requirement must be "quite deferential." *Mazo*, 54 F.4th at 153-54. The Court should reaffirm that rule, respect the General Assembly's prerogative to maintain or repeal the date requirement, and reverse.

# CONCLUSION

The Court should reverse.

Dated:  June 11, 2025

Kathleen A. Gallagher
THE GALLAGHER FIRM, LLC
436 Seventh Ave., 31st Floor
Pittsburgh, PA 15219
(412) 717-1900
kag@gallagherlawllc.com

Thomas W. King, III
Thomas E. Breth
DILLON, MCCANDLESS, KING,
COULTER & GRAHAM, LLP
128 W. Cunningham St.
Butler, PA 16001
(724) 283-2200
tking@dmkcg.com
tbreth@dmkcg.com

Respectfully submitted,

*/s/* John M. Gore
John M. Gore
(D.C. Bar No. 502057)
 *Counsel of Record*
E. Stewart Crosland
Louis J. Capozzi III
Benjamin P. Daus
JONES DAY
51 Louisiana Ave. NW
Washington, DC  20001
(202) 879-3939
jmgore@jonesday.com
scrosland@jonesday.com
lcapozzi@jonesday.com
bdaus@jonesday.com

*Counsel for Intervenor-Appellants*

# COMBINED CERTIFICATIONS

In accordance with the Federal Rules of Appellate Procedure and the Local Rules of this Court, I hereby certify the following:

1.     I am  a member in good standing of the Bar of this Court.

2.     This Brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 6,492 words, excluding the parts exempted by Fed. R. App. P. 32(f).

3.     This Brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) & (a)(6) because it has been prepared using Microsoft Word in a proportionally spaced 14-point font (namely, Century Schoolbook) in the text and the footnotes.

4.     The text of the electronic Brief is identical to the text in the paper copies.

5.     The electronic file containing the Brief was scanned for viruses using the most recent version of a commercial virus scanning program, and no virus was detected.

Dated: June 11, 2025                    */s/* John M. Gore_____
                                        John M. Gore
                                        *Counsel for Intervenor-Appellants*

## CERTIFICATE OF SERVICE

I, John M. Gore, hereby certify that a copy of this document was electronically filed with the Clerk of Court using the appellate CM/ECF system, causing this document to be electronically served on all counsel of record.

Dated: June 11, 2025        */s/* John M. Gore
                                       John M. Gore
                                       *Counsel for Intervenor-Appellants*