IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

**No. 25-1644**

_____

**BETTE EAKIN, *et al.***

**v.**

**ADAMS COUNTY BOARD OF ELECTIONS, *et al*.**

**Appeal of: REPUBLICAN NATIONAL COMMITTEE; NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE; and REPUBLICAN PARTY OF PENNSYLVANIA**

_____

**REPLY BRIEF FOR INTERVENOR
THE COMMONWEALTH OF PENNSYLVANIA**

_____

APPEAL FROM THE JUDGMENT OF THE UNITED STATES
DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ENTERED MARCH 31, 2025

DAVID W. SUNDAY, JR.
*Attorney General*

Office of Attorney General          BY:    BRETT GRAHAM
1600 Arch Street, Suite 300                *Deputy Attorney General*
Philadelphia, PA 19103
Phone: (267) 530-0886                      SEAN A. KIRKPATRICK
Fax: (717) 772-4526                        *Chief Deputy Attorney General*
                                           *Chief, Appellate Litigation Section*

DATE: June 11, 2025

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................... ii

ARGUMENT ..................................................................................................... 1

    I.    THE FIRST STEP OF *ANDERSON-BURDICK* IS NOT AN "IMAGINED THRESHOLD;" IT IS REQUIRED ................................................................. 3

    II.   WHILE PENNSYLVANIA LAW PROVIDES SUFFICIENT GUIDANCE, THAT QUESTION IS NOT RELEVANT IN THIS FACIAL CHALLENGE .......... 8

    III.  APPELLEES FAILED TO ESTABLISH A "MORE THAN MINIMAL" BURDEN ...................................................................................................... 13

    IV.  AFFORDING STATE INTERESTS SHORT SHRIFT DOES NOT MAKE THEM ANY LESS VALID OR COGNIZABLE ................................................ 15

    V.   THE ADAMS COUNTY BOARD FORFEITED ITS MERITLESS ARGUMENT UNDER THE PENNSYLVANIA UNIFORM UNSWORN DECLARATIONS ACT ...................................................................................... 18

    VI.  *AMICI* SUPPORTING AFFIRMANCE DO NOT RAISE COMPELLING ARGUMENTS .............................................................................................. 19

CONCLUSION ................................................................................................... 22

CERTIFICATE OF COUNSEL ........................................................................ 23

CERTIFICATE OF SERVICE .......................................................................... 24

# TABLE OF AUTHORITIES

**Page**

## Cases

*Anderson v. Celebrezze*,
  460 U.S. 780 (1983) ................................................................... 1, 3, 15

*Arizona Democratic Party v. Hobbs*,
  18 F.4th 1179 (9th Cir. 2021) ............................................................7, 14

*Ball v. Chapman*,
  289 A.3d 1 (Pa. 2023) ................................................................ 9, 16, 17

*Belitskus v. Pizzingrilli*,
  343 F.3d 632 (3d Cir. 2003)................................................................5, 15

*Bernitsky v. United States*,
  620 F.2d 948 (3d Cir. 1980)................................................................18

*Biener v. Calio*,
  361 F.3d 206 (3d Cir. 2004)................................................................4

*Burdick v. Takushi*,
  504 U.S. 428 (1992) ................................................................1

*Carden v. Arkoma Assocs.*,
  494 U.S. 185 (1990) ................................................................18

*Center for Coalfield Justice v. Washington Cnty. Bd. of Elections*,
  No. 1172 C.D. 2024, 2024 WL 4272040, at *8 (Pa. Cmwlth. Sept. 24, 2024) ...11

*Clingman v. Beaver*,
  544 U.S. 581 (2005) ................................................................6

*Commonwealth v. Mihaliak*,
  CP-36-CR-0003315-2022 (Lanc. Cnty. CCP 2022)...........................................17

*Council of Alt. Pol. Parties v. Hooks*,
  121 F.3d 876 (3d Cir. 1997)................................................................6

*Democratic Exec. Comm. of Fla. v. Lee*,
  915 F.3d 1312 (11th Cir. 2019) ................................................................ 5, 8, 12

*Democratic Exec. Comm. of Fla. v. Nat'l Republican Senatorial Comm.*,
  950 F.3d 790 (11th Cir. 2020) (*per curiam*) ................................................................5, 8

ii

*FCC v. Beach Commc'ns, Inc.*,
   508 U.S. 307 (1993) ......................................................................15

*Fish v. Schwab*,
   957 F.3d 1105 (10th Cir. 2020) ......................................................5

*Genser v. Butler County Board of Elections*,
   325 A.3d 458 (Pa. 2024) ...............................................................11

*In re Indian Palms Assoc., Ltd.*,
   61 F.3d 197 (3d Cir. 1995)..............................................................10

*Jordan v. Philadelphia Media Network*,
   751 Fed. Appx. 239 (3d Cir. 2018) ................................................10

*Kuznik v. Westmoreland Cnty. Bd. of Comm'rs*,
   902 A.2d 476 (Pa. 2006) ................................................................16

*Lerman v. Board of Elections in New York City*,
   232 F.3d 135 (2d Cir. 2000).............................................................6

*Lesende v. Borrero*,
   752 F.3d 324 (3d Cir. 2014) ...........................................................18

*Luft v. Evers*,
   963 F.3d 665 (7th Cir. 2020)...........................................................15

*Maldonado v. Baker Cnty. Sheriff's Office*,
   23 F.4th 1299 (11th Cir. 2022) .......................................................21

*Massachusetts v. Upton*,
   466 U.S. 757 (1984).......................................................................12

*Mazo v. New Jersey Sec'y of State*,
   54 F.4th 124 (3d Cir. 2022)..................................................... 1, 3, 4, 7

*Molinari v. Bloomberg*,
   564 F.3d 587 (2d Cir. 2009).............................................................4

*Northeast Ohio Coal. for the Homeless v. Husted*,
   837 F.3d 612 (6th Cir. 2016)............................................................5

*O'Brien v. Skinner*,
   414 U.S. 524 (1974).........................................................................5

*Obama for Am. v. Husted*,
   697 F.3d 423 (6th Cir. 2012)............................................................5

*Ohio Council 8 Am. Fed'n of State v. Husted*,
  814 F.3d 329 (6th Cir. 2016)...................................................................6

*Parker v. Conway*,
  581 F.3d 198 (3d Cir. 2009)...................................................................17

*Perry v. Grant*,
  775 F. Supp. 821 (M.D. Pa. 1991) ........................................................20

*Pisano v. Strach*,
  743 F.3d 927 (4th Cir. 2014)...................................................................5

*Price v. New York State Board of Elections*,
  540 F.3d 101 (2d Cir. 2008)....................................................................7

*Republican Nat'l Comm. v. Genser*,
  __ S. Ct. __, No. 24–786 (June 6, 2025)..............................................11

*Rodriguez v. Popular Democratic Party*,
  457 U.S. 1 (1982)..................................................................................12

*Rogers v. Corbett*,
  468 F.3d 188 (3d Cir. 2006) ......................................................... 5, 6, 20

*Saucedo v. Gardner*,
  335 F. Supp. 3d 202 (D.N.H. 2018) ........................................................6

*Singleton v. Wulff*,
  428 U.S. 106 (1976)..............................................................................18

*Soltysik v. Padilla*,
  910 F.3d 438 (9th Cir. 2018).................................................................5, 6

*Swanson v. Worley*,
  490 F.3d 894 (11th Cir. 2007) ..............................................................12

*Tashjian v. Republican Party of Conn.*,
  479 U.S. 208 (1986)................................................................................6

*Taxpayers United for Assessment Cuts v. Austin*,
  994 F.2d 291 (6th Cir. 1993)................................................................5, 6

*Tedards v. Ducey*,
  951 F.3d 1041 (9th Cir. 2000) ................................................................7

*Texas Democratic Party v. Abbott*,
  961 F.3d 389 (5th Cir. 2020)...................................................................5

*Thomas Jefferson Univ. Hosps., Inc. v. Pennsylvania Dep't of Labor and Indus.*,
162 A.3d 384 (Pa. 2017) ...................................................................20

*United States v. Salerno*,
481 U.S. 739 (1987) ........................................................................12

*Werner v. Werner*,
267 F.3d 288 (3d Cir. 2001) .............................................................10

**Statutes**

1 Pa. C.S. § 1932 ...............................................................................19

1 Pa. C.S. § 1933 ...............................................................................19

25 P.S. § 3050(a.4)(5)(ii)(F) .............................................................11

25 P.S. § 3157(a) ..............................................................................11

42 Pa. C.S. § 6201 *et seq.* ................................................................18

42 Pa. C.S. § 6204(a) ........................................................................19

42 Pa. C.S. § 6206............................................................................19

**Other Authorities**

Michael Slade, *A Matter of Interpretation: Federal Courts and the Law*, 36 HARV.
J. ON LEGIS. 259 (1999) ....................................................................21

Pennsylvania Department of State, *Secretary of the Commonwealth Certifies 2024
General Election Results*, https://www.pa.gov/agencies/dos/news
room/secretary-of-the-commonwealth-certifies-2024-general-election-re.html
(last visited June 10, 2025) ..............................................................13

Pennsylvania Department of State, *Shapiro Administration Introduces Redesigned
Mail Ballot Materials to Give Voters Clearer Instructions, Decrease Number of
Rejected Ballots, and Ensure Every Legal Vote is Counted*,
https://www.pa.gov/agencies/dos/newsroom/shapiro-administration-introduces-
redesigned-mail-ballot-materials-to-give-voters-clearer-instructions-decrease-

v

number-of-rejected-ballots-and-ensure-every-legal-vote-is-counted.htm.html
(last visited June 10, 2025) ...................................................................................9

# ARGUMENT

Straining to justify the District Court's novel and selective reading of case law, Appellees lay bare the stunning breadth of their position. The *Anderson-Burdick* framework, they contend, is a one-way ticket to a free-standing judicial inquiry into whether an election rule—that is, *any* election rule—is a good one, based upon a court's evaluation of its costs and benefits. That view is profoundly incorrect.

The order of operations in an *Anderson-Burdick* analysis matters. At the outset, a court must identify the right protected by the First Amendment or Fourteenth Amendment that a plaintiff seeks to vindicate. *See Anderson v. Celebrezze*, 460 U.S. 780, 788–89 (1983); *Mazo v. New Jersey Sec'y of State*, 54 F.4th 124, 137 (3d Cir. 2022). This inquiry requires a court to "determine the '*character* and magnitude' of the burden that the challenged law imposes on constitutional rights." *Mazo*, 54 F.4th at 137 (emphasis added) (quoting *Burdick v. Takushi*, 504 U.S. 428, 434 (1992)). If—and only if—a protected constitutional interest is identified, *then* a court proceeds to apply a level of scrutiny that corresponds to the burden on that right. *See id.*

Appellees do not attempt to explain—because they cannot—how the First Amendment's protections shield a voter from their own failure to follow a *de minimis*, democratically-enacted, generally-applicable election rule. Yet that was the District Court's conclusion. Mem. Op. at 12–13. Appellees abandon the District

1

Court's rationale entirely and instead primarily cite cases dealing with the *Fourteenth Amendment's* guarantee of equal protection. But they fall conspicuously short of requesting affirmance on that basis, in part because the record cannot support those theories.

Appellees ignore the character of the injury altogether. They proclaim that the standard for *Anderson-Burdick*'s applicability is "simply whether a burden exists," full stop. Appellees' Br. at 24.[1] In doing so, they flout both the plain text of *Anderson* and this Court's straightforward guidance in *Mazo*. What remains in their briefing are conclusory dismissals of valid state interests and empty predictions about the effect of the District Court's mistake, *id.* at 59–66, with a healthy sprinkling of political and policy justifications along the way.

This extremely erroneous understanding of the *Anderson-Burdick* analysis must be nipped in the bud. This Court should vacate and reverse.

---

[1] This brief's use of "Appellees" and citations to "Appellees' Brief" refer to the Plaintiff-Appellees, whose focus is the constitutional questions at issue. Defendant-Appellees the Philadelphia, Allegheny, Bucks, Chester, and Montgomery County Boards of Election "take no position on the merits of [those] constitutional claims." ECF 91 at 1 (hereinafter, Five Counties' Br.).

Defendant-Appellee the Adams County Board of Elections urges this Court to affirm "primarily on statutory grounds," arguing that resolution of the constitutional question is "unnecessary." ECF 95 at 10 (hereinafter, Adams County Br.). Part V herein responds to that contention.

## I.    THE FIRST STEP OF *ANDERSON-BURDICK* IS NOT AN "IMAGINED THRESHOLD;" IT IS REQUIRED

Appellees suggest that the Commonwealth has adopted a "radical" understanding of *Anderson-Burdick*, one which is wholly "unprecedented" and to some extent "imagined." *Id.* at 20–21. Yet later, they are unable to avoid citing what case law plainly provides. *Id.* at 42. "The first step in *Anderson-Burdick* analysis is to determine the character and magnitude that the challenged law imposes on constitutional rights." *Id.* (quoting *Mazo*, 54 F.4th at 137 (internal quotations omitted)). A plaintiff must specify the interest safeguarded by the First or Fourteenth Amendment that they seek to vindicate. *Anderson*, 460 U.S. at 789. As discussed *supra*, the District Court solely relied upon the First Amendment and did not address the Fourteenth Amendment in reaching its conclusion. *See* Mem. Op. at 11 ("Plaintiffs grounds their claim in the First Amendment to the Constitution."); *cf.* Cmwlth. Op. Br. at 15–16 (discussing the Fourteenth Amendment's discrete protections of the right to vote).

Appellees' abject failure to identify an interest that satisfies the first step of *Anderson-Burdick* cuts to the heart of this case. They contend that "courts across the country … have uniformly applied" that framework in voting cases, and claim that "[n]either Appellant" has named a "single case" in which a court has declined to do so. Appellees' Br. at 20–21. There are three glaring problems with this argument.

*First*, Appellees strategically ignore the Commonwealth's citation to *Biener v. Calio*, 361 F.3d 206, 214–15 (3d Cir. 2004) (declining to apply the framework where there were "no First Amendment considerations … at issue"), as a representative case. *See* ECF 72 at 12–13 (hereinafter, Cmwlth. Op. Br.). *Second*, they conveniently disregard the footnote in *Mazo* wherein this Court identified a host of election-related cases (including *Biener*) which eschewed the *Anderson-Burdick* framework because there was "no cognizable constitutional right at issue." *Mazo*, 54 F.4th at 139 n.9. *Third*, one of Appellees' own cited cases concluded that "[n]o balancing [was] necessary" because the claimants did not advance a "viable First Amendment claim in the first place." *See Molinari v. Bloomberg*, 564 F.3d 587, 599 (2d Cir. 2009); Appellees' Br. at 31 (acknowledging that "the law did not burden constitutional rights *at all*") (emphasis in original). Appellees cannot close their eyes and wish away these cases.

A closer review of the cases Appellees cite that do apply *Anderson-Burdick* reveals **not one** supporting their view that "[t]he question is simply whether a burden exists." Appellees' Br. at 24. Nor do any of Appellees' cases support the District Court's invention of a free-standing First Amendment right to have one's vote counted. Mem. Op. at 21. In fact, Appellees' cases refute such understandings and reinforce that the framework applies to burdens on a "relevant constitutional right, such as the right to vote or the First Amendment rights of free expression and

4

association." *Mazo*, 54 F.4th at 138. Appellees' citations fall into essentially four

categories, none of which capture the claim at issue here, and are therefore irrelevant:

- 12 of these cases deal with Fourteenth Amendment equal protection guarantees—which the District Court never addressed and which have not been clearly raised as an alternative ground for affirmance.[2]

---

[2] *See O'Brien v. Skinner*, 414 U.S. 524, 530 (1974) (invalidating New York election scheme that "discriminate[d] between categories of qualified voters in a way that … is wholly arbitrary."); *Fish v. Schwab*, 957 F.3d 1105, 1111 (10th Cir. 2020) (invalidating Kansas documentary proof of citizenship rule that resulted in voter registration applications being canceled or suspended); *Texas Democratic Party v. Abbott*, 961 F.3d 389, 395 (5th Cir. 2020) (staying injunction of Texas vote-by-mail rules that lower court found to "discriminate by age in violation of equal protection"); *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1319 (11th Cir. 2019) (declining to stay injunction of Florida scheme which lacked "uniform standards for matching signatures" and "serious[ly]" burdened right "to participate equally in the electoral process") (citation omitted)), *dismissed as moot sub nom. Democratic Exec. Comm. of Fla. v. Nat'l Republican Senatorial Comm.*, 950 F.3d 790, 792 (11th Cir. 2020) (*per curiam*); *Soltysik v. Padilla*, 910 F.3d 438, 443 (9th Cir. 2018) (reversing dismissal of equal protection challenge to California primary ballot design by minor party candidate); *Northeast Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 630–31 (6th Cir. 2016) (*Husted II*) (evaluating Ohio absentee ballot identification rules under equal protection principles); *Pisano v. Strach*, 743 F.3d 927, 929 (4th Cir. 2014) (invalidating North Carolina filing deadline that placed "additional substantial burden" on minor political parties); *Obama for Am. v. Husted*, 697 F.3d 423, 427 (6th Cir. 2012) (upholding injunction of Ohio scheme with different ballot deadlines for military and nonmilitary voters); *Rogers v. Corbett*, 468 F.3d 188, 194–98 (3d Cir. 2006) (upholding on its face Pennsylvania statute setting ballot access threshold for minor political parties); *Belitskus v. Pizzingrilli*, 343 F.3d 632, 647 (3d Cir. 2003) (invalidating Pennsylvania mandatory filing fee as applied to indigent candidates and their supporters); *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 298 (6th Cir. 1993) (affirming dismissal of challenge to Michigan state board's rejection of proposed ballot initiative); *Council of Alt. Pol. Parties v. Hooks*, 121 F.3d 876, 880 (3d Cir.

- 3 of these cases deal with First Amendment core political speech—which the District Court expressly determined was not at issue here.[3]

- 6 of these cases deal with First Amendment associational rights—a concept never invoked by Appellees in this matter.[4]

- 2 of these cases deal with Fourteenth Amendment due process rights—another concept not invoked by Appellees in this matter.[5]

---

1997) (enjoining New Jersey nominating petition rule that disadvantaged "alternative political parties").

[3] *See Solytsik*, 910 F.3d at 443 (reviewing minor party candidate's claim regarding "freedom from viewpoint discrimination … [and] compelled speech"); *Lerman v. Board of Elections in New York City*, 232 F.3d 135, 146 (2d Cir. 2000) ("The petition circulation activity at issue in this case … clearly constituted core political speech"); *Austin*, 994 F.2d at 296–97 (concluding that right to free speech had "not been impinged").

[4] *See Clingman v. Beaver*, 544 U.S. 581, 584 (2005) (upholding Oklahoma primary system that purportedly violated associational rights of "the Libertarian Party … and several Oklahomans who are registered members of the Republican and Democratic Parties"); *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 211 (1986) (upholding Connecticut eligibility provision that purportedly deprived political party of its "First Amendment right to enter into political association with individuals of its own choosing"); *Soltysik*, 910 F.3d at 443 (rejecting claimed violation of associational rights); *Ohio Council 8 Am. Fed'n of State v. Husted*, 814 F.3d 329, 335 (6th Cir. 2016) (upholding Ohio scheme prohibiting judicial candidates from "list[ing] their political party affiliations on the … ballot"); *Rogers*, 468 F.3d at 194–98 (evaluating claims by minor political parties under freedom of association jurisprudence); *Austin*, 994 F.2d at 296–97 (concluding that right to political association had "not been impinged").

[5] *See Austin*, 994 F.2d at 297 (rejecting claim that Michigan law violated "Fourteenth Amendment due process … rights"); *Saucedo v. Gardner*, 335 F. Supp. 3d 202, 222 (D.N.H. 2018) (invalidating New Hampshire "process for rejecting voters due to a signature mismatch" on procedural due process grounds).

The remaining cases cited by Appellees that do not fit neatly into these categories offer little comfort otherwise.[6] Notably, the singular case that considered claims resembling those advanced by Appellees was decided on equal protection grounds. *See Husted II*, 837 F.3d at 630–31. And furthermore, this out-of-circuit authority cannot be squared with *Mazo*. *Cf. Mazo*, 54 F.4th at 138–19 (discussing when *Anderson-Burdick* "[c]ertainly … does not apply").[7]

Simply put, "[m]ost forms of voter negligence have no remedy." *Hobbs*, 18 F.4th at 1188. Appellees' attempt to fashion the First Amendment into that remedy is ill-conceived—their claim does not implicate core political speech, or the political activity of voters who "share a particular viewpoint, associate or wish to associate with one another, or share protected characteristics." Cmwlth. Op. Br. at 12. This Court should reject this attempt to skip to *Anderson-Burdick* interest balancing in derogation of its guidance in *Mazo*.

---

[6] In *Arizona Democratic Party v. Hobbs*, 18 F.4th 1179, 1184 (9th Cir. 2021), voters who failed to sign an affidavit on their ballot materials were prohibited from curing signature mismatches, whereas voters who *had* signed were afforded a cure period. The Ninth Circuit deemed the "distinction between categories of voters … rational" and expressly rejected the argument that the burden could be discerned by reference to the consequence of non-compliance. *Id.* at 1188–93.

Meanwhile, the fact pattern in *Price v. New York State Board of Elections*, 540 F.3d 101, 112 (2d Cir. 2008) was "unusual," and "the holding …. necessarily narrow." And in *Tedards v. Ducey*, the court expressly assumed "*without deciding*, that regulation of the timing of a vacancy election is at least a burden for purposes of *Burdick* review." 951 F.3d 1041, 1066 (9th Cir. 2000) (emphasis added). .

[7] *See also* Cmwlth. Op. Br. at 25–26 (further distinguishing *Husted I* and *II*).

## II.    WHILE PENNSYLVANIA LAW PROVIDES SUFFICIENT GUIDANCE, THAT QUESTION IS NOT RELEVANT IN THIS FACIAL CHALLENGE

Appellees suggest, as they did below, that Pennsylvania law "provides no guidance on how a handwritten date should be evaluated for compliance." Appellees' Br. at 25; *see* Dist. Ct. ECF 288 at 21. This argument is, to reiterate, far afield of the District Court's rationale. It is also legally unavailing.

This thread of argument most closely resembles the Eleventh Circuit case *Lee*, *see supra* n.2, and implicates a specious contention about the record by Appellees. In *Lee*, a district court's injunction of Florida's signature-matching scheme was upheld because, in execution, it lacked "uniform standards" and did not provide "qualifications or training for those who engage in the job" of matching signatures. *See* 915 F.3d at 1319–20. All parties later agreed that the case was moot when the state updated its law, and the Eleventh Circuit never reached the merits. *Lee*, 950 F.3d at 792, 795 (*per curiam*). Though such a rationale is again absent from the District Court's ruling, Appellees suggest that voters here similarly face an "unacceptable risk that they will be completely—and *arbitrarily*—disenfranchised" because of the date component of the declaration requirement. Appellees' Br. at 36 (emphasis added).

Unlike the signature matching in *Lee*, however, evaluation of compliance with the date component does not require any specialized knowledge or training. And the Pennsylvania Supreme Court has provided straightforward guidance on this question

to county boards. Because "'date' refers to the day upon which an elector signs the declaration," that Court in 2022 deemed sufficient any date upon which "an elector could have an absentee or mail-in ballot in hand," and thus complete the declaration requirement in full. *Ball v. Chapman*, 289 A.3d 1, 23 (Pa. 2023); *see also* Cmwlth. Op. Br. at 19–21.[8]

Appellees acknowledge that, in advance of the 2024 election, "the Secretary of the Commonwealth redesigned the mail ballot declaration in an effort to reduce widespread errors." Appellees' Br. at 9. This redesign notably negates any concern about whether county boards may reject ballots simply because they employ the European dating convention (DD/MM/YYYY), as some had in 2022.[9] Now, there is a "pre-filled '20' at the beginning of the year … to alert voters to write the current date, not their birthdate, in that field." *See supra* n.9. But Appellees urge the Court to "disregard this evidence, which was not available to the district court." Appellees' Br. at 9.

---

[8] County boards are capable of discerning whether a date is complete and plausible. Furthermore, they are the proper forum in which disputes about particular sufficiency determinations may be adjudicated and appealed.

[9] *See* Pennsylvania Department of State, *Shapiro Administration Introduces Redesigned Mail Ballot Materials to Give Voters Clearer Instructions, Decrease Number of Rejected Ballots, and Ensure Every Legal Vote is Counted*, https://www.pa.gov/agencies/dos/newsroom/shapiro-administration-introduces-redesigned-mail-ballot-materials-to-give-voters-clearer-instructions-decrease-number-of-rejected-ballots-and-ensure-every-legal-vote-is-counted.htm.html (last visited June 10, 2025).

This Court should not disregard this evidence. "Judicial notice may be taken at any stage of the proceeding, including on appeal." *In re Indian Palms Assoc., Ltd.*, 61 F.3d 197, 205–06 (3d Cir. 1995). Facts that are amenable to judicial notice are those "not subject to reasonable dispute … [and] capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." *Werner v. Werner*, 267 F.3d 288, 295 (3d Cir. 2001). Here, the Secretary's announcement of the ballot redesign was posted publicly on the Pennsylvania Department of State's website and cannot reasonably be questioned. *See Jordan v. Philadelphia Media Network*, 751 Fed. Appx. 239, 242 n.2 (3d Cir. 2018) (taking judicial notice of official information published by Department of State). Appellees' argument is frivolous.

Equally frivolous is the suggestion that variability between counties in providing notice and cure can drive this case. *See* Appellees' Br. at 36. By Appellees' own account, the Erie County Board of Elections notified Ms. Eakin of her ballot defect in 2022, and she cured it. *See id.* at 7–8. And while they bemoan the fact that many counties do not provide notice and cure, *id.* at 35–36—again, not the basis of their underlying claim—it bears mention that a pending action before the Pennsylvania Supreme Court concerns this very question.

In *Center for Coalfield Justice v. Washington County Board of Elections*, the Commonwealth Court concluded that voters "possess a liberty interest to contest the

10

disqualification" of ballots, and that holding otherwise "would render [the section of the Election Code providing for provisional ballots] perfunctory in contravention … of the Pennsylvania Constitution." No. 1172 C.D. 2024, 2024 WL 4272040, at *8 (Pa. Cmwlth. Sept. 24, 2024). The voters in that case were unaware that their ballots had not been counted until months after a primary election, and the Commonwealth Court held that one county's policy "contravene[d] due process." *Id*. The Pennsylvania Supreme Court granted *allocatur* on October 5, 2024, and Appellees' efforts to shoehorn that issue into this case should be rejected. *See Center for Coalfield Justice*, No. 259 WAL 2024 (Pa. Oct. 5, 2024) (*per curiam*) (granting petition for allowance of appeal); *see also* No. 28 WAP 2024 (active docket).[10]

---

[10] Indeed, *Center for Coalfield Justice* dealt with an "automatic e-mail" sent to voters via the SURE system and the Election Code provision that empowers "[a]ny person aggrieved by an order or decision of any county board regarding the computation of … returns of any primary or election" to "appeal therefrom" to a court. 2024 WL 4272040 at *5, *1 n.3 (quoting 25 P.S. § 3157(a)). Relatedly, in *Genser v. Butler County Board of Elections*, the Pennsylvania Supreme Court distinguished between notice and cure and provisional ballots. 325 A.3d 458, 475 (Pa. 2024), *cert denied sub nom. Republican Nat'l Comm. v. Genser*, __ S. Ct. __, No. 24–786 (June 6, 2025). "Provisional ballots," it held, "exist as a fail-safe to preserve access to the right to vote." *Id.* The Court reasoned that the Election Code's reference to a "completed" ballot indicates that a mail-in ballot not meeting mandatory requirements is "void" and a "nullity." *Id.* at 484–85 (discussing 25 P.S. § 3050(a.4)(5)(ii)(F)). The procedures for provisional balloting therein "are designed … to assure access to the right to vote while also preventing double voting." *Id.*

Given Appellees' invocation of these equitable considerations and any supposed arbitrariness in the application of the Election Code's commands—which, again, are absent from the District Court's reasoning—it is worth nothing that those

In sum, having brought a facial challenge to Pennsylvania's election rule[11] and now propping up the District Court's conclusion based upon a First Amendment "right to have one's vote counted," Mem. Op. at 11, Appellees gesture at how the rule might be applied in other cases, and attendant equal protection concerns. *See Lee*, 915 F.3d at 1419 (citing *Swanson v. Worley*, 490 F.3d 894, 902 (11th Cir. 2007)). But again, they run headlong into the simplicity of the instruction—that is, adding a date next to one's freshly-written signature, *see* Cmwlth. Op. Br. at 19–21—and downplay relevant guidance from both the Department of State and the Commonwealth's highest appellate court. This desperate misdirect thus cannot serve as grounds for affirmance.

---

claims are being adjudicated in state court. Those equitable considerations are not dispositive here. *Cf. Rodriguez v. Popular Democratic Party*, 457 U.S. 1, 9 (1982) (acknowledging that the federal Constitution does not "*per se*" protect the right to vote); *Massachusetts v. Upton*, 466 U.S. 757, 739 (1984) (Stevens, J., concurring in judgment) ("The States in our federal system … remain the primary guardian of the liberty of the people"); *see also supra* n.8. It is also worth noting that the parties in that case enjoy similar representation to the parties here.

[11] *See* Dist. Ct. ECF 228 at 19 (seeking declaratory relief); *Lee*, 915 F.3d at 1341–42 (Tjoflat, J., dissenting) (noting that under plaintiffs' arbitrariness theory, "the Code cannot be applied in a constitutional way," and the only remedy would be preventing its enforcement entirely); *see also United States v. Salerno*, 481 U.S. 739, 745 (1987) (holding that a facial challenger "must establish that no set of circumstances exists under which the Act would be valid").

### III.    APPELLEES FAILED TO ESTABLISH A "MORE THAN MINIMAL" BURDEN

Rather than justify any relevance for the First Amendment in the District Court's analysis, Appellees pepper in statistics about the supposed "magnitude" of the burden, and how enforcement of the Election Code purportedly affects particular groups. *See* Appellees' Br. at 2, 8, 46. These efforts are also in vain.

Among these figures is the number 4,500. *Id.* at 9. According to Appellees that is approximately how many eligible voters "had their ballots tossed out for missing or incorrect dates" in the 2024 general election. *Id.* Tellingly, that number represents 0.0637% of all ballots cast in November 2024, or 1 in 1,569 ballots.[12] To be sure, the date component—like the rest of the Election Code—affects some "quantifiable number of voters." Appellees' Br. at 46. But it is hardly one that should shock this Court's democratic conscience.

Appellees halfheartedly point to their purported expert evidence, in an attempt to demonstrate that "older, Black, Hispanic, and less-educated voters were disproportionately likely to submit noncompliant ballots." *Id.* Again, these equal

---

[12] *See* Pennsylvania Department of State, *Secretary of the Commonwealth Certifies 2024 General Election Results*, https://www.pa.gov/agencies/dos/news room/secretary-of-the-commonwealth-certifies-2024-general-election-re.html (last visited June 10, 2025) (noting that "more than 7 million registered Pennsylvania voters [cast] a ballot"). According to Appellees, the number of non-compliant ballots in 2024 was less than half the number of non-compliant ballots in 2022. *See* Appellees' Br. at 44. Yet they strategically cite the 2022 statistic four times in their brief, and the 2024 statistic only once. *Compare id.* at 1, 6, 44, 46, *with id.* at 9.

protection grounds are absent from the rationale below, *see* Mem. Op. at 11 ("Plaintiffs grounds their claim in the First Amendment to the Constitution."), and Appellees do not request affirmance pursuant to the Fourteenth Amendment.

But in any event, the District Court did not credit or rely upon Dr. Hopkins' testimony, and for good reason. As the Intervenor-Defendants pointed out below, Dr. Hopkins explicitly conceded that it was "not possible … to determine whether a Black or Hispanic voter is more likely not to comply … than a white voter," and he performed only regression analyses based on "expected rate[s] of noncompliance." Dist. Ct. ECF 282 at 24–25.[13] Furthermore, even those analyses showed a threadbare difference between the likelihood that, for example, a 60-year-old voter would fail to comply as opposed to a 20-year-old voter. *Id.* (noting that an older voter is only "0.2 percentage points more likely to fail to comply"). Appellees again attempt to improperly bolster their First Amendment claim with equal protection principles.

Because Appellees can neither demonstrate that providing a date as part of the declaration requirement is itself burdensome, *see* Cmwlth. Op. Br. at 17–19, nor escape that disenfranchisement itself cannot be the burden, *cf. Hobbs*, 18 F.4th at 1188–89 (rejecting that notion), they roam even further afield of the District

---

[13] Appellees' argument along these lines sounds in disparate *impact*, not disparate *opportunity*. This theory again does not find support in the District Court's opinion nor the record. And it would be odd indeed for a court to presume, without evidence, that certain minority groups are inherently incapable of following a simple instruction.

Court's novel reasoning. They adopt a *res ipsa loquitur* approach to constitutional review of non-discriminatory, generally applicable ballot rules, and implausibly overstate what the record demonstrates about who is capable of following a simple instruction. That approach is obviously wrong.

## IV. AFFORDING STATE INTERESTS SHORT SHRIFT DOES NOT MAKE THEM ANY LESS VALID OR COGNIZABLE

Appellees reprise their insistence that the date component of the declaration requirement "serves no purpose," Appellees' Br. at 56, but their arguments would be better received in the halls of the General Assembly than the chambers of federal courts. Moreover, these protestations cannot save the claims at issue from their legal deficiencies.

Notably, Appellees read into the Supreme Court's articulation of the balancing test in *Anderson* the notion that legislatures *ipso facto* risk constitutional injury whenever they regulate beyond that which is—in their view and the views of two former Secretaries of the Commonwealth, *id.* at 56—absolutely necessary. *Id.* at 61 (citing *Belitskus*, 343 F.3d at 643 (quoting *Anderson*, 460 U.S. at 789)); *but see Luft v. Evers*, 963 F.3d 665, 677 (7th Cir. 2020) ("Many a lawyer prefers a belt-and-suspenders approach."). Such reasoning has no limiting principle. What Appellees term a redundancy, the people's elected representatives determined was necessary to prescribe by law, and no amount of litigation will alter whose judgment must be afforded deference. *See FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313–15 (1993)

15

(disclaiming that rational basis review constitutes "license for courts to judge the wisdom, fairness, or logic of legislative choices").

Separately, Appellees point out that the District Court's order did not "*eliminate* handwritten dates … or require that the Commonwealth remove the 'date' line." Appellees' Br. at 62 (emphasis in original). The order merely enjoined county boards from discounting noncompliant ballots, and some voters may still provide a date and thus serve the "supposed" interests. *Id.* at 65. But the *Commonwealth* removing the "date" line is a red herring. As explained, "[e]lections in Pennsylvania are administered by the 67 county boards of election," not some centralized entity. *See* Cmwlth. Op. Br. at 4–5 (citations omitted).

That *some* voters *may* comply with a mandatory requirement in the Election Code, contingent upon an unrequired-by-law act by county boards, is of little persuasive value. *See Ball*, 289 A.3d at 20 (holding that the date component is mandatory); *Kuznik v. Westmoreland Cnty. Bd. of Comm'rs*, 902 A.2d 476, 491 (Pa. 2006) (discussing how the Election Code is drafted to promote some modicum of uniformity). Appellees' argument—that a purely optional field that some counties *may* provide can nonetheless satisfy the Commonwealth's asserted interests—should not to be taken seriously.

With respect to the Commonwealth's asserted interest regarding voter fraud, Appellees maintain their myopic focus upon the interest permitted by the Materiality

Provision—that is, the interest in determining whether or not to count a ballot. *See* Cmwlth. Op. Br. at 20. Consider again *Commonwealth v. Mihaliak*, CP-36-CR-0003315-2022 (Lanc. Cnty. CCP 2022). *See id.* at 26–27. Appellees find no value in *Mihaliak*, because "no matter what was written on the return envelope," some "investigation would have followed." Appellees' Br. at 61–62 (quoting *Ball*, 289 A.3d at 16 n.77). But whether an investigation into whether the ballot should be counted—contemplated by the *Ball* Court in dicta in a footnote—would ensue is separate from the question of whether an investigation into pursuing criminal fraud charges would benefit from the evidence of an impossibly-dated document. It would.

The Commonwealth's other asserted interests also survive Appellees' critiques. That solemnity is too "indeterminate and vague" for their liking has no bearing on a statute's constitutionality. *Cf. Parker v. Conway*, 581 F.3d 198, 202 (3d Cir. 2009) (acknowledging that a legislature's "judgment … may be based on rational speculation unsupported by evidence or empirical data") (internal quotations omitted).[14] And that the handwritten date's utility is too "improbable" in their estimation is also of no moment where the democratically-elected General Assembly

---

[14] As explained in the Commonwealth's opening brief, signing and dating an official document communicates finality and seriousness. Like an individual signing a check or entering into a contract, a voter complying with the Election Code's instructions understands that they are agreeing to the foregoing declaration and have completed all necessary steps. *See* Cmwlth. Op. Br. at 28–29; *see also id.* at 19–21 (explaining that the Election Code does not contain a standalone "dating requirement").

has determined otherwise. *Cf. Carden v. Arkoma Assocs.*, 494 U.S. 185, 197 (1990) (noting the importance of leaving public policy "to the people's elected representatives"). Appellees' public policy arguments that this election rule is unwise or unnecessary do not render the law unconstitutional.

## V.   THE ADAMS COUNTY BOARD FORFEITED ITS MERITLESS ARGUMENT UNDER THE PENNSYLVANIA UNIFORM UNSWORN DECLARATIONS ACT

The Adams County Board of Elections suggests that this Court affirm on statutory grounds, though it acknowledges that this argument "was not the primary basis of the District Court's ruling." *See* Adams County's Br. at 14–15. Not only was this argument not the *primary* basis for the relief granted below, the Adams County Board fails to point to anywhere in the record below where this question was raised, briefed, or considered *at all*. *Id.* (quoting *Bernitsky v. United States*, 620 F.2d 948, 950 (3d Cir. 1980) (holding that appellate courts may affirm on "any basis *which finds support in the record*") (emphasis added)). Accordingly, this new argument was forfeited. *See, e.g.*, *Lesende v. Borrero*, 752 F.3d 324, 333 (3d Cir. 2014) (citing, *inter alia*, *Singleton v. Wulff*, 428 U.S. 106, 120 (1976) (noting the "general rule … that a federal appellate court does not consider an issue not passed upon below")).[15]

---

[15] In any event, the Adams County Board's statutory argument lacks merit. The Pennsylvania Uniform Unsworn Declarations Act (UUDA), *see* 42 Pa. C.S. § 6201 *et seq.*, provides that an unsworn declaration that "*meets the chapter's*

## VI. *Amici* Supporting Affirmance Do Not Raise Compelling Arguments

The Department of State's *amicus* filing does not confront the federal constitutional questions at issue in this appeal. *See* ECF 101 at iii–iv (citing only state cases and statutes). Accordingly, its thorough review of the history of the Election Code—while informative—does not warrant a response. *Id.* at 3–8. It bears mention however, that the Department observes "rejecting ballots for dating errors does not appear to strongly disfavor one political party over another." *Id.* at 16; *cf. supra* nn.2, 4 and accompanying text. Voters of all stripes and political persuasions are treated the same by this clear and simple provision of the Election Code.

---

*requirements*" will suffice where the law requires a sworn declaration. Adams County Board's Br. at 16–18 (emphasis added) (quoting 42 Pa. C.S. § 6204(a)). The Adams County Board suggests that a signature alone reflects "substantial compliance" with the UUDA's sample form, even though that form requires much more than a standalone signature. *See* 42 Pa. C.S. § 6206.

Moreover, the Board concedes that, in Pennsylvania, specific provisions (such as the Election Code's instructions) "usually" prevail over general provisions (such as the UUDA). Adams County Board's Br. at 34–35 (discussing 1 Pa. C.S. § 1933). The Board asserts that the UUDA can prevail here because it reads into the timing of legislative history—and nothing else—that the General Assembly manifestly intended for it to be so. *See id.* The Board does not deal with the separate canon of construction that statutes should be read to give effect to all parts, if at all possible, *see* 1 Pa. C.S. § 1932, nor the fact that their reading gives effect to just one word—"sign."

The General Assembly did not pass Act 77 and its reforms to the Election Code alone. The Commonwealth's chief executive signed it into law, with the declaration requirement and its date component intact. While this Court should be mindful of views espoused by current and former executive branch officials, allowing their assessment of the wisdom of a particular subpart of a particular provision to determine its constitutionality would amount to an extended veto that the Pennsylvania Constitution does not afford. *See Rogers*, 468 F.3d at 197 ("It is not the courts' function to weigh the procedure chosen by the state legislature against the feasibility of less burdensome alternatives it could have chosen.") (quoting *Perry v. Grant*, 775 F. Supp. 821, 826 (M.D. Pa. 1991)); *accord Thomas Jefferson Univ. Hosps., Inc. v. Pennsylvania Dep't of Labor and Indus.*, 162 A.3d 384, 393 n.5 (Pa. 2017) ("[W]e emphasize that policy arguments must be addressed to the General Assembly, not to this Court.").

The advocacy groups appearing as *amicus* follow in the footsteps of Appellees. To wit, they skip directly to the balancing of interests without substantiating any First Amendment right to have one's vote counted, or addressing *Mazo*'s clear guidance. *See* ECF 110–1 at 14. Phrases like "First Amendment" or "freedom of speech" or "right to associate" are entirely absent from the analysis *amicus* offers. And while they provide examples of what noncompliant ballots may look like, *see id.* at 16–19, they cannot justify a federal court's invalidation of the

20

Election Code's requirement on its face where individual challenges to the decisions of county boards will do. *See supra* n.8.

In a call better suited to legislative ears than a court's docket, *amicus* declares it "time for this injustice to end." *Id.* at 35. But they fundamentally misunderstand the role of courts. Justice is the humble, faithful application of constitutional principles. *See Maldonado v. Baker Cnty. Sheriff's Office*, 23 F.4th 1299, 1306 (11th Cir. 2022) (acknowledging that it is "the job of courts" to faithfully apply the law, not weigh in on public policy arguments concerning a statute); Michael Slade, *A Matter of Interpretation: Federal Courts and the Law*, 36 HARV. J. ON LEGIS. 259, 259 (1999) (recounting the "oft-cited parable" in which Justice Oliver Wendell Holmes responds to a call of "Do justice!" with, "My job is to apply the law."). Justice is served by upholding this constitutional law.

## CONCLUSION

For these reasons, this Court should vacate and reverse the judgment of the

District Court.

Respectfully submitted,

DAVID W. SUNDAY, JR.
Attorney General

By:    */s/ Brett Graham*

BRETT GRAHAM
Office of Attorney General          Deputy Attorney General
1600 Arch Street, Suite 300         Bar No. 330556 (Pa.)
Philadelphia, PA 19103
Phone: (267) 530-0886
Fax: (717) 772-4526                 SEAN A. KIRKPATRICK
                                    Chief Deputy Attorney General
DATE: June 11, 2025                 Chief, Appellate Litigation Section

## CERTIFICATE OF COUNSEL

I, Brett Graham, Deputy Attorney General, hereby certify as follows:

1. That I am a member of the bar of this Court.

2. That the text of the electronic version of this brief is identical to the text of the paper copies.

3. That a virus detection program was run on the file and no virus was detected.

4. That this brief contains 5,580 words within the meaning of Fed. R. App. Proc. 32(a)(7)(B). In making this certificate, I have relied on the word count of the word-processing system used to prepare the brief.

*/s/ Brett Graham*

BRETT GRAHAM
Deputy Attorney General

## CERTIFICATE OF SERVICE

I, Brett Graham, Deputy Attorney General, do hereby certify that a true and correct copy of the foregoing Reply Brief for Intervenor the Commonwealth of Pennsylvania has been filed electronically and is available on the Court's Electronic Case Filing System. Seven copies will be sent by first class mail to the Clerk of the United States Court of Appeals for the Third Circuit in Philadelphia, Pennsylvania.

*/s/ Brett Graham*

BRETT GRAHAM
Deputy Attorney General

DATE: June 11, 2025