IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

APPELLATE NO.: 25-1644

BETTE EAKIN; DSCC;
DCCC; AFT PENNSYLVANIA
V.
ADAMS COUNTY BOARD OF ELECTIONS;
ALLEGHENY COUNTY BOARD OF ELECTIONS; ET AL.

REPUBLICAN NATIONAL COMMITTEE;
NATIONAL REPUBLICAN
CONGRESSIONAL COMMITTEE; ET AL.
APPELLANTS

_____

PROCEEDINGS BEFORE CORAM:

PATTY SHWARTZ, CIRCUIT JUDGE
ARIANNA J FREEMAN, CIRCUIT JUDGE
D. BROOKS SMITH, CIRCUIT JUDGE

DATE TAKEN:     TUESDAY, JULY 1, 2025

TIME:           9:30 A.M.

HELD AT:        THE ALBERT BRANSON MARIS COURTROOM
                (19TH FLOOR)

TRANSCRIBED BY:  AIMÉE RUBINOWITZ, CET-1068

```
 1   APPEARANCES

 2

 3        ON BEHALF OF APPELLANTS:
            JONES DAY
 4          BY: JOHN M. GORE, ESQUIRE
            51 Louisiana Avenue NW
 5          Washington, DC 20001
            jmgore@jonesday.com
 6          (COR NTC Retained)

 7

 8          OFFICE OF ATTORNEY GENERAL OF PENNSYLVANIA
            BY: BRETT GRAHAM, ESQUIRE - Liaison Counsel
 9          1600 Arch Street, Suite 300
            Philadelphia, PA 19103
10          bgraham@attorneygeneral.gov
            (COR NTC State Government)

11

12        ON BEHALF OF APPELLEES:
            ELIAS LAW GROUP
13          BY: UZOMA N. NKWONTA, ESQUIRE
            250 Massachusetts Avenue NW, Suite 400
14          Washington, DC 20001
            unkwonta@elias.law
15          (COR NTC Retained)

16          OFFICE OF ATTORNEY GENERAL OF PENNSYLVANIA
            OFFICE OF GENERAL COUNSEL
17          BY:  JACOB B. BOYER, ESQUIRE
            30 North Third Street, Suite 200
18          Harrisburg, PA 17101
            jacobboyer@pa.gov
19          (COR NTC Retained)

20

21

22

23

24

25
```

1                          INDEX OF PROCEEDINGS

2
                                                        PAGE
3

4    Proceedings                                          4

5    Certificate of Transcriptionist                     69

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          P R O C E E D I N G S

2          JUDGE SHWARTZ:  Eakin versus Adams County Board of

3   Elections, et al., Appellate Number 25-1644.

4          Take your time, get yourself settled, and when you're

5   ready you can come to the podium.

6          MR. GORE:  Good morning, Your Honor.  And may it

7   please the Court, John Gore for the RNC and the Pennsylvania

8   Republican Party.  With the Court's permission, I'd like to

9   reserve three minutes of my time for rebuttal.

10         JUDGE SHWARTZ:  Granted.

11         MR. GORE:  Thank you.  In 2019 the bipartisan General

12  Assembly made voting even easier when it enacted no-excuse mail

13  voting for all Pennsylvania voters.

14         JUDGE SMITH:  Would you stop right there, please?

15  Just because I found the use of bipartisan a fascinating usage,

16  especially in this context, and I have some familiarity over a

17  lot of years as a Pennsylvania citizen with the General

18  Assembly.  Can -- does the legislative record, does the

19  legislative history at all tell us anything about how this

20  compromise and why this compromise was reached in the way it

21  was?

22         MR. GORE:  Yes, it does, Your Honor.  It tells us that

23  because Pennsylvania was due to modernize its election laws more

24  broadly, and Democrats and Republicans and the General Assembly

25  came together to do that.  It was the most significant piece of

1  voting and election with the legislation that Pennsylvania had

2  enacted in about 50 years.  And it was signed into law by a

3  Democratic governor.  So it was a -- bipartisan act.  And as

4  part of that historic legislation, the General Assembly, as I

5  mentioned, enacted universal voting by mail for all Pennsylvania

6  voters.

7       And it extended to voting by mail the same ballot

8  casting rules that generally have governed absentee voting for

9  decades.  And those rules include the requirement that voters

10 fill in, date, and sign the ballot declaration on the outer

11 envelope.  More than 99 percent of mail voters have complied

12 with the straightforward requirement to date their ballots.  And

13 to aid those who did not, the secretary redesigned the ballot

14 envelope in 2024.

15      JUDGE SHWARTZ:  Well, that wasn't before the district

16 court.  And I know we can take judicial notice, but that change

17 was not before the district court; am I correct?

18      MR. GORE:  That is not correct.  We did put that

19 change before the district court.  We provided evidence of that,

20 and we showed the district court the changes that had been made.

21      JUDGE SHWARTZ:  It change the district court's

22 perspective in any way to distinguish the 2024 configuration

23 from the -- just the general require -- date requirement?

24      MR. GORE:  The district court did not.  The district

25 court did not address the 2024 redesign at all, and we think

1  that's an independent basis for reversal here because that is

2  the governing version of the date requirement, and it's shown in

3  the results of the 2024 election.

4           JUDGE SHWARTZ:  So we're -- we're -- you're also

5  making representations about the results of the 2024 election.

6  Was that before the district court?

7           MR. GORE:  Yes, they were.

8           JUDGE SHWARTZ:  Okay.  And there are representations,

9  I think by one of you makes, about the fact there's still

10  mistakes.

11           MR. GORE:  That's correct.

12           JUDGE SHWARTZ:  Either omissions or mistake --

13  mistaken sequencing of numbers.  Am I -- am I right?

14           MR. GORE:  That is correct.

15           JUDGE SHWARTZ:  So we still have voters who are not

16  having their ballots counted, correct?

17           MR. GORE:  That is correct.

18           JUDGE SHWARTZ:  Okay.

19           MR. GORE:  The noncompliance rate with the date

20  requirement has continued to go down in recent years, and went

21  down dramatically from 2022 to 2024.  It's now, for mail voters,

22  0.23 percent.

23           JUDGE SHWARTZ:  But if no --

24           MR. GORE:  So --

25           JUDGE SHWARTZ:  -- if a person's vote -- and you and I

1  had this case together before, and you might recall, there was

2  an intervener who tried to come in, who was someone who tried to

3  get elected in a -- in a small community, and the -- the

4  counting of those mail-in ballots had a consequence to the

5  outcome of that case.  Do you recall that?

6        MR. GORE:  I do recall that.

7        JUDGE SHWARTZ:  So should we really be focusing on the

8  fact that it's only a few people, when in a community like that

9  it would have been consequential?

10        MR. GORE:  We -- so the point of saying that it's 99

11  percent is that the secretary and the state have taken extreme

12  effort -- or several significant steps to make compliance

13  easier.  And that includes the 2024 redesign, which simplifies

14  the voter's task to simply filling in the two date month and day

15  in clearly marked boxes.

16        JUDGE SHWARTZ:  But enforcing that --

17        MR. GORE:  With respect --

18        JUDGE SHWARTZ:  -- is still a -- still maintains as a

19  requirement under Pennsylvania law, but noncompliance with it

20  still leads to the same outcome, which is not having the ballot

21  counted.  Isn't that a sufficient injury under Anderson-Burdick

22  that requires the court to weigh the state's interest?

23        MR. GORE:  No, it's not, Your Honor.  Because

24  Anderson-Burdick is about the burden of compliance, not the

25  consequence of noncompliance.

1          JUDGE SHWARTZ:  But there are three circuits who have

2    focused, when looking at -- first of all, Anderson-Burdick

3    itself talks about the injury from the regulation, and three

4    other circuits have acknowledged the consequence, risk of

5    noncompliance in their -- with their particular schemes as being

6    sufficient.  So it's your view that that's not enough?

7          MR. GORE:  No, it's not enough.  And I think Crawford

8    makes this clear.  Crawford makes clear that failure to have a

9    photo ID resulted in voters not being able to cast their ballot

10   when they showed up to the --

11         JUDGE SHWARTZ:  But they were looking at that --

12         MR. GORE:  -- polling place in person.

13         JUDGE SHWARTZ:  -- the burden that -- of getting that

14   documentation, correct?  I think it was a (indiscernible) case,

15   correct?

16         MR. GORE:  Yes.  Although it's clear from the

17   concurrence from Justice Scalia that there was a majority on

18   this point.  That proves our point.  The burden is the burden of

19   compliance, how difficult is the rule to comply with, not what

20   is the consequence of noncompliance.

21         JUDGE SHWARTZ:  So what do we --

22         MR. GORE:  The second --

23         JUDGE SHWARTZ:  -- do with the language in -- in

24   Anderson-Burdick that talks about the injury that could result

25   from the -- from the regulation?

1          MR. GORE:  Well, the injury is the burden.  The injury

2   is how significant is the burden, and does the burden itself, is

3   it significant enough to trigger constitutional scrutiny in the

4   first instance.

5          JUDGE SMITH:  Let's stop right there.  What does

6   burden mean specifically in this case?  What is the burden?

7          MR. GORE:  The burden is, how difficult is it to fill

8   in the month and day in the clearly marked boxes under the 2024

9   redesign, or to handwrite the date even before the 2024

10  redesign.

11         JUDGE SHWARTZ:  So it's effort expended?  How much

12  effort needs to be expended to --

13         MR. GORE:  Yes.

14         JUDGE SHWARTZ:  -- comply?  That's what you -- that's

15  what you define burden.

16         JUDGE SMITH:  Is it?

17         MR. GORE:  Yes.

18         JUDGE SMITH:  All right, then.  Because my follow-up

19  question was going to be, in generally accepted language, in

20  plain terms, is a burden, as we would understand it to be,

21  necessarily burdensome?

22         MR. GORE:  Crawford makes clear -- and this court's

23  decision in Mazo makes clear that a burden that is only

24  tantamount to the usual burden of voting does not even implicate

25  the Anderson-Burdick framework.  So at the threshold, the

1  district court erred in applying that framework to this case.

2          JUDGE SMITH:  So --

3          MR. GORE:  This court --

4          JUDGE SMITH:  -- I -- I realize my question was purely

5  semantic, but that was its purpose.  I spent a little time with

6  dictionaries over the weekend on this.  And when we use the word

7  burden, it -- it -- in constitutional cases, it definitely has

8  some meaning.  So does burdensome.  So does burdensome really

9  get us into just some kind of quantification of the burden?

10  Effort, I think was the -- was the word that my colleague used

11  in her question a minute ago.

12          MR. GORE:  I think we could use effort or difficulty

13  at the threshold to determine whether the burden is a usual

14  burden of voting such that it's outside of the Anderson-Burdick

15  framework, under Crawford, under Mazo, even under the Supreme

16  Court's decision in Brnovich, and this court's decision in PA

17  NAACP, which Judge Shwartz referenced earlier, that failure to

18  comply with these nondiscriminatory ballot casting regulations

19  does not deny anyone the right to vote.

20          So we could think of it as how difficult or how much

21  effort is involved in complying with the rule as the threshold

22  question.  If it's a usual burden of voting, then

23  Anderson-Burdick doesn't even apply.  If it's something more

24  than that, then you get into the Anderson-Burdick framework and

25  balance the interest.

1      JUDGE FREEMAN:  We know that the right to vote

2   encompasses the right to have a vote counted.  And so it sounds

3   like you're saying this, the date requirement, doesn't burden

4   the right to vote because, you know, it's -- it's a simple task

5   to fill out a -- a date on -- on the secrecy envelope.  But if

6   it -- if failure to do that simple task prevents the vote from

7   being counted, isn't that itself a burden?

8      MR. GORE:  No, I disagree, Your Honor.  And I think

9   this court's decision in PA NAACP, where the date requirement

10  was previously before this court, and this court upheld it,

11  proves exactly that.  There's no right to have a ballot counted

12  if it's not completed in accordance with the state law rules for

13  completing it.  Just like there's no right to cast a ballot in

14  person if you show up a day late at the polls.  To vote by mail

15  or to vote absentee, you have to comply with the rules that the

16  state has set out.  So there's no right to have it counted if

17  you've --

18      JUDGE SMITH:  The -- the state sets --

19      MR. GORE:  -- failed to comply with those rules.

20      JUDGE SMITH:  -- the state sets out the rules.  It

21  strikes me, again, as someone pretty familiar with Pennsylvania

22  State government, that none of the counties are -- are parties

23  in -- in this lawsuit.  None of -- none of the counties seem to

24  actively participate.  And it is at the county level that the

25  so-called mechanics of the actual voting process takes place.

1          And do you agree that, as I read in the briefing, that

2     there is actually a variety of approaches as to how those

3     mechanics apply statewide?  Most importantly, in whether or not

4     there is an opportunity for a voter who has cast a vote that has

5     a mistaken or somehow technically noncompliant date to actually

6     cure that in time to have the vote counted; is -- is that, in

7     fact, what the record shows?  Have I read the briefs correctly

8     in that regard?

9          MR. GORE:  That is correct.  That is what the record

10    shows, is that there's a variation of practice as to whether

11    curing is permitted, and if so, how voters can actually cure

12    their ballots.

13          JUDGE SMITH:  Wow.

14          MR. GORE:  But that -- that doesn't mean that the date

15    requirement violates or implicates Anderson-Burdick or somehow

16    violates the constitution.  Because every county meets the

17    constitutional minimum of providing every voter at least one

18    opportunity to cast a valid ballot that complies with state law.

19    That's what the Constitution requires.  And that's what

20    Anderson-Burdick, to the extent it applies, would require as

21    well.  And that requirement has been satisfied.

22          But here, Anderson-Burdick doesn't even police, much

23    less prohibit, this date requirement because it's simply the

24    usual burden of voting.  But even if it did, the -- the date

25    requirement easily satisfies that standard, and the district

1  court erred in concluding otherwise.

2  JUDGE SHWARTZ:  Okay.  Judge Freeman, any questions?

3  Judge Smith?

4  JUDGE SMITH:  You -- you have reserved how much time

5  for --

6  MR. GORE:  Three minutes.

7  JUDGE SHWARTZ:  Three minutes.

8  JUDGE SMITH:  Okay.  Thank you.

9  MR. GORE:  Thank you.

10  JUDGE SHWARTZ:  We'll see you on rebuttal.  Thank you.

11  MR. GRAHAM:  Good morning, and may please the Court,

12  my name is Brett Graham.  I serve as a deputy attorney general

13  in the Pennsylvania Office of Attorney General, and I represent

14  the intervenor appellant, Commonwealth of Pennsylvania, in this

15  matter.  With the Court's permission, I'll reserve one minute

16  for rebuttal.

17  JUDGE SHWARTZ:  Okay.  That'll be --

18  MR. GRAHAM:  Thank you very much.

19  JUDGE SHWARTZ:  -- granted.

20  MR. GRAHAM:  I'd like to begin, Judge Smith, with your

21  question about what is the burden in this case, and I'd like to

22  play that out a little bit, simply --

23  JUDGE SHWARTZ:  Before you do that, I'd like to follow

24  up on Judge Smith's question to your adversary about the

25  disuniformity in terms of opportunities throughout the

1  Commonwealth for a voter to cure.  And the reason why I want to

2  ask you about that is one of the interests that's being

3  proffered as a state interest in this case is orderly

4  administration of elections.  If there's not a uniform method

5  for even how these dates are being treated, does that not

6  reflect disorder instead of orderliness?

7           MR. GRAHAM:  Several points on this, Judge Shwartz.

8  First of all, that is not the basis for the district court's

9  reasoning.  The district court grounded --

10           JUDGE SHWARTZ:  We're in -- we're in de novo land,

11  right?  We're in de novo land, right?

12           MR. GRAHAM:  I understand that.

13           JUDGE SHWARTZ:  Okay.

14           MR. GRAHAM:  But --

15           JUDGE SHWARTZ:  And you weren't in the district court,

16  right?

17           MR. GRAHAM:  I understand.

18           JUDGE SMITH:  Okay.

19           MR. GRAHAM:  Absolutely.

20           JUDGE SHWARTZ:  Okay, then.

21           JUDGE SMITH:  Yeah.

22           JUDGE SHWARTZ:  Can you -- can you talk to me about --

23           JUDGE SMITH:  You -- you could have been, right?

24           MR. GRAHAM:  Correct.

25           JUDGE SMITH:  Why not?

1          MR. GRAHAM:  The -- sorry?

2          JUDGE SMITH:  Why weren't you?

3          MR. GRAHAM:  Your Honor, the -- the attorney general

4  is empowered but not required to speak up whenever there is a

5  constitutional challenge.  That's why civil and appellate rules

6  of procedure speak only of notice.  And here the Commonwealth's

7  interests were adequately represented.  By June 18th, when the

8  district court issued its Rule 5.1 notice, several parties

9  had --

10          JUDGE SMITH:  So suddenly they're not?  Didn't have

11  anything to do with the change of administration in -- in the --

12  the --

13          MR. GRAHAM:  I have no --

14          JUDGE SMITH:  -- attorney general --

15          MR. GRAHAM:  -- comment on that, Your Honor.  But I --

16  I would say that there's a -- a basis, both before -- for the

17  Henry administration to do what it did, there's a basis for the

18  Sunday administration to do what it did.  But returning --

19          JUDGE SMITH:  It's usually helpful to have a -- a

20  party or an entity who appears before us at this stage involved

21  earlier at the district court level.

22          MR. GRAHAM:  Definitely helpful.  But I would also

23  point to page --

24          JUDGE SMITH:  Helpful to us, I selfishly say.

25          MR. GRAHAM:  I would point to page 8 of the district

1  court's opinion that says explicitly, no Commonwealth entity or

2  controlled party has been sued in this case.  The defendants

3  were the 67 --

4        JUDGE SHWARTZ:  Yeah, but you -- we can debate this,

5  but there's a -- a rule that says if the constitutionality of

6  the state statute's being brought, the state has a chance to

7  come in and defend its statute.  So the opportunity was

8  presented.  For whatever reason, you preferred to come to

9  Philadelphia to be heard.

10        JUDGE SMITH:  And mandatory notice to the attorney

11  general also in most instances where there's a declaration of

12  unconstitutionality by a Pennsylvania court.

13        MR. GRAHAM:  That's correct, Your Honor.  Be that as

14  it may, I'm here now, and I'm --

15        JUDGE SMITH:  Welcome.

16        MR. GRAHAM:  Thank you very much.  I'm glad to be

17  here.

18        JUDGE SHWARTZ:  Tell me about why that's -- why the --

19  the patchwork method by which the date requirement is even being

20  -- the date's being looked at, its opportunities to cure, isn't

21  that disuniformity rather than a -- and disorderly, rather than

22  the orderly administration?

23        MR. GRAHAM:  Two -- two responses on this point, Judge

24  Shwartz.  First, I don't believe there's disuniformity in terms

25  of the application and the -- the exercise of the date component

1  of the declaration requirement.

2          JUDGE SHWARTZ:  That's -- that's -- there's a --

3  require -- a uniform requirement for all voters to complete it

4  and complete it accurately --

5          MR. GRAHAM:  Correct.

6          JUDGE SHWARTZ:  -- the date, signed.  I understand

7  that.

8          MR. GRAHAM:  Correct.  And the --

9          JUDGE SHWARTZ:  I'm talking about on the receiving

10 end, because this is about the orderly administration of

11 elections, the election officials being the county officials in

12 this state -- in the Commonwealth, rather.  Why doesn't that

13 demonstrate that this is not furthering orderly administration?

14         MR. GRAHAM:  Your Honor, I -- I think to the extent

15 that there's a -- a concern about notice and cure or provisional

16 balloting, I would point to outstanding challenges in the

17 states, in -- in state court, Genser and Coalfield Justice,

18 where the Pennsylvania courts are resolving this question.

19         And I think, importantly, both steps of the

20 Anderson-Burdick analysis serve important interests in

21 federalism and the separation of powers precisely for the point

22 that there is no way to skip directly to interest balancing.  It

23 is for the legislature to write the rules for how one casts a

24 vote.  The federal Constitution protects certain specific

25 activity when it comes to voting, and states are the primary

1  guardians of that liberty.

2         JUDGE SHWARTZ:  And what --

3         JUDGE SMITH:  But Anderson-Burdick requires us to

4  conduct some balancing, right?

5         MR. GRAHAM:  Once you have satisfied step one, Your

6  Honor.  And what you have to do is determine the character and

7  the magnitude of the burden.

8         JUDGE SHWARTZ:  For the purposes of my question,

9  though, I was putting us in Anderson-Burdick land, and I was

10  moving to the state interests and seeing how that balances,

11  'cause I recognize your position from the briefing is we

12  shouldn't even be doing Anderson-Burdick.

13         JUDGE SMITH:  Right.

14         JUDGE SHWARTZ:  This is a nondiscriminatory

15  regulation.  There -- there should not be any balancing, there

16  should be general deference to this, to the legislature's

17  decision.  I'm with you, understand your argument.  Take -- come

18  with me for a moment, and come on the balancing, and tell me

19  about -- 'cause I have questions on each of the interests that

20  have been proffered.  And one is this disuniform method of an

21  opportunity to cure.  And your response is, well, there are

22  chances for people to bring lawsuits to challenge the

23  disqualification of their vote?  Is that -- is that what the --

24         MR. GRAHAM:  Correct.  And --

25         JUDGE SHWARTZ:  -- the two cases are?

1          MR. GRAHAM:  Correct.  And --

2          JUDGE SHWARTZ:  How is that administration of the

3   elections?  How is that an orderly administration of the

4   elections, when individual voters have to -- to jump up, when in

5   other counties, they don't have to do that because they got

6   notice to -- and an opportunity to cure?

7          MR. GRAHAM:  Well, I -- I want to be clear on your

8   question, Your Honor.  Are you -- are you drawing a distinction

9   between provisional balloting and notice and cure?

10          JUDGE SHWARTZ:  I am not talking about provisional

11   balloting at all.  I'm -- I'm talking about what happens when

12   that ballot is received by a particular county, according to the

13   record, in some places the county officials will notify the

14   voter if there seems to be an apparent error or omission, in

15   other counties, they don't.

16          MR. GRAHAM:  Right.  And I'm --

17          JUDGE SHWARTZ:  I'm not talking about a small number.

18   There's a -- significant numbers where different things are

19   happening.

20          MR. GRAHAM:  I understand Your Honor.  I'd -- I'd like

21   to -- to clarify something, which is specifically that in both

22   Genser and Coalfield Justice the SURE system, which counties use

23   to keep voter rolls and tab ballots, in both of those cases

24   there was an automatic e-mail being sent out to voters to notify

25   them of a defect.

1          And I clarified whether you're asking about

2    provisional balloting because that's the thrust of Genser,

3    that's the thrust of Coalfield Justice, all of which speaks to

4    the idea that the state has certain protections in place to make

5    sure that everybody has an opportunity not only to vote but to

6    challenge the decision of a county board, to have it appealed.

7    And the proper forum for those challenges are individual county

8    boards that will make --

9          JUDGE SHWARTZ:  But then, if that's the case, then why

10   are individual county boards even going out of their way to give

11   notice, and some are not?  You made representations about the

12   SURE system.  The record does not seem to suggest everybody

13   who's had a problematic ballot, from your point of view, the

14   omitted date or the wrong date, is getting notice.  So the --

15   that's what the record says.

16         MR. GRAHAM:  Well, that's what the record says, Your

17   Honor.  But I would -- I would note that there was Genser, which

18   is essentially absent from the district court's rationale.  And

19   frankly, the -- the courts of this Commonwealth are continuing

20   to develop and give -- breathe life into different sections of

21   the Election Code, including Section 3157, which --

22         JUDGE SHWARTZ:  What's going on with Baxter, you want

23   to talk about -- I'm coming back to the interest, but what's

24   going on with Baxter versus Philadelphia?  The docket says

25   briefing is done.

1          MR. GRAHAM:  Yes, Your Honor.  And as a -- a note, I

2    believe the -- the Pennsylvania Supreme Court's scheduled oral

3    argument here in Philadelphia in September.  I -- the Baxter

4    case is an entirely separate challenge, based on the free and

5    equal clause of the State Constitution.

6          JUDGE SHWARTZ:  It's a -- it's a challenge to the same

7    provision, just based on a different area of law, correct?

8          MR. GRAHAM:  Based on a different area of law.  And --

9    and once again, I would refer back to it's not just the district

10   court's characterization of plaintiffs' claim here, it is really

11   what the record shows, which is that plaintiffs ground their

12   claim in the First Amendment here, where there is no expressive

13   interest, and there is no group attempting to associate for

14   political ends.  So as --

15         JUDGE SHWARTZ:  We can debate whether there's a lot of

16   constitutional precedent that says there is a right to vote.

17         MR. GRAHAM:  There is a right to vote on equal terms

18   with others.  There is a right to vote as the legislature has

19   prescribed.  A -- a problem for both the district court and my

20   friends on the other side in this right to vote discussion is

21   that whenever that phrase appears in case law, the sentence then

22   continues, it does not usually stop at the word counted.

23         And frankly, the second step of Anderson-Burdick makes

24   a lot more sense once there is an actual constitutional injury

25   at the first step, which I think is why this court in Mazo

1 specifically listed out instances where Anderson-Burdick does

2 not apply, where the burden is de minimis, where there's a

3 statutory right, where there's no relevant constitutional right.

4          And frankly, I'm not sure how to square that language

5 in Mazo with the district court's rationale here.  If the

6 district court's rationale here is correct, then that sentence

7 in Mazo doesn't make any sense at all.  Really what courts

8 should be doing is saying, well, this is voting, this is

9 elections, and therefore, let's go right to balancing.  Because

10 any failure --

11          JUDGE SHWARTZ:  Mazo doesn't say that, though.  Mazo

12 recognizes there are cases that do not implicate a requirement

13 of balancing, and cites a series of examples, right?  And that

14 your adversaries and the district court says, this is a case

15 where Anderson-Burdick is triggered, it goes to the mechanics of

16 an election, it implicates a right that you're -- you're now

17 representing doesn't exist.  There is no First Amendment

18 protected right to vote.

19          MR. GRAHAM:  There is no first amendment right to have

20 one's vote out of compliance with the rules prescribed by the

21 legislature.

22          JUDGE SHWARTZ:  So long as those rules are

23 constitutional, correct?

24          MR. GRAHAM:  Correct.

25          JUDGE SHWARTZ:  Okay.

1          MR. GRAHAM:  Correct.

2          JUDGE SHWARTZ:  Can I go back, I'm going to go to

3 another interest with you.  Solemnity --

4          MR. GRAHAM:  I'm here with you.

5          JUDGE SHWARTZ:  -- is another -- another interest.

6          JUDGE SMITH:  Oh.  Thank you.

7          JUDGE SHWARTZ:  Let's talk about solemnity for a sec.

8          JUDGE SMITH:  Love to.

9          JUDGE SHWARTZ:  Here we go.  I'd like to ask you this.

10 Supposedly the date requirement facilitates the solemnity of the

11 event.  Put that aside for a second and let's talk about all the

12 other things someone who wants to vote absentee or vote by mail

13 has to do.  They got to apply for it.  They gotta get the

14 ballot.  They gotta complete the ballot.  They have to read the

15 instructions to make sure they put it in the secrecy ballot.

16 They, they have to put it into another ballot.  And then they

17 actually have to sign the name below a declaration where they're

18 making representations they're a qualified voter.  By the way,

19 they're not saying it under the penalties of perjury, there's no

20 language in the declaration that says that; am I right?

21          MR. GRAHAM:  Correct.

22          JUDGE SHWARTZ:  Okay.  Doesn't that seem solemn

23 enough?  And the date doesn't seem to be adding anything to all

24 of those other things.  So how does the date facilitate the

25 solemnity?  And I'm using that in terms of a conveyance that the

1    voter understands the importance of the act in which they're

2    engaging.

3            MR. GRAHAM:  Your Honor, the General Assembly

4    certainly did not think that it was solemn enough without the

5    date.  It is mandatory.  And the -- the Pennsylvania Supreme

6    Court has told us so.  But I'd like to -- to address part --

7            JUDGE SMITH:  But we --

8            MR. GRAHAM:  -- of your question.

9            JUDGE SMITH:  -- we all know that.  We -- and -- and

10   we also all know, I think, I think we do at this stage, the

11   argument that we are in Anderson-Burdick land, or except if you

12   are not so sure of that, that -- that we are, there is still a

13   rationality component, isn't there?

14           MR. GRAHAM:  Of course.

15           JUDGE SMITH:  And so I would take my colleague's

16   question a step further.  What is rational about suggesting that

17   simply writing in a date somehow conveys solemnity, if that's

18   what is being stated by the Commonwealth, that the act, that the

19   requirement conveys to the voter some sense of solemnity to the

20   act and responsibility of voting?  Explain that to me.  Because

21   I have not gotten that from the very first time that I saw the

22   word solemnity appeared as one of the three justifications

23   advanced by the Commonwealth.

24           MR. GRAHAM:  I understand your question, Judge Smith.

25   I'd like to take it in -- in two parts.

1          JUDGE SMITH:  Okay.

2          MR. GRAHAM:  First, I don't think we should be even

3   talking about this at all, frankly, simply because the --

4          JUDGE SMITH:  Indulge me.

5          MR. GRAHAM:  If -- if I could very briefly explain my

6   first answer, which is simply that courts conducting

7   Anderson-Burdick, including Anderson, including Burdick,

8   including the Second Circuit in Luft, including the -- the --

9   sorry -- the Seventh Circuit in Luft, and the Second Circuit

10  in -- in Lerman, have looked at the scheme as a whole, and the

11  broader context, the context of political availability, rarely,

12  if ever, has a court zeroed in to a part of a part of a part of

13  a section of the Election Code.  So this vantage point, that is

14  the premise of your question, I would slightly -- I would

15  discourage that vantage point, based on my reading of the case

16  law.

17          Taking that vantage point for what it's worth, and

18  looking at solemnity, the instructions for filling out a -- a

19  mail-in ballot, as you mentioned, are various.  For some, they

20  might be complicated.  Signing and dating something is a -- an

21  act of finality that is understood by many Pennsylvanians.  It's

22  what -- what you do when you sign a check or you sign a

23  contract.  And here it simply signals to the voter, your ballot

24  is in not only the secrecy envelope, but the outer return

25  envelope, you have completed all necessary steps, you can't go

1  back and open it and change your votes, you have signed and

2  dated, and you are ready to put it in the mailbox.  That is the

3  meaning of solemnity in this case.  But solemnity and the

4  orderly administration of elections, as this court knows, is not

5  the be all end all of our government interests.

6         JUDGE SMITH:  No, it sure isn't.  So let me take it to

7  another factor, because I don't see us getting anywhere with

8  solemnity, as I understand solemn, to -- to convey to us in

9  terms not simply of seriousness but something almost spiritual

10  in nature, fraud, the discouragement of -- of dishonesty.  It

11  was actually listed and argued in the briefs as number three.

12  If I were writing the brief, it certainly have been number one,

13  especially these days, when there is so much distrust that is

14  out there that has been -- that has been encouraged, that has

15  been spread in terms of the accuracy of elections.  That

16  certainly seems to me to have been the strongest of the three.

17  So why aren't you -- why weren't you arguing it that way?

18         MR. GRAHAM:  Your Honor, I -- I think our larger point

19  about the interest balancing stage, about Anderson-Burdick step

20  two, is that the district court demanded evidence.  And so I

21  think that was most plain with respect to the solemnity point

22  and the orderly administration of elections point, because

23  you're essentially going beyond rational basis and asking

24  parties to -- to prove with the record the wisdom of a given

25  law.  The fraud is actually sort of the easiest, I think, to

1  attack, simply because the Mihaliak case shows it has been used

2  in terms of a prosecution for voter fraud.

3         JUDGE SMITH:  And SURE caught that, right?

4         MR. GRAHAM:  Sorry?

5         JUDGE SMITH:  SURE caught the fact that the alleged

6  voter had passed away.

7         MR. GRAHAM:  Correct.  But Your Honor, the -- what --

8  this is not the materiality case that the --

9         JUDGE SMITH:  I understand.  I understand.

10         MR. GRAHAM:  -- that the court was analyzing in

11  Schmidt.  There are interests beyond the tabulation of votes or

12  the evaluation of qualification --

13         JUDGE SMITH:  But my point --

14         MR. GRAHAM:  -- of electors.

15         JUDGE SMITH:  -- is that fraud in and of itself, and

16  irrespective of the Mihaliak question, does have some meaning,

17  right, does have --

18         MR. GRAHAM:  Absolutely.

19         JUDGE SMITH:  -- some importance.  That's all.

20         MR. GRAHAM:  Absolutely.  It does have some meaning,

21  and there is no amount of evidence or no quantum of evidence

22  that --

23         JUDGE SMITH:  No.  And so what is the link between the

24  Commonwealth's interest in discouraging fraud and requiring a

25  mail-in voter from putting in a correct or somehow obliterated

1 | or otherwise erroneous or obscured date?

2 |          MR. GRAHAM:  Suppose a voter is trying to vote for

3 | someone else, they fill out, sign, and date the ballot, and then

4 | later, when it comes time for tabulation, it appears to the

5 | county board that that date is impossible because that person

6 | was dead, or had moved out of Pennsylvania, et cetera --

7 |          JUDGE SHWARTZ:  But that's not --

8 |          MR. GRAHAM:  -- that --

9 |          JUDGE SHWARTZ:  -- going to be disclosed by the dating

10 | of when the person signed it, it's going to be disclosed at --

11 | as to their status on Election Day.

12 |          MR. GRAHAM:  Correct.

13 |          JUDGE SMITH:  Which is --

14 |          MR. GRAHAM:  -- because we're talking --

15 |          JUDGE SMITH:  -- the only day that counts, right?

16 |          MR. GRAHAM:  Correct.  Because we're beginning with

17 | the -- the first order of business, because we're on Election

18 | Day, do we count the vote.  But the Commonwealth's interests

19 | extend beyond Election Day and the tabulation of ballots to,

20 | okay, how do we find the person who submitted this fraudulent

21 | ballot?  And if -- if there is no date to indicate that the

22 | signature itself was impossible, then we have no point of

23 | reference by which we can say, oh, this is the person who --

24 |          JUDGE SHWARTZ:  What if we were to hold that it's

25 | unconstitutional to disqualify the ballot?  We're not saying you

1  can't ask for the date, we're not telling you how else you can

2  use it, you just can't use an omission or a misstatement as it

3  relates to the date to discount a ballot, to disqualify a

4  ballot, not count the ballot, three different ways of saying the

5  same thing, use the date any other way you want, but you can't

6  use that alone to disqualify, because that, the -- the date

7  alone isn't telling you about the fraud itself.  And we're not

8  imposing anything that restricts your usage of the date.  We're

9  just saying that's not a ground to disqualify.  Could the court

10 do that?

11     MR. GRAHAM:  No, Your Honor.  I don't think it could,

12 because that is essentially the analysis that you would be doing

13 in 10101 under the Civil Rights Act.  And the federal --

14     JUDGE SHWARTZ:  No.  That's a -- no, I'm not talking

15 about materiality.  I'm talking about, you know that doesn't --

16 that -- that saves the statute in a way, acknowledging an

17 interest, just saying you can't have the statute apply so

18 broadly that it results in an unconstitutional injury to the

19 voter.

20     MR. GRAHAM:  But Your Honor, if you're suggesting that

21 an error or omission that does not -- is not material to

22 determining qualifications, if that is the test that has been

23 essentially grafted onto the --

24     JUDGE SHWARTZ:  But right now I'm only saying about

25 the fraud.  You -- you're -- we're -- Judge Smith directed your

1  attention to fraud.  I'm talking about using the date for fraud

2  purposes.

3        MR. GRAHAM:  Answering your question about whether or

4  not the -- the court could essentially excise the -- the date

5  component, which is not something that is present in any

6  Anderson-Burdick application.  I think that is essentially a --

7  a redux of this court's opinion in Schmidt, which went the other

8  way on the federal -- on the federal statutory question.  And

9  I'd like to reemphasize --

10        JUDGE SHWARTZ:  But it went the other way because of

11  the -- the majority held that it -- it had to do -- materiality,

12  the materiality provision applied to, like, the registration

13  process, not the vote counting process, so --

14        MR. GRAHAM:  You're right.  And at that point, Judge

15  Shwartz, in your dissent, you wrote, today's ruling is a clear

16  reminder that all voters --

17        JUDGE SHWARTZ:  I'm aware --

18        MR. GRAHAM:  -- must carefully review --

19        JUDGE SHWARTZ:  -- of what I said.  I was very clear

20  and concerned about the fact that the voters know the

21  consequence of noncompliance.  But the principles out of that

22  opinion, my -- my colleagues, and the majority, teach us about

23  what you can use the materiality provision for.  The message of

24  the dissent was simply to let the voters know this is the state

25  of the law as it existed at that moment.

 1          MR. GRAHAM:  Your Honor, I -- I would submit that the

 2   citizens of Pennsylvania are aware.  First of all, I'd like to

 3   begin with -- with this case, in which the voter was allowed

 4   notice and cure with the Erie County Board of Elections.  Beyond

 5   that, in the six years since the -- the General Assembly passed

 6   Act 77, there has been a -- a tumult of litigation over this one

 7   provision.  And indeed, in Baxter, in the run-up to the 2024

 8   election, there was a voter who specifically neglected to cure

 9   their ballot in reliance upon a Commonwealth Court decision.

10   The voters are listening.

11          And furthermore, the executive has taken active steps

12   to -- to try to reduce confusion.  But the -- the larger point

13   is that how we vote, and how states structure elections, changes

14   over time.  It is not static.  That is why the Commonwealth

15   relies slightly less than the Republican committees on this

16   concept of the usual burdens of voting.  Because if you take a

17   broader historical view, there is nothing usual about voting.

18   It's constantly changing.  And thus, federal courts and the

19   federal judiciary specifically, will only get involved, will

20   only engage in interest balancing, when there is a defined

21   constitutional right at issue.

22          The constitutional right at issue here is the right to

23   vote out of compliance with the legislature's neutral

24   instructions, and it doesn't exist anywhere in case law.  The

25   First Amendment surely does not relate at all here.  As the

1 | Supreme Court has indicated, the ballot is to elect candidates,

2 | it is not a forum for discussion or expression.

3 | JUDGE SHWARTZ:  Let me see if my colleagues have

4 | anything further.  Judge Smith?  Judge Freeman?

5 | Okay, Counsel, thank you very much.

6 | MR. GRAHAM:  Thank you.

7 | JUDGE SHWARTZ:  Okay.

8 | MR. NKWONTA:  Good morning.  May it please the Court,

9 | Uzoma Nkwonta on behalf of the Democratic Senatorial Campaign

10 | Committee, the Democratic Congressional Campaign Committee, AFT

11 | Pennsylvania, and Ms. Bette Eakin, appellees in this matter.

12 | Each year Pennsylvania's election officials invite

13 | qualified, eligible voters to cast their mail ballots, only to

14 | discard thousands of those ballots based on a technicality, a

15 | missing or incorrect handwritten date on the ballot envelope.

16 | This court and others have agreed that the date is obsolete.  It

17 | is not used to prevent fraud.  It is not used to determine

18 | qualifications.  And it's not even used to determine whether the

19 | ballot arrived on time.  The appellants' insistence on

20 | maintaining this practice over the objection of its own election

21 | officials is in explicit -- inexplicable --

22 | JUDGE SHWARTZ:  But what is the burden --

23 | JUDGE SMITH:  -- for it accomplishes nothing.

24 | JUDGE SHWARTZ:  -- what's the burden of compliance?

25 | Or the injury using Anderson-Burdick language?

1          MR. NKWONTA:  So the burden is twofold.  The burden is

2     first identifying with precision the specific date that needs to

3     appear on the envelope, and having one's ballot rejected, that

4     is also the burden.  Because --

5          JUDGE SHWARTZ:  Your colleagues characterize that as a

6     consequence of noncompliance rather than a burden.

7          MR. NKWONTA:  Well --

8          JUDGE SHWARTZ:  How do you respond to that?

9          MR. NKWONTA:  Well, court after court has recognized,

10    including the Supreme Court, that the consequence of

11    noncompliance is part of the burden.  In the Anderson case, for

12    instance, when analyzing the impact of Ohio's early ballot

13    filing law, the Supreme Court noted that the inability of -- of

14    a independent candidate to -- to launch a new campaign or to

15    emerge was part of the burden.  That is a consequence of

16    noncompliance.

17         Other courts have done the same.  In NEOCH v. Husted

18    in the Fifth -- in the Sixth Circuit, the court found that the

19    633 rejected absentee ballots, that was part of the injury, the

20    fact that those ballots were rejected.  But the --

21         JUDGE SMITH:  Assume that you're correct, that that is

22    part of the burden, how much weight should we give to that

23    consequence as part of the -- the burden with respect to the

24    noncompliance rate, which we are told is really pretty small?

25         I mean, the one statistic that sticks out in my mind

1   is what appellants tell us to have been .23 percent of mail

2   ballots in the 2024 general election, which was .24 percent -- 1

3   percent of -- of the balance.  That's low.  Should we -- should

4   we give any weight to those figures that we've been provided?

5              MR. NKWONTA:  Yes, Your Honor.  Two reasons why

6   those -- those figures should be given weight.  The first reason

7   is they -- they dwarf the figures that other courts, including

8   the Sixth Circuit, have found to impose a burden.  And I -- I

9   just mentioned the -- the Northeast Coalition for the Homeless

10  v. Husted in the Sixth Circuit, the number of ballots at issue

11  that were rejected there were 633 in one election, and

12  approximately 350 in another election.  So in total, about a

13  little over 900 ballots were rejected over two elections.

14             Here, we have a little over 14,000 ballots rejected

15  over the course of two elections.  So that's more than ten times

16  the number of ballots in NEOCH, right?  So in -- in sheer

17  numbers, it's still a significant burden.

18             But putting that aside, the number of ballots rejected

19  is also evidence of the burden, and --

20             JUDGE SMITH:  Didn't the district judge herself find

21  the burden here, characterize the burden here, as being minimal?

22             MR. NKWONTA:  Yes.  The district court did

23  characterize it as minimal.  Well, we disagree with that

24  characterization for two reasons.  First, the district court did

25  note that the disenfranchisement or the rejection of those

1  ballots is a significant burden.  The reason the district court

2  found the burden to be minimal was because it was

3  nondiscriminatory.  But that analysis skips a step.  As this

4  court held in Mazo, in assessing the extent of a burden, this

5  court considers whether it's nondiscriminatory, for sure, but

6  also, whether there are alternative means for the -- an

7  individual to exercise their right to vote or exercise their

8  right to speak.

9        JUDGE SMITH:  I believe that your friends on the other

10  side had said, or certainly that they would said, that -- would

11  say that if, in fact, this was a minimal burden, then the

12  Anderson-Burdick equation really shouldn't be employed here.

13  There should be no -- no burden on the Commonwealth to come

14  back.

15        MR. NKWONTA:  Well, that -- that is simply incorrect.

16  There are numerous cases that have applied the Anderson-Burdick

17  standard to what opposing counsel would consider a minimal

18  burden, including the Supreme Court.  Remember, in Burdick v.

19  Takushi the Supreme Court considered -- in Burdick v. Takushi

20  the Supreme Court considered the burden to be minimal and

21  slight, yet the court, obviously, as its name suggests, applied

22  the Anderson-Burdick test.

23        And there are other cases as well in which the court

24  considered the burden to be minimal, including Mazo.  For

25  instance, in Mazo, the court found the burden at issue to be

1  minimal, and still applied the Anderson-Burdick test.  And there

2  are others in which we've identified in our brief.

3      But long story short, this distinction that -- that

4  opposing counsel has created between burdens that do not reach

5  the threshold of Anderson-Burdick analysis, and in effect are

6  not subject to any judicial scrutiny whatsoever, that

7  distinction is pure fiction.  They have not identified any cases

8  that truly recognize that distinction.  Instead, they take a --

9  a reference or a phrase in Mazo out of context, the reference to

10 de minimis burdens on constitutional rights, which they misread

11 and misunderstand that statement.

12      And the -- the court in -- in Mazo was talking about

13 the specific types of constitutional rights that will implicate

14 Anderson-Burdick.  And in discussing de minimis burdens, what --

15 the court was not talking about the extent of the burden, it was

16 talking about the proximity of the burden to the regulation

17 itself, the proximity of the constitutional burden to the

18 regulation.

19      And it cited a case in which the court found that the

20 law being challenged did not regulate the electoral process or

21 regulate any constitutional protected activity.  It cited

22 Molinari, where the Second Circuit found that plaintiffs were

23 not asserting a constitutional right to term limits, to certain

24 term limits, that case did not implicate any constitutionally

25 protected activity.

1          The -- the test that Mazo set forth to determine

2    whether Anderson-Burdick is implicated is twofold.  First,

3    whether the challenged law implicates the -- the mechanics of

4    the electoral process.  Here, the challenged law clearly

5    implicates the voting process, whether a ballot should be

6    counted.  That is quintessential Anderson-Burdick territory.

7          The second is whether a constitutional right has --

8    is -- has been implicated or impacted here.

9          JUDGE SHWARTZ:  And your adversary from the

10   Commonwealth says there is no right implicated here by

11   disqualifying a vote from a qualified voter that does not comply

12   in full with the statutory requirements.  Is he mistaken about

13   how to -- how to articulate the vote -- the right, or how would

14   you articulate the right?

15         MR. NKWONTA:  He's absolutely mistaken about that.

16   And Ander -- again, this is another example of how appellants'

17   arguments distort even the Supreme Court's own standard in

18   Anderson and Burdick.  In Anderson and Burdick, the Supreme

19   Court specifically stated that each provision of the Election

20   Code invariably burdens the right to vote.  Thus, the burden

21   analysis is not meant to exclude certain types of burdens or

22   claims from judicial review, but whether the burden is minimal,

23   whether it's slight, whether it's significant, which we believe

24   it is here, that is all part of the Anderson-Burdick test.

25         JUDGE SHWARTZ:  So the right, as you described it, is

1  the right to vote, as compared to the Commonwealth, which says

2  it's the right -- there is no right to -- to have your vote

3  counted if it's not in compliance with the law.  Are you --

4  are -- is it -- are those two different rights?  Or is there no

5  right to one and not the other?

6          MR. NKWONTA:  That's absolutely incorrect.  You'll

7  recall at one point poll taxes were required in order for a

8  ballot to count.  And according to appellants' argument, there

9  would be no right to vote if an individual did not comply and

10  pay that poll tax.  But the Supreme Court soundly rejected that

11  argument in Harper v. Virginia Board of Elections and has not

12  looked back since.  So clearly, just the simple fact that one

13  did not follow the -- the law or follow the requirement doesn't

14  mean that they forego the right to vote.

15          JUDGE SHWARTZ:  Because that requirement itself could

16  be unconstitutional.

17          MR. NKWONTA:  Precisely.  Just like poll taxes were

18  unconstitutional, and -- and the failure to follow a poll tax

19  does not mean you forfeited the right to vote.

20          JUDGE SHWARTZ:  What would happen if the law was clear

21  that in each county there had to be a uniform practice of giving

22  notice to the voter whose ballot either omits a date, has a date

23  that's got to be erroneous because it's more akin to the

24  person's birth date, it's written in the European fashion with

25  the -- the month and day being flipped from the way it's done in

1  the U.S., assume that were a requirement by, law that they can't

2  -- they -- they've got to have a uniform notice and opportunity

3  to cure, would that save the date requirement from

4  constitutional challenge?

5          MR. NKWONTA:  I don't believe so.  That may impact the

6  burden analysis.  Now, you may recall from -- from our briefing,

7  and from the record below, that plaintiff, Ms. Eakin, did have

8  an opportunity to try to cure her ballot, but -- and -- and

9  as -- as she tells it, she -- she had to leap through inordinate

10  amount of burdens and hurdles to get that ballot cured.  She was

11  actually out of town.  She was in Ohio for medical treatment,

12  and had to move mountains, essentially, to ensure that her

13  ballot was counted.  So it -- it would affect the -- the burden

14  analysis, but it also depends on the context, the structure of

15  the -- of the cure itself.  It would not impact the state

16  interest.  And that's what makes this case unique, is that

17  there's absolutely no state interest that can justify this law

18  because --

19          JUDGE FREEMAN:  Well, I know you --

20          MR. NKWONTA:  -- it's obsolete.

21          JUDGE FREEMAN:  -- you've argued that, and the -- the

22  district court said there was no evidence of the state interest.

23  But, you know, the -- the Supreme Court, and our court, and I

24  think pretty much everyone understands that preventing voter

25  fraud is a legitimate interest, whether there's evidence of

 1  voter fraud or not.  Like, that -- that -- so why is that, that

 2  alone, just not an interest that needs to be balanced under the

 3  Anderson-Burdick framework?

 4          MR. NKWONTA:  Because it's unconnected in any way to

 5  the actual rejection of ballots for a missing or incorrect date.

 6  And in the record below, none of the defendants, none of the 67

 7  county defendants, were able to explain or identify any fraud

 8  prevention utility that comes from rejecting ballots because of

 9  a missing or incorrect date.

10          JUDGE FREEMAN:  Maybe not prevention, but the example

11  that we have is enforcement of voter fraud laws with the

12  Mihaliak case, right?  So -- so if the -- if the state says it's

13  in our interest to not only throw out the votes of deceased

14  voters but also to prosecute anyone who impersonates a -- a

15  voter, why isn't that a valid interest?

16          MR. NKWONTA:  So that goes to a distinction that --

17  that has been lost in appellants' briefing, and one that Judge

18  Shwartz mentioned earlier, in that the -- the scope of the

19  injunction in this case, which is similar to the injunction that

20  plaintiffs sought below, is to enjoin county election boards

21  from rejecting mail ballots for failure to enter the correct

22  date or -- or to enter a date at all.  It's not to eliminate the

23  date field from the -- the ballot envelope itself.

24          So because of that, any potential utility that -- that

25  appellants feel may be derived from having the date field still

1   remains.  Beyond that, what you heard appellants talking about

2   is not necessarily an interest in regulating elections.  It's an

3   interest in -- in collecting some data point that they may use

4   later in perhaps criminal investigations or interrogations to

5   perhaps solicit some type of settlement or a plea.

6          It's -- it's really unclear because they, they cite

7   nothing in the record to support this, but it's really unclear

8   what -- what purpose the date served, even in the Mihaliak

9   investigation.  It's just -- there's just nothing but

10  speculation about the purpose that the -- the date served.

11         Nonetheless, the interest that the state advances,

12  that the court should take into account for the purposes of the

13  Anderson-Burdick test, is one that has to be connected to

14  regulating elections.  Because if it's not, then the state is

15  not entitled to the deference that the Anderson-Burdick test

16  allows.  The reason the Anderson-Burdick test provides the state

17  some deference and requires some balancing doesn't just go

18  straight to strict scrutiny is because it recognizes that states

19  have an interest in regulating the time, place, and manner of

20  election.  States are tasked with that role in federal

21  elections.

22         JUDGE FREEMAN:  But would the --

23         MR. NKWONTA:  And that's the only reason.  But seeking

24  some type of evidence to use in -- in a potential plea, it is --

25  it's --

1          JUDGE FREEMAN:  But --

2          MR. NKWONTA:  -- (indiscernible).

3          JUDGE FREEMAN:  -- prosecuting potential voter fraud,

4  you're saying, is not connected to regulating, like, time,

5  place, and manner of elections because -- because it's a

6  criminal prosecution as opposed to something about counting

7  votes?  Is that what you're saying?

8          MR. NKWONTA:  No.  What I'm saying is the date on the

9  ballot itself, there's just no connection between the date on

10  the ballot envelope and prosecuting voter fraud.  And --

11  and here's --

12          JUDGE FREEMAN:  I understand there -- there are points

13  of view, though, that, you know, the -- the daughter of this

14  deceased voter dated it, let's say, January 1st, and when her --

15  her mother had passed away in December, right?  And so that --

16  that showed that the daughter was actually doing something

17  illegal.  So if that -- if that were borne out, if that were

18  true, then -- then would the date fraud -- the date be connected

19  to the -- the alleged fraud?

20          MR. NKWONTA:  It still would not be connected to the

21  state interest they advance here.  Again, going back to the

22  distinction, in Mihaliak, the Mihaliak case involved voting in

23  the 2022 primary.  And in that 2022 primary, the -- the county

24  boards had -- had been enjoined from rejecting ballots because

25  of a missing or an incorrect date.  In other words -- and that

1  was because of the Migliori case and the subsequent order from

2  the Pennsylvania Commonwealth Court.

3          So in other words, even that investigation that --

4  that appellants have pointed to as a -- as a state interest to

5  support the rejection of ballots, it -- it was not necessary to

6  reject any undated ballots to get that information for the

7  investigation.  That -- the Lancaster County, during that

8  election in which the Mihaliak investigation arose, Lancaster

9  County was counting undated and misdated ballots, just like

10  every other county in Pennsylvania was, because of a prior court

11  order.  And that goes to the distinction, again, that -- that

12  whatever interest that they have raised, none of it justifies

13  the rejection of lawfully cast ballots with missing or incorrect

14  dates.

15          JUDGE SHWARTZ:  Did the district court err by

16  requiring any -- the state to produce any evidence of the

17  interest, as opposed to simply proffering an interest?  Do you

18  follow my -- the difference I'm talking about?

19          MR. NKWONTA:  We don't believe the district court

20  erred, for two reasons.  First, in the district court's

21  discussion of the absence -- at least most of the district

22  court's discussion of the absence of interest came during the

23  phase of the opinion where the court was assessing whether

24  appellants had satisfied their burden in order to -- satisfied

25  their summary judgment burden to come forward with evidence.

 1          JUDGE SHWARTZ:  Do they have to come forward with
 2   evidence?
 3          MR. NKWONTA:  Yes, they do.
 4          JUDGE SHWARTZ:  Even though this is like a -- it's
 5   kind of like the case we just heard with, like, legislative
 6   facts.  Like, do they have a burden to come forward with
 7   evidence to support their interests?
 8          JUDGE SMITH:  And not just state what the interest is.
 9          JUDGE SHWARTZ:  Yes.  Thank you.
10          MR. NKWONTA:  In this case, yes, they do.  And I'll --
11   I'll explain.  In the Anderson-Burdick test, the amount of
12   evidence that a -- a state is required to come forward with is
13   proportional to the extent of the burden.  So if there is a
14   minimal burden -- and in -- in some cases courts will find that
15   the state -- that the state does not have to present any
16   elaborate empirical evidence of their interest.  But if there is
17   a more moderate burden or significant burden, then the state
18   does have to support those interests.  In this case, we believe
19   there is a significant burden.
20          But second, as you may recall, below, the Commonwealth
21   did not appear below.  So the interests being advanced were
22   interests that were proposed by the RNC intervenors.  And in
23   that case, when the state is not proposing the interest, when
24   it's a political party with a -- with an -- with an interest in
25   the outcome of the case in order to serve their own parochial

1  interest in winning elections, as they stated in their motion to

2  intervene, well, that requires, and that -- that's entitled to

3  more scrutiny, because then you no longer -- you no longer have

4  the -- the countervailing state interest being expressed in a

5  case, and you no longer have the deference that's necessarily

6  required --

7          JUDGE FREEMAN:  But --

8          MR. NKWONTA:  -- any court.

9          JUDGE FREEMAN:  -- but we can't force the state or the

10  Commonwealth to participate.  And it's -- it was appropriate for

11  the plaintiff here, the plaintiffs, to -- to sue the counties

12  rather than the state.  And, you know, the -- and -- and we know

13  there was a mandatory notification to the -- to the

14  Commonwealth.  They declined to intervene.

15          So why, in those circumstances, should we not credit

16  the interests proffered by the defendants in this case, even if

17  those defendants are not the Commonwealth?

18          MR. NKWONTA:  Well, the court can credit the

19  interests.  The question is whether the court should give those

20  interests complete deference without the need for any evidence

21  whatsoever, or without the need for any showing that those are

22  actual interests that are advanced by the state.  And they are

23  -- and in -- in this case, when the interests are not advanced

24  by the state, the interests are actually advanced by a private

25  party, we've found no authority to suggest that the court owes

1  those interests absolute deference without any type of

2  evidentiary showing.

3          Nonetheless, for the reasons I mentioned earlier, we

4  disagree that the burden is minimal.  And if the burden is not

5  minimal because of the number of voters that have been

6  disenfranchised, then the state is required to come forward with

7  some type of support from their interest.  They can't --

8          JUDGE FREEMAN:  The state itself, you mean, like, the

9  Commonwealth of Pennsylvania, as opposed to the defendants in

10  this case?

11          MR. NKWONTA:  Well, both, both, both.  In other

12  words --

13          JUDGE FREEMAN:  But it can't --

14          MR. NKWONTA:  -- there needs to --

15          JUDGE FREEMAN:  -- it can't be that the Commonwealth

16  is required to come forward because we -- because the --

17  practically speaking, the -- the district court has no authority

18  to force the Commonwealth to do anything as a nonparty.

19          MR. NKWONTA:  Yes.  So I may have misspoke when I

20  said -- in -- in saying that the state is required to come

21  forward, whoever is presenting state interests in order to

22  support the challenged law is required to come forward with some

23  type of support when the burden is not minimal.  When the burden

24  is more than minimal, there needs to be some evidentiary support

25  for the state interest being advanced in -- in defense of the

1 | law.

2 |         If there are no other questions, I'll --

3 |         JUDGE SHWARTZ:  Just have one other.  If we were not

4 | -- if we were going to agree with your colleagues across the

5 | aisle that a consequence from the omission, the risk of

6 | disenfranchisement, is -- is a consequence, not an injury or

7 | burden, if we were to conclude that, what is the -- what other

8 | burden or injury is left for us to consider in support of your

9 | client's position?

10 |         MR. NKWONTA:  So two responses to that.  First, the --

11 | there is still the burden of identifying and -- and entering the

12 | precise date in the precise format that the county deems to be

13 | permissible.  And as you've seen from the record evidence, that

14 | varies from county to county.

15 |         In some counties, entering the date in the European

16 | format, starting with the date, month, year, rather than month,

17 | date, year, results in the ballot being rejected in some, in

18 | other counties it does not.  In -- in some counties, entering

19 | the month and leaving out the date results in

20 | disenfranchisement.  In others, it does not.  And it's -- it's,

21 | utter chaos in terms of determining what is permissible from one

22 | county to another.

23 |         Second, another way to look at the -- the number of

24 | ballots being rejected is as evidence of the burden.  In -- in

25 | other words, the fact that there were thousands of ballots

1  rejected is evidence that there is a burden in complying with

2  this requirement.  And that's how courts have looked --

3        JUDGE SMITH:  Complying correctly.

4        MR. NKWONTA:  Complying correctly.

5        JUDGE SMITH:  With the --

6        MR. NKWONTA:  And that's how courts have looked at

7  these types of cases, when there are a number of ballots being

8  rejected, or when there are a number of registrations being

9  rejected, as in Fish v. Schwab, is that the -- the fact that

10 there are thousands of individuals who sought to exercise their

11 right to vote, and have no reason to -- to seek to

12 disenfranchise themselves, ended up not being able to vote, that

13 is evidence that there was some burden.

14       And then there's additional evidence in the record

15 from -- from expert testimony and an expert declaration that

16 demonstrated that there are disparities in the number of voters,

17 there are disparities among voters who submitted rejected

18 ballots.  In other words, voters, black voters, and Hispanic

19 voters, and elderly voters were more likely to submit rejected

20 mail ballots than any other type of voter.

21       And when you see those types of disparities, when you

22 see that the rejections are not equally distributed, that

23 suggests that's highly indicative of a burden.  Otherwise, it'd

24 be equally distributed.  And the --

25       JUDGE FREEMAN:  But you didn't bring an equal

1 protection claim.

2        MR. NKWONTA:  We did not bring an equal protection

3 claim, but -- and -- and, sorry, going back to your point that

4 we did not bring a equal protection claim, I think that's a

5 little bit of a -- we brought a claim under the First and 14th

6 Amendment.  And -- and the Supreme Court has recognized that

7 these claims, the right to vote, a undue burden on the right to

8 vote claim, can be located in the equal protection clause.

9        So this isn't necessarily a disparate treatment equal

10 protection claim, but what it does show, this is evidence of a

11 burden of the right to vote, because it shows that disparities

12 fall along familiar lines.  Those who are less resourced ended

13 up being more likely to cast a ballot that's rejected.  And

14 that's further evidence that there is a burden on voters in

15 complying with this requirement, in addition to the fact that

16 there are thousands and thousands of ballots being rejected.

17        JUDGE SHWARTZ:  Thank you, Counsel.

18        MR. NKWONTA:  Thank you.

19        JUDGE SHWARTZ:  Appreciate your argument.

20        MR. BOYER:  Good morning, Your Honors.  And may it

21 please the Court, Jacob Boyer, on behalf of the Pennsylvania

22 Department of State.

23        I'd like to begin with a question Your Honor asked,

24 Judge Shwartz, about the relief, and then a question Your Honor

25 asked, Judge Freeman, about whose interests or whose

1 presentation of the state interest here should be and can be

2 credited.  Your question about the proper relief, Judge Shwartz,

3 as to whether it is as to the consequence, meaning that ballots

4 can't be rejected, or to the date itself and soliciting that, it

5 is only to the consequence and only could be to the consequence,

6 given the defendants here are only the County Boards of

7 Elections.

8           The face of the declaration is governed by -- and this

9 will lead into my second point about who to credit -- the

10 Department of State, which is not a defense -- a -- a defendant

11 here.

12           As to who to credit on the representations of what the

13 state interests are here, I think the Court can take the

14 explanations at face value, but still must question, do they add

15 up under the Pennsylvania Election Code, and given the way

16 Pennsylvania's elections are actually administered.  And you

17 have a number of state voices in -- involved in this case.

18 There's on the one hand, the Department of State, all 67 County

19 Boards of Election.  On the other hand, the office of attorney

20 general and several state legislators who filed an amicus brief.

21 And with all due respect to the attorney general and the state

22 legislators, what --

23           JUDGE SMITH:  Not -- not everybody's singing from the

24 same songbook (indiscernible).

25           MR. BOYER:  Absolutely not.  And -- and with all due

1  respect, what separates the two is only the Department of State

2  and the County Boards of Election have a depth of understanding.

3  Both --

4          JUDGE SMITH:  Well, is -- is it fair to say, so we all

5  understand the functions of the secretary of the Commonwealth,

6  that as we have heard described in some of the case law,

7  responsibility for the mechanics of an election, that while the

8  counties and their election boards are responsible for seeing

9  the -- that the mechanics of an election are carried out

10  properly and in accordance with law at the county level, that

11  that is the same obligation and responsibility of the secretary

12  of the Commonwealth at the -- at the Commonwealth level, at the

13  state level, albeit in a more remote way?

14          MR. BOYER:  Yeah.  I think it is right that the

15  administration of elections is carried out entirely by the

16  counties at the county level and the Department of State at the

17  state level.

18          And what I want to express is, given those roles, the

19  Department of State and the county boards have an understanding

20  of the Election Code that, with all due respect, isn't shared by

21  others.  And I -- I'd like to make a couple of points to

22  illustrate that this isn't an abstract distinction, because the

23  arguments you've heard today from the attorney general, in their

24  briefing as well, as well as those from the legislators, betray

25  that they don't actually get the Election Code right in many

1 | critical respects.

2 | So as to Your Honor's question about going back to,

3 | you know, what's the relief here, it is right to say the relief

4 | here is only that you wouldn't be able to reject ballots and not

5 | that the declaration date would no longer be a field that voters

6 | need to comply.

7 | JUDGE SHWARTZ:  It, therefore, would still be

8 | available for this fraud detection --

9 | MR. BOYER:  Correct.

10 | JUDGE SHWARTZ:  -- interest, should it matter.

11 | MR. BOYER:  And the attorney general response to that

12 | says in their brief, well, you have no idea if that's true

13 | because ultimately, the counties, if this is a discretionary

14 | matter, might take away the date field, and we don't know what

15 | they're going to do.  That's simply wrong under the Election

16 | Code.  The form of the declaration is prescribed, is -- under 25

17 | P.S. 3146.4 as to absentee ballots, 3150.14 as to mail

18 | ballots -- it's uniform and it's prescribed by the Department of

19 | State.

20 | And what appears on that ballot is governed by

21 | separate sections of the Election Code than those that govern

22 | the consequence.  And so it's both that the attorney general is

23 | wrong about the consequences, but also doesn't have the depth of

24 | the Election Code to the point, Judge Freeman, that they're in a

25 | position, I think, to credibly articulate either the election

1  interests or faithfully describe all of the ways in which the

2  Election Code applies here.

3       JUDGE SHWARTZ:  By -- by matter of statutory law in

4  the Commonwealth, the date must appear on the ballot.

5       MR. BOYER:  And that -- that obligation is

6  administered by the secretary of the Commonwealth and is

7  distinct from the section that governs the consequence.  And so

8  it's the broader point of, you know, you've -- you've heard from

9  the Department of State, you've heard from the county of boards,

10  who share the same level of familiarity, all of whom are

11  aligned.  The voices on the opposite side, my point is, don't

12  have the same level of depth, and the arguments they are making

13  at times betray that they don't actually understand the

14  operation of --

15       JUDGE SHWARTZ:  If --

16       MR. BOYER:  -- the Election Code.

17       JUDGE SHWARTZ:  -- if we were to determine that

18  enforcement of the date requirement to disqualify a ballot is

19  unconstitutional, does this do anything, does it impact the rest

20  of the statute in any way?

21       MR. BOYER:  No, Your Honor, it does not.  It would --

22       JUDGE SHWARTZ:  And is that because the requirement to

23  fill in a date remains?

24       MR. BOYER:  Correct.  And it's governed by a

25  completely different section.  So there are sections in the

1  Election Code, and the -- the obligation to what instructions

2  are given to the voter is 3146.6, as to absentee, 3150.16 as to

3  mail-in ballot, that governs what instructions are given to the

4  voter.  3146.8 governs what counties do during the canvassing

5  process and governs which ballots can't or cannot be counted.

6  So they are distinct under the Election Code.

7          JUDGE SHWARTZ:  Let's talk about that, that -- your --

8  you use the language canvassing process.  I'm looking at it,

9  ballot arrives, county official receives it.  In some counties,

10 according to this record, there's an opportunity to cure to the

11 -- to the voter if -- if it appears to be an omitted or

12 misstated date.  In other counties, no action is taken, the

13 ballot is -- is discarded or not counted.

14         One of the interests in an Election Code is orderly

15 administration of elections.  How is that interest furthered if

16 the date requirement is being calculated in such different ways?

17 And when I use calculate, I mean, you know, kind of focused on

18 or it has an impact, depending on what county you're in.  Do you

19 agree that there is disorder from the enforcement of the date

20 requirement to disqualify a ballot?

21         MR. BOYER:  As we have said -- so I generally agree

22 with the thrust of your question.  I'll answer it in a more

23 specific way.  As we have said in our brief, it's not only true

24 that the -- the interests that the state might have here in

25 rejecting ballots don't hold up, not as a matter of evidence,

1  not as a matter -- but under the law, they just don't square

2  with the Election Code.

3       I think we have also said not only is that the case,

4  but to reject ballots based on a declaration date review does

5  indeed impede the effective administration of elections.  And

6  it's not just the notice and cure, which I think is perhaps more

7  relevant, as my colleague said, to the question of burden.  But

8  it's true -- and I -- not to pat the Department of State on the

9  back, I think we've done a remarkable job with the redesign.  I

10  think it has improved matters, but it's not -- it's not perfect.

11       We still saw, in the 2024 general election, 4500

12  voters fail to comply.  We still saw that counties do not evenly

13  decide what is correct or not, and just to give some examples of

14  where there is disuniformity -- and this is different from

15  notice and cure, this is just judging what is correct or not --

16  some counties decided, well, if you put both the date and month

17  in the two boxes that we had created for the month and left, you

18  know, the two boxes for the date, that was wrong.  Other

19  counties said, if you scratch things off that could be wrong.

20  So there is still disuniformity, notwithstanding our best

21  efforts to make this under our power to uniformly create the

22  declaration, notwithstanding our best efforts to make sure

23  everyone is treated equally.

24       JUDGE FREEMAN:  But, so -- but your -- the secretary

25  of the Commonwealth, and I guess the Department of State have

1  made -- have taken a position on whether rejecting these ballots

2  serves the Election Code, the purposes of the Election Code.

3  But it -- it seems to me that the people on the other side have

4  asserted some interests that -- that go beyond serving the

5  purposes of the Election Code.  In -- in your -- in your role

6  today, do you -- do you have comments on -- on those purposes,

7  or are you -- do you -- speaking only to the purposes of the

8  Election Code?

9        MR. BOYER:  So I'll -- a couple comments.  I

10  absolutely agree that fraud prevention is a legitimate state

11  interest.  I don't agree that this case jeopardizes that.  And

12  part of the reason, as my colleague said, is the date field will

13  remain, irrespective of the outcome of this case, to the extent

14  it serves purposes beyond figuring out what ballot is valid or

15  not, which is -- which is -- for which it serves no purpose,

16  those interests will still be served.

17        As my colleague mentioned, the one case where this has

18  ever been identified as a possible piece of evidence for a

19  reason that's outside, you know, the time, place, and manner of

20  elections, it was elect -- an election in which the voter had no

21  reason to think the date would be necessary for their ballot to

22  be counted and yet still filled it out.  Ultimately, for that

23  election, dates were not necessary for ballots to be counted.

24  So I -- our core point is that it doesn't jeopardize fraud

25  prevention, but we fully agree fraud prevention is a legitimate

1  state interest, just not served by rejecting ballots based on

2  declaration date errors.

3      If I can make one final point about solemnity, 'cause

4  I think there is -- I think you asked -- Your Honors asked some

5  correct questions --

6      JUDGE SMITH:  Fascinated.

7      MR. BOYER:  Yeah.  One other point I want to point

8  out, and this is again evidence of the depth of understanding

9  that the Department of State and the counties possess not shared

10 by others, 25 P.S. 3553, which doesn't appear anywhere in the

11 briefs on the opposing side, says specifically, the punishment

12 that attaches should you falsely sign the declaration exists

13 solely if you have signed without any reference to date.

14      And the point is, if it's solemn enough that you can

15 be subjected to criminal punishment by virtue solely of

16 signing -- and this is the general assembly's judgment, again,

17 all of our arguments are grounded in the text of the Election

18 Code, a date doesn't matter if it's solemn enough that you can

19 be subjected to criminal penalty 'cause you've signed, it's

20 certainly solemn enough that your vote can count if you haven't

21 dated as well.

22      Thank you, Your Honors.

23      JUDGE SHWARTZ:  Thank you.

24      MR. GORE:  Thank you, Your Honors.  I'd like to

25 address several points on rebuttal.  First, on the threshold

1  question, counsel has said that any rule that places any kind of

2  burden on voting would trigger Anderson-Burdick.  And that's

3  simply not correct because every voting rule imposes some

4  difficulty or requires some effort in order to comply.

5       They say we've cited no cases, adopting the Mazo line

6  of reasoning, but that's incorrect as well.  Look no further

7  than Crawford.  Crawford says, on page 197, the United States

8  Supreme Court, "Some burdens are neither so serious nor so

9  frequent as to raise any question as to the constitutionality of

10  the statute."

11       We've also cited Luft v. Evers out of the Seventh

12  Circuit.  And in that case there was a challenge to a limitation

13  on faxing or e-mailing absentee ballots to voters.  And the

14  Seventh Circuit declined to engage in an Anderson-Burdick

15  analysis because it didn't think it was a plausible application

16  of the framework, due to the minimal nature of the burden in

17  that case.

18       You've asked counsel to describe what the burden is.

19  Mr. Uzoma said it's identifying which date to write.  We agree

20  with the secretary, the 2024 redesign is remarkable.  The

21  secretary did a remarkable job.  It clearly identifies which

22  date there is to write.  It has to be today's date, the date

23  that the ballot is completed.  And there are clearly marked

24  boxes for the two-digit month, two-digit day, and the year is

25  actually prepopulated.  The plaintiffs did not put in any

1  evidence below that voters are continuing to struggle with that

2  particular issue or with this question about the American versus

3  European dating convention.

4          JUDGE SHWARTZ:  There was --

5          MR. GORE:  All the --

6          JUDGE SHWARTZ:  -- representation that the -- in the

7  record, I think maybe we just discussed this on your opening

8  comments, that there was evidence in the record concerning the

9  2024 redesign and how -- how successful it's been, 'cause I

10 think you may have presented that the numbers have gotten --

11         MR. GORE:  Mm-hmm.

12         JUDGE SHWARTZ:  -- smaller from being discounted.  So

13 I do think there is evidence in the record that says there are

14 still mistakes happening.

15         MR. GORE:  There are still mistakes, but we don't know

16 what those mistakes in particular were --

17         JUDGE SHWARTZ:  Those --

18         MR. GORE:  -- or --

19         JUDGE SHWARTZ:  -- were those ballots rejected for

20 noncompliance with the date requirement?

21         MR. GORE:  Yes.  And some of those could have been

22 omission of the date rather than using an American or British --

23         JUDGE SHWARTZ:  Right.

24         MR. GORE:  -- format.

25         JUDGE SHWARTZ:  I used mistake to mean noncompliance

1  with the date requirement.

2          MR. GORE:  Sure.  And I'm just making the point that

3  because we didn't have -- the district court didn't examine the

4  evidence with respect to the 2024 redesign, much of the evidence

5  that they're pointing to comes from prior elections, where these

6  boxes weren't populated and there weren't clear instructions.

7          Mr. Uzoma also talked about the alleged disparity on

8  African American, Hispanic, and older voters.  But with respect

9  to African American and Hispanic voters, there's actually no

10  evidence of that in the record.  They put in an expert report

11  that tried to do a regression analysis about hypothetical

12  counties, did not identify the race or educational attainment

13  level of any voter.  Conceded that -- the expert conceded in

14  deposition that he could not say that there had been any

15  disparate effect from this on those subgroups.  And a subgroup

16  analysis is improper anyway, including under the Northeast Ohio

17  Coalition for the Homeless case that they've repeatedly cited.

18  And that case actually proves our point in another way.

19          Mr. Uzoma pointed out that it was a small number of

20  ballots in that case, but the Sixth Circuit's analysis turned on

21  the difficulty of compliance, not the consequence of

22  noncompliance.  So that addresses, I believe, most of their

23  burden points.

24          JUDGE SMITH:  Can I add one -- or ask one question,

25  please?  Because it has been your position that there is a very

1  consequential divide between the burden, such as it is, of

2  filling in the date, and of course, it must be the correct date,

3  and that date portion may not be obscured, or obliterated, or

4  somehow affected in the filling out process such that it appears

5  -- it does not appear clearly, that there are indicia of

6  noncompliance sufficient to disqualify the vote, and that the

7  disqualification of the vote, the -- the invalidating of the

8  vote is merely a consequence.  That is what I understand your

9  position to be.

10          But could it not be said that there is really an -- an

11  inextricable relationship between that act of filling out, the

12  knowledge that it must be filled out accurately, completely, and

13  in certainly a legible fashion, maybe something could be added

14  to that, and the knowledge or constructive knowledge on the part

15  of the voter that if this is not done correctly, the consequence

16  is the vote will not count?  Is it not possible to conceptualize

17  and describe the burden in that fashion?

18          MR. GORE:  I suppose that relates to the burden.  I

19  think the burden still is the burden on compliance.  And I think

20  I would cite Your Honor to Justice Alito's opinion for the

21  majority in Brnovich, where he said that a rule that 98 percent

22  of voters comply with is unlikely to pose a burden.

23          Well, here we have a rule that more than 99 --

24          JUDGE SMITH:  More than 98.  Mm-hmm.

25          MR. GORE:  -- percent of even mail voters comply with,

1  and the majority of Pennsylvania voters don't even have to

2  comply with it because they choose to vote in person instead.

3  So when looked at from holistically, which the Anderson-Burdick

4  framework requires this court to do, Pennsylvania's Election

5  Code clearly complies with the Constitution.

6          Address the state interests, and the remedy, just

7  briefly, if I might, Your Honors.  There is no burden on

8  proponents of the law to come forward with evidence.  Mazo shows

9  that even when Mazo conducts the interest analysis, it doesn't

10  point to any evidence --

11          JUDGE SHWARTZ:  You have to just -- you have to

12  identify an interest, but you don't need to come up with --

13          JUDGE SMITH:  Right.

14          JUDGE SHWARTZ:  -- an evidentiary support.

15          MR. GORE:  With evidence of it.  And the district

16  court thought there was such an evidentiary burden.  And I'll

17  cite to Tedards in the Ninth Circuit.  And of course there was

18  evidence of fraud from the Mihaliak case, which was in the

19  record here.  So the district court's statement that there was

20  no evidence to support that interest was simply incorrect.

21          And finally, I think, Judge Shwartz, you've asked

22  about the remedy, if the court --

23          JUDGE SHWARTZ:  Mm-hmm.

24          MR. GORE:  -- could enjoin enforcement of the date

25  requirement without imperiling the rest of the Election Code.

1  And here we part company with the Secretary of State, I think,

2  has actually misstated what the law is.  As part of the 2019

3  enactment that created universal no-excuse mail voting in

4  Pennsylvania --

5          JUDGE SHWARTZ:  It's got a severability provision.

6  I'm aware of that.

7          MR. GORE:  -- there's a severability provision.

8          JUDGE SHWARTZ:  That's why I asked.

9          MR. GORE:  And that's before the Pennsylvania --

10         JUDGE SMITH:  Pennsylvania Supreme, yeah.

11         MR. GORE:  -- Supreme Court in Baxter.  That's one of

12  the issues that they've asked to be briefed.  And it makes clear

13  that if any application of any part of that law is held invalid

14  with respect to any person or circumstance, the whole law goes.

15         JUDGE SHWARTZ:  You say -- you -- you're representing

16  that the -- the language of the severability provision says even

17  if an application, that's --

18         MR. GORE:  Any -- any application to any person or

19  circumstance, then all of Act 77 is eliminated.  That means

20  universal no-excuse mail voting is gone in Pennsylvania.  And

21  there were other provisions of Act 77 that modernize --

22         JUDGE SHWARTZ:  The Baxter court --

23         MR. GORE:  -- other aspects of it.

24         JUDGE SHWARTZ:  -- will tell us whether that's --

25         MR. GORE:  If it --

1          JUDGE SHWARTZ:  -- (indiscernible).

2          MR. GORE:  -- reaches that question.

3          JUDGE SMITH:  Presumably, that was part of a

4    compromise.

5          MR. GORE:  Absolutely part of the compromise, as has

6    been pointed out in the Baxter briefing.  Baxter court may or

7    may not reach that question, but it has obviously significant --

8          JUDGE SHWARTZ:  It's one of the two questions it --

9          MR. GORE:  Presented.

10          JUDGE SHWARTZ:  -- it sought -- yeah.

11          MR. GORE:  And it would be implicated if this court

12    were to enter that kind of remedy.  And -- and --

13          JUDGE SHWARTZ:  Well, it's also --

14          MR. GORE:  -- there would be some --

15          JUDGE SHWARTZ:  -- implicated by -- by virtue of its

16    own -- dealing with the merits, the so-called merits question,

17    right --

18          MR. GORE:  That's correct.

19          JUDGE SHWARTZ:  -- as well.

20          MR. GORE:  Yeah.

21          JUDGE SHWARTZ:  Understood.

22          MR. GORE:  That's absolutely correct.

23          JUDGE SHWARTZ:  Okay.  Thank you, Counsel.

24          MR. GORE:  Thank you, Your Honors.

25          JUDGE SHWARTZ:  All right.

1            MR. GRAHAM:  Your Honor, I would like to make three

2    points in the limited time that I have.  First, a correction.

3    My friends on the other side represented that maybe the court

4    should have some skepticism where political parties proffer

5    state interests.  Below it was not only the Republican

6    committees that appeared in defense of this date component,

7    there was also the Berks County Election Board, the Lancaster

8    County Election Board, and amicus.

9            Second, a clarification.  I remember our colloquy on

10   direct, Judge Shwartz, about the fact that this is --

11           JUDGE SHWARTZ:  Did you feel like you were being

12   examined.

13           MR. GRAHAM:  I did, indeed.

14           JUDGE SHWARTZ:  I'm so sorry.  My occupational hazard.

15   (Indiscernible).

16           MR. GRAHAM:  On -- I remember our colloquy about this

17   being a de novo review, but I would simply urge this court to

18   consider the prospect that we're looking at an incomplete

19   picture of how voting works and how voting is protected in the

20   Commonwealth of Pennsylvania.  There has been no discussion of

21   constitutional provisions in Pennsylvania that guarantee

22   absentee voting to particular populations.  That is not this

23   case.  There have been no -- there has been no discussion of the

24   state constitutional provision that provides for uniformity in

25   elections.  So to the extent that drives this case, there are

1  questions elsewhere that need to be resolved.

2          Finally, I'd like to just offer a concern, which is

3  that I'm not sure what the next case looks like if the district

4  court is affirmed in this instance.  What I imagine it looks

5  like is that this court is now the Supreme County Board of

6  Pennsylvania, and if we have 50 voters who attempt to seal their

7  ballots in a secrecy envelope but only apply the glue halfway,

8  and those votes are not counted, then we're back here again.

9  We're in Anderson-Burdick world.

10          JUDGE SMITH:  Is that a floodgates argument, with the

11  kind of in terrorem suggestion to it?

12          MR. GRAHAM:  I'm not sure how that case would be

13  distinguishable from this case, Judge Smith, because you would

14  have a -- an act that is prescribed by the legislature, and the

15  voter would essentially be saying, I have a right to vote in any

16  manner.

17          JUDGE SHWARTZ:  But they would be presenting something

18  different, because the purpose of sealing the sealing -- the

19  secrecy envelope is to ensure solemnity and -- and to allow

20  the --

21          JUDGE SMITH:  Had to say that, didn't you?

22          JUDGE SHWARTZ:  -- the vote to be counted, et cetera.

23          Go ahead?

24          MR. GRAHAM:  Right.  But the --

25          JUDGE SMITH:  I said, you had to say that, didn't you?

1          JUDGE SHWARTZ:  Sorry.

2          MR. GRAHAM:  But the -- but the -- -- the right at

3  issue is the right to have your ballot counted on equal terms

4  with others in the jurisdiction.  And that is why this court

5  should --

6          JUDGE SHWARTZ:  As long as those terms are

7  constitutional.

8          MR. GRAHAM:  As long as those terms are -- and I'd

9  like to return very briefly to the --

10          JUDGE SHWARTZ:  Very briefly.

11          MR. GRAHAM:  Very --

12          JUDGE SHWARTZ:  You asked for a minute.

13          MR. GRAHAM:  Very, very briefly, to the -- to the poll

14  tax question.

15          JUDGE SMITH:  She could be stingy when she wants to

16  be.  Trust me.

17          MR. GRAHAM:  I --

18          JUDGE SHWARTZ:  But I can be very generous, too.

19          MR. GRAHAM:  I -- I have no comment on that one, Judge

20  Smith.

21          On the -- the poll tax question and any other of

22  the -- the many ways in which the -- the right of political

23  opportunity and access to the ballot have been challenged, and,

24  you know, there have been difficulties in this country, the

25  neutral and de minimis requirement that one add a couple of

1  digits next to a freshly signed signature is different in kind.

2  This court should follow its own guidance in Mazo.  It should

3  review the cases cited in Mazo, and see that there is no

4  constitutional injury in this case.

5          Thank you.

6          JUDGE SHWARTZ:  You're welcome.

7          To all counsel, thank you for your very helpful

8  arguments.  We would ask a transcript of this argument, and also

9  be prepared, we're going to ask the sides to just split the cost

10  of that transcript, and the Court will take the matter under

11  advisement.

12          (Proceedings concluded at 10:48 a.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        CERTIFICATE OF TRANSCRIBER

2

3

4        I, Aimée Rubinowitz, do hereby certify that I was

5   authorized to transcribe the foregoing recorded proceeding; and

6   that the transcript is a true and accurate transcription, to the

7   best of my ability, taken while listening to the provided

8   recording.

9

10       I FURTHER CERTIFY that I am not of counsel or attorney

11  for either or any of the parties to said proceedings, nor in any

12  way interested in the events of this cause, and that I am not

13  related to any of the parties thereto.

14

15

16       Dated this 11th day of July 2025.

17

18                  _Aimée Rubinowitz_

19       _____

20            Aimée Rubinowitz, CET-1068

21

22

23

24

25

**0**

**0.23**
  6:22

**1**

**1**
  34:2
**10101**
  29:13
**10:48**
  68:12
**14,000**
  34:14
**14th**
  49:5
**18th**
  15:7
**197**
  58:7
**1st**
  42:14

**2**

**2019**
  4:11 63:2
**2022**
  6:21 42:23
**2024**
  5:14,22,25
  6:3,5,21
  7:13 9:8,9
  31:7 34:2
  55:11 58:20
  59:9 60:4
**23**
  34:1
**24**
  34:2
**25**
  52:16 57:10
**25-1644**
  4:3

**3**

**3146.4**
  52:17
**3146.6**
  54:2
**3146.8**
  54:4
**3150.14**
  52:17
**3150.16**
  54:2
**3157**
  20:21
**350**
  34:12
**3553**
  57:10

**4**

**4500**
  55:11

**5**

**5.1**
  15:8
**50**
  5:2 66:6

**6**

**633**
  33:19 34:11
**67**
  16:3 40:6
  50:18

**7**

**77**
  31:6 63:19,
  21

**8**

**8**
  15:25

**9**

**900**
  34:13
**98**
  61:21,24
**99**
  5:11 7:10
  61:23

**A**

**a.m.**
  68:12
**absence**
  43:21,22
**absent**
  20:18
**absentee**
  5:8 11:15
  23:12 33:19
  52:17 54:2
  58:13 65:22
**absolute**
  46:1
**absolutely**
  14:19 27:18,
  20 37:15
  38:6 39:17
  50:25 56:10
  64:5,22
**abstract**
  51:22
**accepted**
  9:19
**access**
  67:23
**accomplishes**
  32:23

**accordance**
  11:12 51:10
**account**
  41:12
**accuracy**
  26:15
**accurately**
  17:4 61:12
**acknowledged**
  8:4
**acknowledging**
  29:16
**act**
  5:3 24:1,18,
  20 25:21
  29:13 31:6
  61:11 63:19,
  21 66:14
**action**
  54:12
**active**
  31:11
**actively**
  11:24
**activity**
  17:25 36:21,
  25
**actual**
  11:25 21:24
  40:5 45:22
**Adams**
  4:2
**add**
  50:14 60:24
  67:25
**added**
  61:13
**adding**
  23:23
**addition**
  49:15
**additional**
  48:14
**address**
  5:25 24:6
  57:25 62:6

addresses
60:22
adequately
15:7
administered
50:16 53:6
administratio
n
14:4 15:11,
17,18 16:22
17:10,13
19:2,3 26:4,
22 51:15
54:15 55:5
adopting
58:5
advance
42:21
advanced
24:23 44:21
45:22,23,24
46:25
advances
41:11
adversaries
22:14
adversary
13:24 37:9
advisement
68:11
affect
39:13
affected
61:4
affirmed
66:4
African
60:8,9
AFT
32:10
agree
12:1 47:4
54:19,21
56:10,11,25
58:19
agreed
32:16

ahead
66:23
aid
5:13
aisle
47:5
akin
38:23
albeit
51:13
aligned
53:11
Alito's
61:20
alleged
27:5 42:19
60:7
allowed
31:3
alternative
35:6
amendment
21:12 22:17,
19 31:25
49:6
American
59:2,7
60:8,9
amicus
50:20 65:8
amount
27:21 39:10
44:11
analysis
17:20 29:12
35:3 36:5
37:21 39:6,
14 58:15
60:11,16,20
62:9
analyzing
27:10 33:12
Ander
37:16
Anderson
25:7 33:11
37:18

Anderson-
burdick
7:21,24 8:2,
24 9:25
10:14,23,24
12:15,20,22
17:20 18:3,
9,12 21:23
22:1,15
24:11 25:7
26:19 30:6
32:25 35:12,
16,22 36:1,
5,14 37:2,6,
24 40:3
41:13,15,16
44:11 58:2,
14 62:3 66:9
Answering
30:3
apparent
19:14
appealed
20:6
appeared
24:22 65:6
appears
15:20 21:21
28:4 52:20
54:11 61:4
appellant
13:14
appellants
34:1 40:25
41:1 43:4,24
appellants'
32:19 37:16
38:8 40:17
appellate
4:3 15:5
appellees
32:11
application
16:25 30:6
58:15 63:13,
17,18

applied
30:12 35:16,
21 36:1
applies
12:20 53:2
apply
10:23 12:3
22:2 23:13
29:17 66:7
applying
10:1
approaches
12:2
approximately
34:12
area
21:7,8
argued
26:11 39:21
arguing
26:17
argument
18:17 21:3
24:11 38:8,
11 49:19
66:10 68:8
arguments
37:17 51:23
53:12 57:17
68:8
arose
43:8
arrived
32:19
arrives
54:9
articulate
37:13,14
52:25
aspects
63:23
Assembly
4:12,18,24
5:4 24:3
31:5
assembly's
57:16

asserted
  56:4
asserting
  36:23
assessing
  35:4 43:23
associate
  21:13
assume
  33:21 39:1
attaches
  57:12
attack
  27:1
attainment
  60:12
attempt
  66:6
attempting
  21:13
attention
  30:1
attorney
  13:12,13
  15:3,14
  16:10 50:19,
  21 51:23
  52:11,22
authority
  45:25 46:17
automatic
  19:24
availability
  25:11
aware
  30:17 31:2
  63:6

― B ―

back
  20:23 21:9
  23:2 26:1
  35:14 38:12
  42:21 49:3
  52:2 55:9
  66:8

balance
  10:25 34:3
balanced
  40:2
balances
  18:10
balancing
  17:22 18:4,
  15,18 22:9,
  13 26:19
  31:20 41:17
ballot
  5:7,10,13
  7:20 8:9
  10:18 11:11,
  13 12:18
  19:12 20:13
  23:14,15,16
  25:19,23
  28:3,21,25
  29:3,4 31:9
  32:1,15,19
  33:3,12 37:5
  38:8,22
  39:8,10,13
  40:23 42:9,
  10 47:17
  49:13 52:20
  53:4,18
  54:3,9,13,20
  56:14,21
  58:23 67:3,
  23
balloting
  17:16 19:9,
  11 20:2
ballots
  5:12 6:16
  7:4 12:12
  19:23 28:19
  32:13,14
  33:19,20
  34:2,10,13,
  14,16,18
  35:1 40:5,8,
  21 42:24
  43:5,6,9,13
  47:24,25

48:7,18,20
49:16 50:3
52:4,17,18
54:5,25 55:4
56:1,23 57:1
58:13 59:19
60:20 66:7
based
  21:4,7,8
  25:15 32:14
  55:4 57:1
basis
  6:1 14:8
  15:16,17
  26:23
Baxter
  20:22,24
  21:3 31:7
  63:11,22
  64:6
begin
  13:20 31:3
  49:23
beginning
  28:16
behalf
  32:9 49:21
Berks
  65:7
betray
  51:24 53:13
Bette
  32:11
bipartisan
  4:11,15 5:3
birth
  38:24
bit
  13:22 49:5
black
  48:18
board
  4:2 20:6
  28:5 31:4
  38:11 65:7,8
  66:5

boards
  20:8,10
  40:20 42:24
  50:6,19
  51:2,8,19
  53:9
borne
  42:17
boxes
  7:15 9:8
  55:17,18
  58:24 60:6
Boyer
  49:20,21
  50:25 51:14
  52:9,11
  53:5,16,21,
  24 54:21
  56:9 57:7
breathe
  20:20
Brett
  13:12
briefed
  63:12
briefing
  12:1 18:11
  20:25 39:6
  40:17 51:24
  64:6
briefly
  25:5 62:7
  67:9,10,13
briefs
  12:7 26:11
  57:11
bring
  18:22 48:25
  49:2,4
British
  59:22
Brnovich
  10:16 61:21
broader
  25:11 31:17
  53:8

**broadly**
    4:24 29:18
**brought**
    16:6 49:5
**burden**
    7:24 8:13,18
    9:1,2,6,7,
    15,20,23,24
    10:7,9,13,
    14,22 11:3,7
    12:24 13:21
    18:7 22:2
    32:22,24
    33:1,4,6,11,
    15,22,23
    34:8,17,19,
    21 35:1,2,4,
    11,13,18,20,
    24,25 36:15,
    16,17 37:20,
    22 39:6,13
    43:24,25
    44:6,13,14,
    17,19 46:4,
    23 47:7,8,
    11,24 48:1,
    13,23 49:7,
    11,14 55:7
    58:2,16,18
    60:23 61:1,
    17,18,19,22
    62:7,16
**burdens**
    31:16 36:4,
    10,14 37:20,
    21 39:10
    58:8
**burdensome**
    9:21 10:8
**Burdick**
    25:7 35:18,
    19 37:18
**business**
    28:17

**C**

**calculate**
    54:17
**calculated**
    54:16
**campaign**
    32:9,10
    33:14
**candidate**
    33:14
**candidates**
    32:1
**canvassing**
    54:4,8
**carefully**
    30:18
**carried**
    51:9,15
**case**
    7:1,5 8:14
    9:6 10:1
    13:21 14:3
    16:2 20:9
    21:4,21
    22:14 25:15
    26:3 27:1,8
    31:3,24
    33:11 36:19,
    24 39:16
    40:12,19
    42:22 43:1
    44:5,10,18,
    23,25 45:5,
    16,23 46:10
    50:17 51:6
    55:13 56:11,
    13,17 58:12,
    17 60:17,18,
    20 62:18
    65:23,25
    66:3,12,13
    68:4
**cases**
    10:7 18:25
    19:23 22:12

    35:16,23
    36:7 44:14
    48:7 58:5
    68:3
**cast**
    8:9 11:13
    12:4,18
    32:13 43:13
    49:13
**casting**
    5:8 10:18
**casts**
    17:23
**caught**
    27:3,5
**cetera**
    28:6 66:22
**challenge**
    15:5 18:22
    20:6 21:4,6
    39:4 58:12
**challenged**
    36:20 37:3,4
    46:22 67:23
**challenges**
    17:16 20:7
**chance**
    16:6
**chances**
    18:22
**change**
    5:16,19,21
    15:11 26:1
**changing**
    31:18
**chaos**
    47:21
**character**
    18:6
**characterizat
ion**
    21:10 34:24
**characterize**
    33:5 34:21,
    23
**check**
    25:22

**choose**
    62:2
**Circuit**
    25:8,9 33:18
    34:8,10
    36:22 58:12,
    14 62:17
**Circuit's**
    60:20
**circuits**
    8:1,4
**circumstance**
    63:14,19
**circumstances**
    45:15
**cite**
    41:6 61:20
    62:17
**cited**
    36:19,21
    58:5,11
    60:17 68:3
**cites**
    22:13
**citizen**
    4:17
**citizens**
    31:2
**civil**
    15:5 29:13
**claim**
    21:10,12
    49:1,3,4,5,
    8,10
**claims**
    37:22 49:7
**clarification**
    65:9
**clarified**
    20:1
**clarify**
    19:21
**clause**
    21:5 49:8
**clear**
    8:8,16 9:22,
    23 19:7

30:15,19
38:20 60:6
63:12
**client's**
47:9
**Coalfield**
17:17 19:22
20:3
**Coalition**
34:9 60:17
**Code**
20:21 25:13
37:20 50:15
51:20,25
52:16,21,24
53:2,16
54:1,6,14
55:2 56:2,5,
8 57:18
62:5,25
**colleague**
10:10 55:7
56:12,17
**colleague's**
24:15
**colleagues**
30:22 32:3
33:5 47:4
**collecting**
41:3
**colloquy**
65:9,16
**comment**
15:15 67:19
**comments**
56:6,9 59:8
**Committee**
32:10
**committees**
31:15 65:6
**Commonwealth**
13:14 14:1
16:1 17:12
20:19 24:18,
23 31:9,14
35:13 37:10
38:1 43:2

44:20 45:10,
14,17 46:9,
15,18 51:5,
12 53:4,6
55:25 65:20
**Commonwealth'
s**
15:6 27:24
28:18
**community**
7:3,8
**company**
63:1
**compared**
38:1
**complete**
17:3,4 23:14
45:20
**completed**
11:12 25:25
58:23
**completely**
53:25 61:12
**completing**
11:13
**compliance**
7:12,24 8:19
22:20 31:23
32:24 38:3
60:21 61:19
**complicated**
25:20
**complied**
5:11
**complies**
12:18 62:5
**comply**
8:19 9:14
10:18 11:15,
19 37:11
38:9 52:6
55:12 58:4
61:22,25
62:2
**complying**
10:21 48:1,
3,4 49:15

**component**
16:25 24:13
30:5 65:6
**compromise**
4:20 64:4,5
**conceded**
60:13
**concept**
31:16
**conceptualize**
61:16
**concern**
17:15 66:2
**concerned**
30:20
**conclude**
47:7
**concluded**
68:12
**concluding**
13:1
**concurrence**
8:17
**conduct**
18:4
**conducting**
25:6
**conducts**
62:9
**configuration**
5:22
**confusion**
31:12
**Congressional**
32:10
**connected**
41:13 42:4,
18,20
**connection**
42:9
**consequence**
7:4,25 8:4,
20 30:21
33:6,10,15,
23 47:5,6
50:3,5 52:22
53:7 60:21

61:8,15
**consequences**
52:23
**consequential**
7:9 61:1
**considered**
35:19,20,24
**considers**
35:5
**constantly**
31:18
**constitution**
12:16,19
17:24 21:5
62:5
**constitutiona
l**
9:3 10:7
12:17 15:5
21:16,24
22:3,23
31:21,22
36:10,13,17,
21,23 37:7
39:4 65:21,
24 67:7 68:4
**constitutiona
lity**
16:5 58:9
**constitutiona
lly**
36:24
**constructive**
61:14
**context**
4:16 25:11
36:9 39:14
**continued**
6:20
**continues**
21:22
**continuing**
20:19 59:1
**contract**
25:23
**controlled**
16:2

convention
  59:3
convey
  26:8
conveyance
  23:25
conveys
  24:17,19
core
  56:24
correct
  5:17,18
  6:11,14,16,
  17 8:14,15
  12:9 14:24
  16:13 17:5,8
  18:24 19:1
  21:7 22:6,
  23,24 23:1,
  21 27:7,25
  28:12,16
  33:21 40:21
  52:9 53:24
  55:13,15
  57:5 58:3
  61:2 64:18,
  22
correction
  65:2
correctly
  12:7 48:3,4
  61:15
cost
  68:9
counsel
  32:5 35:17
  36:4 49:17
  58:1,18
  64:23 68:7
count
  28:18 29:4
  38:8 57:20
  61:16
counted
  6:16 7:21
  11:2,7,11,16
  12:6 21:22

37:6 38:3
39:13 54:5,
13 56:22,23
66:8,22 67:3
countervailin
g
  45:4
counties
  11:22,23
  19:5,15,22
  45:11 47:15,
  18 51:8,16
  52:13 54:4,
  9,12 55:12,
  16,19 57:9
  60:12
counting
  7:4 30:13
  42:6 43:9
country
  67:24
counts
  28:15
county
  4:2 11:24
  12:16 17:11
  19:12,13
  20:6,7,10
  28:5 31:4
  38:21 40:7,
  20 42:23
  43:7,9,10
  47:12,14,22
  50:6,18
  51:2,10,16,
  19 53:9
  54:9,18
  65:7,8 66:5
couple
  51:21 56:9
  67:25
court
  4:7 5:16,17,
  19,20,24,25
  6:6 7:22
  10:1,3 11:10
  13:1,11
  14:9,15

15:8,21
16:12 17:17
21:19,25
22:14 24:6
25:12 26:4,
20 27:10
29:9 30:4
31:9 32:1,8,
16 33:9,10,
13,18 34:22,
24 35:1,4,5,
18,19,20,21,
23,25 36:12,
15,19 37:19
38:10 39:22,
23 41:12
43:2,10,15,
19,23 45:8,
18,19,25
46:17 49:6,
21 50:13
58:8 60:3
62:4,16,22
63:11,22
64:6,11
65:3,17
66:4,5 67:4
68:2,10
court's
  4:8 5:21
  9:22 10:16
  11:9 13:15
  14:8 16:1
  20:18 21:2,
  10 22:5,6
  30:7 37:17
  43:20,22
  62:19
courts
  17:18 20:19
  22:7 25:6
  31:18 33:17
  34:7 44:14
  48:2,6
Crawford
  8:7,8 9:22
  10:15 58:7

create
  55:21
created
  36:4 55:17
  63:3
credibly
  52:25
credit
  45:15,18
  50:9,12
credited
  50:2
criminal
  41:4 42:6
  57:15,19
critical
  52:1
cure
  12:6,11 14:1
  16:20 17:15
  18:21 19:6,9
  31:4,8 39:3,
  8,15 54:10
  55:6,15
cured
  39:10
curing
  12:11

_____

D

data
  41:3
date
  5:10,12,23
  6:2,19 7:14
  9:9 11:3,5,9
  12:5,14,23,
  24 16:19,25
  17:6 20:14
  23:10,23,24
  24:5,17
  28:1,3,5,21
  29:1,3,5,6,8
  30:1,4
  32:15,16
  33:2 38:22,

24 39:3
40:5,9,22,
23,25 41:8,
10 42:8,9,
18,25 47:12,
15,16,17,19
50:4 52:5,14
53:4,18,23
54:12,16,19
55:4,16,18
56:12,21
57:2,13,18
58:19,22
59:20,22
60:1 61:2,3
62:24 65:6
date's
16:20
dated
26:2 42:14
57:21
dates
14:5 43:14
56:23
dating
25:20 28:9
59:3
daughter
42:13,16
day
7:14 9:8
11:14 28:11,
15,18,19
38:25 58:24
days
26:13
de
14:10,11
22:2 36:10,
14 65:17
67:25
dead
28:6
dealing
64:16
debate
16:4 21:15

decades
5:9
deceased
40:13 42:14
December
42:15
decide
55:13
decided
55:16
decision
9:23 10:16
11:9 18:17
20:6 31:9
declaration
5:10 16:11
17:1 23:17,
20 48:15
50:8 52:5,16
55:4,22
57:2,12
declined
45:14 58:14
deems
47:12
defect
19:25
defend
16:7
defendant
50:10
defendants
16:2 40:6,7
45:16,17
46:9 50:6
defense
46:25 50:10
65:6
deference
18:16 41:15,
17 45:5,20
46:1
define
9:15
defined
31:20

demanded
26:20
Democratic
5:3 32:9,10
Democrats
4:24
demonstrate
17:13
demonstrated
48:16
deny
10:19
Department
49:22 50:10,
18 51:1,16,
19 52:18
53:9 55:8,25
57:9
depending
54:18
depends
39:14
deposition
60:14
depth
51:2 52:23
53:12 57:8
deputy
13:12
derived
40:25
describe
53:1 58:18
61:17
detection
52:8
determine
10:13 18:6
32:17,18
37:1 53:17
determining
29:22 47:21
develop
20:20
dictionaries
10:6

difference
43:18
difficult
8:19 9:7
10:20
difficulties
67:24
difficulty
10:12 58:4
60:21
digits
68:1
direct
65:10
directed
29:25
directly
17:22
disagree
11:8 34:23
46:4
discard
32:14
discarded
54:13
disclosed
28:9,10
discount
29:3
discounted
59:12
discourage
25:15
discouragemen
t
26:10
discouraging
27:24
discretionary
52:13
discussed
59:7
discussing
36:14
discussion
21:20 32:2
43:21,22

65:20,23

**disenfranchise**
48:12

**disenfranchised**
46:6

**disenfranchisement**
34:25 47:6,
20

**dishonesty**
26:10

**disorder**
14:6 54:19

**disorderly**
16:21

**disparate**
49:9 60:15

**disparities**
48:16,17,21
49:11

**disparity**
60:7

**disqualification**
18:23 61:7

**disqualify**
28:25 29:3,
6,9 53:18
54:20 61:6

**disqualifying**
37:11

**dissent**
30:15,24

**distinct**
53:7 54:6

**distinction**
19:8 36:3,7,
8 40:16
42:22 43:11
51:22

**distinguish**
5:22

**distinguishable**
66:13

**distort**
37:17

**distributed**
48:22,24

**district**
5:15,17,19,
20,21,24 6:6
10:1 12:25
14:8,9,15
15:8,21,25
20:18 21:9,
19 22:5,6,14
26:20 34:20,
22,24 35:1
39:22 43:15,
19,20,21
46:17 60:3
62:15,19
66:3

**distrust**
26:13

**disuniform**
18:20

**disuniformity**
13:25 16:21,
24 55:14,20

**divide**
61:1

**docket**
20:24

**documentation**
8:14

**dramatically**
6:21

**drawing**
19:8

**drives**
65:25

**due**
4:23 50:21,
25 51:20
58:16

**dwarf**
34:7

---

**E**

**e-mail**
19:24

**e-mailing**
58:13

**Eakin**
4:2 32:11
39:7

**earlier**
10:17 15:21
40:18 46:3

**early**
33:12

**easier**
4:12 7:13

**easiest**
26:25

**easily**
12:25

**educational**
60:12

**effect**
36:5 60:15

**effective**
55:5

**effort**
7:12 9:11,12
10:10,12,21
58:4

**efforts**
55:21,22

**elaborate**
44:16

**elderly**
48:19

**elect**
32:1 56:20

**elected**
7:3

**election**
4:23 5:1
6:3,5 17:11
20:21 22:16
25:13 28:11,
17,19 31:8

32:12,20
34:2,11,12
37:19 40:20
41:20 43:8
50:15,19
51:2,7,8,9,
20,25 52:15,
21,24,25
53:2,16
54:1,6,14
55:2,11
56:2,5,8,20,
23 57:17
62:4,25
65:7,8

**elections**
4:3 14:4
17:11 19:3,4
22:9 26:4,
15,22 31:4,
13 34:13,15
38:11 41:2,
14,21 42:5
45:1 50:7,16
51:15 54:15
55:5 56:20
60:5 65:25

**electoral**
36:20 37:4

**electors**
27:14

**eligible**
32:13

**eliminate**
40:22

**eliminated**
63:19

**emerge**
33:15

**empirical**
44:16

**employed**
35:12

**empowered**
15:4

**enacted**
4:12 5:2,5

enactment
  63:3
encompasses
  11:2
encouraged
  26:14
end
  17:10 26:5
ended
  48:12 49:12
ends
  21:14
enforcement
  40:11 53:18
  54:19 62:24
enforcing
  7:16
engage
  31:20 58:14
engaging
  24:2
enjoin
  40:20 62:24
enjoined
  42:24
ensure
  39:12 66:19
enter
  40:21,22
  64:12
entering
  47:11,15,18
entitled
  41:15 45:2
entity
  15:20 16:1
envelope
  5:11,14 11:5
  25:24,25
  32:15 33:3
  40:23 42:10
  66:7,19
equal
  21:5,17
  48:25 49:2,
  4,8,9 67:3

equally
  48:22,24
  55:23
equation
  35:12
Erie
  31:4
err
  43:15
erred
  10:1 13:1
  43:20
erroneous
  28:1 38:23
error
  19:14 29:21
errors
  57:2
essentially
  20:18 26:23
  29:12,23
  30:4,6 39:12
  66:15
et al
  4:3
European
  38:24 47:15
  59:3
evaluation
  27:12
evenly
  55:12
event
  23:11
Evers
  58:11
everybody's
  50:23
evidence
  5:19 26:20
  27:21 34:19
  39:22,25
  41:24 43:16,
  25 44:2,7,
  12,16 45:20
  47:13,24
  48:1,13,14

49:10,14
  54:25 56:18
  57:8 59:1,8,
  13 60:4,10
  62:8,10,15,
  18,20
evidentiary
  46:2,24
  62:14,16
examine
  60:3
examined
  65:12
examples
  22:13 55:13
excise
  30:4
exclude
  37:21
executive
  31:11
exercise
  16:25 35:7
  48:10
exist
  22:17 31:24
existed
  30:25
exists
  57:12
expended
  9:11,12
expert
  48:15 60:10,
  13
explain
  24:20 25:5
  40:7 44:11
explanations
  50:14
explicit
  32:21
explicitly
  16:1
express
  51:18

expressed
  45:4
expression
  32:2
expressive
  21:12
extend
  28:19
extended
  5:7
extent
  12:20 17:14
  35:4 36:15
  44:13 56:13
  65:25
extreme
  7:11

F

face
  50:8,14
facilitate
  23:24
facilitates
  23:10
fact
  6:9 7:8 12:7
  27:5 30:20
  33:20 35:11
  38:12 47:25
  48:9 49:15
  65:10
factor
  26:7
facts
  44:6
fail
  55:12
failed
  11:19
failure
  8:8 10:17
  11:6 22:10
  38:18 40:21
fair
  51:4

faithfully
53:1
fall
49:12
falsely
57:12
familiar
11:21 49:12
familiarity
4:16 53:10
Fascinated
57:6
fascinating
4:15
fashion
38:24 61:13,
17
faxing
58:13
federal
17:24 29:13
30:8 31:18,
19 41:20
federalism
17:21
feel
40:25 65:11
fiction
36:7
field
40:23,25
52:5,14
56:12
figures
34:4,6,7
figuring
56:14
filed
50:20
filing
33:13
fill
5:10 9:7
11:5 28:3
53:23
filled
56:22 61:12

filling
7:14 25:18
61:2,4,11
final
57:3
finality
25:21
finally
62:21 66:2
find
28:20 34:20
44:14
Fish
48:9
flipped
38:25
floodgates
66:10
focused
8:2 54:17
focusing
7:7
follow
13:23 38:13,
18 43:18
68:2
follow-up
9:18
force
45:9 46:18
forego
38:14
forfeited
38:19
form
52:16
format
47:12,16
59:24
forum
20:7 32:2
forward
43:25 44:1,
6,12 46:6,
16,21,22
62:8

found
4:15 33:18
34:8 35:2,25
36:19,22
45:25
framework
9:25 10:1,
15,24 40:3
58:16 62:4
frankly
20:19 21:23
22:4 25:3
fraud
26:10,25
27:2,15,24
29:7,25 30:1
32:17 39:25
40:1,7,11
42:3,10,18,
19 52:8
56:10,24,25
62:18
fraudulent
28:20
free
21:4
Freeman
11:1 13:2
32:4 39:19,
21 40:10
41:22 42:1,
3,12 45:7,9
46:8,13,15
48:25 49:25
52:24 55:24
frequent
58:9
freshly
68:1
friends
21:20 35:9
65:3
full
37:12
fully
56:25

functions
51:5
furthered
54:15
furthering
17:13

---

G

general
4:11,17,24
5:4,23
13:12,13
15:3,14
16:11 18:16
24:3 31:5
34:2 50:20,
21 51:23
52:11,22
55:11 57:16
generally
5:8 9:19
54:21
generous
67:18
Genser
17:17 19:22
20:2,17
give
20:10,20
33:22 34:4
45:19 55:13
giving
38:21
glad
16:16
glue
66:7
Good
4:6 13:11
32:8 49:20
Gore
4:6,7,11,22
5:18,24 6:7,
11,14,17,19,
24 7:6,10,
17,23 8:7,

12,16,22
9:1,7,13,17,
22 10:3,12
11:8,19
12:9,14
13:6,9 57:24
59:5,11,15,
18,21,24
60:2 61:18,
25 62:15,24
63:7,9,11,
18,23,25
64:2,5,9,11,
14,18,20,22,
24
**gotta**
23:13,14
**govern**
52:21
**governed**
5:8 50:8
52:20 53:24
**governing**
6:2
**government**
11:22 26:5
**governor**
5:3
**governs**
53:7 54:3,4,
5
**grafted**
29:23
**Graham**
13:11,12,18,
20 14:7,12,
14,17,19,24
15:1,3,13,
15,22,25
16:13,16,23
17:5,8,14
18:5,24
19:1,7,16,20
20:16 21:1,
8,17 22:19,
24 23:1,4,21
24:3,8,14,24
25:2,5 26:18

27:4,7,10,
14,18,20
28:2,8,12,
14,16 29:11,
20 30:3,14,
18 31:1 32:6
65:1,13,16
66:12,24
67:2,8,11,
13,17,19
**granted**
4:10 13:19
**ground**
21:11 29:9
**grounded**
14:9 57:17
**group**
21:13
**guarantee**
65:21
**guardians**
18:1
**guess**
55:25
**guidance**
68:2

**H**

**halfway**
66:7
**hand**
50:18,19
**handwrite**
9:9
**handwritten**
32:15
**happen**
38:20
**happening**
19:19 59:14
**Harper**
38:11
**hazard**
65:14
**heard**
16:9 41:1

44:5 51:6,23
53:8,9
**held**
30:11 35:4
63:13
**helpful**
15:19,22,24
68:7
**Henry**
15:17
**highly**
48:23
**Hispanic**
48:18 60:8,9
**historic**
5:4
**historical**
31:17
**history**
4:19
**hold**
28:24 54:25
**holistically**
62:3
**Homeless**
34:9 60:17
**Honor**
4:6,22 7:23
11:8 15:3,15
16:13 17:14
18:6 19:8,20
20:17 21:1
24:3 26:18
27:7 29:11,
20 31:1 34:5
49:23,24
53:21 61:20
65:1
**Honor's**
52:2
**Honors**
49:20 57:4,
22,24 62:7
64:24
**hurdles**
39:10

**Husted**
33:17 34:10
**hypothetical**
60:11

**I**

**ID**
8:9
**idea**
20:4 52:12
**identified**
36:2,7 56:18
**identifies**
58:21
**identify**
40:7 60:12
62:12
**identifying**
33:2 47:11
58:19
**illegal**
42:17
**illustrate**
51:22
**imagine**
66:4
**impact**
33:12 39:5,
15 53:19
54:18
**impacted**
37:8
**impede**
55:5
**imperiling**
62:25
**impersonates**
40:14
**implicate**
9:24 22:12
36:13,24
**implicated**
37:2,8,10
64:11,15
**implicates**

12:15 22:16
37:3,5
**importance**
24:1 27:19
**important**
17:20
**importantly**
12:3 17:19
**impose**
34:8
**imposes**
58:3
**imposing**
29:8
**impossible**
28:5,22
**improper**
60:16
**improved**
55:10
**inability**
33:13
**include**
5:9
**includes**
7:13
**including**
20:21 25:7,8
33:10 34:7
35:18,24
60:16
**incomplete**
65:18
**incorrect**
32:15 35:15
38:6 40:5,9
42:25 43:13
58:6 62:20
**independent**
6:1 33:14
**indicative**
48:23
**indicia**
61:5
**indiscernible**
8:14 42:2
50:24 64:1

65:15
**individual**
19:4 20:7,10
35:7 38:9
**individuals**
48:10
**Indulge**
25:4
**inexplicable**
32:21
**inextricable**
61:11
**information**
43:6
**injunction**
40:19
**injury**
7:21 8:3,24
9:1 21:24
29:18 32:25
33:19 47:6,8
68:4
**inordinate**
39:9
**insistence**
32:19
**instance**
9:4 33:12
35:25 66:4
**instances**
16:11 22:1
**instructions**
23:15 25:18
31:24 54:1,3
60:6
**interest**
7:22 10:25
14:3 17:22
20:23 21:13
23:3,5 26:19
27:24 29:17
31:20 39:16,
17,22,25
40:2,13,15
41:2,3,11,19
42:21 43:4,
12,17,22

44:8,16,23,
24 45:1,4
46:7,25 50:1
52:10 54:15
56:11 57:1
62:9,12,20
**interests**
14:2 15:7
17:20 18:10,
19 26:5
27:11 28:18
44:7,18,21,
22 45:16,19,
20,22,23,24
46:1,21
49:25 50:13
53:1 54:14,
24 56:4,16
62:6 65:5
**interrogation
s**
41:4
**intervene**
45:2,14
**intervener**
7:2
**intervenor**
13:14
**intervenors**
44:22
**invalid**
63:13
**invalidating**
61:7
**invariably**
37:20
**investigation**
41:9 43:3,7,
8
**investigation
s**
41:4
**invite**
32:12
**involved**
10:21 15:20
31:19 42:22

50:17
**irrespective**
27:16 56:13
**issue**
31:21,22
34:10 35:25
59:2 67:3
**issued**
15:8
**issues**
63:12

---

**J**

---

**Jacob**
49:21
**January**
42:14
**jeopardize**
56:24
**jeopardizes**
56:11
**job**
55:9 58:21
**John**
4:7
**judge**
4:2,10,14
5:15,21 6:4,
8,12,15,18,
23,25 7:7,
16,18 8:1,
11,13,21,23
9:5,11,14,
16,18 10:2,
4,17 11:1,
18,20 12:13
13:2,3,4,7,
8,10,17,19,
20,23,24
14:7,10,13,
15,18,20,21,
22,23,25
15:2,10,14,
19,24 16:4,
10,15,18,23
17:2,6,9

18:2,3,8,13,
14,25 19:2,
10,17 20:9,
22 21:6,15
22:11,22,25
23:2,5,6,7,
8,9,22 24:7,
9,15,24
25:1,4 26:6
27:3,5,9,13,
15,19,23
28:7,9,13,
15,24 29:14,
24,25 30:10,
14,17,19
32:3,4,7,22,
23,24 33:5,
8,21 34:20
35:9 37:9,25
38:15,20
39:19,21
40:10,17
41:22 42:1,
3,12 43:15
44:1,4,8,9
45:7,9 46:8,
13,15 47:3
48:3,5,25
49:17,19,24,
25 50:2,23
51:4 52:7,
10,24 53:3,
15,17,22
54:7 55:24
57:6,23
59:4,6,12,
17,19,23,25
60:24 61:24
62:11,13,14,
21,23 63:5,
8,10,15,22,
24 64:1,3,8,
10,13,15,19,
21,23,25
65:10,11,14
66:10,13,17,
21,22,25
67:1,6,10,
12,15,18,19

68:6
**judging**
55:15
**judgment**
43:25 57:16
**judicial**
5:16 36:6
37:22
**judiciary**
31:19
**jump**
19:4
**June**
15:7
**jurisdiction**
67:4
**Justice**
8:17 17:17
19:22 20:3
61:20
**justifications**
24:22
**justifies**
43:12
**justify**
39:17

---

**K**

---

**kind**
10:9 44:5
54:17 58:1
64:12 66:11
68:1
**knowledge**
61:12,14

---

**L**

---

**Lancaster**
43:7,8 65:7
**land**
14:10,11
18:9 24:11

**language**
8:23 9:19
22:4 23:20
32:25 54:8
63:16
**larger**
26:18 31:12
**late**
11:14
**launch**
33:14
**law**
5:2 7:19
11:12 12:18
21:7,8,21
25:16 26:25
30:25 31:24
33:13 36:20
37:3,4 38:3,
13,20 39:1,
17 46:22
47:1 51:6,10
53:3 55:1
62:8 63:2,
13,14
**lawfully**
43:13
**laws**
4:23 40:11
**lawsuit**
11:23
**lawsuits**
18:22
**lead**
50:9
**leads**
7:20
**leap**
39:9
**leaving**
47:19
**left**
47:8 55:17
**legible**
61:13
**legislation**
5:1,4

**legislative**
4:18,19 44:5
**legislators**
50:20,22
51:24
**legislature**
17:23 21:18
22:21 66:14
**legislature's**
18:16 31:23
**legitimate**
39:25 56:10,
25
**Lerman**
25:10
**level**
11:24 15:21
51:10,12,13,
16,17 53:10,
12 60:13
**liberty**
18:1
**life**
20:20
**limitation**
58:12
**limited**
65:2
**limits**
36:23,24
**lines**
49:12
**link**
27:23
**listed**
22:1 26:11
**listening**
31:10
**litigation**
31:6
**located**
49:8
**long**
22:22 36:3
67:6,8
**longer**
45:3,5 52:5

**looked**
16:20 25:10
38:12 48:2,6
62:3
**lost**
40:17
**lot**
4:17 21:15,
24
**Love**
23:8
**low**
34:3
**Luft**
25:8,9 58:11

---

M

---

**made**
4:12 5:20
20:11 56:1
**magnitude**
18:7
**mail**
4:12 5:5,7,
11 6:21
11:14 23:12
32:13 34:1
40:21 48:20
52:17 61:25
63:3,20
**mail-in**
7:4 25:19
27:25 54:3
**mailbox**
26:2
**maintaining**
32:20
**maintains**
7:18
**majority**
8:17 30:11,
22 61:21
62:1
**make**
7:12 20:4,8
22:7 23:15

51:21 55:21,
22 57:3 65:1
**makes**
6:9 8:8
9:22,23
21:23 39:16
63:12
**making**
6:5 23:18
53:12 60:2
**mandatory**
16:10 24:5
45:13
**manner**
41:19 42:5
56:19 66:16
**marked**
7:15 9:8
58:23
**material**
29:21
**materiality**
27:8 29:15
30:11,12,23
**matter**
13:15 32:11
52:10,14
53:3 54:25
55:1 57:18
68:10
**matters**
55:10
**Mazo**
9:23 10:15
21:25 22:5,
7,11 35:4,
24,25 36:9,
12 37:1 58:5
62:8,9 68:2,
3
**meaning**
10:8 26:3
27:16,20
50:3
**means**
35:6 63:19

**meant**
37:21
**mechanics**
11:25 12:3
22:15 37:3
51:7,9
**medical**
39:11
**meets**
12:16
**mentioned**
5:5 25:19
34:9 40:18
46:3 56:17
**merits**
64:16
**message**
30:23
**method**
14:4 16:19
18:20
**Migliori**
43:1
**Mihaliak**
27:1,16
40:12 41:8
42:22 43:8
62:18
**mind**
33:25
**minimal**
34:21,23
35:2,11,17,
20,24 36:1
37:22 44:14
46:4,5,23,24
58:16
**minimis**
22:2 36:10,
14 67:25
**minimum**
12:17
**minute**
10:11 13:15
67:12
**minutes**
4:9 13:6,7

**misdated**
43:9
**misread**
36:10
**missing**
32:15 40:5,9
42:25 43:13
**misspoke**
46:19
**misstated**
54:12 63:2
**misstatement**
29:2
**mistake**
6:12 59:25
**mistaken**
6:13 12:5
37:12,15
**mistakes**
6:10 59:14,
15,16
**misunderstand**
36:11
**Mm-hmm**
59:11 61:24
62:23
**moderate**
44:17
**modernize**
4:23 63:21
**Molinari**
36:22
**moment**
18:18 30:25
**month**
7:14 9:8
38:25 47:16,
19 55:16,17
58:24
**morning**
4:6 13:11
32:8 49:20
**mother**
42:15
**motion**
45:1

mountains
  39:12
move
  39:12
moved
  28:6
moving
  18:10

**N**

NAACP
  10:17 11:9
nature
  26:10 58:16
necessarily
  9:21 41:2
  45:5 49:9
neglected
  31:8
NEOCH
  33:17 34:16
neutral
  31:23 67:25
Ninth
  62:17
Nkwonta
  32:8,9 33:1,
  7,9 34:5,22
  35:15 37:15
  38:6,17
  39:5,20
  40:4,16
  41:23 42:2,
  8,20 43:19
  44:3,10
  45:8,18
  46:11,14,19
  47:10 48:4,6
  49:2,18
no-excuse
  4:12 63:3,20
noncompliance
  6:19 7:19,25
  8:5,20 30:21
  33:6,11,16,
  24 59:20,25

60:22 61:6
noncompliant
  12:5
nondiscrimina
tory
  10:18 18:14
  35:3,5
Nonetheless
  41:11 46:3
nonparty
  46:18
Northeast
  34:9 60:16
note
  20:17 21:1
  34:25
noted
  33:13
notice
  5:16 15:6,8
  16:10 17:15
  19:6,9
  20:11,14
  31:4 38:22
  39:2 55:6,15
notification
  45:13
notify
  19:13,24
notwithstandi
ng
  55:20,22
novo
  14:10,11
  65:17
number
  4:3 19:17
  26:11,12
  34:10,16,18
  46:5 47:23
  48:7,8,16
  50:17 60:19
numbers
  6:13 19:18
  34:17 59:10
numerous
  35:16

**O**

objection
  32:20
obligation
  51:11 53:5
  54:1
obliterated
  27:25 61:3
obscured
  28:1 61:3
obsolete
  32:16 39:20
occupational
  65:14
offer
  66:2
office
  13:13 50:19
official
  54:9
officials
  17:11 19:13
  32:12,21
Ohio
  39:11 60:16
Ohio's
  33:12
older
  60:8
omission
  19:14 29:2,
  21 47:5
  59:22
omissions
  6:12
omits
  38:22
omitted
  20:14 54:11
one's
  22:20 33:3
open
  26:1

opening
  59:7
operation
  53:14
opinion
  16:1 30:7,22
  43:23 61:20
opportunities
  13:25 16:20
opportunity
  12:4,18 16:7
  18:21 19:6
  20:5 39:2,8
  54:10 67:23
opposed
  42:6 43:17
  46:9
opposing
  35:17 36:4
  57:11
opposite
  53:11
oral
  21:2
order
  28:17 38:7
  43:1,11,24
  44:25 46:21
  58:4
orderliness
  14:6
orderly
  14:3 16:22
  17:10,13
  19:3 26:4,22
  54:14
outcome
  7:5,20 44:25
  56:13
outer
  5:10 25:24
outstanding
  17:16
owes
  45:25

**P**

P.S.
  52:17 57:10
PA
  10:16 11:9
parochial
  44:25
part
  5:4 24:6
  25:12 33:11,
  15,19,22,23
  37:24 56:12
  61:14 63:1,
  2,13 64:3,5
participate
  11:24 45:10
parties
  11:22 15:8
  26:24 65:4
parts
  24:25
party
  4:8 15:20
  16:2 44:24
  45:25
passed
  27:6 31:5
  42:15
pat
  55:8
patchwork
  16:19
pay
  38:10
penalties
  23:19
penalty
  57:19
Pennsylvania
  4:7,13,17,23
  5:1,5 7:19
  11:21 13:13,
  14 16:12
  17:18 21:2
  24:5 28:6

  31:2 32:11
  43:2,10 46:9
  49:21 50:15
  62:1 63:4,9,
  10,20 65:20,
  21 66:6
Pennsylvania'
s
  32:12 50:16
  62:4
Pennsylvanian
s
  25:21
people
  7:8 18:22
  56:3
percent
  5:11 6:22
  7:11 34:1,2,
  3 61:21,25
perfect
  55:10
perjury
  23:19
permissible
  47:13,21
permission
  4:8 13:15
permitted
  12:11
person
  8:12 11:14
  28:5,10,20,
  23 62:2
  63:14,18
person's
  6:25 38:24
perspective
  5:22
phase
  43:23
Philadelphia
  16:9 20:24
  21:3
photo
  8:9

phrase
  21:21 36:9
picture
  65:19
piece
  4:25 56:18
place
  8:12 11:25
  20:4 41:19
  42:5 56:19
places
  19:13 58:1
plain
  9:20 26:21
plaintiff
  39:7 45:11
plaintiffs
  21:11 36:22
  40:20 45:11
  58:25
plaintiffs'
  21:10
plausible
  58:15
play
  13:22
plea
  41:5,24
podium
  4:5
point
  7:10 8:18
  15:23,25
  16:23 17:16,
  21 20:13
  25:13,15,17
  26:18,21,22
  27:13 28:22
  30:14 31:12
  38:7 41:3
  49:3 50:9
  52:24 53:8,
  11 56:24
  57:3,7,14
  60:2,18
  62:10

pointed
  43:4 60:19
  64:6
pointing
  60:5
points
  14:7 42:12
  51:21 57:25
  60:23 65:2
police
  12:22
political
  21:14 25:11
  44:24 65:4
  67:22
poll
  38:7,10,17,
  18 67:13,21
polling
  8:12
polls
  11:14
populated
  60:6
populations
  65:22
portion
  61:3
pose
  61:22
position
  18:11 47:9
  52:25 56:1
  60:25 61:9
possess
  57:9
potential
  40:24 41:24
  42:3
power
  55:21
powers
  17:21
practically
  46:17
practice
  12:10 32:20

38:21

precedent
21:16

precise
47:12

precisely
17:21 38:17

precision
33:2

preferred
16:8

premise
25:14

prepared
68:9

prepopulated
58:25

prescribed
21:19 22:20
52:16,18
66:14

present
30:5 44:15

presentation
50:1

presented
16:8 59:10
64:9

presenting
46:21 66:17

pretty
11:21 33:24
39:24

prevent
32:17

preventing
39:24

prevention
40:8,10
56:10,25

prevents
11:6

previously
11:10

primary
17:25 42:23

principles
30:21

prior
43:10 60:5

private
45:24

problem
21:19

problematic
20:13

procedure
15:6

proceedings
68:12

process
11:25 30:13
36:20 37:4,5
54:5,8 61:4

produce
43:16

proffer
65:4

proffered
14:3 18:20
45:16

proffering
43:17

prohibit
12:23

proper
20:7 50:2

properly
51:10

proponents
62:8

proportional
44:13

proposed
44:22

proposing
44:23

prosecute
40:14

prosecuting
42:3,10

prosecution

27:2 42:6

prospect
65:18

protected
22:18 36:21,
25 65:19

protection
49:1,2,4,8,
10

protections
20:4

protects
17:24

prove
26:24

proves
8:18 11:11
60:18

provided
5:19 34:4

providing
12:17

provision
21:7 30:12,
23 31:7
37:19 63:5,
7,16 65:24

provisional
17:15 19:9,
10 20:2

provisions
63:21 65:21

proximity
36:16,17

punishment
57:11,15

pure
36:7

purely
10:4

purpose
10:5 41:8,10
56:15 66:18

purposes
18:8 30:2
41:12 56:2,
5,6,7,14

put
5:18 23:11,
15,16 26:2
55:16 58:25
60:10

putting
18:9 27:25
34:18

---

**Q**

qualification
27:12

qualifications
29:22 32:18

qualified
23:18 32:13
37:11

quantification
10:9

quantum
27:21

question
9:19 10:4,
11,22 13:21,
24 17:18
18:8 19:8
24:8,16,24
25:14 27:16
30:3,8 45:19
49:23,24
50:2,14 52:2
54:22 55:7
58:1,9 59:2
60:24 64:2,
7,16 67:14,
21

questions
13:2 18:19
47:2 57:5
64:8 66:1

quintessential
37:6

**R**

**race**
60:12
**raise**
58:9
**raised**
43:12
**rarely**
25:11
**rate**
6:19 33:24
**rational**
24:16 26:23
**rationale**
20:18 22:5,6
**rationality**
24:13
**reach**
36:4 64:7
**reached**
4:20
**reaches**
64:2
**read**
12:1,7 23:14
**reading**
25:15
**ready**
4:5 26:2
**realize**
10:4
**reason**
14:1 16:8
34:6 35:1
41:16,23
48:11 56:12,
19,21
**reasoning**
14:9 58:6
**reasons**
34:5,24
43:20 46:3
**rebuttal**
4:9 13:10,16

57:25
**recall**
7:1,5,6 38:7
39:6 44:20
**received**
19:12
**receives**
54:9
**receiving**
17:9
**recent**
6:20
**recognize**
18:11 36:8
**recognized**
33:9 49:6
**recognizes**
22:12 41:18
**record**
4:18 12:7,9
19:13 20:12,
15,16 21:11
26:24 39:7
40:6 41:7
47:13 48:14
54:10 59:7,
8,13 60:10
62:19
**redesign**
5:25 7:13
9:9,10 55:9
58:20 59:9
60:4
**redesigned**
5:13
**reduce**
31:12
**redux**
30:7
**reemphasize**
30:9
**refer**
21:9
**reference**
28:23 36:9
57:13

**referenced**
10:17
**reflect**
14:6
**regard**
12:8
**registration**
30:12
**registrations**
48:8
**regression**
60:11
**regulate**
36:20,21
**regulating**
41:2,14,19
42:4
**regulation**
8:3,25 18:15
36:16,18
**regulations**
10:18
**reject**
43:6 52:4
55:4
**rejected**
33:3,19,20
34:11,13,14,
18 38:10
47:17,24
48:1,8,9,17,
19 49:13,16
50:4 59:19
**rejecting**
40:8,21
42:24 54:25
56:1 57:1
**rejection**
34:25 40:5
43:5,13
**rejections**
48:22
**relate**
31:25
**relates**
29:3 61:18

**relationship**
61:11
**relevant**
22:3 55:7
**reliance**
31:9
**relief**
49:24 50:2
52:3
**relies**
31:15
**remain**
56:13
**remains**
41:1 53:23
**remarkable**
55:9 58:20,
21
**remedy**
62:6,22
64:12
**remember**
35:18 65:9,
16
**reminder**
30:16
**remote**
51:13
**repeatedly**
60:17
**report**
60:10
**represent**
13:13
**representatio
n**
59:6
**representatio
ns**
6:5,8 20:11
23:18 50:12
**represented**
15:7 65:3
**representing**
22:17 63:15
**Republican**
4:8 31:15

65:5
**Republicans**
 4:24
**require**
 5:23 12:20
 17:3
**required**
 15:4 38:7
 44:12 45:6
 46:6,16,20,
 22
**requirement**
 5:9,12,23
 6:2,20 7:19
 11:3,9
 12:15,21,23,
 25 16:19
 17:1,3 22:12
 23:10 24:19
 38:13,15
 39:1,3 48:2
 49:15 53:18,
 22 54:16,20
 59:20 60:1
 62:25 67:25
**requirements**
 37:12
**requires**
 7:22 12:19
 18:3 41:17
 45:2 58:4
 62:4
**requiring**
 27:24 43:16
**reserve**
 4:9 13:15
**reserved**
 13:4
**resolved**
 66:1
**resolving**
 17:18
**resourced**
 49:12
**respect**
 7:17 26:21
 33:23 50:21

51:1,20
 60:4,8 63:14
**respects**
 52:1
**respond**
 33:8
**response**
 18:21 52:11
**responses**
 16:23 47:10
**responsibilit
y**
 24:20 51:7,
 11
**responsible**
 51:8
**rest**
 53:19 62:25
**restricts**
 29:8
**result**
 8:24
**resulted**
 8:9
**results**
 6:3,5 29:18
 47:17,19
**return**
 25:24 67:9
**returning**
 15:18
**reversal**
 6:1
**review**
 30:18 37:22
 55:4 65:17
 68:3
**rights**
 29:13 36:10,
 13 38:4
**risk**
 8:4 47:5
**RNC**
 4:7 44:22
**role**
 41:20 56:5

**roles**
 51:18
**rolls**
 19:23
**rule**
 8:19 10:21
 15:8 16:5
 58:1,3
 61:21,23
**rules**
 5:8,9 11:12,
 15,19,20
 15:5 17:23
 22:20,22
**ruling**
 30:15
**run-up**
 31:7

—————————

**S**

**satisfied**
 12:21 18:5
 43:24
**satisfies**
 12:25
**save**
 39:3
**saves**
 29:16
**Scalia**
 8:17
**scheduled**
 21:2
**scheme**
 25:10
**schemes**
 8:5
**Schmidt**
 27:11 30:7
**Schwab**
 48:9
**scope**
 40:18
**scratch**
 55:19

**scrutiny**
 9:3 36:6
 41:18 45:3
**seal**
 66:6
**sealing**
 66:18
**sec**
 23:7
**secrecy**
 11:5 23:15
 25:24 66:7,
 19
**secretary**
 5:13 7:11
 51:5,11 53:6
 55:24 58:20,
 21 63:1
**section**
 20:21 25:13
 53:7,25
**sections**
 20:20 52:21
 53:25
**seek**
 48:11
**seeking**
 41:23
**selfishly**
 15:24
**semantic**
 10:5
**Senatorial**
 32:9
**sense**
 21:24 22:7
 24:19
**sentence**
 21:21 22:6
**separate**
 21:4 52:21
**separates**
 51:1
**separation**
 17:21
**September**
 21:3

sequencing
  6:13
series
  22:13
seriousness
  26:9
serve
  13:12 17:20
  44:25
served
  41:8,10
  56:16 57:1
serves
  56:2,14,15
serving
  56:4
set
  11:16 37:1
sets
  11:18,20
settled
  4:4
settlement
  41:5
Seventh
  25:9 58:11,
  14
severability
  63:5,7,16
share
  53:10
shared
  51:20 57:9
sheer
  34:16
short
  36:3
show
  11:14 49:10
showed
  5:20 8:10
  42:16
showing
  45:21 46:2
shown
  6:2

shows
  12:7,10
  21:11 27:1
  49:11 62:8
Shwartz
  4:2,10 5:15,
  21 6:4,8,12,
  15,18,23,25
  7:7,16,18
  8:1,11,13,
  21,23 9:11,
  14 10:17
  13:2,7,10,
  17,19,23
  14:7,10,13,
  15,20,22
  16:4,18,24
  17:2,6,9
  18:2,8,14,25
  19:2,10,17
  20:9,22
  21:6,15
  22:11,22,25
  23:2,5,7,9,
  22 28:7,9,24
  29:14,24
  30:10,15,17,
  19 32:3,7,
  22,24 33:5,8
  37:9,25
  38:15,20
  40:18 43:15
  44:1,4,9
  47:3 49:17,
  19,24 50:2
  52:7,10
  53:3,15,17,
  22 54:7
  57:23 59:4,
  6,12,17,19,
  23,25 62:11,
  14,21,23
  63:5,8,15,
  22,24 64:1,
  8,10,13,15,
  19,21,23,25
  65:10,11,14
  66:17,22
  67:1,6,10,

12,18 68:6
side
  21:20 35:10
  53:11 56:3
  57:11 65:3
sides
  68:9
sign
  5:10 23:17
  25:22 28:3
  57:12
signals
  25:23
signature
  28:22 68:1
signed
  5:2 17:6
  26:1 28:10
  57:13,19
  68:1
significant
  4:25 7:12
  9:2,3 19:18
  34:17 35:1
  37:23 44:17,
  19 64:7
signing
  25:20 57:16
similar
  40:19
simple
  11:4,6 38:12
simplifies
  7:13
simply
  7:14 12:23
  13:22 24:17
  25:3,6,23
  26:9 27:1
  30:24 35:15
  43:17 52:15
  58:3 62:20
  65:17
singing
  50:23
Sixth
  33:18 34:8,

10 60:20
skepticism
  65:4
skip
  17:22
skips
  35:3
slight
  35:21 37:23
slightly
  25:14 31:15
small
  7:3 19:17
  33:24 60:19
smaller
  59:12
Smith
  4:14 9:5,16,
  18 10:2,4
  11:18,20
  12:13 13:3,
  4,8,20
  14:18,21,23,
  25 15:2,10,
  14,19,24
  16:10,15
  18:3,13
  23:6,8 24:7,
  9,15,24
  25:1,4 26:6
  27:3,5,9,13,
  15,19,23
  28:13,15
  29:25 32:4,
  23 33:21
  34:20 35:9
  44:8 48:3,5
  50:23 51:4
  57:6 60:24
  61:24 62:13
  63:10 64:3
  66:10,13,21,
  25 67:15,20
Smith's
  13:24
so-called
  11:25 64:16

solely
  57:13,15
solemn
  23:22 24:4
  26:8 57:14,
  18,20
solemnity
  23:3,7,10,25
  24:17,19,22
  25:18 26:3,
  8,21 57:3
  66:19
solicit
  41:5
soliciting
  50:4
songbook
  50:24
sort
  26:25
sought
  40:20 48:10
  64:10
soundly
  38:10
sounds
  11:2
speak
  15:4,6 35:8
speaking
  46:17 56:7
speaks
  20:3
specific
  17:24 33:2
  36:13 54:23
specifically
  9:6 19:21
  22:1 31:8,19
  37:1 57:11
speculation
  41:10
spent
  10:5
spiritual
  26:9

split
  68:9
spread
  26:15
square
  22:4 55:1
stage
  15:20 24:10
  26:19
standard
  12:25 35:17
  37:17
starting
  47:16
state
  7:11 11:12,
  16,18,20,22
  12:18 14:3
  16:6 17:12,
  17 18:10
  20:4 21:5
  30:24 39:15,
  17,22 40:12
  41:11,14,16
  42:21 43:4,
  16 44:8,12,
  15,17,23
  45:4,9,12,
  22,24 46:6,
  8,20,21,25
  49:22 50:1,
  10,13,17,18,
  20,21 51:1,
  13,16,17,19
  52:19 53:9
  54:24 55:8,
  25 56:10
  57:1,9 62:6
  63:1 65:5,24
state's
  7:22
stated
  24:18 37:19
  45:1
statement
  36:11 62:19
states
  17:17,25

31:13 41:18,
  20 58:7
statewide
  12:3
static
  31:14
statistic
  33:25
status
  28:11
statute
  16:7 29:16,
  17 53:20
  58:10
statute's
  16:6
statutory
  22:3 30:8
  37:12 53:3
step
  18:5 21:23,
  25 24:16
  26:19 35:3
steps
  7:12 17:19
  25:25 31:11
sticks
  33:25
stingy
  67:15
stop
  4:14 9:5
  21:22
story
  36:3
straight
  41:18
straightforwar
d
  5:12
strict
  41:18
strikes
  11:21
strongest
  26:16

structure
  31:13 39:14
struggle
  59:1
subgroup
  60:15
subgroups
  60:15
subject
  36:6
subjected
  57:15,19
submit
  31:1 48:19
submitted
  28:20 48:17
subsequent
  43:1
successful
  59:9
suddenly
  15:10
sue
  45:11
sued
  16:2
sufficient
  7:21 8:6
  61:6
suggest
  20:12 45:25
suggesting
  24:16 29:20
suggestion
  66:11
suggests
  35:21 48:23
summary
  43:25
Sunday
  15:18
support
  41:7 43:5
  44:7,18
  46:7,22,23,
  24 47:8
  62:14,20

suppose
28:2 61:18

Supposedly
23:10

Supreme
10:15 21:2
24:5 32:1
33:10,13
35:18,19,20
37:17,18
38:10 39:23
49:6 58:8
63:10,11
66:5

surely
31:25

system
19:22 20:12

**T**

tab
19:23

tabulation
27:11 28:4,
19

takes
11:25

Taking
25:17

Takushi
35:19

talk
14:22 20:23
23:7,11 54:7

talked
60:7

talking
17:9 19:10,
11,17 25:3
28:14 29:14,
15 30:1
36:12,15,16
41:1 43:18

talks
8:3,24

tantamount
9:24

task
7:14 11:4,6

tasked
41:20

tax
38:10,18
67:14,21

taxes
38:7,17

teach
30:22

technicality
32:14

technically
12:5

Tedards
62:17

telling
29:1,7

tells
4:22 39:9

ten
34:15

term
36:23,24

terms
9:20 13:25
16:24 21:17
23:25 26:9,
15 27:2
47:21 67:3,
6,8

territory
37:6

terrorem
66:11

test
29:22 35:22
36:1 37:1,24
41:13,15,16
44:11

testimony
48:15

text
57:17

That'll
13:17

thing
29:5

things
19:18 23:12,
24 55:19

thought
62:16

thousands
32:14 47:25
48:10 49:16

threshold
9:25 10:13,
21 36:5
57:25

throw
40:13

thrust
20:2,3 54:22

time
4:4,9 10:5
12:6 13:4
24:21 28:4
31:14 32:19
41:19 42:4
56:19 65:2

times
34:15 53:13

today
51:23 56:6

today's
30:15 58:22

told
24:6 33:24

total
34:12

town
39:11

transcript
68:8,10

treated
14:5 55:23

treatment
39:11 49:9

trigger
9:3 58:2

triggered
22:15

true
42:18 52:12
54:23 55:8

Trust
67:16

tumult
31:6

turned
60:20

two-digit
58:24

twofold
33:1 37:2

type
41:5,24
46:1,7,23
48:20

types
36:13 37:21
48:7,21

**U**

U.S.
39:1

ultimately
52:13 56:22

unclear
41:6,7

unconnected
40:4

unconstitutio
nal
28:25 29:18
38:16,18
53:19

unconstitutio
nality
16:12

undated
43:6,9

understand
9:20 14:12,
17 17:6
18:17 19:20

24:24 26:8
27:9 42:12
51:5 53:13
61:8
**understanding**
51:2,19 57:8
**understands**
24:1 39:24
**understood**
25:21 64:21
**undue**
49:7
**uniform**
14:4 17:3
38:21 39:2
52:18
**uniformity**
65:24
**uniformly**
55:21
**unique**
39:16
**United**
58:7
**universal**
5:5 63:3,20
**upheld**
11:10
**urge**
65:17
**usage**
4:15 29:8
**usual**
9:24 10:13,
22 12:24
31:16,17
**utility**
40:8,24
**utter**
47:21
**Uzoma**
32:9 58:19
60:7,19

---

**V**

**valid**
12:18 40:15
56:14
**vantage**
25:13,15,17
**variation**
12:10
**varies**
47:14
**variety**
12:2
**version**
6:2
**versus**
4:2 20:24
59:2
**view**
8:6 20:13
31:17 42:13
**violates**
12:15,16
**Virginia**
38:11
**virtue**
57:15 64:15
**voices**
50:17 53:11
**vote**
6:25 10:19
11:1,2,4,6,
14,15 12:4,6
17:24 18:23
20:5 21:16,
17,18,20
22:18,20
23:12 28:2,
18 30:13
31:13,23
35:7 37:11,
13,20 38:1,
2,9,14,19
48:11,12
49:7,8,11
57:20 61:6,

7,8,16 62:2
66:15,22
**voter**
12:4,17 14:1
19:14,23
23:18 24:1,
19 25:23
27:2,6,25
28:2 29:19
31:3,8 37:11
38:22 39:24
40:1,11,15
42:3,10,14
48:20 54:2,
4,11 56:20
60:13 61:15
66:15
**voter's**
7:14
**voters**
4:13 5:6,9,
11 6:15,21
8:9 12:11
17:3 19:4,24
30:16,20,24
31:10 32:13
40:14 46:5
48:16,17,18,
19 49:14
52:5 55:12
58:13 59:1
60:8,9
61:22,25
62:1 66:6
**votes**
26:1 27:11
40:13 42:7
66:8
**voting**
4:12,13 5:1,
5,7,8 9:24
10:14,22
11:25 12:24
17:25 22:8
24:20 31:16,
17 37:5
42:22 58:2,3
63:3,20

65:19,22

---

**W**

**ways**
29:4 53:1
54:16 67:22
**weekend**
10:6
**weigh**
7:22
**weight**
33:22 34:4,6
**whatsoever**
36:6 45:21
**winning**
45:1
**wisdom**
26:24
**word**
10:6,10
21:22 24:22
**words**
42:25 43:3
46:12 47:25
48:18
**works**
65:19
**world**
66:9
**worth**
25:17
**Wow**
12:13
**write**
17:23 58:19,
22
**writing**
24:17 26:12
**written**
38:24
**wrong**
20:14 52:15,
23 55:18,19
**wrote**
30:15

**Y**

**year**
  32:12 47:16,
  17 58:24
**years**
  4:17 5:2
  6:20 31:5

**Z**

**zeroed**
  25:12