**No. 25-1644**

In the United States Court of Appeals
for the Third Circuit

———————

BETTE EAKIN, *et al.*,

*Plaintiff-Appellees*

*v.*

ADAMS COUNTY BOARD OF ELECTIONS, *et al.*,

*Defendant-Appellees*

REPUBLICAN NATIONAL COMMITTEE, *et al.*,

*Intervenor-Defendant-Appellants.*

**On Appeal from the United States District Court for the
Western District of Pennsylvania
No. 1:22-cv-340 (Baxter, J.)**

**INTERVENOR-DEFENDANTS-APPELLANTS' EMERGENCY
MOTION FOR A STAY**

Thomas E. Breth
Thomas W. King, III
DILLON MCCANDLESS KING
COULTER & GRAHAM
128 W Cunningham Street
Butler, PA 16001
tbreth@dmkcg.com
tking@dmkcg.com

Kathleen A. Gallagher
GALLAGHER FIRM
436 Seventh Avenue
30th Floor
Pittsburgh, PA 15219
Phone: 412-308-5512
kag@gallagherlawllc.com

John M. Gore
E. Stewart Crosland
Benjamin P. Daus
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 879-3939
jmgore@jonesday.com
scrosland@jonesday.com
bdaus@jonesday.com

*Counsel for Intervenor-Appellants*

The enforceability of the Pennsylvania General Assembly's date requirement for mail ballots in the imminent 2025 general election is currently subject to "conflicting [judicial] orders": the District Court's order enjoining enforcement of the requirement and the Pennsylvania Supreme Court's stay of a parallel state court injunction. *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (per curiam); *compare* Order, *Eakin v. Adams Cnty. Bd. of Elections*, No. 1:22-cv-340, 1–2 (W.D. Pa. 2025) (ECF No. 439) ("Order"), *with Baxter v. Philadelphia Bd. of Elections*, 325 A.3d 645, 645 (Pa. 2024) (Mem.). The Court should immediately enter a stay of the District Court's order through the 2025 general election and final resolution of this appeal. Such a stay is necessary to preserve "the integrity of [the Commonwealth's] election process" and voter "confidence" in the election, to prevent "voter confusion and consequent incentive to remain away from the polls," to avoid irreparable harm to Intervenor-Appellants, and to promote judicial comity. *Purcell*, 549 U.S. at 4–5.

The date requirement has been the target of a barrage of lawsuits in recent years—and courts have rebuffed every assault. The Pennsylvania Supreme Court has held that the date requirement is mandatory and enforceable under state law. *See Ball v. Chapman*, 289 A.3d 1, 28 (Pa. 2023); *see also Ball v. Chapman*, 284 A.3d 1189, 1192 (Pa. 2022) (Mem.). Since that ruling, it has twice halted lower court orders enjoining enforcement of the requirement. *See Black Pol. Empowerment Project v. Schmidt*, 322 A.3d 221 (Pa. 2024) (Mem.) (vacating order of Pennsylvania

Commonwealth Court); *Baxter*, 325 A.3d at 645 (staying order of Pennsylvania Commonwealth Court).  For its part, this Court also previously stayed, and then reversed, an order issued by this District Court enjoining enforcement of the requirement under the federal Materiality Provision.  *See Pa. State Conf. of NAACP Branches v. Sec'y of the Commonwealth of Pa.*, 97 F.4th 120, 135 (3d Cir. 2024).

The Pennsylvania Supreme Court's stay in *Baxter* remains in place, with oral argument scheduled in that court for September 10, 2025.  That court will address whether the date requirement violates the Pennsylvania Constitution and, if so, whether enjoining enforcement of the requirement triggers Act 77's nonseverability clause and invalidates universal mail voting in the Commonwealth.  *See Baxter v. Phila. Bd. of Elections*, 332 A.3d 1183, 1183 (Pa. 2025) (Table) (per curiam).

At the same time, the District Court's order enjoining enforcement of the date requirement under the *Anderson-Burdick* framework also remains in place—an order that rests on a flawed merits analysis that disregarded record evidence and ignored Intervenor-Appellants' two threshold arguments.  *See* Memorandum Opinion, No. 1:22-cv-340, 5–21 (W.D. Pa. 2025) (Dist. Ct. ECF No. 438) ("Op."); Intervenor-Defendants' Reply In Support Of Their Suppl. Mot. For Summ. J., 4–5 & n.1 (Dist. Ct. ECF No. 393); Intervenor-Defendants' Suppl. Statement, 2–3 (Dist. Ct. ECF No. 420).  Accordingly, the Commonwealth and its voters now face conflicting federal and state court orders regarding the date requirement's

2

application in the imminent November 2025 elections—for which mail voting commences in less than a month, on September 16, 2025. *See* 25 Pa. Stat. § 3150.12a.

Intervenor-Appellants sought expedited review of this appeal to forestall this conflict, the confusion it generates, and the burden it places on voters and election officials. *See* ECF No. 35-1. Moreover, to ensure Pennsylvania law is settled sufficiently in advance of the election, Intervenor-Appellants specifically requested that the Court issue its decision by August 16, 2025, *see id*. at 8, and expressly "reserve[d] the right to seek a stay of the District Court's order [if] needed to preserve the integrity of the 2025 general election or any other election," *id.* at 6 n.2. The Court granted expedited briefing and argument, but August 16 has now passed without a decision, prompting this emergency motion for a stay.

It is beyond dispute that "the rules [for the election] should be clear and settled" well in advance of the commencement of the mail-voting period. *Democratic Nat'l Comm. v. Wis. State. Legislature*, 141 S. Ct. 28, 31 (2020) (Kavanaugh, J., concurral); *see Purcell*, 549 U.S. at 4–5; *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 424 (2020) (per curiam). Such clarity is necessary to preserve "the integrity of [the Commonwealth's] election process" and voter "confidence in the integrity of our elect[ions]." *Purcell*, 549 U.S. at 4.

It is also essential to prevent voter confusion and to avoid a reduction in voter turnout. After all, "[c]ourt orders affecting elections, *especially conflicting orders*, can themselves result in voter confusion and consequent incentive to remain away from the polls." *Id.* at 4–5 (emphasis added). This concern is no hypothetical here: The Pennsylvania Commonwealth Court previously acknowledged that voters failed to comply with the date requirement because they were confused by prior judicial rulings against it in 2024. *See Baxter v. Philadelphia Bd. of Elections*, 329 A.3d 483, 2024 WL 4614689, at *3 (Pa. Commw. Ct. 2024) (Table) ("Designated Appellee Kinniry . . . . did not attempt to fix her mail-in ballot because she read the news about this Court's decision" enjoining the date requirement before decision was vacated), *stay issued*, 325 A.3d 645.

Moreover, leaving the District Court's order in place at this juncture would be highly prejudicial to Intervenor-Appellants, their candidates and voters, and all Pennsylvanians. The General Assembly's date requirement has governed Pennsylvania's elections for decades, including recent elections pending litigation regarding its enforceability. *See, e.g.*, *Ball*, 289 A.3d 1; *Baxter*, 325 A.3d 645. And where it has not been permitted to remain in place during recent elections, Intervenor-Appellants, their voters, and their candidates have suffered irreparable harm. For example, even though this Court previously reversed the District Court and *upheld* the date requirement under the Materiality Provision, *Pa. State Conf. of*

*NAACP Branches*, 97 F.4th at 135, a Republican incumbent lost his office because undated mail ballots were counted per the District Court's (ultimately reversed) injunction issued on the eve of the 2023 general election, *In re Contest of Nov. 7, 2023 Election of Towamencin Twp.*, 318 A.3d 420, 2024 WL 1515769, at *8–9 (Pa. Commw. Ct. 2024) (Table).  In fact, three Republican candidates since 2020 have lost elections solely because undated mail ballots were counted in defiance of the General Assembly's date requirement.  *See* Anderson Decl. ¶¶ 34–39.

Finally, issuing a stay would advance judicial comity by allowing the Pennsylvania Supreme Court's stay to govern pending that court's consideration of *Baxter*.  This Court should immediately stay the District Court's injunction through the 2025 general election and final resolution of this appeal.

Because mail voting begins September 16, time is of the essence.  The Court therefore should adopt the following briefing schedule for this Motion:

| | |
|---|---|
| Response Briefs Due | August 29, 2025 |
| Reply Brief Due | September 3, 2025 |

Undersigned counsel for Intervenor-Appellants contacted counsel for the other parties on August 21, 2025.  The Commonwealth does not oppose this motion, and notes that it previously requested a stay of the District Court's order in this matter.  *See* ECF Nos. 52-2, 64, 65.  The Washington County Board of Elections consents to this motion.  Plaintiffs-Appellees and the Delaware County Board of

Elections oppose this motion. The Berks, Blair, Bradford, Clarion, Potter, Susquehanna, and Tiago boards of elections take no position on this motion. The remaining parties did not state a position prior to the filing of this motion.

## BACKGROUND

Pennsylvania's General Assembly has required absentee voters to date their ballot envelopes for decades. *E.g.*, Pa. Stat. § 3146.6(a) (1998 ed.). When the General Assembly adopted universal mail-in voting in 2019, it extended that requirement to mail-in voters. *See Pa. State Conf. of NAACP*, 97 F.4th at 126. The date requirement is straightforward: It merely obliges voters to date their envelope before returning the completed ballot. 25 Pa. Stat. §§ 3146.6(a), 3150.16(a). When that date is missing or incorrect, the ballot is "invalid as a matter of Pennsylvania law." *Ball*, 289 A.3d at 28. This is a generally applicable, nondiscriminatory ballot-casting rule, and the burden that it imposes is negligible compared to the "usual burdens of voting." *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 678 (2021).

The date requirement has been the subject of incessant litigation in recent years. In multiple cases, including before this Court, litigants maintained that the date requirement violated the federal Materiality Provision, 52 U.S.C. § 10101(a)(2)(B). The Pennsylvania Supreme Court rejected that contention. *Ball*, 284 A.3d at 1192; *see Ball*, 289 A.3d at 28. And so did this Court. *Pa. State Conf. of NAACP*, 97 F.4th at 135. Moreover, this Court also held that the date requirement

cannot violate any right to vote because it is "implausible that federal law bars a State from enforcing vote-casting rules that it has deemed necessary to administer its elections." *Id*.

After this Court decided *Pennsylvania State Conference of NAACP Branches*, the District Court enjoined the date requirement again in this parallel case. *See* Order. *First*, it concluded that this mail-voting regulation violates the constitutional right to vote—*even though* the Supreme Court has held that there is *no* constitutional right to vote by mail in the first place. *See* Op. 11–12; *McDonald v. Bd. of Election Comm'rs*, 394 U.S. 802, 809–11 (1969). *Second*, although the District Court acknowledged that the date requirement imposes "only a minimal burden" on the right to vote, it concluded that a rule imposing "even the slightest burden" must be subject to a judicial "balancing" test. Op. 10, 15, 20. And *third*, the District Court rejected the interests advanced by the date requirement and refused to defer to the General Assembly's policy judgment to maintain the date requirement. *Id.* at 16–19.

Intervenor-Appellants quickly filed a notice of appeal. *See* Notice of Appeal, *Eakin v. Adams Cnty. Bd. of Elections*, No. 25-1644 (3rd Cir. Apr. 3, 2025). Intervenor-Appellants also moved for expedited consideration of this appeal, *see* ECF No. 35-1, which the Court granted, *see* ECF No. 38. Intervenor-Appellants

requested a decision by August 16, 2025. *See* ECF No. 35-1 at 8. That date has now passed.

## ARGUMENT

In election-law cases, the "traditional test for a stay does not apply;" the public interest alone is often dispositive. *Merrill v. Milligan*, 142 S. Ct. 879, 880 (2022) (Kavanaugh, J., concurral) (collecting cases). Courts can stay injunctions based solely on the disruption caused by election-rule changes while expressing "no opinion" on the merits. *Purcell*, 549 U.S. at 5.

Under the traditional stay factors, this Court weighs (1) the movant's likelihood of success on the merits, (2) the movant's irreparable harm absent a stay, (3) whether a stay would substantially injure the non-movant, and (4) the public interest. *In re Citizens Bank*, 15 F.4th 607, 615 (3d Cir. 2021); *see also Nken v. Holder*, 556 U.S. 418, 434 (2009).

The Court should grant a stay because all factors confirm that a stay is warranted here. At the threshold, to the extent relevant to the Court's analysis, Intervenor-Appellants have demonstrated a likelihood of success on the merits. *See, e.g.*, ECF No. 73-1 at 22–62.

Moreover, the balance of equities overwhelmingly favors a stay. Indeed, that the District Court's order "conflict[s]" with the Pennsylvania Supreme Court's stay in *Baxter* alone suffices to warrant a stay. *Purcell*, 549 U.S. at 4. After all, the

conflicting judicial orders regarding the date requirement's enforceability in the imminent 2025 general election create an untenable state of affairs for Pennsylvania voters and the integrity of the Commonwealth's elections. *See id.* at 4–5. A stay is the *only* way to resolve this conflict on the eve of the September 16 commencement of mail voting. *See id.*

All other equitable factors buttress this result. *First*, a stay is necessary to ensure that courts are not altering Pennsylvania's election rules too close to the election. *See id.*; *Reynolds v. Sims*, 377 U.S. 533, 585 (1964); *Merrill*, 142 S. Ct. at 880 (Kavanaugh, J., concurral). Ensuring that the "rules of the road" for mail voting are "clear and settled" is essential to give Pennsylvanians "confidence in the fairness of the election." *Wis. State Legislature*, 141 S. Ct. at 31 (Kavanaugh, J., concurral). When rules are not settled, public confusion and a "consequent incentive to remain away from the polls" result. *Purcell*, 549 U.S. at 4–5.

During the 2024 general election, the Pennsylvania Supreme Court recognized that the date requirement's legality cannot be in flux on the eve of an election. *See Baxter*, 325 A.3d 645. Under such circumstances, "[a] temporary stay" while the court "consider[s] argument on the merits, [] minimize[s] confusion among both voters and trained election officials—a goal patently within the public interest given [an] extremely fast-approaching election date." *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 243 (5th Cir. 2020) (citation omitted). That is why the

Pennsylvania Supreme Court stayed a lower-court order setting aside the date requirement, a stay which remains in place. *See Baxter*, 325 A.3d at 645. This Court should likewise avoid creating last-minute confusion among election officials and the public—including the heightened uncertainty that would stem from "conflicting" federal and state court orders regarding the enforceability of the date requirement in the 2025 general election. *Purcell*, 549 U.S. at 4. For this reason alone, the Court should grant a stay to ensure that "the rules [for Pennsylvania's elections are] clear and settled" in advance of the commencement of the mail-voting period. *Wis. State Legislature*, 141 S. Ct. at 31 (Kavanaugh, J., concurral).

*Second*, a stay is necessary to avoid irreparable harm to Intervenor-Appellants, their candidates, and their voters. If the District Court's invalidation of the date requirement stands for the 2025 general election, Intervenor-Appellants will have to expend nonrecoverable financial resources to reeducate their candidates, poll watchers, and voters about the status of the date requirement. *See* Anderson Decl. ¶¶ 25–29; *see Ohio v. EPA*, 603 U.S. 279, 292 (2024) (recognizing nonrecoverable compliance costs are irreparable harm). And lest the Court think that reeducation of Intervenor-Appellants' voters is not necessary, the Commonwealth Court previously acknowledged that voters failed to comply with the date requirement because they were confused by prior judicial rulings against it in 2024. *See Baxter*, 2024 WL 4614689, at *3 ("Designated Appellee Kinniry . . . . did not attempt to fix her mail-

in ballot because she read the news about this Court's decision" enjoining the date requirement before decision was vacated). Such "voter confusion" would only be exacerbated here—and, in fact, would become incurable—if the Court allows "conflicting orders" regarding the date requirement's enforceability to remain in place. *Purcell*, 549 U.S. at 4–5.

*Third*, Intervenor-Appellants and all Pennsylvanians face a continued risk that elections will wrongfully turn on the counting of undated ballots that are "invalid as a matter of Pennsylvania law." *Ball*, 289 A.3d at 28. "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Trump v. CASA, Inc*., 145 S. Ct. 2540, 2562 (2025) (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)); *see Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec*., 108 F.4th 194, 206 (3d Cir. 2024). Indeed, "few public interests" weigh more heavily in the equitable calculus "than the avoidance of needless friction with state policies." *R.R. Comm'n of Tex. v. Pullman Co*., 312 U.S. 496, 500 (1941).

That harm is particularly grave when a later-vacated injunction against a State's law alters an election's outcome. Whenever an improperly elected representative exercises the powers of office, *everyone* suffers irreparable injury, from the State to the voters and the political parties. *Marks v. Stinson*, 19 F.3d 873, 878–89 (3d Cir. 1994). That has happened *three times* in matters involving the

General Assembly's date requirement since 2020. In each instance, a court enjoined the date requirement, only for its injunction to be later vacated. But before these injunctions were vacated, Republican candidates for a state senate seat, a judicial office, and a township position lost their elections solely because wrongful orders had compelled election officials to count undated mail ballots contrary to Pennsylvania law. *See* Anderson Decl. ¶¶ 34–39.

*Fourth*, a stay would advance judicial comity. *Cf. Pullman Co.*, 312 U.S. at 500 (admonishing the "federal chancellor" to account for state interests when considering the public interest). Removing the injunction would allow the Pennsylvania Supreme Court's stay to govern pending that court's disposition of *Baxter* by removing the "conflicting order[]" of the District Court. *Purcell*, 549 U.S. at 4. Granting a stay is especially sensible if this Court is inclined to await the Pennsylvania Supreme Court's decision in *Baxter* before issuing a decision on the federal constitutional issues presented here. *See, e.g.*, ECF 142-1 at 20–21, 63–64. After all, "whenever possible," courts should prefer to "resolve a matter on state law grounds if such bases for decision would obviate the need to reach a federal constitutional question." *Kennecott Corp. v. Smith*, 637 F.2d 181, 184 (3d Cir. 1980); *see also, e.g.*, *Donohue v. Cuomo*, 980 F.3d 53, 67 (2d Cir. 2020) (same); *Gibson v. Am. Cyanamid Co.*, 760 F.3d 600, 608 (7th Cir. 2014) (same); *BellSouth Telecomms., Inc. v. Town of Palm Beach*, 252 F.3d 1169, 1176 (11th Cir. 2001) (same).

*Finally*, a stay would not substantially injure Plaintiff-Appellees—as the Pennsylvania Supreme Court confirmed by entering a stay in *Baxter*. *See Baxter*, 325 A.3d 645. Every voter "must tolerate the usual burdens of voting," *Brnovich*, 594 U.S. at 669 (cleaned up), and Plaintiff-Appellees (and the District Court) have failed to show that Plaintiff-Appellees cannot comply with the date requirement if it is in force. Indeed, the Secretary's 2024 redesign of the mail-ballot declaration has substantially simplified a mail voter's dating task. *See* ECF No. 73-1 at 8–12, 34, 50–52; ECF No. 112 at 16, 18–19.

The District Court did not even *consider* the Secretary's redesign; the District Court simply ignored it and instead justified the injunction based upon a superseded version of the declaration. ECF No. 112 at 16, 18–19. Moreover, Plaintiff-Appellees do not even attempt to argue that entering the two-digit month and two-digit date in preprinted boxes is actually difficult or confusing. *See* ECF No. 90. And in all events, to the extent any Plaintiff-Appellee is concerned that she might not comply with the current version of the date requirement in the 2025 general election, she can avoid the requirement entirely by voting in person.

## CONCLUSION

The Court should stay the District Court's order pending the 2025 general election and final resolution of this appeal.

August 22, 2025

Respectfully submitted,

*s/John M. Gore*

John M. Gore
*Counsel of Record*

Thomas E. Breth
Thomas W. King, III
DILLON MCCANDLESS KING
COULTER & GRAHAM
128 W Cunningham Street
Butler, PA 16001
tbreth@dmkcg.com
tking@dmkcg.com

Kathleen A. Gallagher
GALLAGHER FIRM
436 Seventh Avenue
30th Floor
Pittsburgh, PA 15219
Phone: 412-308-5512
kag@gallagherlawllc.com

E. Stewart Crosland
Benjamin P. Daus
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 879-3939
jmgore@jonesday.com
scrosland@jonesday.com
bdaus@jonesday.com

*Counsel for Intervenor-Defendants-Appellants*

## COMBINED CERTIFICATIONS

1.  Pursuant to Third Circuit L.A.R. 28.3(d), at least one of the attorneys whose names appear on this motion is a member in good standing of the bar of this Court.

2.  This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because it contains 3,090 words, excluding the parts of the documented exempted by Fed. R. App. P. 32(f).

3. This motion complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because it has been prepared in a 14-point proportionally spaced typeface (Times New Roman) using Microsoft Word.

4. That on August 22, 2025, I caused the foregoing to be filed with the Clerk of Court using the CM/ECF System, and all counsel of record in this case is a Filing User who will receive notice of such filing.


Dated: August 22, 2025                    /s/ John M. Gore
                                          John M. Gore

**ADDENDUM**

# IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

BETTE EAKIN, *et al.*, )
)
     Plaintiff-Appellees, )
)
     v. ) No. 25-1644
)
ADAMS COUNTY BOARD OF )
ELECTIONS, *et al.*, )
)
     Defendant-Appellees )
)
REPUBLICAN NATIONAL )
COMMITTEE, *et al.*, )
)
     Intervenor-Defendant-Appellants. )

## DECLARATION OF ERIC ANDERSON

Pursuant to 28 U.S.C. § 1746, I, Eric Anderson, declare as follows:

1.     I am over the age of 18 and am otherwise competent to testify.

2.     I have personal knowledge of the matters in this declaration.

3.     I am currently the Executive Director of the Republican Party of Pennsylvania (the "RPP").

4.     The RPP is a major political party, 25 P.S. § 2831(a), and the "State committee" for the Republican Party in Pennsylvania, 25 P.S. § 2834, as well as a federally registered "State Committee" of the Republican Party as defined by 52 U.S.C. § 30101(15).

1

5.    The RPP supports and seeks to uphold free and fair elections for all Pennsylvanians.

6.    The RPP has a substantial and particularized interest in ensuring that Pennsylvania carries out free and fair elections consistently throughout the Commonwealth.

7.    The RPP's members include all registered Republican voters, candidates, and officeholders in Pennsylvania.

8.    The RPP's mission includes supporting Republican candidates for federal, state, and local office in Pennsylvania and preserving and promoting a free and fair electoral environment in which Republican candidates can win election.

9.    Accordingly, the RPP, on behalf of itself and its members, including its voters, nominates, promotes, and assists Republican candidates seeking election or appointment to federal, state, and local office in Pennsylvania.

10.    Additionally, the RPP devotes substantial resources toward educating, mobilizing, assisting, and turning out voters in Pennsylvania.

11.    RPP has statutory rights to appoint poll watchers to observe casting, counting, and canvassing of ballots at the polling place, 25 P.S. § 2687(a), an "authorized representative" to "remain in the room" at the county board of elections and observe the pre-canvass and canvass of "absentee ballots and mail-in ballots," *id.* §§ 3146.8(g)(1.1)-(2), and an "authorized representative" to "remain in the room"

2

and to "challenge any determination of the county board of elections with respect to the counting or partial counting of" a provisional ballot, *id.* § 3050(a.4)(4).

12.    RPP has exercised these statutory rights in the past several election cycles and is doing so again for the 2025 elections.

13.    In conjunction with its Election Day Operations ("EDO"), the RPP devotes substantial time and resources toward the recruitment and training of poll workers, poll watchers, and volunteers throughout the 67 counties of the Commonwealth to assist voters on election day, to observe the casting and counting of ballots at the polling place, to observe the pre-canvass and canvass of absentee and mail-in ballots at the county board of elections, and to observe and make appropriate and lawful challenges to the counting or partial counting of invalid provisional ballots.

14.    As part of its EDO, the RPP also devotes substantial time and resources toward the recruitment and training of a "ground team" of lawyers throughout the Commonwealth who stand ready on Election Day to assist poll workers, poll watchers, and volunteers should questions arise as to elections laws or the voting process within the Commonwealth.

15.    The RPP has devoted substantial time and resources in mobilizing and educating voters in Pennsylvania in the past many election cycles and will do so again in 2025.

16.     Each of the RPP's EDO, training, and voter education programs relies upon, utilizes, and is built upon the clear language of the Election Code.

17.     In particular, following the enactment of Act 77, which fundamentally changed the manner in which Pennsylvanians are permitted to vote, most notably by providing a new universal mail-in voting regime, RPP significantly updated and altered its EDO, training, and voter education programs.

18.     Following the enactment of Act 77, RPP substantially increased the amount of its time and resources dedicated to educating voters, poll workers, poll watchers, volunteers, and its legal teams throughout Pennsylvania's 67 counties regarding the provisions of Act 77.

19.     RPP's EDO, training, and voter education programs include training and information regarding the requirements for voters to cast lawful and valid ballots, and the governing rules delineating unlawful and invalid ballots and preventing election officials from pre-canvassing, canvassing, or counting such ballots.

20.     I am aware that, in a case brought by the RPP and other parties, the Pennsylvania Supreme Court held that General Assembly's date requirement for absentee and mail-in ballots is mandatory and that non-compliant ballots may not be counted.  *See Ball v. Chapman*, No. 102 MM 2022 (Pa. Nov. 1, 2022) (per curiam).

21.     I am aware that, on April 1, 2025, the United States District Court for

4

the Western District of Pennsylvania held that all county boards of elections may not enforce the date requirement and must count undated or incorrectly dated absentee and mail-in ballots.

22.    I am aware that although the Third Circuit expedited an appeal from the Western District's ruling, the panel has not yet ruled on the appeal.

23.    I am also aware that the Pennsylvania Supreme Court is currently considering the legality of the date requirement under the Pennsylvania Constitution, and has entered a stay of a lower court's order enjoining enforcement of the date requirement. *Baxter v. Philadelphia Bd. of Elections*, 325 A.3d 645 (Pa. 2024)

24.    I therefore am aware that conflicting orders are currently in place. The date requirement remains enforceable under the Pennsylvania Supreme Court's order but is unenforceable under the Western District's order.

25.    RPP's EDO, training, and voter education programs include training and information regarding the General Assembly's date requirement.

26.    The change in the governing law around the date requirement that the Court's summary judgment order has purported to make harms the RPP by rendering its EDO, training, and voter education programs less effective, wasting the resources they have devoted to such programs, and requiring them to expend new resources to update those programs.

27.    In particular, so long as the Western District's summary judgment order

is not promptly stayed or reversed, the RPP will be required to alter its statewide EDO, training, and voter education programs to specify that the date requirement is no longer mandatory.

28. If the RPP alters its EDO, training, and voter education programs to reflect the Western District's order, it will again have to alter those materials if that court's order is stayed or reversed in the future.

29. Altering its statewide EDO, training, and voter education programs will require the RPP to divert resources from its intended mission of nominating, promoting, and assisting Republican candidates in Pennsylvania and of educating, mobilizing, assisting, and turning out voters in Pennsylvania.

30. The RPP also has a strong interest in preserving its victory in *Ball v. Chapman*, which upheld uniform, mandatory application of the General Assembly's date requirement across all Pennsylvania counties and, thus, contributes to free and fair elections on behalf of all Pennsylvanians.

31. The Western District's summary judgment order undermines this interest by rendering the Pennsylvania Supreme Court's decision practically pointless, and undermining free and fair elections on behalf of all Pennsylvanians.

32. Moreover, if left in place, the Western District's summary judgment order threatens to create voter confusion, to reduce voter confidence in the integrity of Pennsylvania's elections, and to decrease voter turnout in Pennsylvania, including

by members of the RPP. That risk of voter confusion is particularly acute because the Western District's order conflicts with the Pennsylvania Supreme Court's stay order in *Baxter*.

33. The Western District's summary judgment order also alters the competitive environment surrounding elections in Pennsylvania in which the RPP, its members, its voters, and its candidates exercise their constitutional rights to vote and to participate.

34. The Western District's summary judgment order harms the electoral prospects of Republican candidates in Pennsylvania; makes it more difficult for the RPP, its members, its voters, and its candidates to win elections; and may change the outcome of elections in Pennsylvania.

35. Including in the official vote total ballots that did not comply with the date requirement has flipped the result in three elections in Pennsylvania since 2020. In each of those elections, the Republican candidate would have prevailed if the noncompliant ballots had not been included in the vote total. In other words, in each of those elections, including the noncompliant ballots in the vote total flipped the outcome and resulted in a Democratic candidate being declared the winner and a Republican candidate being declared the loser.

36. The first was the State Senate race involving Republican Nicole Ziccarelli in 2020. *See In re Canvass of Absentee and Mail-in Ballots of November*

*3, 2020 General Election*, 241 A.3d 1058 (Pa. 2020).

37. The second was the Court of Common Pleas race involving Republican David Ritter in 2021. *See Migliori v. Cohen*, 36 F.4th 153, *cert. granted and judgment vacated, Ritter v. Migliori*, 143 S. Ct. 297 (2022)

38. The third was the November 2023 election for Towamencin Township Board of Supervisors (Montgomery County). The Republican candidate, Richard Marino, prevailed by 4 votes over his Democratic challenger, Kofi Osei, with all ballots counted under the rules in effect on election day, November 7, 2023. The Western District's prior order—enjoining enforcement of the date requirement under the Materiality Provision of the 1964 Civil Rights Act in the companion case of *Pa. State Conf. of NAACP v. Schmidt*—led the Montgomery County Board of Elections to count six ballots that did not comply with the date requirement.

39. Although this Court ultimately reversed the Western District's order under the Materiality Provision, supporters of Mr. Marino failed in an attempt to persuade the state courts to undo the damage caused by the Western District's order. See *In re Contest of Nov. 7, 2023 Election of Towamencin Twp.*, No. 1482 C.D. 2023, 2024 WL 1515769, at *8-9 (Pa. Commw. Ct. Apr. 8, 2024). Thus, Mr. Marino lost his position and the RPP suffered irreparable harm as a result of the Western District's prior order.

40. I declare under penalty of perjury that the foregoing is true and correct.

Date: 6/22/25

Eric Anderson

1