IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 25–1644

_____

**BETTE EAKIN; DSCC; DCCC; AFT PENNSYLVANIA**

v.

**ADAMS COUNTY BOARD OF ELECTIONS, *et al.***

_____

COMMONWEALTH OF PENNSYLVANIA'S
PETITION FOR REHEARING *EN BANC*

_____

APPEAL FROM THE JUDGMENT OF THE UNITED STATES
DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ENTERED APRIL 1, 2025 (No. 1:22–CV–00340)
(HON. SUSAN PARADISE BAXTER, presiding)

DAVID W. SUNDAY, JR.
*Attorney General*

Office of Attorney General `          By:    BRETT GRAHAM
1600 Arch Street, Suite 300                *Deputy Attorney General*
Philadelphia, PA 19103
Phone: (267) 530–0886                      DANIEL B. MULLEN
bgraham@attorneygeneral.gov                *Chief Deputy Attorney General*
                                           *Chief, Appellate Litigation Section*

DATE: September 9, 2025

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................... ii

TABLE OF AUTHORITIES .................................................................. iii

RULE 35.1 STATEMENT ..................................................................... vi

INTRODUCTION ...................................................................................1

REASONS FOR GRANTING THE PETITION ........................................3

I.     The Panel's Burden Analysis Conflicts with *Mazo* and *Pennsylvania State Conference of NAACP Branches* ...............................................................3

     A.     The Panel Incorrectly Conflated the Consequence of Non-Compliance with the Burden of Compliance ...........................................................4

     B.     The Panel Drew an Unsupportable Distinction Between a "*De Minimis*" Burden and a "Minimal" Burden on Constitutional Rights .................7

     C.     The Panel Failed to Deal With the "Character and Magnitude" of the Burden Properly Before It ....................................................................9

II.     Even if *Anderson-Burdick* Applies, the Panel Engaged in More Rigorous Scrutiny Than That Test Allows....................................................................12

     A.     The Panel Failed to Consider the Context of Pennsylvania's Electoral Scheme ...........................................................................................12

     B.     The Panel Afforded No Deference to Reasonable Legislative Judgments .......................................................................................15

CONCLUSION....................................................................................17

CERTIFICATE OF COUNSEL ............................................................17

CERTIFICATE OF SERVICE ..............................................................19

ii

# TABLE OF AUTHORITIES

## Cases

*ACLU of New Mexico v. Santillanes*,
  546 F.3d 1313 (10th Cir. 2008) ...................................................6

*Anderson v. Celebrezze*,
  460 U.S. 780 (1983) ..............................................................1, 4

*Arizona Democratic Party v. Hobbs*,
  18 F.4th 1179 (9th Cir. 2021) .................................................6

*Baker v. Carr*,
  369 U.S. 186 (1962) ...............................................................10

*Ball v. Chapman*,
  289 A.3d 1 (Pa. 2023) ..............................................................1

*Brnovich v. Democratic Nat'l Comm.*,
  594 U.S. 647 (2021) ..................................................................3

*Burdick v. Takushi*,
  504 U.S. 428 (1992)................................................. 1, 3, 12, 15

*Bush v. Gore*,
  531 U.S. 98 (2000) (per curiam) ..............................................3

*Center for Coalfield Justice v. Washington Cty. Bd. of Elections*,
  No. 28 WAP 2024 (Pa.) ..........................................................14

*Center for Coalfield Justice v. Washington Cty. Bd. of Elections*,
  No. 1172 C.D. 2024, 2024 WL 4272040 (Pa. Cmwlth. Sept. 24, 2024)..............14

*Common Cause/Georgia v. Billups*,
  554 F.3d 1340 (11th Cir. 2009) ...............................................6

*Commonwealth v. Mihaliak*,
  CP-36-CR-0003315-2022 (Lanc. Cty. CCP 2022).............................16

*Crawford v. Marion County Election Bd.*,
  553 U.S. 181 (2008)................................................. 1, 5, 16

*Curtis v. Oliver*,
  479 F. Supp. 3d 1039 (D. N.M. 2020)..................................11

*Florida State Conf. of NAACP v. Lee*,
566 F.Supp.3d 1262 (N.D. Fla. 2021) ..................................................9

*Florida State Conf. of the NAACP v. Browning*,
569 F.Supp.2d 1237 (N.D. Fla. 2008) .................................................6

*Genser v. Butler Cty. Bd. of Elections*,
325 A.3d 458 (Pa. 2024)............................................................... 14, 15

*Georgevich v. Strauss*,
772 F.2d 1078 (3d Cir. 1985) .............................................................15

*Harper v. Virginia Bd. of Elections*,
383 U.S. 663 (1966)............................................................................10

*Libertarian Party of Illinois v. Illinois State Bd. of Elections*,
No. 12–CV–2511, 2012 WL 3880124 (N.D. Ill. Sept. 5, 2012) ...........6

*Luft v. Evers*,
963 F.3d 665 (7th Cir. 2020) ....................................................... 13, 16

*Massachusetts v. Upton*,
466 U.S. 757 (1984)..............................................................................9

*Mazo v. New Jersey Sec'y of State*,
54 F.4th 124 (3d Cir. 2022) ....................................................... passim

*McEachin v. McGuinnis*,
357 F.3d 197 (2d Cir. 2004) .................................................................8

*Miller v. Nissan Motor Acceptance Corp.*,
362 F.3d 209 (3d Cir. 2004) .................................................................8

*New Georgia Project v. Raffensperger*,
976 F.3d 1278 (11th Cir. 2020) ...........................................................5

*Norwood v. Strada*,
249 Fed. Appx. 269 (3d Cir. 2007)........................................................8

*Pennsylvania Democratic Party v. Boockvar*,
238 A.3d 345 (Pa. 2020)....................................................................14

*Pennsylvania Fed. of Sportsmen's Clubs, Inc. v. Kempthorne*,
497 F.3d 337 (3d Cir. 2007) ...............................................................13

iv

*Pennsylvania State Conf. of NAACP Branches v. Secretary of the Commonwealth*,
97 F.4th 120 (3d Cir. 2024) ...................................................... 2, 3, 5, 7

*Reynolds v. Sims*,
377 U.S. 533 (1964) ......................................................................10

*Rodriguez v. Popular Democratic Party*,
457 U.S. 1 (1982) ...........................................................................4

*Timmons v. Twin Cities Area New Party*,
520 U.S. 351 (1997) ......................................................................1, 8

*Wesberry v. Sanders*,
376 U.S. 1 (1964) ........................................................................10

*Wilmoth v. Sec'y of New Jersey*,
731 Fed. Appx. 97 (3d Cir. 2018) ..............................................17

*Wisconsin Dep't of Revenue v. William Wrigley, Jr., Co.*,
505 U.S. 214 (1992) ........................................................................8

**Statutes**

25 P.S. § 3146.6(a) ....................................................................1, 16

25 P.S. § 3150.16(a) .......................................................................1

**Other Authorities**

BLACK'S LAW DICTIONARY ........................................................10

Joshua Douglas, *The Right to Vote Under State Constitutions*,
67 VAND. L. REV. 89 (2014) ...................................................5, 13

Susan H. Bitensky, *Advancing America's Emblematic Right*,
77 U. MIAMI L. REV. 613 (2023) ................................................13

## RULE 35.1 STATEMENT

I express a belief, based upon a reasoned and studied professional judgment, that the panel's decision is contrary to decisions of the United States Court of Appeals for the Third Circuit and the Supreme Court of the United States, and that consideration by the full Court is necessary to secure and maintain uniformity of decisions in this Court, *i.e.*, the panel's decision is contrary to *Mazo v. New Jersey Secretary of State*, 54 F.4th 124 (3d Cir. 2022), *Pennsylvania State Conf. of NAACP Branches v. Secretary of the Commonwealth*, 97 F.4th 120, 133–35 (3d Cir. 2024), and *Crawford v. Marion County Election Board*, 553 U.S. 181 (2008).

This appeal involves exceptionally important questions regarding judicial scrutiny of state ballot-casting rules. The panel resolved doctrinal questions in a way that will bind the Court in future voting rights cases.

## INTRODUCTION

Pennsylvanians voting by mail must follow simple steps prescribed by the legislature to cast a valid ballot. One is to sign *and date* a declaration on the return envelope in which ballots travel to county boards of elections for counting. *See* 25 P.S. §§ 3146.6(a); 3150.16(a). Not providing a correct handwritten date results in the ballot not being counted. *Ball v. Chapman*, 289 A.3d 1, 21–22 (Pa. 2023).

Here, the panel purported to apply the two-step *Anderson-Burdick* balancing test to the enforcement of Pennsylvania's Election Code. *See* ECF 147 at 26–28 (hereinafter, Panel Op.); *see also* No. 1:22–CV–340 Dist. Ct. ECF 438 at 13 (hereinafter, Dist. Ct. Mem. Op.).[1] But it made critical errors at both steps. Rather than apply *Anderson-Burdick* as it was understood in *Mazo v. New Jersey Secretary of State*, 54 F.4th 124 (3d Cir. 2022) and *Crawford v. Marion County Election Board*, 553 U.S. 181 (2008), the panel debuted a novel methodology for analyzing ballot-casting rules.

At step one, the panel disregarded the actual burden on individual voters imposed by the Election Code's plain command, allowing the fact that non-compliant ballots do not count to drive its analysis. It also erased the concept of a *de minimis* burden from *Mazo* and failed to reckon with the scope of federal protections

---

[1] *Burdick v. Takushi*, 504 U.S. 428 (1992); *Anderson v. Celebrezze*, 460 U.S. 780 (1983); *see also Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997).

1

for the right to vote. At step two, the panel narrowed its focus to a small component of a comprehensive scheme; dismissed valid governmental interests; and disregarded relevant, unresolved state law questions. These new paradigms have major implications for state regulation of elections.

Under *Mazo*, this case is one in which *Anderson-Burdick* "[c]ertainly … does not apply." *Id.* at 138–39. The right to vote is not absolute and federal courts play a limited role in reviewing ballot-casting rules—especially neutral and non-burdensome ones. Because the panel's rationale cannot be squared with *Mazo*, *Crawford*, or *Pennsylvania State Conf. of NAACP Branches v. Secretary of the Commonwealth*, 97 F.4th 120, 133–35 (3d Cir. 2024) (hereinafter, *Pennsylvania State Conf.*), its decision warrants *en banc* review.

2

## REASONS FOR GRANTING THE PETITION

**I.    The Panel's Burden Analysis Conflicts with *Mazo* and *Pennsylvania State Conference of NAACP Branches***

Casting a ballot, by any method, "necessarily requires some effort and compliance with some rules." *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 669 (2021). In short, "the right to vote in any manner is not absolute." Panel Op. at 25 (citing *Burdick*, 504 U.S. at 433). Rather, under the Constitution, there is only "the right to vote *as the legislature has prescribed*." *Bush v. Gore*, 531 U.S. 98, 104 (2000) (per curiam) (emphasis added).

Prior decisions from this Court acknowledge that doctrinal reality. Last year, it reasoned that someone who casts a noncompliant ballot that does not ultimately count is not "'denied' the 'right to vote.'" *Pennsylvania State Conf.*, 97 F.4th at 133–35. And in *Mazo*, this Court acknowledged that—however "flexible" *Anderson-Burdick* is—judicial scrutiny does not attach where there is "no cognizable constitutional right at issue or where the burden on a constitutional right is no more than *de minimis*." 54 F.4th at 138–39.

These pronouncements are irreconcilable with the panel's reasoning, which treats not counting a ballot as disenfranchisement, regardless of whether the voter followed applicable rules. And there is no such thing as an election regulation that fails to implicate a "cognizable constitutional right," or that poses "a *de minimis*

burden." *Mazo*, 54 F.4th at 138–39. Axiomatically, every election rule bears with it the "downstream consequence" of rendering core political activity ineffective.

Federal courts have never endorsed such a construction of the right to vote, which lacks a limiting principle. "The right to vote, *per se*, is not a constitutionally protected right." *Rodriguez v. Popular Democratic Party*, 457 U.S. 1, 9 (1982) (cleaned up, citation omitted). Federal voting protections are merely "implie[d]" by way of "*negative mandates* on who the government may not disenfranchise" via the First and Fourteenth Amendments. *See* Joshua Douglas, *The Right to Vote Under State Constitutions*, 67 VAND. L. REV. 89, 93–95 (2014) (emphasis added); *cf. id.* at 95 (state constitutions expressly grant the right to vote); *infra* I.C.

Herein lies the importance of the first step of *Anderson-Burdick*. The panel erred in hinging its analysis on (i) the wholly unremarkable notion that failure to follow ballot-casting rules results in a ballot not being counted; (ii) a novel understanding of what constitutes a *de minimis* burden; and (iii) a free-standing "right to vote," unmoored from any particular constitutional promise or the claims properly before it. Panel Op. at 28 n.19, 38–39.

### A.    The Panel Incorrectly Conflated the Consequence of Non-Compliance with the Burden of Compliance

The first step of *Anderson-Burdick* contemplates "the character and magnitude of the asserted injury" to an individual's constitutional rights. *Anderson*, 460 U.S. at 789 (emphasis added); *see also Crawford*, 553 U.S. at 205 (Scalia, J.,

concurring) ("[W]e have to identify a burden before we can weigh it."). It is well-established that the relevant burden correlates to the effort required for voters to comply with a challenged law—here, handwriting a date next to one's signature. The panel summarily disagreed, allowing the "downstream impacts" of a noncompliant ballot not counting to drive its burden analysis. Panel Op. at 40. That reasoning departs from extensive case law applying *Anderson-Burdick* and is logically inconsistent with this Court's reasoning in *Pennsylvania State Conf*. 97 F.4th at 133–35 (an individual who casts a noncompliant ballot is not denied the right to vote).

A salient example is *Crawford*, in which the Supreme Court reviewed a challenge to an Indiana voter identification law. 553 U.S. at 185. There, it assessed the burden of obtaining government-issued identification for geographically and economically diverse voters. *Id.* at 197–201. Its analysis did not incorporate the "downstream consequence" of arriving at a polling station on Election Day without such a card, which would have been disenfranchisement. Indeed, the *Crawford* Court reasoned that a "*heavier* burden" fell on certain groups "who may have difficulty *obtaining a birth certificate*." *Id.* at 199 (emphases added).

Later applications reinforce this understanding. For instance, *New Georgia Project v. Raffensperger* concerned an Election Day deadline for voters to return mail-in ballots. 976 F.3d 1278 (11th Cir. 2020). Upholding its enforcement, that

court observed that "[v]oters must simply take reasonable steps and exert some effort to ensure that their ballots are submitted on time." *Id.* at 1282. Similarly, *ACLU of New Mexico v. Santillanes* upheld a rule which counted provisional ballots cast by voters without a photo ID only if they could produce an ID within ten days. 546 F.3d 1313, 1316 (10th Cir. 2008). "At most," the court concluded, "the burden imposed [wa]s a single additional trip to the city clerk's office." *Id.* at 1324. By expressly sanctioning the assessment of the "downstream consequence[s]" of failing to take necessary steps at step one, this panel made this Circuit an outlier. *Cf. Arizona Democratic Party v. Hobbs*, 18 F.4th 1179, 1188–93 (9th Cir. 2021) (rejecting notion that consequence of non-compliance drives burden analysis).[2]

Here, the panel alluded to "[t]he Supreme Court's First Amendment jurisprudence" rather than harmonizing its conclusion with other *Anderson-Burdick* applications. Panel Op. at 39.[3] This analytical move is both doctrinally questionable, *see infra* I.C, and extremely disruptive to the settled understanding of federal courts. Lower courts must now decide which precedent applies. Previously, an individual

---

[2] *See, e.g.*, *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1354 (11th Cir. 2009); *Florida State Conf. of the NAACP v. Browning*, 569 F.Supp.2d 1237, 1253 (N.D. Fla. 2008); *Libertarian Party of Illinois v. Illinois State Bd. of Elections*, No. 12–CV–2511, 2012 WL 3880124, at *4–5 (N.D. Ill. Sept. 5, 2012).

[3] *Compare* Panel Op. at 41–42 n.33 (citing cases), *with* ECF 113 at 5 n.2, 8–9 (distinguishing those cases). Notably, the panel relied upon the Sixth Circuit's approach to burden analysis in certain respects, but summarily rejected it in others. *Compare* Panel Op. at 28 n.19, *with id.* at 45 n.35.

who cast a non-compliant ballot was not "'denied' the 'right to vote.'" *Pennsylvania State Conf. of NAACP Branches*, 97 F.4th at 133–35. Now, however, ballot-casting rules *ipso facto* "severely burden" the right to vote "because of their downstream effects." Panel Op. at 40.

Under the panel's reasoning, the first step of *Anderson-Burdick* is *pro forma*. Ballot-casting rules engender constitutional scrutiny whenever they are mandatory, regardless of how much effort it takes for voters to comply. The *en banc* Court should provide guidance on this foundational question and steer this Circuit's treatment of *Anderson-Burdick* into more familiar waters.

### B.     The Panel Drew an Unsupportable Distinction Between a "*De Minimis*" Burden and a "Minimal" Burden on Constitutional Rights

Purporting to reaffirm *Mazo*'s instruction that "*Anderson-Burdick* 'does not apply . . . where the burden on a constitutional right is no more than *de minimis*,'" the panel redefined "*de minimis*" to mean "speculative." Panel Op. at 29, 38. Then, because the result of failing to comply with the Election Code's instructions is not "speculative," the panel held that the burden of writing a date is, necessarily, not *de minimis*. *Id.* at 39. Respectfully, that reasoning is unsound and will confuse lower courts.

Tellingly, the panel cited no authority for the prospect that the meaning of *de minimis* is tied to the concept of speculation. Nor could it. By definition, *de minimis*

means "a very small or trifling matter[.]" BLACK'S LAW DICTIONARY 388. The term relates to an ancient legal maxim, "*de minimis non curat lex*," or "the law cares not for trifles." *Wisconsin Dep't of Revenue v. William Wrigley, Jr., Co.*, 505 U.S. 214, 231 (1992). This Court's instruction in *Mazo* also would make no sense on that reading: "where the burden on a constitutional right is no more than [speculative]," there would be no injury in fact sufficient to satisfy Article III standing requirements in the first place. *Mazo*, 54 F.4th at 138–39; *cf. Miller v. Nissan Motor Acceptance Corp.*, 362 F.3d 209, 223 (3d Cir. 2004).[4]

The difference between a *de minimis* burden and a minimal burden is not nearly as opaque as the panel implied. A *de minimis* burden is "so trivial that [it is] most properly ignored," because it "do[es] not rise to the level of a constitutionally cognizable injury." *Norwood v. Strada*, 249 Fed. Appx. 269, 272 (3d Cir. 2007) (quoting *McEachin v. McGuinnis*, 357 F.3d 197, 203 n.6 (2d Cir. 2004)). A minimal burden is non-trivial, beyond a mere inconvenience, and thus constitutionally cognizable. Minimal burdens trigger "less exacting review" under *Anderson-Burdick*, but still require the weighing of competing interests. Panel Op. at 27 (quoting *Timmons*, 520 U.S. at 358).

---

[4] While the panel attempted to distinguish other cases *Mazo* cited regarding *de minimis* burdens, none of those decisions treated that term as meaning speculative. Panel Op. at 38–39 n.31 (citations omitted).

The *Mazo* Court understood that, by definition, nearly all *Anderson-Burdick* claims assert some "impact on or connection to voting rights." Panel Op. at 38. Still, it counseled—as others have—that *de minimis* burdens do not progress past the first step to interest balancing. *Mazo*, 54 F.4th at 138–39; *Florida State Conf. of NAACP v. Lee*, 566 F.Supp.3d 1262, 1287 (N.D. Fla. 2021). Because the panel conjured up an unsupportable understanding of what constitutes a *de minimis* burden, it evaded and abrogated *Mazo*'s clear guidance. The *en banc* Court should prevent this intra-circuit split.

### C.    The Panel Failed to Deal With the "Character and Magnitude" of the Burden Properly Before It

According to the panel, "*Mazo* squarely holds that the 'right to vote' is a 'relevant constitutional right' to which *Anderson-Burdick* applies." Panel Op. at 28 n.19. The Commonwealth largely agrees, with several critical caveats. *Anderson-Burdick* requires courts to ground their analyses in the particular ways the federal Constitution protects the right to vote. Put differently, *Mazo*'s treatment of the right to vote was not nearly so cursory, and the question is far more complicated than the panel appeared to recognize.[5]

---

[5] The Commonwealth does not deny *that* the federal Constitution protects the right to vote, but questions *how* the federal Constitution protects the right to vote in this circumstance. Respectfully, *Anderson-Burdick* step one serves an important federalism function. *Cf. Massachusetts v. Upton*, 466 U.S. 757, 739 (1984) (Stevens, J., concurring) ("The States in our federal system … remain the primary guardian of the liberty of the people").

Here, enforcing the date component does not implicate core political expression, or the political activity of voters who "[hold] a particular viewpoint, associate or wish to associate with one another, or share protected characteristics." ECF 72 at 12 (hereinafter, Cmwlth. Op. Br.). The Election Code's command applies to all voters.[6]

Academically, there is an ongoing, "thriving" debate "over whether the U.S. Supreme Court has recognized the right [to vote]" at all. Susan H. Bitensky, *Advancing America's Emblematic Right*, 77 U. MIAMI L. REV. 613, 617 (2023); *id.* at 617 n.10 (collecting sources). For present purposes, though, it is sufficient to recognize that "the right to vote stems from the general language of the Fourteenth Amendment's Equal Protection Clause." *See* Douglas, 67 VAND. L. REV. at 93; *accord Mazo*, 54 F.4th at 137 n.8 (citing *Wesberry v. Sanders*, 376 U.S. 1, 5–7 (1964)).[7] Indeed, courts have long been wary of explicitly treating voting as a right protected under the First Amendment. As one jurist observed, "the Equal Protection Clause and Due Process Clause [have been recognized] as the primary vehicles for

---

[6] Notably, the Erie County Board of Elections informed Ms. Eakin of her ballot defect in 2022, and she cured it. *See* ECF 90 at 7–8.

[7] *Cf. Harper v. Virginia Bd. of Elections*, 383 U.S. 663, 665 (1966) ("[O]nce the franchise is granted … lines may not be drawn which are inconsistent with [equal protection]."); *Reynolds v. Sims*, 377 U.S. 533, 565 (1964) (centralizing the "uniform treatment of persons standing in the same relation to the [challenged rule]."); *Baker v. Carr*, 369 U.S. 186, 237 (1962) ("allegations of a denial of equal protection present a justiciable cause of action.").

enforcing the fundamental right to vote," though there is a "nexus between the right to vote and First Amendment principles" when claims relate to "political speech [or] expressive association." *Curtis v. Oliver*, 479 F. Supp. 3d 1039, 1137 n.20 (D. N.M. 2020); *see also id.* ("[T]he First Amendment offers no protection of voting rights beyond that afforded by the Fourteenth or Fifteenth Amendments.") (cleaned up). This case plainly falls short of implicating that nexus. *See* Cmwlth. Op. Br. at 12.

The mine run of *Anderson-Burdick* applications firmly locate the claims at issue in the right to (i) equal treatment; (ii) association; (iii) free expression; or (iv) procedural due process. *See* ECF 113 at 5–7. Before the District Court, "Plaintiffs ground[ed] their claim in the First Amendment." Dist. Ct. Mem. Op. at 11. But neither that court nor the panel reckoned with this choice, essentially skipping the "*character* and magnitude" step *Burdick* mandates and *Mazo* reiterates.

Instead of evaluating the actual *First Amendment* claim before it, the panel recast the issue as whether Pennsylvania's law violates the "general right to vote," *see* Panel Op. at 25, without explaining which specific provision of the Constitution was violated and how. Whether such thin doctrinal architecture is sufficient to sustain constitutional challenges to state election laws is a question of immediate and obvious import to the *en banc* Court.

## II.    Even if *Anderson-Burdick* Applies, the Panel Engaged in More Rigorous Scrutiny Than That Test Allows

Assuming *arguendo* the panel correctly proceeded to step-two of *Anderson-Burdick*, the panel's strained reasoning necessitates clarification. In weighing the burden associated with enforcing the date component against state interests, the panel asked too narrow a question and set too high a bar. That is, it (i) improperly isolated a component of a larger requirement, and (ii) demanded record evidence establishing the wisdom of the General Assembly's judgment. These analytical missteps merit the *en banc* Court's attention.

### A.    The Panel Failed to Consider the Context of Pennsylvania's Electoral Scheme

At step two, the panel avoided analyzing the statutory and constitutional framework Pennsylvania provides for mail-in ballots. But federal courts applying *Anderson-Burdick* necessarily contemplate that wider lens. *See Burdick*, 504 U.S. at 441–42 (considering rule "as part of an electoral scheme that provides constitutionally sufficient ballot access"); Cmwlth. Op. Br. at 19–21. This erroneous vantage point decoupled the panel's reasoning from the bulk of *Anderson-Burdick* applications.

The panel's solemnity discussion is representative. "It is puzzling," the panel reasoned, "what incremental solemnity dating a return envelope might possibly add that affixing one's signature to the document has not already accomplished." Panel

12

Op. at 49–50. Ordinarily, courts do not dissect statutory language in this way, or divorce their commands from context. *See Pennsylvania Fed. of Sportsmen's Clubs, Inc. v. Kempthorne*, 497 F.3d 337, 352 (3d Cir. 2007).

Here, the Election Code instructs voters to mark their ballot in secret, seal it in an envelope, seal that envelope inside another larger envelope, and then "fill out, date and sign" the declaration on that second envelope. 25 P.S. § 3146.6(a). That is, the date component is one component of a larger process for the submission of mail ballots—one of many potential inconveniences Pennsylvanians may bypass altogether by voting in person. While the panel recognized the exceedingly low—and decreasing—rate of noncompliance, it minimized this context when weighing the state's interests and demonstrated no appreciation for the ways in which Pennsylvania makes voting easy. Panel Op. at 19–20, 35–36*; cf. Luft v. Evers*, 963 F.3d 665, 672 (7th Cir. 2020). It looked only to the value of an independent, but nonexistent, "date requirement."

Relatedly, the panel hinted at separate constitutional concerns. Though not properly implicated here, *see* Dist. Ct. Mem. Op. at 11, they provide important context. The panel worried that voters' ballots would be discounted "*potentially* without notice or any opportunity to correct the ballot." Panel Op. at 34 (emphasis added); *see also id.* at 18 ("may not be counted"), 37 ("may be rejected"). True, "[s]ome, but not all of Pennsylvania's county election boards provide no notice to

13

voters" who submit noncompliant ballots. *Id.* at 19. But to the extent the panel perceived a reality set in stone, it should have stayed its hand pending the Pennsylvania Supreme Court's forthcoming guidance in *Center for Coalfield Justice v. Washington County Board of Elections*, No. 28 WAP 2024 (Pa.) (active docket).

Briefly, the panel erred in citing *Pennsylvania Democratic Party v. Boockvar*, 238 A.3d 345 (Pa. 2020), for the proposition that county boards "need not provide notice" of a rejected ballot. Panel Op. at 19. In *Boockvar*, the Pennsylvania Supreme Court "addressed only the notice and opportunity to cure procedure *sought by Petitioner*." *Genser v. Butler Cty. Bd. of Elections*, 325 A.3d 458, 475 (Pa. 2024) (cleaned up) (emphasis in original). It asked "whether the spirit of the Election Code" or the state constitution "mandated a notice and curing policy." *Id.* (citing *Boockvar*, 238 A.3d at 373–74).

In *Coalfield Justice*, the question is whether procedural due process mandates notice to voters who submit a noncompliant ballot. *See Center for Coalfield Justice v. Washington Cty. Bd. of Elections*, No. 1172 C.D. 2024, 2024 WL 4272040, at *8 (Pa. Cmwlth. Sept. 24, 2024). This issue arises in the context of a scheme that already provides for an online ballot status tracker and a code county boards can enter into the Statewide Uniform Registry of Electors (SURE) system, "trigger[ing] an automatic email" informing voters of their right to cast a provisional ballot. *Id.* at *5. At present, voters "possess a liberty interest to contest the disqualification" of

14

ballots, because holding otherwise would render the statutory process for provisional ballots "perfunctory." *Id.* at *8; *see also Genser*, 325 A.3d at 476.

To the extent concern about "stray pen mark[s]" at one step of a larger process animated its analysis, the panel failed to take the broader, contextual view *Anderson-Burdick* prescribes. Panel Op. at 18. And its invocation of an "inconsistent practice of notifying voters when they have submitted a noncompliant envelope," *id*. at 19, relates to claims not clearly raised here. *See* Dist. Ct. Mem. Op. at 11; ECF 142–1 at 48:25–49:3 ("But you didn't bring an equal protection claim."). The panel thus paired its misreading of *Boockvar* with a casual disregard for *Coalfield Justice*.[8]

## B.    The Panel Afforded No Deference to Reasonable Legislative Judgments

At step two, courts apply a level of scrutiny corresponding to the burden imposed upon a constitutional right. *Mazo*, 54 F.4th at 137 (citing *Burdick*, 504 U.S. at 434). Here, the panel observed that the handwritten date "can narrowly advance the Commonwealth's interest in fraud detection and deterrence." Panel Op. at 52. Even if the SURE system identifies the ballot of a deceased voter and instructs county boards not to count it on Election Day, it is also true that where someone

---

[8] In light of recent and forthcoming guidance from Pennsylvania courts, the Commonwealth submits that abstention or *vacatur* may be more desirable outcomes than reckoning with the proper reading of such underdeveloped claims. *See, e.g.*, *Georgevich v. Strauss*, 772 F.2d 1078, 1089 (3d Cir. 1985) (discussing *Pullman* abstention) (citations omitted).

fraudulently casts the deceased voter's ballot, the handwritten date serves as evidence in the criminal prosecution of the fraudster. *See id.* at 53 (discussing *Commonwealth v. Mihaliak*, CP-36-CR-0003315-2022 (Lanc. Cty. CCP 2022)); *see also Luft*, 963 F.3d at 677. The Commonwealth's interest in regulating the franchise obviously extends beyond Election Day.

This finding alone warranted reversal, and the panel's speculation about what is "exceedingly rare" or "bizarre" is extraneous. Panel Op. at 53, 55. Where a burden is "not severe and imposes only reasonable, nondiscriminatory restrictions … the State's important regulatory interests are generally sufficient to justify the restrictions." Dist. Ct. Mem. Op. at 15 (cleaned up); *cf.* Panel Op. at 40 (implying that enforcing date component imposes a "severe" burden). Prosecuting voter fraud, however rarely it may occur or however "hapless" its perpetrators may be, is an important state interest. Panel Op. at 50, 52 (citing *Crawford*, 553 U.S. at 196).

Proper *Anderson-Burdick* analysis "forecloses [the] substitution of judicial judgment for legislative judgment," on the "political question [of] … whether a rule is beneficial on balance." *Luft*, 963 F.3d at 671. Indeed, the *Crawford* Court upheld a purportedly anti-fraud voter ID rule absent evidence "of any such fraud actually occurring … at any time in history." 553 U.S. at 194–96 (plurality); *id.* at 209 (Scalia, J., concurring in judgment). The panel skirted this doctrinal restraint, and instead assessed the wisdom of the General Assembly's constitutionally-assigned

judgment. *Cf. Wilmoth v. Sec'y of New Jersey*, 731 Fed. Appx. 97, 101 (3d Cir. 2018) (acknowledging states' broad power over elections). This treatment of valid state interests is ripe for *en banc* review and has broad implications for future litigation.

## CONCLUSION

This Court should grant *en banc* review of the panel's decision and order further briefing on these important questions.

Respectfully submitted,

DAVID W. SUNDAY, JR.
Attorney General

Office of Attorney General      By:   /s/ *Brett Graham*
Appellate Litigation Section            BRETT GRAHAM
1600 Arch Street, Suite 300             Deputy Attorney General
Philadelphia, PA 19103                  Attorney I.D. #330556
Direct: 267-530-0886
Fax: (717) 772–4526                     DANIEL B. MULLEN
bgraham@attorneygeneral.gov             Chief Deputy Attorney General
                                        Chief, Appellate Litigation Section

DATE: September 9, 2025

## CERTIFICATE OF COUNSEL

I, Brett Graham, Deputy Attorney General, hereby certify as follows:

1.      That I am a member of the bar of this Court.

2.      That the text of the electronic version of this brief is identical to the text of the paper copies.

3.      That a virus detection program was run on the file and no virus was detected.

4.      That this brief contains 3,878 words within the meaning of Fed. R. App. Proc. 32(a)(7)(B). In making this certificate, I have relied on the word count of the word-processing system used to prepare the brief.

/s/ *Brett Graham*
BRETT GRAHAM
Deputy Attorney General

18

## CERTIFICATE OF SERVICE

I, Brett Graham, Deputy Attorney General, do hereby certify that a true and correct copy of the foregoing Petition for Rehearing *En Banc* has been filed electronically and is available on the Court's Electronic Case Filing System. Seven copies will be sent by first class mail to the Clerk of the United States Court of Appeals for the Third Circuit in Philadelphia, Pennsylvania.

*/s/ Brett Graham*
BRETT GRAHAM
Deputy Attorney General

DATE: September 9, 2025