No. 25-1644

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

BETTE EAKIN, et al.,

*Plaintiffs-Appellees,*

*v.*

ADAMS COUNTY BOARD OF ELECTIONS, et al.,

*Defendants-Appellees,*

REPUBLICAN NATIONAL COMMITTEE, et al.,

*Intervenors-Appellants.*

On Appeal from the United States District Court
for the Western District of Pennsylvania
Case No. 1:22-cv-00340 (Hon. Susan Paradise Baxter)

## PLAINTIFFS-APPELLEES'
## RESPONSE TO PETITIONS FOR REHEARING

LAW OFFICE OF ADAM C. BONIN
Adam C. Bonin
121 South Broad Street, Suite 400
Philadelphia, PA 19107
(267) 242-5014
adam@boninlaw.com

ELIAS LAW GROUP LLP
Uzoma N. Nkwonta
    *Counsel of Record*
Richard A. Medina
Nicole Wittstein
Daniel J. Cohen
Omeed Alerasool
250 Massachusetts Avenue NW,
Suite 400
Washington, DC 20001
(202) 968-4490
unkwonta@elias.law
rmedina@elias.law
nwittstein@elias.law
dcohen@elias.law
oalerasool@elias.law

*Counsel for Plaintiffs-Appellees*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................ii

INTRODUCTION ...................................................................................1

BACKGROUND ....................................................................................2

ARGUMENT ..........................................................................................4

I.    The panel opinion is faithful to precedent..............................4

      A.    Neither Supreme Court nor Circuit precedent precludes *Anderson-Burdick* review of so-called "usual burdens of voting." ................................................5

      B.    *Anderson-Burdick* applies to mail-voting regulations. . 8

II.    The panel's application of *Anderson-Burdick* to the date requirement is unsuited for *en banc* review and was correct in any event..............................................................10

      A.    The panel properly assessed the nature and extent of the burden. ...............................................................11

      B.    The panel properly assessed the state's interests in the date requirement. ...................................................14

CONCLUSION .....................................................................................19

COMBINED CERTIFICATIONS...........................................................21

CERTIFICATE OF SERVICE...............................................................22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Anderson v. Celebrezze*,
  460 U.S. 780 (1983) .................................................................. 13, 18

*Brnovich v. Democratic National Committee*,
  594 U.S. 647 (2021) ........................................................................ 6

*Center for Coalfield Justice v. Washington County Board of Elections*,
  No. 28 WAP 2024, 2025 WL 2740487 (Pa. Sep. 26, 2025) ............... 13

*Chapman v. Berks Cnty. Bd. of Elections*,
  No. 355 M.D. 2022, 2022 WL 4100998 (Pa. Commw. Ct.
  Aug. 19, 2022) .................................................................................. 19

*Common Cause Ind. v. Lawson*,
  977 F.3d 663 (7th Cir. 2020) ............................................................ 10

*Crawford v. Marion Cnty. Election Bd.*,
  553 U.S. 181 (2008) ...................................................................... 5, 6

*Democratic Exec. Comm. of Fla. v. Lee*,
  915 F.3d 1312 (11th Cir. 2019) ................................................... 14, 16

*Fish v. Schwab*,
  957 F.3d 1105 (10th Cir. 2020) ........................................................ 12

*Kramer v. Union Free Sch. Dist. No. 15*,
  395 U.S. 621 (1969) .......................................................................... 9

*League of Women Voters of N.C. v. North Carolina*,
  769 F.3d 224 (4th Cir. 2014) ............................................................ 19

*Libertarian Party of Ala. v. Merrill*,
  No. 20-13356, 2021 WL 5407456 (11th Cir. Nov. 19, 2021) ............ 16

*Mays v. LaRose*,
    951 F.3d 775 (6th Cir. 2020)........................................ 15, 16

*Mazo v. New Jersey Sec'y of State*,
    54 F.4th 124 (3d Cir. 2022) ................................. 5, 7, 9, 13

*McCormick for U.S. Senate v. Chapman*,
    No. 286 M.D. 2022, 2022 WL 2900112 (Pa. Commw. Ct.
    June 2, 2022).................................................................... 19

*McDonald v. Bd. Of Election Comm'rs of Chicago*,
    394 U.S. 802 (1969) .......................................................... 8

*Meyer v. Grant*,
    486 U.S. 414 (1988) .......................................................... 9

*Migliori v. Cohen*,
    36 F.4th 153 (3d Cir. 2022) ............................................. 3

*Obama for Am. v. Husted*,
    697 F.3d 423 (6th Cir. 2012).......................................... 15

*Ohio Council 8 Am. Fed. of State v. Husted*,
    814 F.3d 329 (6th Cir. 2016).......................................... 15

*Pa. State Conf. of NAACP Branches v. Sec'y Commonwealth of
    Pennsylvania*,
    97 F.4th 120 (3d Cir. 2024) ............................................. 3

*Pisano v. Strach*,
    743 F.3d 927 (4th Cir. 2014).......................................... 15

*Price v. N.Y. State Bd. Of Elections*,
    540 F.3d 101 (2d Cir. 2008) ........................................... 15

*Tedards v. Ducey*,
    951 F.3d 1041 (9th Cir. 2020)........................................ 14

*Tex. Democratic Party v. Abbott,*
  978 F.3d 168 (5th Cir. 2020)................................................................9

*Thornburg v. Gingles,*
  478 U.S. 30 (1986) .........................................................................6

*Tully v. Okeson,*
  78 F.4th 377 (7th Cir. 2023) ...........................................................10

*United States v. Paxton,*
  No. 23-50885, ECF No. 80-1 (5th Cir. Dec. 15, 2023) .......................9

**Rules**

Third Circuit IOP 9.3.1 .........................................................................2

Third Circuit IOP 9.3.2 .....................................................................2, 14

**INTRODUCTION**

For over 40 years, courts across the country have applied the *Anderson-Burdick* test in precisely the same manner as the panel in this appeal. They have upheld regulations that advanced state interests sufficiently weighty to justify the resulting burdens on the right to vote, and they have enjoined restrictions, like the date requirement, that unjustifiably burden the franchise. Following this familiar framework, the panel held that rejecting mail ballots from qualified voters because of a missing or incorrect handwritten date on the ballot envelope unconstitutionally burdens the right to vote.

Petitioners nonetheless ask the Court to devise new constitutional tests to reach their desired outcome, each of which the panel rightly rejected. For instance, the RNC invents a "constitutional rule" that would immunize "neutral voting rules" imposing "the usual burdens of voting" from any constitutional scrutiny, RNC Pet. at 2, but cannot identify a single court to endorse this theory. It also seeks to exempt mail ballots entirely from constitutional review, despite that courts nationwide have long applied *Anderson-Burdick* to cases involving mail-voting restrictions. And notwithstanding the RNC's attempt to invent a circuit

split, *every* circuit to squarely address the question has held that garden-variety rational basis review is *never* appropriate in the *Anderson-Burdick* framework.

Petitioners also quibble with the panel's application of the governing *Anderson-Burdick* framework here. *En banc* review is particularly inappropriate "when . . . the controverted issue is solely the application of the law to the circumstances of the case." Third Circuit IOP 9.3.2. But in any event, on the record before it, the panel correctly found that the state's interests in the date requirement did not justify even a minimal burden on the right to vote—a conclusion endorsed by *every* Pennsylvania election official that participated on appeal. Because the panel's opinion neither threatens "[dis]uniformity of [the court's] decisions" nor "involves a question of exceptional importance," the full court's review is unwarranted. Third Circuit IOP 9.3.1 (citing Fed. R. App. P. 35(a) and Local App. R. 35.4).

## BACKGROUND

Thousands of Pennsylvanians have relied on the Commonwealth's guarantee that all voters may vote by mail only to have their ballots rejected because of meaningless, technical defects involving the

handwritten date on their ballot's envelope. Two consecutive Secretaries of the Commonwealth—one Democrat, one Republican—have agreed that "there is no reason to reject ballots for declaration-date errors or omissions." Doc. 101 at 2 (Secretary of the Commonwealth Amicus Br.); *see also* Doc. 76 at 27-28 (Mem. Op.). The record confirms that county boards do not rely on the handwritten declaration date to determine whether a mail ballot is timely or fraudulent. Supp. App. 211-12 ¶¶ 52-57 (Lancaster Cnty. SMF Resp.); *accord* Supp. App. 252-53 ¶¶ 52-57 (RNC SMF Resp.). In short, as this Court has observed, the date requirement "serves little apparent purpose." *Pa. State Conf. of NAACP Branches v. Sec'y Commonwealth of Pennsylvania*, 97 F.4th 120, 125 (3d Cir. 2024); *see also, e.g.*, *Migliori v. Cohen*, 36 F.4th 153, 164 (3d Cir. 2022).

Because of its mass-disenfranchising effect, Plaintiffs-Appellees sued to enjoin all county boards of elections from discarding otherwise valid mail ballots for noncompliance with the date requirement in violation of Pennsylvanians' constitutional right to vote. Recognizing the obvious burdens imposed by a law that needlessly disenfranchised more

than ten thousand voters in a single election, the district court granted that injunction. App. 3-4.

A panel of this Court unanimously affirmed, explaining that laws imposing even minimal burdens on the right to vote must be scrutinized under *Anderson-Burdick*. Doc. 147 at 34 (Op.). Although the panel concluded that the date requirement's burden was "minimal," it followed *Anderson-Burdick*'s instruction to weigh that burden against the interests put forward by the RNC (and, belatedly, the Commonwealth) to justify the requirement. Op. 46-53. The panel had little trouble concluding, based on the undisputed evidence before it, that these interests either bore little logical connection to the date requirement, or were affirmatively hampered by it.

## ARGUMENT

### I.    The panel opinion is faithful to precedent.

Petitioners' principal argument is that the panel's opinion conflicts with Supreme Court and Circuit precedent, necessitating *en banc* review. Petitioners misread those cases, and the "rules" they say the panel disregarded simply do not exist. The panel opinion is faithful to

precedent—indeed, it offers one of the most thorough treatments of the *Anderson-Burdick* framework to date. *En banc* review is unnecessary.

### A. Neither Supreme Court nor Circuit precedent precludes *Anderson-Burdick* review of so-called "usual burdens of voting."

**1.** Petitioners first misread Supreme Court precedent. The RNC invokes a "rule" from *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 198 (2008), that election regulations "imposing only 'the usual burdens of voting' do not even *implicate* the right to vote," and thus do not trigger *Anderson-Burdick* review. *See* RNC Pet. 8. This "rule" does not exist.

The *Anderson-Burdick* framework applies to "voting laws that both burden a 'relevant constitutional right' and 'primarily regulate the electoral process.'" Op. 27 (quoting *Mazo v. New Jersey Sec'y of State*, 54 F.4th 124, 138 (3d Cir. 2022)). Once those conditions are met, the magnitude of the burden determines only the level of scrutiny courts will apply—not whether *Anderson-Burdick* governs in the first place. To that end, the panel correctly heeded *Crawford*'s "instruct[ion] that '[h]owever slight [a] burden may appear . . . it must be justified by relevant and legitimate state interests." *Id.* at 29 (quoting *Crawford*, 553 U.S. at 191).

The RNC's argument that *Anderson-Burdick* review does not apply to laws that impose the "usual burdens of voting" mistakes *Crawford*'s assessment of the burden in that case for an imagined threshold to trigger constitutional scrutiny. And it is impossible to square with *Crawford* itself, which applied *Anderson-Burdick* to a law—a photo ID requirement—that, in the Court's view, did not "represent a significant increase over the usual burdens of voting." 553 U.S. at 198. The Court examined each asserted state interest to determine whether it justified the resulting burdens on voters as established by the record. *Id.* at 191-98. The RNC does not grapple with this context.[1]

**2.** Petitioners' efforts to manufacture intra-circuit tension between the panel's opinion and *Mazo* also go nowhere. They focus on the panel's interpretation of *Mazo*'s instruction that "*Anderson-Burdick* does not apply to voting laws that impose only a *de minimis* burden on constitutional rights." Op. 29. The panel closely examined *Mazo* and the

---

[1] The RNC also faults the panel for not citing *Brnovich v. Democratic National Committee*, 594 U.S. 647 (2021), which it leverages as further support for the "rule" it accuses the panel of violating. *Brnovich* involves Section 2 of the Voting Rights Act—not *Anderson-Burdick*. The standards are not the same: the question in a Section 2 claim is whether a voting regulation is discriminatory, not whether it is unduly burdensome. *See Thornburg v. Gingles*, 478 U.S. 30, 47 (1986).

cases on which it relied, explaining that "*de minimis*" burdens exempted from *Anderson-Burdick* review are those with "a speculative impact on and connection to voting rights." *Id.* at 38. Indeed, *Mazo* acknowledged that "'generally applicable, nondiscriminatory voting regulation[s]' are subject to [*Anderson-Burdick*'s] balancing test." *Mazo*, 54 F.4th at 139 & n.11. And it then applied the framework to a law it deemed minimally burdensome. The cases *Mazo* cited in support of its exception for *de minimis* burdens each involved speculative or indirect burdens on the right to vote. *See* Op. at 38 n.31.

The standard Petitioners request is unworkable in any event. Neither Petitioner articulates how a court would distinguish between a "minimal" burden that receives *Anderson-Burdick* scrutiny and a "*de minimis*" burden that does not. The RNC even defines "*de minimis*" as "minimal"—underscoring the line-drawing problem implicit to their position. *See* RNC Pet. 11 ("A "*de minimis*" burden actually exists and is minimal[.]"). Petitioners do not identify a *single* case where a court refused to apply *Anderson-Burdick* because an election regulation's burden was too small to warrant scrutiny.

The only workable rule is the one the panel applied: if a law does not *directly* regulate the electoral process, any impact on the right to vote is speculative, or *de minimis*, and *Anderson-Burdick* does not apply. Because the date requirement directly regulates the electoral process and imposes at *least* a minimal burden on the right to vote, the panel was right to apply *Anderson-Burdick*.

### B.   *Anderson-Burdick* applies to mail-voting regulations.

The RNC next recites a now-familiar refrain—that mail voting is categorically exempt from *Anderson-Burdick* review. The panel was right to reject that argument, and it does not warrant *en banc* review.

According to the RNC, the Supreme Court's opinion in *McDonald* immunizes mail-voting regulations from constitutional scrutiny. This argument ignores a critical distinction: The *McDonald* plaintiffs claimed a "right to receive" absentee ballots, which Illinois law generally did not permit at that time. *McDonald v. Bd. Of Election Comm'rs of Chicago,* 394 U.S. 802, 807 (1969). But once a state has chosen to allow mail voting, inducing its residents to rely on mail ballots to exercise their rights, it is not then free to arbitrarily burden that process simply because electors *could* have—but did not—vote another way. As the panel correctly noted,

the Supreme Court has applied a similar rule in closely analogous contexts, recognizing First Amendment limits on states' ability to regulate election procedures it was not constitutionally required to offer in the first place. *See, e.g.*, *Kramer v. Union Free Sch. Dist. No. 15*, 395 U.S. 621, 627 (1969) (popular election of school board members); *Meyer v. Grant*, 486 U.S. 414, 424 (1988) (ballot initiatives). The RNC does not meaningfully grapple with this authority. RNC Pet. 16.

Courts nationwide—including the Second, Sixth, Ninth, and Eleventh Circuits—have also applied *Anderson-Burdick* consistently to mail-voting regulations. *Mazo*, 54 F.4th at 137 n.8, 140-41; Op. 33 n.23. While the RNC attempts to manufacture a circuit split, its authorities are inconclusive at best. It cites a Fifth Circuit motions panel ruling, *United States v. Paxton*, No. 23-50885, ECF No. 80-1, at 5 (5th Cir. Dec. 15, 2023) (per curiam), to suggest that mail voting is not constitutionally protected, but ignores binding authority in which the Fifth Circuit expressly *refused* to hold that *McDonald* precludes constitutional scrutiny of mail-voting restrictions. *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 193-94 (5th Cir. 2020). And although the Seventh Circuit initially agreed with the RNC's position, that court has since undermined

9

the source of the rule they cite. *See Common Cause Ind. v. Lawson*, 977 F.3d 663, 664 (7th Cir. 2020) (citing *Tully v. Okeson*, 977 F.3d 608, 615-16 (7th Cir. 2020) (*Tully I*)); *see Tully v. Okeson*, 78 F.4th 377, 381-82 (7th Cir. 2023) (concluding *Tully I* was not "law of the case"). The RNC seeks *en banc* review to *create* divide among the circuits—not resolve it.

In short, constitutional protections for the right to vote do not wax and wane depending upon the means by which a voter chooses to exercise that right. As the panel cautioned, states may not "induce [their] citizens to vote by mail, yet proceed to discard countless ballots for any number of reasons unrelated to a voter's qualifications or the State's legitimate interests." Op. 32-33. The Constitution does not "countenance[] such an outcome." *Id.* at 33.

## II. The panel's application of *Anderson-Burdick* to the date requirement is unsuited for *en banc* review and was correct in any event.

In their attempt to drum up tension between the panel opinion and binding precedent, Petitioners take aim at the panel's application of *Anderson-Burdick* review to this case. But that assessment of burdens and interests is precisely the sort of fact-intensive analysis ill-suited for *en banc* review. Petitioners fail to identify any error in the panel's

opinion, no less a legal dispute of such seriousness that it warrants the full Court's attention.

## A. The panel properly assessed the nature and extent of the burden.

Petitioners first take issue with how the panel assessed the nature and extent of the date requirement's burden on the right to vote. They fault the panel for considering the consequence of noncompliance with the date requirement—that is, total disenfranchisement. And particularly troubling, the Attorney General questions whether the panel was right to recognize the right to vote at all.

The panel did not err by considering the date requirement's mass-disenfranchising effect in its assessment of the burden. *Anderson* itself did just the same: the Court highlighted that the deadline for independent candidates to declare their candidacy "'may have a substantial *impact* on independent-minded voters,' . . . and would prevent independent-minded voters from rallying around a newly emerged independent candidate later in the campaign season." Op. 40 (quoting *Anderson v. Celebrezze,* 460 U.S. 780, 791 (1983)). A voting law's "impact" is but one of several factors the panel identified—following an

extensive survey of *Anderson-Burdick* case law—that might inform a court's assessment of a law's burden. *See id.* at 34-35.

Considering a law's impacts is particularly appropriate in cases like this, where there is a demonstrated record of voter disenfranchisement. That fact makes this case similar to *Fish v. Schwab*, 957 F.3d 1105, 1127 (10th Cir. 2020), where the Tenth Circuit held that Kansas's documentary-proof-of-citizenship requirement failed *Anderson-Burdick* review because "31,089 applicants were prevented from registering to vote." As in *Fish*, the district court here determined that thousands of Pennsylvanians were *actually disenfranchised*. And that evidence— among other factors—distinguishes this case (like *Fish*) from *Crawford*, where "the scant evidence before the Court left it with the unenviable task of attempting to estimate the magnitude of the burden on voting rights, largely from untested extra-record sources." *Id.*

Petitioners' catastrophizing about the scrutiny courts will now apply to election regulations is unfounded. The panel *agreed* that "the date requirement imposes [only] a *minimal* burden on Pennsylvania voters' [constitutional] rights" Op. 38 (emphasis added). So the Attorney General's concern that courts will automatically find that ballot-casting

regulations "severely burden" the right to vote if they consider a rule's "downstream effects" is nonsensical. Att'y Gen. Pet. 7.[2]

The Attorney General also invites the Court to weigh-in on an "academic" debate over whether to "recognize[] the right to vote at all." Att'y Gen. Pet. 10 (quotation omitted). That question is not up for debate. "The right to vote has long been recognized as a fundamental political right under the Constitution." *Mazo*, 54 F.4th at 138 n.8. The *Anderson-Burdick* framework *exists* because every election regulation, "inevitably affects—at least to some degree—the individual's right to vote and his right to associate with others for political ends." *Anderson,* 460 U.S. at 788. That is, laws that burden voting *per se* implicate the First and

---

[2] The Attorney General suggests (at 14) that the panel "should have stayed its hand pending the Pennsylvania Supreme Court's forthcoming guidance in" *Center for Coalfield Justice v. Washington County Board of Elections,* No. 29 WAP 2024, 2025 WL 2740487 (Pa. Sep. 26, 2025) ("*CCJ*"). That case has since been decided, and the ruling had no material impact on the panel's observation that some voters do not have an opportunity to cure date deficiencies. *CCJ* confirmed that ballot curing policies were "not properly at issue" in that appeal. *Id.* at *27 n.54. The court's ruling simply required that if county boards segregate defective ballots before election day, impacted voters must receive notice; notably, it does not require all counties to engage in this pre-election day review, much less provide an opportunity to correct mail ballots. *See id.* at *25 n.53. Thus, the panel's observation that in some counties, undated and misdated ballots "will be discounted . . . without notice or any opportunity to correct th[at] ballot," was and remains correct. Op. 34.

Fourteenth Amendment rights implicit to the franchise. The Attorney General's view that the panel erred by tethering its burden analysis to the right to vote fundamentally misunderstands the decades of precedent underscoring the panel's opinion.

### B. The panel properly assessed the state's interests in the date requirement.

Petitioners' next demand that courts applying *Anderson-Burdick* rubber stamp any interest that the state—or, here, the RNC—concocts in litigation. But rational basis is never appropriate when a law burdens a fundamental constitutional right. *Anderson-Burdick* instructs that courts weigh the "character and magnitude" of that burden against the state's interests—even when that burden is minimal. The panel's application of this well-trodden standard to the facts of this case is not suited for *en banc* review. Third Circuit IOP 9.3.2.

Further, every circuit to squarely address the question agrees that *Anderson-Burdick* requires something more than garden-variety rational basis for laws that even minimally burden the right to vote. *Tedards v. Ducey*, 951 F.3d 1041, 1066 (9th Cir. 2020) ("[T]he burdening of the right to vote always triggers a higher level of scrutiny than rational basis review."); *see also Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312,

1318-19 (11th Cir. 2019); *Price v. N.Y. State Bd. Of Elections*, 540 F.3d 101, 108 (2d Cir. 2008); *Pisano v. Strach*, 743 F.3d 927, 935 (4th Cir. 2014); *Obama for Am. v. Husted*, 697 F.3d 423, 429 (6th Cir. 2012).

The RNC's attempt to create the false impression of a split in authority falls apart upon scrutiny. Although, as the panel noted, the Sixth and Eleventh Circuits have used rational-basis language "or something close to it" in addressing minimal burdens on the right to vote, Op. 45 n.35, those cases did not confront the issue head on. In *Ohio Council 8 Am. Fed. of State v. Husted*, 814 F.3d 329 (6th Cir. 2016), the Sixth Circuit said simply that when the burden is "minimal," courts conduct "a less-searching examination *closer to* rational basis," but not pure rational basis. *Id.* at 335 (emphasis added). But as the Sixth Circuit has also explained, "a straightforward rational basis standard of review" applies only when "*no* burden on the right to vote [is] shown." *Obama for Am.*, 697 F.3d at 429 (emphasis added). The RNC's passing citation to *Mays v. LaRose*, RNC Pet. 17 (quoting 951 F.3d 775, 784 (6th Cir. 2020)), is similarly unpersuasive. The Sixth Circuit in *Mays* simply assumed that *Anderson-Burdick* review of a minimally burdensome law receives rational basis review without directly confronting the question. *See Mays*,

951 F.3d at 784. In any event, *Mays* did not apply "rational basis" or anything "close to" it because it found the challenged law imposed a "moderate" burden on the right to vote. *Id.* at 786.

Likewise, the Eleventh Circuit case that the panel decision referenced, *Libertarian Party of Ala. v. Merrill*, No. 20-13356, 2021 WL 5407456 (11th Cir. Nov. 19, 2021) (nonprecedential), is not precedential authority even in that circuit. And although it used similar language, it never equated its review to traditional rational basis. To the contrary, the court expressly acknowledged that it must weigh "the character and magnitude of the asserted injury . . . against the state's regulatory justifications." *Id.* at *9. And the Eleventh Circuit has elsewhere recognized that "even when a law imposes only a slight burden on the right to vote, relevant and legitimate interests of sufficient weight still must justify that burden." *Lee*, 915 F.3d at 1318-19.[3] There is thus no split in authority among the circuits on this question, and this Court should not grant *en banc* review to create one.

---

[3] The Seventh Circuit decision that the RNC references, RNC Pet. 18 (citing *Common Cause Ind.*, 977 F.3d at 664), held that the challenged rule did not implicate the constitutional right to vote, and applied a rational basis analysis that was distinct from the *Anderson-Burdick* framework. The opinion does not even mention *Anderson-Burdick*.

Furthermore, the panel's straightforward application of the *Anderson-Burdick* test did not, as Petitioners claim, impose a new evidentiary burden on the Commonwealth. The panel closely examined the record before it, including the substantial evidence that the date requirement *does not* advance any of the proffered state interests and, in fact, *undermines* orderly election administration. Op. 46-54. And, unusually, its conclusion on this score was overwhelmingly supported by Pennsylvania's elections officials. *Id.* at 47-48, 50-51. The panel appropriately concluded, on this record, that *Plaintiffs* satisfied their evidentiary burden—not that Defendants failed to satisfy theirs. This kind of fact-based analysis is precisely the sort of issue that this Court considers inappropriate for *en banc* review.

The RNC's prediction that the panel's decision will open the floodgates of federal voting rights litigation is therefore overblown. The RNC's real complaint is that the panel's approach does not allow states to evade judicial review by incanting the magic words "election fraud." But it is not enough for a state to simply invoke interests that "[p]rior judicial decisions" have found "important," RNC Pet. 19: the court must also weigh "the extent to which those interests make it necessary to

burden the plaintiff's rights." *Anderson*, 460 U.S. at 789. The panel appropriately recognized that although a state may "take action to prevent election fraud without waiting for it to occur," RNC Pet. 20, it may not invoke that rationale to support restrictions with no "intuitive connection" to that goal. Op. 51 n.41.

The Attorney General's and the RNC's heavy reliance on the *Mihaliak* case demonstrates the weakness of the connection between the date requirement and fraud prevention. In their briefing, neither petitioner disputed the district court's finding that the handwritten date on the ballot envelope in *Mihaliak* did nothing to "ferret out" the fraudulent ballot, RNC Pet. 20, or prevent it from being counted. Supp. App. 215 ¶¶ 73-75; App. 227; *id.* at 23-24. They argued instead that the handwritten date on the ballot envelope was useful evidence during the *prosecution* of that fraud. *See* RNC Br. 56-57; Commonwealth Br. 26-27. That is a stretch: the Affidavit of Probable Cause supporting the criminal complaint in *Mihaliak* points to various sources of evidence connecting the fraudulent ballot to the deceased voter's daughter, including the fact that the suspect confessed. *See* App. 224, 227. To suggest that the handwritten date on the envelope secured the confession is pure

speculation. *Cf. League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 246 (4th Cir. 2014) ("[S]tates cannot burden the right to vote in order to address dangers that are remote and only theoretically imaginable." (quotation omitted)).

In any event the panel was clear that its ruling "does not affect what appears on the return envelopes or prevent future envelopes from including a date field"—the order merely prevents county boards from disqualifying otherwise valid mail ballots for noncompliant dates. Op. 53. And that, in fact, was the state of affairs for the 2022 primary—the election in which the *Mihaliak* fraud occurred. *E.g.*, *McCormick for U.S. Senate v. Chapman*, No. 286 M.D. 2022, 2022 WL 2900112, at *16 (Pa. Commw. Ct. June 2, 2022) (ordering county boards to tally undated mail ballots); *Chapman v. Berks Cnty. Bd. of Elections*, No. 355 M.D. 2022, 2022 WL 4100998, at *30 (Pa. Commw. Ct. Aug. 19, 2022) (directing Lancaster BOE and others to include undated ballots in their certified results for the 2022 primary). So the date requirement's supposed evidentiary function remains intact.

## CONCLUSION

The Court should deny the petitions for rehearing.

Dated: October 2, 2025                  Respectfully submitted,

                                        */s/ Uzoma N. Nkwonta*

Adam C. Bonin                           Uzoma N. Nkwonta
**LAW OFFICE OF ADAM C. BONIN**         Richard A. Medina
121 South Broad Street, Suite 400       Nicole Wittstein
Philadelphia, PA 19107                  Daniel J. Cohen
(267) 242-5014                          Omeed Alerasool
adam@boninlaw.com                       **ELIAS LAW GROUP LLP**
                                        250 Massachusetts Avenue NW,
                                        Suite 400
                                        Washington, DC 20001
                                        (202) 968-4490
                                        unkwonta@elias.law
                                        rmedina@elias.law
                                        nwittstein@elias.law
                                        dcohen@elias.law
                                        oalerasool@elias.law

*Counsel for Plaintiffs-Appellees Bette Eakin, DSCC, DCCC,*
*and AFT Pennsylvania*

## COMBINED CERTIFICATIONS

1.    Pursuant to 3d Cir. L.A.R. 28.3(d), at least one of the attorneys whose names appear on this motion, including the undersigned, is a member in good standing of the bar of this Court.

2.    This brief complies with the word limit of Fed. R. App. P. 40(d)(3) because, excluding the parts exempted by Fed. R. App. P. 32(f), it contains 3,864 words. This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced 14-point serif font (Century Schoolbook) using Microsoft Word.

3.    Pursuant to 3d Cir. L.A.R. 31.1(c), Sophos Endpoint Agent version 2025.1.3.2.0 has been run on this electronic file and no virus was detected.


 Dated: October 2, 2025                    _s/ Uzoma N. Nkwonta_
                                            Uzoma N. Nkwonta

## CERTIFICATE OF SERVICE

I hereby certify that this document was electronically filed with the Clerk of Court using the appellate CM/ECF system.

Dated: October 2, 2025

<u>*s/ Uzoma N. Nkwonta*</u>
Uzoma N. Nkwonta