UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-1644
_____

BETTE EAKIN; DSCC; DCCC; AFT PENNSYLVANIA

v.

ADAMS COUNTY BOARD OF ELECTIONS; ALLEGHENY COUNTY BOARD
OF ELECTIONS; BEAVER COUNTY BOARD OF ELECTIONS; BEDFORD
COUNTY BOARD OF ELECTIONS; BERKS COUNTY BOARD OF ELECTIONS;
BLAIR COUNTY BOARD OF ELECTIONS; BRADFORD COUNTY BOARD OF
ELECTIONS; BUCKS COUNTY BOARD OF ELECTIONS; BUTLER COUNTY
BOARD OF ELECTIONS; CAMBRIA COUNTY BOARD OF ELECTIONS;
CAMERON COUNTY BOARD OF ELECTIONS; CARBON COUNTY BOARD
OF ELECTIONS; CENTRE COUNTY BOARD OF ELECTIONS; CHESTER
COUNTY BOARD OF ELECTIONS; CLARION COUNTY BOARD OF
ELECTIONS; CLEARFIELD COUNTY BOARD OF ELECTIONS;
CLINTON COUNTY BOARD OF ELECTIONS; COLUMBIA COUNTY BOARD
OF ELECTIONS; CRAWFORD COUNTY BOARD OF ELECTIONS;
CUMBERLAND COUNTY BOARD OF ELECTIONS; FULTON COUNTY
BOARD OF ELECTIONS; HUNTINGDON COUNTY BOARD OF ELECTIONS;
INDIANA COUNTY BOARD OF ELECTIONS; JEFFERSON COUNTY BOARD
DAUPHIN COUNTY BOARD OF ELECTIONS; DELAWARE COUNTY BOARD
OF ELECTIONS; ELK COUNTY BOARD OF ELECTIONS; FAYETTE COUNTY
BOARD OF ELECTIONS; FOREST COUNTY BOARD OF ELECTIONS;
FRANKLIN COUNTY BOARD OF ELECTIONS; OF ELECTIONS; JUNIATA
COUNTY BOARD OF ELECTIONS; LACKAWANNA COUNTY BOARD OF
ELECTIONS; LANCASTER COUNTY BOARD OF ELECTIONS; LAWRENCE
COUNTY BOARD OF ELECTIONS; LEBANON COUNTY BOARD OF
ELECTIONS; LEHIGH COUNTY BOARD OF ELECTIONS; LUZERNE COUNTY
BOARD OF ELECTIONS; LYCOMING COUNTY BOARD OF ELECTIONS;
MCKEAN COUNTY BOARD OF ELECTIONS; MERCER COUNTY BOARD OF
ELECTIONS; MIFFLIN COUNTY BOARD OF ELECTIONS; MONROE COUNTY
BOARD OF ELECTIONS; MONTGOMERY COUNTY BOARD OF ELECTIONS;
MONTOUR COUNTY BOARD OF ELECTIONS; NORTHAMPTON COUNTY
BOARD OF ELECTIONS; NORTHUMBERLAND COUNTY BOARD OF
ELECTIONS; PERRY COUNTY BOARD OF ELECTIONS; PIKE COUNTY

BOARD OF ELECTIONS; POTTER COUNTY BOARD OF ELECTIONS; SNYDER COUNTY BOARD OF ELECTIONS; SOMERSET COUNTY BOARD OF ELECTIONS; SULLIVAN COUNTY BOARD OF ELECTIONS; TIOGA COUNTY BOARD OF ELECTIONS; UNION COUNTY BOARD OF ELECTIONS; VENANGO COUNTY BOARD OF ELECTIONS; WARREN COUNTY BOARD OF ELECTIONS; WAYNE COUNTY BOARD OF ELECTIONS; WESTMORELAND COUNTY BOARD OF ELECTIONS; WYOMING COUNTY BOARD OF ELECTIONS; ERIE COUNTY BOARD OF ELECTIONS; GREENE COUNTY BOARD OF ELECTIONS; PHILADELPHIA COUNTY BOARD OF ELECTIONS; SCHUYLKILL COUNTY BOARD OF ELECTIONS; SUSQUEHANNA COUNTY BOARD OF ELECTIONS; YORK COUNTY BOARD OF ELECTIONS; ARMSTRONG COUNTY BOARD OF ELECTIONS; WASHINGTON COUNTY BOARD OF ELECTIONS

REPUBLICAN NATIONAL COMMITTEE;
NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE;
REPUBLICAN PARTY OF PENNSYLVANIA,
(Intervenors in District Court)

Appellants

_____

District Court No. 1:22-cv-00340
_____

SUR PETITION FOR REHEARING
_____

Before: CHAGARES, Chief Judge, HARDIMAN, SHWARTZ, KRAUSE, RESTREPO, BIBAS, PORTER, MATEY, PHIPPS, FREEMAN, MONTGOMERY-REEVES, CHUNG, BOVE, and SMITH,[*] Circuit Judges

---

[*] The vote of the Honorable D. Brooks Smith, Senior Judge of the United States Court of Appeals for the Third Circuit, is limited to panel rehearing.

The petition for rehearing filed by the Intervenor Appellant, the Commonwealth of Pennsylvania, and the petition for rehearing filed by the Intervenor Appellants, the Republican National Committee, the National Republican Congressional Committee, and the Republican Party of Pennsylvania, in the above-entitled case having been submitted to the judges who participated in the decision of this Court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the judges of the circuit in regular service not having voted for rehearing, the petitions for rehearing by panel and the Court en banc, are denied.[1]

BY THE COURT,

s/D. Brooks Smith
Circuit Judge

Dated: October 14, 2025
tmk/cc: all counsel of record

---

[1] Judges Hardiman, Bibas, Porter, Matey, Phipps, and Bove would grant the petitions for rehearing by the en banc court. Judge Phipps, joined by Judges Hardiman, Bibas, Porter, Matey and Bove, files the attached dissent sur denial of rehearing. Judge Bove will file a separate dissent sur rehearing on a later date.

*Eakin v. Adams County Board of Elections*, No. 25-1644

PHIPPS, *Circuit Judge*, joined by HARDIMAN, BIBAS, PORTER, MATEY, and BOVE, *Circuit Judges*, dissenting sur denial of rehearing *en banc*.

The decision in this case declared unconstitutional the date requirement for mail-in ballots in Pennsylvania on the ground that its burden on voters outweighed the Commonwealth's interests in the orderly administration of elections, the solemnity of elections, and the prevention of election fraud. Central to this Court's analysis under that *Anderson-Burdick* balancing test[1] was the *Boockvar* decision from the Pennsylvania Supreme Court, which held that the Free and Equal Elections Clause of the Pennsylvania Constitution[2] did not require either notice to voters of the rejection of their mail-in ballots or the opportunity to correct ballot defects. *See Eakin v. Adams Cnty. Bd. of Elections*, 149 F.4th 291, 302, 309–10 (3d Cir. Aug. 26, 2025) (citing *Pa. Democratic Party v. Boockvar*, 238 A.3d 345, 374 (Pa. 2020)). A month after this Court's ruling, however, the Pennsylvania Supreme Court decided *Coalfield Justice*, which held that the Inherent Rights Clause of the Pennsylvania Constitution[3] requires that mail-in voters receive notice of the rejection of their ballots and the opportunity to correct ballot defects. *Ctr. for Coalfield Just. v. Wash. Cnty. Bd. of Elections*, 2025 WL 2740487, at *8, *25, *30 (Pa. Sept. 26, 2025). This Court's decision evaluated the prior scheme for mail-in voting, not the one now required by *Coalfield Justice*.

As a legal matter, this Court's decision was already questionable because in its *Anderson-Burdick* balancing, it did not treat the date requirement for mail-in ballots as a

---

[1] *See generally Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992).

[2] Pa. Const. art. 1, § 5.

[3] Pa. Const. art. 1, § 1; *see also R. v. Commonwealth, Dep't of Pub. Welfare*, 636 A.2d 142, 152 (Pa. 1994) ("Even though the term 'due process' appears nowhere in [Section 1 or 11 of Article I of the Pennsylvania Constitution], due process rights are considered to emanate from them.").

*de minimis* burden, *see Mazo v. N.J. Sec'y of State*, 54 F.4th 124, 138–39 (3d Cir. 2022), and because it substantially undervalued the Commonwealth's identified interests in the date requirement.[4]   And that was before *Coalfield Justice* eliminated two of the key rationales for this Court's decision: the lack of notice of a rejected mail-in ballot and the absence of an opportunity to correct such a rejected ballot.   So now as a practical matter, reconsideration of this Court's decision is especially needed because it is not clear that the ruling has any applicability going forward – it appears not to.[5]

In short, there are significant questions about this Court's decision, and as a matter of exceptional importance, it merits *en banc* reconsideration.   I therefore vote for such review.

---

[4] *Cf. generally Daunt v. Benson*, 999 F.3d 299, 322–33 (6th Cir. 2021) (Readler, J., concurring) (identifying broader problems with the *Anderson-Burdick* balancing test and its application).

[5] *Cf. Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co.*, 585 U.S. 33, 44 (2018) ("If the relevant state law is established by a decision of 'the State's highest court,' that decision is 'binding on the federal courts.'" (quoting *Wainwright v. Goode*, 464 U.S. 78, 84 (1983))).

*Eakin v. Adams County Board of Elections*, No. 25-1644
BOVE, *Circuit Judge*, joined by Hardiman, Bibas, Porter, Matey, and Phipps, *Circuit Judges*, dissenting sur denial of rehearing *en banc*.

Several years ago, Judge Readler found it "hard to think of a less burdensome requirement associated with the voting process" than Tennessee's rule that first-time voters must appear in person either to register or to cast their votes. *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 563 (6th Cir. 2021) (Readler, J., concurring).[1]

Well, we found one. At issue here is Pennsylvania's requirement that voters write the date next to their signature on a declaration while transmitting a mail-in ballot. For a voter with a functioning pen, sufficient ink, and average hand dexterity, this should take less than five seconds. Yet Plaintiffs narrowed in on this decades-old requirement situated within a package of recently reformed Pennsylvania laws, known as "Act 77," that established universal mail-in voting and other protections. These five seconds, Plaintiffs alleged, violate the First and Fourteenth Amendments.

At the headline level, this general claim strains credulity and defies common sense. *See Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 209 (2008) (Scalia, J., concurring in the judgment) ("That the State accommodates some voters by permitting (not requiring) the casting of absentee . . . ballots, is an indulgence—not a constitutional imperative that falls short of what is required."); *see also McDonald v. Bd. of Election Comm'rs of Chi.*, 394 U.S. 802, 810-11 (1969) ("Ironically, . . . extending the absentee

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, alterations, and subsequent history.

voting privileges . . . provided appellants with a basis for arguing that the provisions operate in an invidiously discriminatory fashion to deny them a more convenient method of exercising the franchise.").

A complex thicket of decisions—some of which also defy common sense—obscured that reality and led to what I concede were "hard judgment[s]." *Eakin v. Adams Cnty. Bd. of Elections*, 149 F.4th 291, 298 (3d Cir. 2025). The opinion, however, raised significant federalism concerns, misapplied binding precedent from the Supreme Court and this Court, deepened a Circuit split regarding the appropriate level of scrutiny, and conflicted with a subsequent decision of Pennsylvania's Supreme Court. *See Eakin v. Adams Cnty. Bd. of Elections*, 2025 WL 2909016, at *1 (3d Cir. 2025) (Phipps, J., dissenting sur denial of rehearing *en banc*) (citing *Ctr. for Coalfield Just. v. Wash. Cnty. Bd. of Elections*, 2025 WL 2740487 (Pa. 2025)). These issues of exceptional importance add to existing uncertainty already faced by Pennsylvania officials preparing to administer elections on November 4, 2025, as well as during the midterm congressional elections next year. Therefore, the case merited *en banc* review.

## I.

The Constitution vests authority over the administration of elections in politically accountable bodies. The Elections Clause "provides that state legislatures—not federal judges, not state judges, not state governors, not other state officials—bear primary responsibility for setting election rules." *DNC v. Wisconsin State Legislature*, 141 S. Ct. 28, 29 (2020) (Gorsuch, J., concurring in denial of application to vacate stay) (citing U.S.

Const. art. I, § 4, cl. 1). As a "second layer of protection," "[i]f state rules need revision, Congress is free to alter them." *Id.*

These textual commitments make sense. Compared to courts, legislatures are in a better position to "make policy and bring to bear the collective wisdom of the whole people when they do," and they "enjoy far greater resources for research and factfinding." *Wisconsin State Legislature*, 141 S. Ct. at 29 (2020) (Gorsuch, J., concurring in denial of application to vacate stay); *see also Regan v. Time, Inc.*, 468 U.S. 641, 652 (1984) (plurality opinion) (reasoning that "a federal court should act cautiously" when "exercising its power to review the constitutionality of a legislative Act" because a "ruling of unconstitutionality frustrates the intent of the elected representatives of the people").

Apart from the lack of political accountability, the shortcomings of the judicially created test applied in this case are another good reason for courts to proceed with caution in this space. "[T]he States depend on clear and administrable guidelines from the courts." *Little v. Reclaim Idaho*, 140 S. Ct. 2616, 2616 (2020) (Roberts, C.J., concurring in the grant of stay). But "*Anderson-Burdick*'s hallmark is standardless standards." *Daunt v. Benson* (*Daunt II*), 999 F.3d 299, 323 (6th Cir. 2021) (Readler, J., concurring in the judgment). This is a "dangerous tool" in "sensitive policy-oriented cases," as the test "affords far too much discretion to judges in resolving the dispute before them." *Daunt v. Benson* (*Daunt I*), 956 F.3d 396, 424 (6th Cir. 2020) (Readler, J., concurring in the judgment); *see also Graveline v. Benson*, 992 F.3d 524, 553 (6th Cir. 2021) (Griffin, J., dissenting) ("This case illustrates once again why applying *Anderson-Burdick*'s grant of discretion to the federal judiciary can lead to tension with the principles of federalism and separation of powers.").

3

"A case-by-case approach naturally encourages constant litigation." *Crawford*, 553 U.S at 208 (Scalia, J., concurring in the judgment). It is a "metaphysical task," and "legal gymnastics" are often required. *Daunt II*, 999 F.3d at 323 (Readler, J., concurring in the judgment); *Mays v. LaRose*, 951 F.3d 775, 783 n.4 (6th Cir. 2020). This "leaves much to a judge's subjective determination," results in a lack of uniformity, and offers states inadequate guidance to "govern accordingly." *Daunt I*, 956 F.3d at 424-25 (Readler, J., concurring in the judgment); *see also Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 208 (1999) (Thomas, J., concurring in the judgment) ("When an election law burdens voting and associational interests, our cases are much harder to predict . . . .").

A sounder approach in voting-rights cases would leave it to "state legislatures to weigh the costs and benefits of possible changes to their election codes," with federal courts stepping in to second-guess those judgments only when a state's decision imposes "a severe and unjustified overall burden upon the right to vote, or is intended to disadvantage a particular class." *Crawford*, 553 U.S. at 208 (Scalia, J., concurring in the judgment). That is not the trend in this Circuit's caselaw, which is one of the reasons I believe *en banc* review was appropriate in this case.

By marginalizing the *de minimis* exception to *Anderson-Burdick* review, and proceeding with invasive scrutiny of state interests relative to "downstream consequences" and "impacts," the panel opinion exacerbates the risk that judges act contrary to the will of the People. *Eakin*, 149 F.4th at 311. Equally problematic, earlier and unnecessary dicta purports to extend *Anderson-Burdick* to "vindicate a variety of constitutional rights." *Mazo v. N.J. Sec'y of State*, 54 F.4th 124, 138 (3d Cir. 2022). This stands in stark contrast to the

4

three specific contexts in which the Supreme Court has applied this unique balancing test: "ballot-access claims, political-party associational claims, and voting-rights claims." *Lichtenstein v. Hargett*, 83 F.4th 575, 590 (6th Cir. 2023); *see also id.* at 593 (rejecting the argument that *Anderson-Burdick* applies to "*all* election law challenges—whether the challenger raises a free-speech claim, a substantive-due-process claim, an equal-protection claim, or any other claim").

These expansions of *Anderson-Burdick* have the potential to cause election chaos in Pennsylvania and beyond. *See McDonald*, 394 U.S. at 809 ("[A] legislature need not run the risk of losing an entire remedial scheme simply because it failed, through inadvertence or otherwise, to cover every evil that might conceivably have been attacked."). Striking the date requirement as unconstitutional risked activation of Act 77's non-severability clause. *See* Act 77 § 11. The Pennsylvania Supreme Court is currently considering the operation of that clause. *See Baxter v. Phila. Bd. of Elections*, 332 A.3d 1183 (Pa. 2025). Other features of Act 77 will be struck if the clause is triggered, further undermining the bipartisan democratic compromise that led to Act 77 in the first place. County clerks could lose the ability to begin processing mail-in ballot applications more than 50 days before an election, under § 5.1 of Act 77, which could result in delays that would be especially challenging in smaller and more rural counties. The extension of the voter registration deadline to 15 days before an election, under § 4, would likely revert to 30 days. The status of voters who registered between those deadlines would be unclear. In connection with the November 4, 2025 election and the midterms, voters could be misled by voter education efforts that Pennsylvania commissioned to explain Act 77's reform under § 10. These

examples demonstrate why Pennsylvania warned that the case has "the potential to wreak havoc across the Election Code." Intervenor-Appellant's Emergency Mot. to Stay at 19, Dkt. No. 145.

## II.

The uncertainty created by the panel's decision was unnecessary because existing authority addresses the panel's main concern relating to Pennsylvania discarding mail-in ballots based on violations of the date requirement. *See Eakin*, 149 F.4th at 318 ("[W]e are unable to justify the Commonwealth's practice of discarding ballots contained in return envelopes with missing or incorrect dates that has resulted in the disqualification of thousands of presumably proper ballots"). The panel opinion offered a thorough treatment of the history of absentee mail-in voting in Pennsylvania, but it omitted key litigation developments that undermined the holding. There is no federal constitutional problem with Pennsylvania rejecting ballots that do not comply with duly enacted statutory procedures, and Pennsylvania's constitution has been interpreted to mitigate any voting hardships arising from that outcome.

Voting by mail in the Commonwealth dates back to 1937. *See Eakin*, 149 F.4th at 298. Absentee voting was expanded in 1963, and around that time Pennsylvania began to require voters to "fill out, date, and sign" a declaration on the mail-in envelope. *Id.* at 299. Pennsylvania enacted Act 77 in 2019. Among other things, the law "established a comprehensive process for voting by mail" and "retained" the language now located at 25 Pa. Cons. Stat. §§ 3146.6(a), 3150.16(a).

After the onset of the COVID-19 pandemic and the 2020 Election, challenges to Pennsylvania's mail-in voting procedures worked their way through the Pennsylvania courts. *See, e.g.*, *In re: Nov. 3, 2020 Gen. Election*, 240 A.3d 591 (Pa. 2020); *Kelly v. Commonwealth*, 240 A.3d 1255 (Pa. 2020). By January 2022, related federal litigation commenced under the Civil Rights Act. A group of Pennsylvania voters obtained a short-lived victory in this Court. *See Migliori v. Cohen*, 36 F.4th 153 (3d Cir. 2022). Later that year, three Justices of the Supreme Court concluded that the *Migliori* panel's interpretation of the Civil Rights Act was "very likely wrong," and the Court vacated the decision. *Ritter v. Migliori*, 142 S. Ct. 1824, 1824 (2022) (Alito, J., dissenting from the denial of the application for stay); *Ritter v. Migliori*, 143 S. Ct. 297 (2022).

Soon after the vacatur order in *Migliori*, a new group of plaintiffs brought a fresh challenge to Pennsylvania's date requirement under the Civil Rights Act. *NAACP v. Schmidt*, 97 F.4th 120, 125 (3d Cir. 2024). A divided panel of this Court rejected that claim. The *Schmidt* majority echoed the *Migliori* Justices' guidance by reasoning that: (i) "a voter who fails to abide by state rules prescribing how to make a vote effective is not 'den[ied] the right . . . to vote' when his ballot is not counted"; and (ii) "we know no authority that the 'right to vote' encompasses the right to have a ballot counted that is defective under state law." 97 F.4th at 133. This reasoning addresses the concern in *Eakin* that "[a] Pennsylvania mail-in voter who fails to comply with the date requirement will not have his or her vote counted. Period." 149 F.3d at 311. Even if that were true, the result would be of no significance under the federal Constitution.

Furthermore, as Judge Phipps already pointed out, there is no longer any basis for the suggestion that a Pennsylvania voter who submits a defective mail-in ballot will be disenfranchised without notice. *See Eakin*, 2025 WL 2909016, at *1 (Phipps, J., dissenting sur denial of rehearing *en banc*). While the Petitions For Rehearing were pending in this case, the Pennsylvania Supreme Court held that "the Pennsylvania Constitution itself creates a liberty interest in the right to vote that implicates the protections of procedural due process" under Pennsylvania law. *Coalfield Just.*, 2025 WL 2740487, at *12. Pennsylvania voters "who submitted facially defective mail-in ballots" are entitled to notice via email "that they still had a right to vote provisionally." *Id.* at *25.

*Coalfield Justice* also addressed several of the more specific concerns expressed in the panel's opinion. The opinion asserted that "Pennsylvania county election boards have no obligation under the Election Code to notify voters if their ballots are rejected for failure to comply with the date requirement." *Eakin*, 149 F.4th at 310. If that was ever accurate, it is no longer the case. *See Coalfield Just.*, 2025 WL 2740487, at *25 (requiring "[a]ccurate SURE coding [that] would have triggered an email alerting the electors who submitted facially defective mail-in ballots that they still had a right to vote provisionally"). The opinion contended that "a Pennsylvanian who fails to comply with the date requirement cannot vote in person." *Eakin*, 149 F.4th at 308. Not a valid concern today. *See Coalfield Just.*, 2025 WL 2740487, at *30 ("[T]his case . . . . is about allowing a voter who made a mistake on a mail-in ballot return packet . . . to avail herself of the remaining fail-safe attempt to exercise her fundamental right: completing a provisional ballot on Election Day."). Nor, under *Coalfield Justice*, is Pennsylvania free to "induce its citizens

to vote by mail, yet proceed to discard countless ballots for any number of reasons . . . ." *Eakin*, 149 F.4th at 308. The opinion "confirm[ed] a mandate to not mislead electors . . . ." *Coalfield Just.*, 2025 WL 2740487, at \*30.

Therefore, our precedential decision in *Schmidt* and the Pennsylvania Supreme Court's decision in *Coalfield Justice* allay the main concerns that appear to have led the panel to strike the Commonwealth's date requirement.

## III.

The panel opinion also missed two dispositive offramps from the path to standardless *Anderson-Burdick* balancing. Plaintiffs failed to allege an actual violation of the Constitution, and the burden arising from the date requirement is *de minimis*.

*Anderson-Burdick* does not apply where there is "no cognizable constitutional right at issue." *Mazo*, 54 F.4th at 138. There is not one at issue here. *See Election Integrity Project Cal., Inc. v. Weber*, 113 F.4th 1072, 1088 (9th Cir. 2024) (describing the "commonsense principle that generally applicable, even handed, and politically neutral election regulations that tend to make it easier to vote generally do not impose a cognizable burden on the right to vote"). From the outset of the litigation, Plaintiffs made only vague references to the "right to vote" and the First and Fourteenth Amendments. "[T]he right to vote, *per se*, is not a constitutionally protected right." *Rodriguez v. Popular Democratic Party*, 457 U.S. 1, 9 (1982). The right to vote is undoubtedly fundamental, but it is properly framed as a right to participate in elections "on an equal basis with other qualified voters whenever the State has adopted an elective process for determining who will represent any segment of the State's population." *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S.

1, 35 n.78 (1973).  Plaintiffs did not allege the types of speech, association, equal protection, or due process claims that could arguably support *Anderson-Burdick* balancing.

Most importantly, "there is no constitutional right to vote by mail." *Org. for Black Struggle v. Ashcroft*, 978 F.3d 603, 607 (8th Cir. 2020); *see also Schmidt*, 97 F.4th at 133. "[W]here only the claimed right to vote by mail is at issue, the *Anderson/Burdick* test, by its own terms, cannot apply." *Tully v. Okeson*, 977 F.3d 608, 616 n.6 (7th Cir. 2020).  That principle is dispositive here.

There was an alternative basis that required rejecting *Anderson-Burdick* balancing in this case.  The test does not apply where "the burden on a constitutional right is no more than *de minimis*." *Mazo*, 54 F.4th at 138-39; *see also Eakin*, 2025 WL 2909016, at *1 (Phipps, J., dissenting sur denial of rehearing en banc) ("[T]his Court's decision was already questionable because in its *Anderson-Burdick* balancing, it did not treat the date requirement for mail-in ballots as a *de minimis* burden . . . .").  "*De minimis*" is an accurate characterization of the five-second burden imposed by a state-law requirement that voters date their signature.  *See Tex. League of United Latin Am. Citizens v. Hughs*, 978 F.3d 136, 145 (5th Cir. 2020) (finding "no more than a *de minimis* burden on the right to vote" where "some absentee voters would have to travel farther to drop off mail ballots at a centralized location").  Another is "non-existent." *See Vote.org v. Callanen*, 39 F.4th 297, 308 (5th Cir. 2022) (reasoning that "one strains to see how" an original-signature requirement for voting registration "burdens voting at all").

The panel's opinion concluded that the *de minimis* exception did not apply by equating *de minimis* burdens with "speculative" ones.  *Eakin*, 149 F.4th at 311.  In fact, *de*

*minimis* means "[t]rifling; negligible," or "so insignificant that a court may overlook it in deciding an issue or case." *Black's Law Dictionary* (12th ed. 2024). The "*de minimis*" exception described in *Mazo* appears to have roots in *Timmons v. Twin Cities Area New Party*, where Chief Justice Rehnquist, writing for the Court, applied *Anderson-Burdick* balancing to a constitutional burden that was "not trivial" but "not severe." 520 U.S. 351, 363 (1997); *see also Molinari v. Bloomberg*, 564 F.3d 587, 606 (2d Cir. 2009) ("If the burden is minor, *but non-trivial*, *Burdick*'s balancing test is applied." (emphasis added)). "Trivial" is essentially a synonym of *de minimis*. *Black's Law Dictionary* (12th ed. 2024) (defining "trivial" as "[t]rifling; inconsiderable; of small worth or importance"). Tellingly, the *Eakin* opinion acknowledged that a violation of the date requirement could arise from "something as *trivial* as a stray mark on the date field." 149 F.4th at 310 (emphasis added).

After restricting the *de minimis* exception to so-called *speculative* burdens, the opinion put another thumb on the scale for Plaintiffs by *speculating* that failure to follow the date requirement would result in an unconstitutional burden based on "downstream consequences" and "downstream effects." *Eakin*, 149 F.4th at 311. This was simply a backdoor to the flawed disenfranchisement theory that is foreclosed by *Schmidt* and weakened further by *Coalfield Justice*. *See Schmidt*, 97 F.4th at 133; *Coalfield Just.*, 2025 WL 2740487, at *30; *see also Migliori*, 142 S. Ct. at 1824 (Alito, J., dissenting from the denial of the application for stay) ("When a mail-in ballot is not counted because it was not filled out correctly, the voter is not denied 'the right to vote.'"); *New Georgia Project v. Raffensperger*, 976 F.3d 1278, 1282 (11th Cir. 2020) (reasoning that "no one is

'disenfranchised'" where "[v]oters must simply take reasonable steps and exert some effort to ensure that their ballots are submitted on time").

Accordingly, because Plaintiffs' mail-in voting claims were not founded on a cognizable constitutional right, and because the date requirement's burden is at most *de minimis*, there was no need to resort to *Anderson-Burdick* balancing. *En banc* review was appropriate so that the Court could establish and clarify guideposts necessary to prevent continued expansion of this amorphous test.

## IV.

I believe that Plaintiffs failed to state a claim altogether, under Rule 12(b)(6), by relying on vague references to the First and Fourteenth Amendments. App. 73-75 ¶¶ 41-47. If the claim merited further scrutiny, however, the proper framework was rational-basis review. By finding otherwise, the *Eakin* opinion misapplied additional binding precedent and deepened a Circuit split.

In a decision that predated *Anderson-Burdick*, the Supreme Court applied rational-basis review to an Illinois law that permitted absentee voting by some groups of voters but not a class of pretrial detainees. *See McDonald*, 394 U.S. at 807. Like our opinion in *Schmidt*, the *McDonald* Court distinguished between "the fundamental right to vote" and the "claimed right to receive absentee ballots," which has no basis in the Constitution. *Id.* Granting Illinois courtesies that were not extended to Pennsylvania in this case, the Supreme Court declined to assume the state had disenfranchised the plaintiffs and applied a presumption that "[l]egislatures . . . have acted constitutionally." *Id.* at 809. On rational-basis review, the Court concluded that the Illinois law bore a "rational relationship to a

legitimate state end" by authorizing absentee voting for certain groups such as the physically handicapped. *Id.*

The Supreme Court "has not discarded *McDonald*, *sub silentio* or otherwise." *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 406 (5th Cir. 2020). Under *McDonald*, "rational-basis scrutiny applies to election laws that do not impact the right to vote—that is, the right to cast a ballot in person." *Tully*, 977 F.3d at 616. "As long as it is possible to vote in person, the rules for absentee ballots are constitutionally valid if they are supported by a rational basis and do not discriminate based on a forbidden characteristic such as race or sex." *Common Cause Indiana v. Lawson*, 977 F.3d 663, 664 (7th Cir. 2020). This is the rule in the Fifth, Sixth, and Seventh Circuits. *See id.*; *Tully*, 977 F.3d at 616 n.6 ("So, in cases like *McDonald*, where only the claimed right to vote by mail is at issue, the *Anderson/Burdick* test, by its own terms, cannot apply."); *Abbott*, 961 F.3d at 406 ("Because the plaintiffs' fundamental right is not at issue, *McDonald* directs us to review only for a rational basis . . . ."); *Mays*, 951 F.3d at 784 ("When States impose 'reasonable nondiscriminatory restrictions' on the right to vote, courts apply rational basis review and 'the State's important regulatory interests are generally sufficient to justify' the restrictions." (quoting *Burdick v. Takushi*, 504 U.S. 428, 434 (1992))).

While working past *McDonald*, the *Eakin* opinion acknowledged the Circuit split and aligned with decisions of the Second, Eighth, Ninth, and Eleventh Circuits. *See* 149 F.4th 309 at n.23. Only the Second Circuit's divided decision addressed *McDonald* explicitly. *See Price v. N.Y. State Bd. of Elections*, 540 F.3d 101 (2d Cir. 2008). The analysis in *Price* is consistent with the assertion in *Eakin* that *McDonald* "rest[ed] on

failure of proof" regarding disenfranchisement. *Eakin*, 149 F.4th at 307 n.21; *Price*, 540 F.3d at 109 n.9. That is a distinction without a difference in this case. The "very same 'failure[s] of proof' exist here, because, as explained, there is no evidence that [Pennsylvania] has prevented the plaintiffs from voting by all other means." *Abbott*, 961 F.3d at 404.

The *Eakin* opinion also asserted that, "[e]ven if no First Amendment right to vote by mail exists, we still must scrutinize Pennsylvania's mail-in voting regime to ensure that it complies with the Constitution." 149 F.4th at 308. The panel then cited a Fourteenth Amendment equal protection case that has no bearing on Plaintiffs' constitutional challenge to Pennsylvania's facially neutral date requirement. *Id.* (citing *Harper v. Va. State Bd. of Elections*, 383 U.S. 663 (1966)); *see also Crawford*, 553 U.S. at 205 (Scalia, J., concurring in the judgment) (reasoning that "[t]he State draws no classifications, let alone discriminatory ones, except to establish optional absentee and provisional balloting for" certain groups). This Court has applied rational-basis review—and rejected *Anderson-Burdick* balancing—where the "challenge relies solely on the Fourteenth Amendment and [plaintiff] makes no allegations based on freedom of association." *Biener v. Calio*, 361 F.3d 206, 214 (3d Cir. 2004). The *Eakin* opinion did not address that binding precedent either.

Therefore, *en banc* review was appropriate for the additional reason that the panel's opinion deepened a Circuit split by declining to follow *McDonald* and not applying rational-basis review to Pennsylvania's date requirement.

## V.

The panel opinion reflects a particularly invasive application of *Anderson-Burdick* that illustrates how this amorphous test can result in an anti-democratic seizure of power from the People's politically accountable representatives. *See Price*, 540 F.3d at 115 (Livingston, J., dissenting) ("This approach ignores both the State's interest in making legitimate policy judgments about the benefits and potential drawbacks of absentee voting in particular contexts, and the lack of judicial competence sensitively to balance the competing interests.").

As explained above, the date requirement's alleged burden on unspecified constitutional rights is *de minimis* if not non-existent. Some other state voting laws are far more onerous. Alabama requires signatures on an absentee ballot from not only the voter, but also two adult witnesses or a notary public. *See* Ala. Code § 17-11-7(b). Following a district court injunction based on *Anderson-Burdick*, the Supreme Court entered a stay and allowed the law to take effect during the 2020 elections. *See Merrill v. People First of Ala.*, 141 S. Ct. 25 (2020); *People First v. Merrill*, 491 F. Supp. 3d 1076 (N.D. Ala. 2020). The plaintiffs then dismissed their case. *See People First of Ala. v. Sec'y of State*, 2020 WL 7028611 (11th Cir. 2020). The statute remains in effect.

Compared to Alabama's requirements, it is "easy to place a date on a return envelope." *Eakin*, 149 F.4th at 309. So easy, in fact, that this had been a non-controversial aspect of Pennsylvania election law for decades, as had been similar requirements in other states. The Pennsylvania legislature retained the requirement when it revised numerous other aspects of the law by passing Act 77 in 2019.

Act 77's universal mail-in voting provisions were "only a fraction of the scope of the Act." *McLinko v. Dep't of State*, 279 A.3d 539, 543 (Pa. 2022). The law also "included robust anti-fraud measures . . . ." *Eakin*, 149 F.4th at 300. These measures were "developed over a multi-year period, with input from people of different backgrounds and regions of Pennsylvania." *McLinko*, 279 A.3d at 543. Universal mail-in voting may not have functioned perfectly from the outset, but the system was improved "with notable results" through state-court litigation and efforts by the governor. *Eakin*, 149 F.4th at 302. There is thus every reason to believe—and we are to presume—that the resulting system was the product of a "consistent and laudable state policy." *McDonald*, 394 U.S. at 811.

In defense of this policy, Pennsylvania proffered three interests: solemnity, orderly election administration, and fraud detection and deterrence. *See* Appellant's Emergency Mot. to Stay at 19, Dkt. No. 145. These interests were more than enough to survive rational-basis review and should have been sufficient to withstand *Anderson-Burdick* balancing. *See Eakin*, 2025 WL 2909016, at *1 (Phipps, J., dissenting sur denial of rehearing *en banc*) (reasoning that the opinion "substantially undervalued the Commonwealth's identified interests in the date requirement").

Pennsylvania should not have been required to identify "incremental solemnity" flowing from the date requirement alone. *Eakin*, 149 F.4th at 315; *see also Luft v. Evers*, 963 F.3d 665, 671 (7th Cir. 2020) ("Judges must not evaluate each clause in isolation."). The Commonwealth's instructions for the outer envelope of a mail-in ballot contain three features: "fill out" the declaration, "sign the declaration," and "date" the signature. 25 P.S. §§ 3146.6(a), 3150.16(a). The panel agreed that "[a]ffixing one's signature onto a

legal document does indeed constitute a solemn act." *Eakin*, 149 F.4th at 315. The Pennsylvania legislature decided that this "solemn act" should include a *dated* signature. Mail-in voting is not the only context in which Pennsylvania imposes that requirement,[2] and the Commonwealth is not alone in directing voters to write the date next to their signature in connection with mail-in voting.[3] The National Voter Registration Application Form, which was produced at the direction of Congress, also calls for a dated signature. *See* 52 U.S.C. § 20505.[4] So too does the registration form used by Texas,[5] which the panel referenced. *See Eakin*, 149 F.4th at 315.

That other political bodies have exercised their judgment to proceed similarly to Pennsylvania is inconsistent with the panel's surmise that the "date requirement seems to hamper rather than facilitate election efficiency." *Eakin*, 149 F.4th at 317; *see also Lichtenstein*, 83 F.4th at 604 ("[O]ur job is not to decide whether the ban represents good or bad policy. . . . We may intervene to stop the enforcement of this democratically passed law only if it violates some federal standard, here the First Amendment."). "*Anderson-Burdick* does not license such narrow second-guessing of legislative decision making."

---

[2] *See* 57 Pa. Cons. Stat. § 316; 23 Pa. Cons. Stat. § 5331; 73 Pa. Cons. Stat. § 201-7(j.1)(iii)(3)(ii); 42 Pa. Cons. Stat. § 8316.2(b); 73 Pa. Cons. Stat. § 2186(c); 42 Pa. Cons. Stat. § 6206.

[3] *See e.g.*, Ga. Code Ann. § 21-2-384(b); Ind. Code § 3-11-4-21(a)(5); Mich. Comp. Laws § 168.764a; N.Y. Elec. Law § 7-119(6); Wash. Rev. Code § 29A.40.091(2).

[4] Election Assistance Commission, National Mail Voter Registration Form, available at https://perma.cc/C9ES-KCD5.

[5] Texas Secretary of State, Texas Voter Registration Application, available at https://perma.cc/H6ML-29Z7.

*Lawson*, 978 F.3d 1040.  "One less-convenient feature does not an unconstitutional system make."  *Luft*, 963 F.3d at 675.

Pennsylvania's interest in orderly administration of elections was discounted too much.  "A State indisputably has a compelling interest in preserving the integrity of its election process."  *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006).  "[P]ublic confidence in the integrity of the electoral process has independent significance, because it encourages citizen participation in the democratic process."  *Crawford*, 553 U.S. at 197 (plurality opinion).  The fact that the SURE system may also serve these interests in administration and public confidence does not refute the Commonwealth's position regarding the date requirement.  SURE is a "system that, despite its name, could fail or freeze, or just run out of funding down the road."  *See Migliori*, 36 F.4th at 165 (Matey, J., concurring in the judgment).  "Many a lawyer prefers a belt-and-suspenders approach," and one valid way for a legislature to address these types of concerns is "redundant requirements in statutes."  *Luft*, 963 F.3d at 677.  The fact that judges may have chosen different redundancies, or no redundancies at all, is of no constitutional moment.

Finally, Pennsylvania's fraud concerns also justified the date requirement.  "[T]he potential and reality of fraud is much greater in the mail-in ballot context than with in-person voting."  *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 239 (5th Cir. 2020).  "Courts recognize that legislatures need not restrict themselves to a reactive role: legislatures are 'permitted to respond to potential deficiencies in the electoral process with foresight rather than reactively.'"  *Feldman v. Ariz. Sec'y of State's Off.*, 843 F.3d 366, 390 (9th Cir. 2016) (quoting *Munro v. Socialist Workers Party*, 479 U.S. 189, 195-96

(1986)); *see also Brnovich v. DNC*, 594 U.S. 647, 686 (2021) ("[I]t should go without saying that a State may take action to prevent election fraud without waiting for it to occur and be detected within its own borders.").

Nor was it appropriate to write off as "bizarre" Pennsylvania's example of a 2022 voter fraud conviction supported by evidence relating to the date on the mail-in envelope. *Eakin*, 149 F.4th at 317; *see ACLU of N.M v. Santillanes*, 546 F.3d 1313, 1323 (10th Cir. 2008) ("In requiring the City to present evidence of past instances of voting fraud, the district court imposed too high a burden on the City."). To the contrary, the fact that Pennsylvania was able to present specific and recent evidence supporting the State's anti-fraud interest is compelling. *See Crawford*, 553 U.S. at 195-96 (plurality opinion) (noting that "flagrant examples of such fraud . . . demonstrate that not only is the risk of voter fraud real but that it could affect the outcome of a close election"). The panel opinion acknowledged that the Commonwealth "demonstrate[d] that the date requirement can narrowly advance the Commonwealth's interest in fraud detection and deterrence." *Eakin*, 149 F.4th at 316-17. This was a sufficient showing even if the date requirement's burden was, as the panel concluded, "minimal." *Id.* at 309. And in light of the collective weight of the three interests articulated by the Commonwealth, *Anderson-Burdick* was not a basis to strike the date requirement under our Constitution.

*     *     *

The record in this case demonstrates that state politics have pervaded the implementation of the date requirement and Act 77's universal mail-in voting system. In a good way. Pennsylvania's legislature retained the date requirement in 2019, the governor

led efforts to improve implementation, the Commonwealth's Attorney General has defended the date requirement in this case on behalf of Pennsylvania, and elected Justices of Pennsylvania's Supreme Court have stepped in to clarify the state constitutional and statutory ground rules. This flurry of activity is entirely consistent with our guidance that "a state's sovereign interests are particularly implicated when the functions of its state government—especially, its state legislature—are impaired, impeded, or called into question." *Perrong v. Bradford*, --- F. 4th ----, 2025 WL 2825982, at *7 (3d Cir. 2025).

All of that is not to say that every county clerk in the Commonwealth believes the date requirement is worthwhile as a matter of policy and administration. Indeed, it is clear from the briefing that Pennsylvania's Secretary of State does not agree. Those disputes will be hashed out in the "hurly-burly, the give-and-take of the political process." *Trump v. Mazars USA, LLP*, 591 U.S. 848, 859 (2020). We are ill-equipped as an institution to participate, and there are significant federalism reasons for us to stay out of this dispute over mail-in voting rights that lack a federal constitutional dimension. Cases from the Supreme Court, this Court, and other Circuits explain why.

Because the Petitions For Rehearing failed to command the necessary votes, Pennsylvania must now look to the Supreme Court for assistance in restoring the state-federal equilibrium contemplated by the Elections Clause. I believe we should have done that ourselves, and therefore I respectfully dissent from the order denying rehearing *en banc*.